CIVIL DISTRICT COURT PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129

DIVISION " " D-16

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____     _____
                                         DEPUTY CLERK

PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come petitioners, Concrete Busters of

Louisiana, Inc., a Louisiana corporation domiciled in the Parish of Jefferson, and Waste

Remediation of Plaquemines, LLC, a Louisiana limited liability company domiciled in the Parish

of Jefferson, for the purpose of filing this Original Petition for Damages, and allege as follows:

1.

Made defendants herein are:

A.     **Frederick R. Heebe**, a person of the age of majority and domiciled in the Parish of

       Orleans, State of Louisiana;

B.     **Albert J. Ward, Jr.**, a person of the age of majority and domiciled in the State of

       Louisiana;

C.     **River Birch Incorporated**, a Louisiana corporation domiciled in the State of

       Louisiana; and

D.     **HWY 90, LLC**, a Louisiana limited liability company, which is a wholly owned

       subsidiary of River Birch Incorporated, domiciled in the State of Louisiana.

2.

Venue is proper in this judicial district, pursuant to La. C.C.P. art. 42, as defendant Frederick

R. Heebe, upon information and belief, is a domiciliary of Orleans Parish.

3.

Frederick R. Heebe ("Fred Heebe"), a prominent real estate developer, and his step-father Albert J. Ward, Jr. ("Jim Ward"), are co-owners of Shadowlake Managment Co., Inc. an umbrella corporation registered in Louisiana in 1985 that includes among its subsidiaries River Birch Incorporated, established in 1990. HWY 90, LLC is a wholly owned subsidiary of River Birch Incorporated. At all pertinent times Jim Ward served as President of River Birch Incorporated and as Manager of HWY 90, LLC. At all pertinent times Fred Heebe served as Vice-President of River Birch Incorporated.

4.

From 1995 through 2003, Tim Coulon served as Jefferson Parish President. During his tenure as Jefferson Parish President, both B.K. Sneed and Tim Whitmer held appointed positions.

5.

From 1995 through 2003, during Tim Coulon's term as Parish President, Aaron Broussard served as Jefferson Parish Council chairman.

6.

In or around 1996, Tom Wilkinson was appointed as Jefferson Parish Attorney by Tim Coulon, then Parish President.

7.

In 1997, the site where River Birch Landfill is today located was re-zoned, despite much public outcry, which enabled River Birch Incorporated to operate a landfill in Waggaman. Tim Coulon, then Parish President, and Aaron Broussard, then Council Chairman, oversaw and supported the re-zoning of River Birch Landfill.

8.

In 1998, Tim Whitmer was appointed to Chief Administrative Officer by Tim Coulon, then Parish President.

9.

In April 2001, B.K. Sneed left his long time employ of twenty (20) years with Jefferson Parish, and thereafter worked for Willow, Inc., a company under the Shadowlake Management Co. umbrella that is run by Jim Ward. As of the last report filed with the Secretary of State in 2011, Jim Ward serves as the President, and B.K. Sneed serves as the Vice-President, of Willow, Inc.

10.

On November 16, 2001, after being nominated by then Council chairman Aaron Broussard, Jim Ward was affirmed to serve on the West Jefferson Medical Center Board of Directors ("WJMC Board of Directors"). Mr. Ward replaced Fred Heebe, his step-son, on the Board.

11.

In 2003, Jennifer Sneed, daughter of B.K. Sneed, was first elected to serve on the Jefferson Parish Council.

12.

In January 2004, Aaron Broussard began serving as Jefferson Parish President. Tim Whitmer continued on as the Chief Administrative Officer for Aaron Broussard. Tom Wilkinson also continued to serve as Parish Attorney.

13.

In October 2005, Lagniappe Industries, LLC was formed by Tim Whitmer. Shortly after its creation, Tim Coulon, recently retired as Jefferson Parish President, went to work for Tim Whitmer's insurance agency, Lagniappe Industries, LLC.

14.

Upon information and belief, in his capacity as a Lagniappe Industries, LLC insurance agent, Tim Coulon approached Fred Heebe about providing River Birch Incorporated employees insurance policies.

15.

During his tenure as Parish President, Aaron Broussard received payments from Lagniappe Industries, LLC for claimed legal work, as well as referred clients to Tim Whitmer.

16.

In late 2005, Mr. Heebe's companies, including Shadowlake and River Birch Incorporated, L.L.C., cancelled their long-existing insurance contract with Group Insurance Associates Inc. and awarded Mr. Whitmer's Lagniappe Industries, LLC a contract to provide River Birch employees with insurance policies. Upon information and belief, as of December 2009, Shadowlake had about 150 employees and paid roughly $500,000.00 in insurance premiums. Once Lagniappe Industries, LLC was awarded the contract, Dawn Whitmer, Tim Whitmer's wife, took over the accounts. It is unclear how much money either Dawn Whitmer or Tim Coulon has received in insurance commissions.

17.

In 2006 Councilwoman Jennifer Sneed married Fred Heebe.

18.

While Tim Whitmer and Tom Wilkinson worked closely for Jefferson Parish in their roles as CAO and Parish Attorney, this was not the first time the two worked closely together, or with Tim Coulon for that matter. As late as 2007, Tim Whitmer was both the treasurer and registered agent for the non-profit corporation, Tim Coulon Campaign Committee, Inc., registered in September 2005, that had Tom Wilkinson as director. Additionally, Tim Coulon entered into other business dealings with Tim Whitmer, including DHP, L.L.C., which was filed with the Louisiana Secretary of State in December 2007, wherein both Tim Whitmer and Tim Coulon served as officers.

19.

Upon information and belief, in April and June 2007, Jim Ward, as a member of the West Jefferson Medical Center Board of Directors, adopted and entered into a contract that allowed B&A Insurance Agency to shop supplemental insurance plans to Jefferson Parish hospital employees. B&A Insurance Agency split its commissions with Tim Whitmer's Lagniappe Industries, LLC.

### State Demands Environmentally-Friendly Incineration

20.

The Louisiana Legislature in 2006 enacted La. R.S. 30:2413.1 which demanded that weight

reduction, volume reduction and incineration or co-generation be prioritized before land disposal;

R.S. 30:2413.1(C) further required that "[o]f the total green and woody debris intended for final

disposal in a landfill, fifty percent shall be reduced by weight and fifty percent by volume prior to

transport to a landfill." The reduction of "green and woody debris" demanded by the statute would

help to alleviate the lack of availability of landfill space in the Greater New Orleans Area caused

by a scarcity of existing landfills, and the several years required to permit and bring online a new

landfill.

21.

In or about October 2007, Jefferson Parish Purchasing Department issued Request for

Proposals "RFP" No. 0158 for "Disaster Debris Reduction and Disposal Via Air Circulation

Incineration for the Jefferson Parish Department of Environmental." The initial proposal receipt

date was December 5, 2007. The potential scope of work included "Reduction of disaster debris by

air curtain incineration," and "Hauling and disposal of ash in parish approved disposal facility."

22.

On November 28, 2007, the Jefferson Parish Purchasing Department issued Addendum

Number 1 for RFP No. 158, with clarification to specifications that the RFP was "to provide

debris volume reduction via air curtain incineration in emergency situations."

23.

On December 5, 2007, the Jefferson Parish Purchasing Department, issued Addendum

Number 2 for RFP No. 0158, postponing the receipt date to December 12, 2007, and with

clarifications to specifications explaining that "[t]he Jefferson Parish landfill is a separate entity

from the privately owned Highway 90 C&D landfill. It is located less than one half mile from the

Highway 90 landfill between Highway 90 landfill and River Birch Landfill." Waste Management

then managed the Jefferson Parish Landfill.

24.

In December 2007, after six (6) years of service, Jim Ward abruptly resigned his post on the

West Jefferson Medical Center Board of Directors

25.

On May 21, 2008, the Jefferson Parish Council passed Resolution 110366, which cancelled RFP No. 158, stating that "the services contemplated in this RFP are either provided in the contracts the Parish already has in place, or will be provided in other Parish contracts that are pending."

26.

On August 20, 2008, after she was re-elected in 2007, Ms. Jennifer Sneed-Heebe suddenly resigned from the Jefferson Parish Council, only eight (8) months into her term. Her resignation took effect just months prior to River Birch being awarded its contract with Jefferson Parish, which was approved by the Jefferson Parish Council.

27.

In Fall 2008, the necessity for awarding a contract for garbage disposal was made to appear dire when Tim Whitmer gave the Parish Finance Director Gwen Bolotte the instruction to cut the annual $5 million dollar financing for the Jefferson Parish Landfill in the 2009 budget.

28.

In late 2008, the Jefferson Parish Recycling Advisory Committee, a group of private citizens appointed to make recommendations regarding the recycling in Jefferson Parish, recommended to the Parish Administration and the Environmental Affairs Department that they seek proposals to promote recycling and other beneficial use of yard and woody waste to reduce the amount of waste landfilled by the Parish at the Parish landfill. This recommendation was designed to meet State recommendations that communities reduce waste sent to landfills.

29.

Pursuant to this recommendation, the Jefferson Parish Environmental Affairs Department, with the assistance of consultants Jordan, Jones & Goulding, Inc., drafted a request for proposal ("RFP") to solicit bids to meet the recommendations of the Jefferson Parish Recycling Committee. The RFP prepared by the Environmental Affairs Department was designed to reduce waste to be landfilled by soliciting recycling and other beneficial reuse of yard and woody waste.

6

### Environment and Taxpayers Dumped For River Birch

30.

The two highest officials of the Jefferson Parish Administration, specifically President Aaron Broussard and Chief Administrator Officer Tim Whitmer, requested to review and approve the draft RFP, which was a highly unusual procedure for an RFP of this nature.

31.

After the RFP was submitted for approval, Aaron Broussard and Tim Whitmer returned the RFP to the Environmental Affairs Department with substantial changes and additions which vastly expanded and inexplicably altered its scope and purpose. In particular, where the original RFP sought merely to solicit proposals for the recycling and diversion of yard and woody waste to other beneficial use to reduce the amount of waste sent to be landfilled to meet State recommended recycling goals, the draft version of the RFP returned by these Administration officials contained language so broad as to ostensibly allow an interpretation that would accept proposals to divert all waste currently being disposed at the Parish Landfill to another location, serving no recycling purpose or goal as envisioned by the appointed Jefferson Parish Recycling Committee and/or the State's recommended recycling goals.

32.

Moreover, the revised RFP, so interpreted, was completely inconsistent with the findings of Jefferson Parish's own advisors. Years earlier, Jefferson Parish had commissioned numerous studies by Camp Dresser McKee ("CDM"), the consultants for the Jefferson Parish Landfill, on the long term waste disposal plans and utilization of the Jefferson Parish Landfill. In 2002, CDM stated in its report "Evaluation of Landfill Expansion Alternatives": "JPL [Jefferson Parish Landfill] is one of the most valuable facilities owned by Jefferson Parish and as such should be maximized for long term use by the citizens who paid for it and benefit from it." CDM performed other studies, including a Master Plan for the Landfill, and made various recommendations to maximize use of the available airspace at the Jefferson Parish Landfill which, if properly utilized, could provide over forty (40) years of disposal capacity for the benefit of the residents and businesses of Jefferson

7

Parish. Upon information and belief, and subject to certain volumes of waste being delivered to the Jefferson Parish Landfill over time, the Landfill has a current value of tens of millions of dollars.

33.

The revised RFP was also inconsistent with the advice of the Parish's Environmental Affairs Department. In fact, the officials with the Environmental Affairs Department were completely surprised by the revised RFP, and they objected to the changes authored by the Administration.

34.

The altered RFP also conflicted with the recommendation of the Parish Landfill Engineer that Jefferson Parish should actually allow more disposal of waste from out of Parish sources, which would thereby increase the royalty revenues to Jefferson Parish under the existing Waste Management contract, and thereby significantly reduce the amount the citizens of Jefferson Parish would have to pay to dispose of their own waste. Aaron Broussard and Tim Whitmer completely ignored this recommendation from Jefferson Parish's own Landfill Engineer.

35.

The officials of the Environmental Affairs Department also specifically advised the Administration that their changes to the RFP could completely frustrate the original purpose and intent of the Jefferson Parish Recycling Committee's recommendation. Aaron Broussard and Tim Whitmer completely ignored the advice of the Environmental Affairs Department.

36.

Ignoring the objections of the Parish Environmental Affairs Department, and contrary to the recommendation of the Parish's Landfill Engineer, the changes made to the RFP by Aaron Broussard and Tim Whitmer were incorporated into the final version of the RFP, and in September 2008, Jefferson Parish issued RFP No. 176. In its final form, RFP No. 176 was purposely worded so broadly that it ostensibly allowed proposals to divert any type of waste in any quantity from the Jefferson Parish landfill.

37.

When the top officials of the Environmental Affairs Department questioned Aaron Broussard and Tim Whitmer as to why the RFP, and its original intent, had been so dramatically altered and broadened, they were told that the Administration wished to conduct a "fishing expedition." Upon information and belief, Aaron Broussard and Tim Whitmer knew that River Birch Incorporated was looking for an opportunity to obtain Jefferson Parish's waste disposal business, and therefore they specifically designed the RFP in such a way that River Birch Incorporated could respond with a proposal to take all Jefferson Parish waste and divert it to River Birch Incorporated's own landfill.

38.

From the outset, the issuance of this RFP was highly unusual and irregular, and violated normal procedures and Ordinances of Jefferson Parish. In particular, the interference in the RFP process by the Parish's two highest officials, Aaron Broussard and Tim Whitmer, was highly unusual and irregular. In addition, the advertisement process was abbreviated and rushed. In fact, the Finance Director of Jefferson Parish was directly told by Aaron Broussard and Tim Whitmer to "rush" the advertisement of the RFP, a request she thought was highly irregular, but which she followed due to their position of authority over her.

39.

In or about October 2008, Jefferson Parish Purchasing Department issued RFP No. 0176 for "processing, reduction, reuse and/or disposal of yard, woody, or any other solid waste or other wastes associated with a reduction in the air spaces used for the Jefferson Parish Department of Environmental." The initial proposal receipt date was November 19, 2008. The RFP stated that it was "the goal of the Jefferson Parish Environmental Affairs Department to extend the useful life of the Jefferson Parish landfill by diverting from that landfill waste streams that can be processed, reduced, reused and/or disposed of in an alternative, cost effective manner."

40.

Knowing that their efforts to modify this RFP would likely result in a response by River Birch Incorporated to take all Parish waste, and knowing that River Birch Incorporated's response

would meet with strong opposition, and highly embarrassing questions, by the Environmental Affairs Department, the Purchasing Department and others knowledgeable about the landfill operation, Aaron Broussard and Tim Whitmer sought to control the evaluation process for the RFP. Therefore, the Administration, and specifically Tim Whitmer, handpicked the members of the Evaluation Committee for the RFP, and in doing so purposely excluded certain officials from the Evaluation Committee required by law. In particular, a representative of the Environmental Affairs Department, which was the department responsible for submitting the RFP, and a representative of the Purchasing Department, were excluded, although representatives from both departments were required by Parish Ordinance to be on the Evaluation Committee. No Parish Council Resolution was obtained to authorize this variance from the Parish Ordinance, as required by law. Instead, the Administration appointed Parish Attorney, Tom Wilkinson, as chairman of the Evaluation Committee. One of the other two members of the Committee was another attorney from the Parish Attorney's office, David Fos, who was under the direct control and supervision of Tom Wilkinson. Al Gandolfi was the final member of the contract evaluation team which determined the company to receive the contract with Jefferson Parish.

41.

None of the appointees on the Evaluation Committee had any expertise or experience whatsoever in environmental or landfill management, and, in fact, the officials of the Environmental Affairs Department who had the requisite expertise were purposely excluded from the Evaluation Committee. As such, not only did the Evaluation Committee not have the necessary expertise to evaluate the RFP response, but the specific appointment of its members also assured that the Committee and the evaluation process would be under the direct control of Aaron Broussard, Tim Whitmer, and Tom Wilkinson. Consequently, the Evaluation Committee was not, and could not have been, independent, and therefore would also not be able to conduct a fair and independent evaluation of the RFP responses.

10

42.

On November 12, 2008, in response to a request by Aaron Broussard, Jefferson Parish

President, the Office of the Attorney General for the State of Louisiana issued Opinion No. 08-0270

which stated that:

> Act 662 of the 2006 Legislative Session, enacting La. R.S. 30:2413.1, was
> enacted as a direct response to the devastation unleashed upon South Louisiana as
> a result of the 2005 hurricane season, and the ensuing environmental problems
> caused by the debris left behind. Specifically, the Legislature became aware of the
> need to develop a comprehensive debris management plan to be implemented by the
> State in response to natural disasters. Thus, this Act directed the secretary of the
> LDEQ to "develop and implement a comprehensive debris management plan for
> debris generated by state and federally declared disasters and debris generated from
> the rebuilding efforts." La. R.S. 30:2413.1(B).
>> Of import to the current matter, part C of this statute provides as follows:
>>> Of the total green and woody debris intended for final disposal in a
>>> landfill, fifty percent shall be reduced by weight and fifty percent by volume
>>> prior to transport to a landfill.

La. R.S. 30:2413.1(C).

The Office of the Attorney General opined that "this statute allows the reduction of the debris

to occur on the property on which the landfill is located."

43.

On November 13, 2008, the Jefferson Parish Purchasing Department, issued Addendum

Number 1 postponing the receipt date for RFP No. 0176 to allow time to answer questions that were

received.

44.

On December 9, 2008, Concrete Busters of Louisiana, Inc. submitted a proposal in response

to RFP 176. The proposal would have reduced yard and woody waste 100% by placing the yard

and woody waste into a fully contained air circulation incinerator creating a 99% reduction, and

selling the remaining 1% as fertilizer. The self contained incineration process is one of the most

environmentally friendly processes available, and is utilized worldwide and by the U.S. Forestry

Service. Waste Remediation of Plaquemines, LLC, would have provided the air burners and

permits.

11

45.

The proposal of Concrete Busters of Louisiana, Inc. submitted in response to RFP 176 met the specifications of RFP 176.

46.

On December 9, 2008, River Birch Incorporated submitted its response to RFP No. 176, in which it offered a contract which would result in the diversion of 100% of the waste from the Jefferson Parish Sanitary Landfill to River Birch Landfill, conditioned on Jefferson Parish permanently closing its landfill for the 25 year term of the agreement, and further conditioned on the Parish prematurely cancelling the contract with Waste Management to operate the Parish Landfill. The River Birch Incorporated proposal was also conditioned on payment of a non-negotiable tipping fee which was significantly more than the tipping fee being charged by Waste Management under the existing contract.

47.

River Birch Incorporated included not only prices for woody waste, but also for construction debris, solid waste, sewage sludge and asbestos-laden materials, all to be disposed of not in the Jefferson Parish Landfill, but at the private River Birch Incorporated landfill.

48.

The proposal by River Birch Incorporated did not call for the reduction of woody waste, or disposal of woody waste in an alternative, cost-effective manner.

49.

The response by River Birch Incorporated to RFP No. 176 was beyond the scope of anything contemplated by the highest officials in Jefferson Parish's Environmental Affairs Department who originally drafted the RFP, and they were "shocked" and "very surprised" by the proposal submitted by River Birch Incorporated. Moreover, these officials voiced objections to the River Birch proposal to Aaron Broussard and Tim Whitmer, and to Tom Wilkinson as chair of the Evaluation Committee, and advised the Administration that closing the Parish Landfill would be a waste of Jefferson Parish's most valuable multi million dollar asset, and contrary to all long-term use studies Jefferson

Parish had commissioned in the past, as well as the Landfill Master Plan.

50.

The Environmental Affairs Department officials also voiced concern that closing the Parish Landfill would give River Birch Incorporated a monopoly on waste disposal in Jefferson Parish and would cause an increase in prices paid by the businesses and industries located in Jefferson Parish.

51.

The Environmental Affairs Department officials further advised the Administration and the Evaluation Committee that further study and financial evaluation of the River Birch Incorporated contract should be undertaken before recommending or rejecting the River Birch proposal.

52.

In or about January of 2009, an agent of Concrete Busters of Louisiana, Inc. was informed by the Director of the Department of Environmental Affairs that Concrete Busters of Louisiana, Inc. had submitted one of two Proposals that were being evaluated.

53.

However, an agent of Concrete Busters of Louisiana, Inc. was later informed by the Department of Environmental Affairs that a decision had been made to go in a "different direction" and Concrete Busters of Louisiana, Inc. would not be selected.

54.

On January 14, 2009, only a few short weeks after having received the River Birch Incorporated proposal, and despite the opposition and questions raised by Jefferson Parish's own Environmental Affairs Department, the illegally-constituted Evaluation Committee, under the control of Aaron Broussard, Tim Whitmer and Tom Wilkinson, recommended to the Parish Council that it accept the River Birch Incorporated proposal, claiming that the River Birch Incorporated proposal would result in "significant savings" to Jefferson Parish.

55.

In making this recommendation, the Evaluation Committee did not perform any financial analysis or evaluation comparing the River Birch Incorporated contract to the current Waste

Management contract, nor did the Committee obtain any credible or reliable information to support the statement that there would be "significant savings" to Jefferson Parish under the River Birch Incorporated contract. In this regard, Aaron Broussard, Tim Whitmer and Tom Wilkinson specifically misled the Parish Council regarding the beneficial savings to be gained with the River Birch Incorporated contract.

56.

Moreover, from the time the River Birch Incorporated contract was first solicited in November 2008, until the time it was approved on January 14, 2009, absolutely no comparison or cost savings analysis of the proposed River Birch Incorporated contract and the existing contract with Waste Management was performed. Prior to the approval of the River Birch Incorporated contract on January 14, 2009, even the officials of Jefferson Parish's own Environmental Affairs Department, who were the most knowledgeable people concerning landfill operation, were not asked to provide any information to the Evaluation Committee or to the Administration comparing the cost of continuing the operation of the Jefferson Parish landfill and/or the Waste Management's contract with Jefferson Parish to operate the landfill versus closing the landfill and diverting 100% of the waste to the River Birch Incorporated landfill.

57.

Following approval of the River Birch Incorporated proposal by the Jefferson Parish Council on January 14, 2009, Tom Wilkinson, on behalf of the Jefferson Parish Administration, began personally negotiating the contract with River Birch Incorporated, despite the lack of any study or financial analysis to support the claim of "substantial cost savings" to Jefferson Parish under the River Birch contract, and despite the opposition and contrary advice of Jefferson Parish's own Environmental Affairs Department. Further, the tipping fee demanded by River Birch Incorporated in its proposal was not negotiated, thus ensuring that the revenue demands by River Birch Incorporated would be paid by Jefferson Parish.

58.

Tom Wilkinson has had other business endeavors with Tim Whitmer, including through CWC Gaming, LLC, which was registered on May 6, 2009, wherein both Tim Whitmer and Tim Coulon were named as officer/members, and Tom Wilkinson was listed as the registered agent.

59.

In addition to their business endeavors, Tom Wilkinson and Tim Whitmer had business dealings with each other, as Tom Wilkinson helped execute the wills of Tim Whitmer's parents, Robert and Majorie. Further, Dawn Whitmer, Tim Whitmer's wife, served as Tom Wilkinson's insurance agent for several properties partly owned by Tom Wilkinson.

60.

In or about June 2009, negotiations between River Birch Incorporated and Parish Attorney Tom Wilkinson, on behalf of Jefferson Parish, resulted in a 25-year contract for $6.4 million dollars per year.

61.

On June 29, 2009, upon the advice of Aaron Broussard, Tim Whitmer and Tom Wilkinson, Jefferson Parish entered into a landfill operation contract with River Birch Incorporated, which: (1) provided River Birch Incorporated with the revenue it demanded; (2) provided for the premature termination of the contract with competitor Waste Management; and (3) provided for complete cessation of operation of the Jefferson Parish Landfill for the next 25 years as demanded by River Birch Incorporated. The complete cessation of operation of the Jefferson Parish Landfill for the subsequent 25 years ensured elimination of any waste disposal competition for River Birch Incorporated, and effectively moth-balled a multi million dollar asset owned by Jefferson Parish.

62.

Before the approval of the River Birch Incorporated contract, Jefferson Parish's own Environmental Affairs Department specifically advised the Jefferson Parish Administration that more time was needed for evaluation of the River Birch Incorporated proposal, but their advice was ignored. They also advised the Administration as to the limitations of the information available at

15

that time, and suggested that the Administration not proceed with the contract with River Birch Incorporated until further study could be done, but this advice was also ignored. Despite this advice to slow the process down to allow more time for analysis and study, the Administration purposefully sped up and rushed the process of approval for the River Birch Incorporated contract, and in the process neglected to conduct the proper analysis required by law.

63.

Furthermore, during the process of "evaluating" the River Birch Incorporated proposal, Jefferson Parish officials failed to consider other viable cost savings options, such as the expansion of the Jefferson Parish landfill which was being recommended by CDM, the Parish's independent landfill consultants, or amending the current contract to increase the royalties received by Jefferson Parish, which was recommended by Jefferson Parish's Landfill Engineer, all of which would have resulted in substantial cost savings and/or substantial revenue to Jefferson Parish, much greater than the alleged cost savings incorrectly projected with the River Birch Incorporated contract.

64.

Upon information and belief, the above-described conspiracy, which involved Aaron Broussard, Tim Whitmer, Tom Wilkinson, Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC, to divert Jefferson Parish waste from the Jefferson Parish Landfill to the River Birch Incorporated landfill began in 2004, almost immediately after the Broussard Administration took office. At that time, Aaron Broussard stated his intent and preference to use River Birch Incorporated as the Parish waste disposal vendor, and the Broussard Administration, through Tim Whitmer, apparently began efforts to prevent Waste Management from moving forward with plans to expand the Jefferson Parish Landfill, which had been approved by the previous Jefferson Parish administration and recommended by the landfill consultant.

65.

Upon information and belief, the conspirators' specific goal was to cancel the contract with Waste Management and direct the waste disposal business to River Birch Incorporated. The conspirators secretly schemed for years prior to the issuance of RFP No. 176 in 2008. In fact,

following Hurricane Katrina in 2005, the Broussard Administration directed Jefferson Parish hurricane waste to the River Birch Incorporated landfill, purportedly to save the disposal space at the Jefferson Parish Landfill that would now be closed for at least 25 years under the River Birch Incorporated contract approved by, and shepherded through the Parish Council by, the Aaron Broussard Administration.

66.

On January 4, 2010, Tim Whitmer, Jefferson Parish Chief Administrative Officer resigned in disgrace after it was revealed that he used Lagniappe Industries, LLC to sell insurance to Jefferson Parish vendors and public employees.

67.

On January 8, 2010, Aaron Broussard, resigned his position as Jefferson Parish President in disgrace and under a cloud of suspicion.

68.

On February 25, 2010, Tom Wilkinson was suspended from his post as Parish Attorney, constituting the first adverse action taken against one of the decision-makers affecting plaintiffs. On March 4, 2010, one week after he had been suspended from his position, Tom Wilkinson resigned.

69.

On July 7, 2010, the Parish of Jefferson, by and through the Parish Council, pursuant to the provisions of Resolution No. 114492 (adopted on the 28th day of April, 2010), and Resolution No. II (adopted on the 9th day of June, 2010), entered into a contract with the accounting firm Postlethwaite & Netterville, APAC, to provide a financial analysis of landfill options for the Department of Environmental Affairs, including continued operation of the Jefferson Parish Sanitary Landfill or closure of the Jefferson Parish Sanitary Landfill and disposal of Jefferson Parish solid waste in the River Birch Incorporated landfill, to assist in determining the most appropriate course of actions regarding solid waste disposal for Jefferson Parish.

70.

Even as of today, Jefferson Parish still does not know of any value or benefit in closing the Jefferson Parish Landfill for the next 25 years and does not have any reliable evidence to support that there are any savings, let alone "substantial savings," to Jefferson Parish. In fact, no Jefferson Parish official, other than Aaron Broussard, Tim Whitmer and Tom Wilkinson, all of whom resigned their positions amid scandal, has said or can say that there would be any savings with the River Birch Incorporated contract over the next 25 years.

71.

Moreover, Jefferson Parish officials have acknowledged in sworn testimony that there is no evidence to support a claim of savings with the River Birch Incorporated contract. The first report that even remotely addressed a cost comparison between the Waste Management and River Birch Incorporated contracts was a preliminary report done by the Landfill Engineer dated May 5, 2009, almost five months after the River Birch Incorporated proposal was approved. However, the preliminary report by the Parish Landfill Engineer was incomplete, and was not intended to provide a basis upon which to make a determination that Jefferson Parish would save money over the 25-year life of the River Birch Incorporated contract.. Despite the preliminary nature of the report, and erroneous assumptions in the report, which were acknowledged by the Landfill Engineer himself, certain Jefferson Parish officials improperly "extrapolated" projected cost savings over the 25-year life of the River Birch Incorporated contract in order to mislead the Jefferson Parish Council and the public concerning alleged cost savings with the River Birch Incorporated contract. However, the Jefferson Parish Landfill Engineer admitted the report had limited reliability and he urged that more time and study was necessary.

72.

In fact, no one, including Jefferson Parish's own Landfill Engineer, can say, even as of today, that Jefferson Parish would save money over the 25-year term of the contract with River Birch Incorporated, as compared to the current contract with Waste Management.

18

73.

RFP No. 176 was specifically admitted by Tim Whitmer to be a "fishing expedition," and on information and belief was intended by Aaron Broussard and Tim Whitmer, to bring to fruition their conspiracy to retain River Birch Incorporated to dispose of all Jefferson Parish waste, due to the improper influence exacted by River Birch Incorporated on these Jefferson Parish officials.

74.

On January 14, 2011, Postlethwaite & Netterville, APAC, released their findings regarding the Jefferson Parish landfill cost projection and analysis. The report established that the River Birch Incorporated contract cost the citizens of Jefferson Parish substantially more money than continuing to use the Parish-owned landfill. Further, in a section of the report entitled, "Other Matters for Consideration," the report provided several reasons why a twenty-five (25) year contract, such as the one entered into with River Birch Incorporated, was not optimal for Jefferson Parish.

75.

Upon information and belief, in furtherance of their conspiracy, Fred Heebe, Jim Ward, River Birch Incorporated, HWY 90, LLC, Aaron Broussard, Tim Whitmer, and Tom Wilkinson conspired together to ensure that RFP No. 176 was: (1) altered to subvert its original purpose; and (2) rammed through an accelerated, inadequate RFP approval process in violation of Parish Ordinances, which included an improperly and illegally-constituted Evaluation Committee, chaired by Tom Wilkinson, resulting in a complete lack of any objective evaluation or analysis of the alleged benefit or cost savings of the proposed River Birch Incorporated contract compared to the existing Waste Management contract.

76.

Furthermore, upon information and belief, Fred Heebe, Jim Ward, River Birch Incorporated, HWY 90, LLC, Aaron Broussard, Tim Whitmer, and Tom Wilkinson conspired together to mislead the Parish Council and other Jefferson Parish officials regarding their claim of "substantial cost savings" with the River Birch Incorporated contract.

77.

Moreover, in furtherance of their plan to divert waste from the Parish Landfill to the River Birch Incorporated landfill, it was necessary to cancel the existing contract with Waste Management so that the River Birch Incorporated contract could become effective. Upon information and belief, Fred Heebe, Jim Ward, River Birch Incorporated, HWY 90, LLC, Aaron Broussard, Tim Whitmer, and Tom Wilkinson therefore conspired to employ the "annual appropriation dependency clause" of the Landfill Contract with Waste Management to prematurely terminate the contract with Waste Management in order to assure that the contract with River Birch Incorporated could be implemented on January 1, 2010, as called for in the River Birch Incorporated contract. Their plan was first attempted in the Fall of 2009, shortly after approval of the contract with River Birch Incorporated, when the 2010 budget was first submitted to the Administration for consideration. At that time, Tim Whitmer directed the Finance Director not to include the funds for the Waste Management contract in the proposed 2010 Parish Budget, despite adequate funds being available in the Parish Treasury. Upon information and belief, their plan was to falsify budgetary information such that it would appear that there were "insufficient funds" for the continuation of the Waste Management contract, thereby allowing the Administration to cancel the Waste Management contract effective January 1, 2010 and to commence the River Birch Incorporated contract at that time, as demanded by River Birch Incorporated in their proposal for the contract.

78.

On December 17, 2010, the Louisiana Board of Ethics filed charges against Lagniappe Industries, LLC, Tim Whitmer, Dawn Whitmer and Aaron Broussard in the State of Louisiana Division of Administrative Law in the matters numbered 2009-1030, 2009-1053, 2010-029 and 2010-707. The charges against Tim Whitmer included:

### COUNT XXIII

Lagniappe Industries, LLC, a limited liability company wholly owned by Tim Whitmer and his wife Dawn Whitmer, at a time when Tim Whitmer had a controlling interest, at a time when Tim Whitmer served as the Chief Administrative Assistant/Officer for Jefferson Parish and member of the parish Insurance Advisory Committee, violated R.S. 42:1111(C)(2)(d) by receiving a thing of economic value of payments made in accordance with

a joint venture agreement between Lagniappe Industries, LLC, Coulon Consultants, LLC, and Katz & Katz, LLC, for or in consideration of services rendered to or for River Birch, Inc. whose employees are compensated from under the name of Shadow Lake Management, Inc. in reference to the sale of insurance, at a time when River Birch, Inc. sought and/or obtained contractual, business or financial relationships with his agency, Jefferson Parish governmental entity.

### COUNT XXIV

Lagniappe Industries, LLC, a limited liability company wholly owned by Tim Whitmer and his wife Dawn Whitmer, at a time when Tim Whitmer had a controlling interest at a time when Tim Whitmer served as the Chief Administrative Assistant/Officer for Jefferson Parish and member of the parish's Insurance Advisory Committee, violated La. R.S. 42:1115 by accepting a thing of economic value of payments made in accordance with a joint venture agreement between Lagniappe Industries, LLC, Coulon Consultants, LLC, and Katz & Katz, LLC, from River Birch, Inc, or Humana Health Care sought and/or obtained contractual, business or financial relationships with his agency, Jefferson Parish governmental entity.

The charges against Aaron Broussard included charges for receiving payments, gifts and/or gratuities from Lagniappe Industries, LLC. Plaintiffs hereby adopt and allege these, and all other allegations of the charges by the Louisiana Board of Ethics against Lagniappe Industries, LLC, Tim Whitmer, Dawn Whitmer and Aaron Broussard in the State of Louisiana Division of Administrative Law in the matters numbered 2009-1030, 2009-1053 and 2010-707 as if copied herein *in extenso*.

### Causes of Action

79.

Louisiana Revised Statute 38:2224 requires that:

A.   All ... contractors, subcontractors, or any person, corporation, firm, association, or other organization receiving value for services rendered in connection with a contract for the construction, alteration or demolition of a public building or project shall execute an affidavit attesting:

    (1)   That affiant employed no person, corporation, firm, association, or other organization, either directly or indirectly, to secure the public contract under which he received payment, other than persons regularly employed by the affiant whose services in connection with the construction, alteration or demolition of the public building or project or in securing the public contract were in the regular course of their duties for affiant; and

    (2)   That no part of the contract price received by affiant was paid or will be paid to any person, corporation, firm, association, or other organization for soliciting the contract, other than the payment of their normal compensation to persons regularly employed by the affiant whose services in connection with the construction, alteration or demolition of the public building or project were in the regular course of their duties for affiant.

B.      No public contract shall be granted to any person, corporation, firm, association, or other organization refusing to execute the affidavit required by Subsection A above:

Louisiana Unfair Trade Practices Act—LA. R.S. 51:1401, et.seq.

80.

Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC are direct competitors of Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.

81.

Upon information and belief, Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC have engaged in actions which are unethical, oppressive, unscrupulous, and substantially injurious to Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC, in that they:

a)      entered into an insurance contract, so as to allow commissions to be obtained by persons related to Jefferson Parish Government to thereby influence certain Jefferson Parish Administration officials to issue a contract to Fred Heebe, Jim Ward, HWY 90, LLC, and River Birch Incorporated by improper methods, including:

(i) the improper and bad faith revision of RFP No. 176 by certain Jefferson Parish Administration officials following its submission to them by the Jefferson Parish Environmental Department;

(ii) violation of applicable Parish Ordinances;

(iii) the improper and illegal exclusion of the Director of Jefferson Parish's Environmental Department from the Evaluation Committee established to review responses to RFP 176;

(iv) the lack of independence of the Evaluation Committee, which was under the control of Aaron Broussard, Tim Whitmer, and Tom Wilkinson;

(v) the abbreviated evaluation process for the River Birch Incorporated proposal;

(vi) the improper and bad faith recommendation by the Evaluation Committee to approve River Birch Incorporated's response to RFP No. 176 and subsequent

22

contract with River Birch Incorporated, despite the complete absence of support for the conclusions on which those decisions were based and advice to the contrary by Jefferson Parish's Environmental Department;

(vii) making false and misleading statements concerning "substantial cost saving" with the River Birch Incorporated contract when compared to the Waste Management contract, despite the complete lack of financial analysis or other evaluation of the contracts;

(viii) the failure to perform any analysis or prepare any report, as required by Parish Ordinance, to seek a change in existing contracts to another vendor; and

(ix) the failure to consider other viable and cost-saving and/or revenue-producing options related to expansion of the Jefferson Parish Landfill;

b)    violated Louisiana Revised Statute 38:2224;

c)    subverted Act 662 of the 2006 Legislative Session enacting La. R.S. 30:2413.1 by hijacking an RFP specifically designed to reduce yard and woody waste, thereby decreasing the flow of waste into Louisiana landfills, into an RFP specifically calculated to allow River Birch Incorporated to not reduce any waste, but to instead divert all waste to a different landfill owned by River Birch Incorporated;

d)    violated the Louisiana Code of Governmental Ethics, including La. R.S. 42:1111 and La. R.S. 42:1115; and

e)    undertook such other acts or omissions which shall be shown, including without limitation and on information and belief which may be in violation of La. R.S. 14:73, 14:118(A)(1) and 14:120.

82.

The foregoing constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce which have been declared unlawful by Louisiana statutes and jurisprudence.

83.

Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC are thus in violation of The Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, et.seq.

84.

Upon information and belief, Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC desired to drive Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC out of the waste reduction business in Louisiana, and, in particular, the Parish of Jefferson.  These actions constitute an impermissible and/or illegal restraint on trade in violation of La. R.S. 51:121 et seq.

85.

Upon information and belief, Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC further desired to drive all competitors out of the landfill business in the Greater New Orleans Area, and, in particular, the Parish of Jefferson, to the detriment of Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.  These actions constitute an impermissible and/or illegal restraint on trade in violation of La. R.S. 51:121 et seq.

86.

Upon information and belief, Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC further desired to drive all competitors out of the landfill business in the Greater New Orleans Area, and, in particular, the Parish of Jefferson.  The demanded closure of the Jefferson Parish Landfill would have significantly exacerbated the lack of availability of landfill space in the Greater New Orleans Area caused by a scarcity of existing landfills, and the several years required to permit and bring online a new landfill.  Upon information and belief,  Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC thereby attempted to monopolize the landfill business in the Greater New Orleans Area, and, in particular, the Parish of Jefferson, to the detriment of Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC, and in violation of La. R.S. 51:123.

87.

On February 25, 2011, a federal grand jury indicted Henry Mouton, a former commissioner of the Louisiana Department of Wildlife and Fisheries, for, *inter alia*, allegedly taking approximately $460,000 in "illegal payoffs" from an unnamed landfill owner in exchange for his help in keeping rival Old Gentilly Landfill closed.   The Indictment was filed in the United States District Court for the Eastern District of Louisiana in the matter numbered 11-048.   Upon information and belief, the allegations of the Indictment are adopted herein as if copied *in extenso*. Upon information and belief, and specifically Paragraphs 37 and 64 of the Indictment, the unnamed landfill owner is Fred Heebe, Jim Ward, River Birch Incorporated and/or HWY 90, LLC.   Upon information and belief, the "illegal payoffs" of Henry Mouton by Fred Heebe, Jim Ward, River Birch Incorporated and/or HWY 90, LLC was part of a larger conspiracy to restrain and/or monopolize the landfill business in the Greater New Orleans Area, said conspiracy including the above-alleged actions.

88.

The impermissible restraints on trade and attempts to monopolize persist to this day as Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC continue to advocate for the closure of the Jefferson Parish landfill.

89.

Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC, through their above-described actions, have been enriched without cause at the expense of Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC, and therefore Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC are bound to compensate Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.

**Continuing Tort**

90.

All of the above alleged acts and omissions have been continuing and constitute a continuing tort.

## Damages

91.

Were it not for the above-described actions of Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC, Concrete Busters of Louisiana, Inc. would have entered into a contract with the Parish of Jefferson pursuant to RFP 176. Waste Remediation of Plaquemines, LLC would have provided the air burners. As a consequence of the above-described actions of Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC, in violation of state laws, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC are entitled to the following remedies:

a) Recovery of actual damages, including expenses of bid application, lost profits, damage to business reputation, and loss of business opportunity, plus attorneys' fees and penalties, against Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC, *in solido*, for the unfair trade practices perpetrated by Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC, pursuant to La. R.S. 51:1409;

b) Recovery of actual damages, including expenses of bid application, lost profits, damage to business reputation, and loss of business opportunity, plus attorneys' fees and threefold damages, against Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC, its corporate officers, directors, and/or agents, *in solido*, for the uncompetitive practices perpetrated by Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC, pursuant to La. R.S. 51:137;

c) Recovery of actual damages, including expenses of bid application, lost profits, damage to business reputation, and loss of business opportunity, against Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC, *in solido*, pursuant to Louisiana Civil Code Article 2315; and

d) Any other damages proven at trial or hearing of this matter.

92.

Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC reasonably anticipated profits of approximately $2.5 million over the course of the denied contract, plus profits from additional resultant contracts, which when trebled yields damages exceeding $7.5 million.

93.

In accordance with Louisiana Civil Code Article 2324, Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC are solidarily liable with all the actors in the above unethical and illegal acts because, upon information and belief, Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC, knowing of said actions, and knowing that the actions were unethical and/or illegal, intentionally and/or willfully colluded with said actors for the benefit of Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC. Further, the corporate officers, directors and/or agents of River Birch Incorporated and HWY 90, LLC, including Fred Heebe and Jim Ward, are individually and personally liable, *in solido*, pursuant to La. R.S. 51:126 and La. R.S. 12:95.

WHEREFORE, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC pray that after due proceedings are had, there be a judgment herein in their favor and against defendants Fred Heebe, Jim Ward, River Birch Incorporated and HWY 90, LLC, *in solido,* in an amount that is reasonable in the premises, including treble damages, together with attorneys' fees and costs of these proceedings, legal interest thereon from the date of judicial demand until paid, as well as any and all legal and equitable relief this Court deems appropriate.

Respectfully Submitted,

RANDALL A. SMITH, T.A. (No. 2117)
STEPHEN M. GELÉ (#22385)
MELISSA M. DESORMEAUX (#33093)
-OF-
SMITH & FAWER, L.L.C.
201 St. Charles Ave., Suite 3702
New Orleans, LA 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of*
*Louisiana, Inc.and Waste Remediation of*
*Plaquemines, LLC*

27

PLEASE ISSUE CITATION AND SERVE:

River Birch Incorporated
through its registered agent for service of process:
Heebe & Heebe (PLC)
2000 Belle Chasse Hwy.
Third Floor
Terrytown, LA 70056

Frederick R. Heebe
5531 St. Charles Avenue
New Orleans, LA 70115

HWY 90, LLC
through its registered agent for service of process:
Richard P. Richter
909 Poydras Street, 28th Floor
New Orleans, La 70112

Albert J. Ward, Jr.
9 Colony Road
Gretna, LA 70056

**ATTORNEY'S NAME:** Smith, Randall  02117
**AND ADDRESS:**   Ste. 3702,  201 Saint Charles Ave.
New Orleans   LA 70170-3702

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO:   2011 — 02129    2    DIVISION: D    SECTION: 16

CONCRETE BUSTERS OF LOUISIANA, INC. VERSUS HEEBE, FREDERICK R.  ET AL.

## CITATION

TO: HWY 90, LLC
THROUGH:  its registered agent for service of process
Richard P. Richter
909 Poydras Street, 28th Floor
New Orleans       LA   70112

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the petition
PETITION FOR DAMAGES
a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk
of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the
service hereof under penalty of default

### ADDITIONAL INFORMATION

Legal assistance is advisable.  If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561-8828.  This Referral Service operates in conjunction with the
New Orleans Bar Association.  If you qualify, you may be entitled to free legal assistance through the
New Orleans Legal Assistance Corp. You may call them at 800-624-4771 or 504-525-4431.
*********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE*********

**IN WITNESS HEREOF,** I have hereunto set my hand and affix the seal of the Civil District Court for
the Parish of Orleans, State of LA   February 28, 2011

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

DALE N. ATKINS, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by _____
Deputy Clerk

---

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this ___ day of ___ ___ served a copy of the w/i petition PETITION FOR DAMAGES | On this ___ day of ___ ___ served a copy of the w/i petition PETITION FOR DAMAGES |
| On HWY 90, LLC | On HWY 90, LLC |
| *Richard P. Richter* THROUGH:  its registered agent for service of process | THROUGH:  its registered agent for service of process |
| 11:47 AM | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating  HIM / HER the said _____ HWY 90, LLC |
| Returned same day _____ Deputy Sheriff of _____ | |
| Mileage: $ _____ | being absent from the domicile at time of said service. Returned same day No. _____ |
| ___ / ENTERED / PAPER 9107 RETURN | Deputy Sheriff of _____ |
| SERIAL NO.   DEPUTY   PARISH | |

**VERIFIED   VERIFIED**
Janice LeCesne        Janice LeCesne
Deputy Clerk          Deputy Clerk

ATTORNEY'S NAME: Smith, Randall   02117
AND ADDRESS:        Ste. 3702,  201 Saint Charles Ave.
                    New Orleans       LA  70170-3702

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO:     2011 – 02129      3        DIVISION: D              SECTION: 16

CONCRETE BUSTERS OF LOUISIANA, INC. VERSUS HEEBE, FREDERICK R. ET AL

## CITATION

TO:  RIVER BIRCH INCORPORATED
     THROUGH:  its registered agent for service of process:
     Heebe & Heebe (PLC)
     2000 Belle Chasse Hwy.  Third Floor
     Terrytown                          LA    70056

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the petition
PETITION FOR DAMAGES
a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk
of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the
service hereof under penalty of default

### ADDITIONAL INFORMATION

Legal assistance is advisable.  If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561- 8828.  This Referral Service operates in conjunction with the
New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through the
New Orleans Legal Assistance Corp. You may call them at 800-624-4771 or 504-525-4431.
*********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE*********

**IN WITNESS HEREOF,** I have hereunto set my hand and affix the seal of the Civil District Court for
the Parish of Orleans, State of LA    February 28, 2011    .

Clerk's Office, Room 402, Civil Courts        DALE N. ATKINS,  Clerk of
421 Loyola Avenue                             The Civil District Court
New Orleans, LA                               for the Parish of Orleans
                                              State of LA
                                              by
                                                      Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ | On this _____ day of _____ |
| _____ served a copy of the w/i petition | _____ served a copy of the w/i petition |
| PETITION FOR DAMAGES | PETITION FOR DAMAGES |
| On | On |
| RIVER BIRCH INCORPORATED | RIVER BIRCH INCORPORATED |
| THROUGH: its registered agent for service of process: | THROUGH: its registered agent for service of process: |
| | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ |
| Returned same day | a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating  HIM / HER  the said _____ |
| No. | RIVER BIRCH INCORPORATED |
| Deputy Sheriff of _____ | |
| Mileage: $ _____ | being absent from the domicile at time of said service. |
| _____ / ENTERED / _____ | Returned same day |
| PAPER              RETURN | No. |
| _____ / _____ / _____ | _____ |
| SERIAL NO.    DEPUTY    PARISH | Deputy Sheriff of _____ |

MAR 0 4 2011
RECEIVED  CIVIL  SHERIFF'S OFFICE  JEFFERSON PARISH

Angela Davis
Deputy Clerk

**ATTORNEY'S NAME:** Smith, Ra~~~  02117
**AND ADDRESS:** Ste. 3702, 201 Saint Charles Ave.
New Orleans     LA  70170-3702

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

NO:     2011 – 02129       4          DIVISION: D                    SECTION 16

CONCRETE BUSTERS OF LOUISIANA, INC. VERSUS HEEBE, FREDERICK R. ET AL

### CITATION

**TO:** WARD, ALBERT J. JR.
THROUGH:
9 COLONY ROAD

GRETNA                         .          LL    70056

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the petition
PETITION FOR DAMAGES
a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561- 8828.  This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through the New Orleans Legal Assistance Corp. You may call them at 800-624-4771 or 504-525-4431.

**\*\*\*\*\*\*\*\*\*COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE\*\*\*\*\*\*\*\*\***

**IN WITNESS HEREOF,** I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA     February 28, 2011

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

**DALE N. ATKINS,** Clerk of
The Civil District Court
for the Parish of Orleans
State of LA

by _____
**Deputy Clerk**

---

### SHERIFF'S RETURN
(for use of process servers only)

**PERSONAL SERVICE**

On this _____ day of _____
_____ served a copy of the w/i petition
PETITION FOR DAMAGES

On
       WARD, ALBERT J. JR.

THROUGH:

3 4

Returned  same  day
_____  No. _____
Deputy Sheriff of _____
Mileage: $ _____
_____ / ENTERED / _____
PAPER                        RETURN
_____ / _____
SERIAL NO.       DEPUTY       PARISH

**DOMICILIARY SERVICE**

On this _____ day of _____
_____ served a copy of the w/i petition
PETITION FOR DAMAGES

On
       WARD, ALBERT J. JR.

THROUGH:

by leaving same at the dwelling house, or usual place of abode, in the hands of _____
a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating  HIM / HER  the said _____
WARD, ALBERT J. JR.

being absent from the domicile at time of said service.
Returned  same  day
                                         No. _____
Deputy Sheriff of _____

VERIFIED
Janice LeCesne
Deputy Clerk



DATE RECEIVED MAR 04 2011 DATE RET'D MAR 04 2011

DATE SERVED 3-4-11

SERVICE AFFECTED OR REASON UNSERVED:

— PERSONAL ✓ -DOMICILARY THRU Shondra Bovia

— THRU / OTHER ____

— NOT AT THIS ADDRESS PER - ____

— UNABLE TO SERVE AFTER MAKING ____ ATTEMPTS

John Carroll 116631

Deputy Sheriff of Jefferson Parish

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

No.: 11-2129                              Division: D

CONCRETE BUSTERS OF LOUISIANA, INC., ET AL.

versus

FREDERICK R. HEEBE, ET AL.

PARTY TO BE SERVED:        HWY 90, LLC

THROUGH:                   Richard P. Richter

ADDRESS:                   909 Poydras Street

SUITE/ROOM:                28th Floor

CITY:                      New Orleans

SPECIAL SERVICE INSTRUCTIONS: _____

DOCUMENT TYPE:             Motion for Trial by Jury

FILED BY ATTORNEY:         Randall A. Smith              BAR NO. 2117

DATE OF FILING:            3/2/2011

ATTACHMENTS/EXHIBITS: _____

| RETURN FOR PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On the _4_ day of _Mar 2011_ served a copy of the within _Motion_ _H WY 90 LLC_ On _Thru Atty Richard P. Richter_ person _Gloria Seely_ _e pn_ Return same day. _Smith_ Deputy Sheriff of Orleans Parish | On this _____ day of _____ 19 __ served a copy of the within _____ on _____ by leaving same at _____ domicile or usual place of abode _____ in the hand of _____ a person of suitable age and discretion, residing therein as a member of _____ domiciliary establishment, whose name and other facts connected with this service I learned by interrogating the said _____ the said _____ being absent from _____ domicile at time of said service. Returned same day |
| ENTERED | Deputy Sheriff of Orleans Parish |

PAPER          RETURN

SERIAL NO.   DEPUTY   PARISH

**SHERIFF'S RETURN**

Form 95

VERIFIED
Jade Scott
Deputy Clerk

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

No.: 11-2129

Division: D

CONCRETE BUSTERS OF LOUISIANA, INC., ET AL.

versus

FREDERICK R. HEEBE, ET AL.

PARTY TO BE SERVED:   RIVER BIRCH INCORPORATED

THROUGH:   Heebe & Heebe (PLC)

ADDRESS:   2000 Belle Chasse Highway

SUITE/ROOM:   3rd Floor

CITY:   Terrytown

SPECIAL SERVICE INSTRUCTIONS:

DOCUMENT TYPE:   Motion for Trial by Jury

FILED BY ATTORNEY:   Randall A. Smith _____ BAR NO.: 2117

DATE OF FILING:   3/2/2011

ATTACHMENTS/EXHIBITS:

| RETURN FOR PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On the _____ day of _____ 19 ___ served a copy of the within _____ _____On _____in person _____ _____ | On this _____ day of _____ 19 __ served a copy of the within _____ on _____ by leaving same at _____ domicile or usual place of abode _____ in the hand of _____ a person of suitable age and discretion, residing therein as a member of _____ domiciliary establishment, whose name and other facts connected with this service I learned by interrogating the said _____ the said _____ being absent from _____ domicile at time of said service. |
| Return same day | Returned same day |
| Deputy Sheriff of Orleans Parish | Deputy Sheriff of Orleans Parish |
| _____ ENTERED _____ | |
| PAPER          RETURN | |
| SERIAL NO.   DEPUTY   PARISH | |

SHERIFF'S RETURN

VERIFI...

Jade Scott
Deputy Clerk

3·14·PP

Form 95

JEFFERSON PARISH RECEIVED MAR 0 4 2011

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

No.: 11-2129                                    Division: D

CONCRETE BUSTERS OF LOUISIANA, INC., ET AL.
versus
FREDERICK R. HEEBE, ET AL.

PARTY TO BE SERVED:     Albert J. Ward, Jr.

THROUGH:

ADDRESS:                9 Colony Road

SUITE/ROOM:

CITY:                   Gretna

SPECIAL SERVICE INSTRUCTIONS:

DOCUMENT TYPE:          Motion for Trial by Jury

FILED BY ATTORNEY:      Randall A. Smith                    BAR NO.   2117

DATE OF FILING:         3/2/2011

ATTACHMENTS/EXHIBITS:

---

**RETURN FOR PERSONAL SERVICE**

On the _____ day of _____ 19 ____ served
a copy of the within _____
_____On
_____in
person _____
_____

Return same day

_____
Deputy Sheriff of Orleans Parish

_____ ENTERED _____

PAPER              RETURN

SERIAL NO.    DEPUTY    PARISH

Form 95

**DOMICILIARY SERVICE**

On this _____ day of _____ 19 ____ served
a copy of the within _____
on _____
by leaving same at _____ domicile or usual
place of abode _____
in the hand of _____
a person of suitable age and discretion, residing
therein as a member of _____ domiciliary
establishment, whose name and other facts
connected with this service I learned by interrogating
the said _____
the said _____ being
absent from _____ domicile at time of said service.
Returned same day

Deputy Sheriff of Orleans Parish

**SHERIFF'S RETURN**

RECEIVED

MAR 0 4 2011

JEFFERSON PARISH
SHERIFF'S OFFICE
CIVIL

FILED
2011 MAR -2 P 3: 55
CIVIL
DISTRICT COURT

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

## STATE OF LOUISIANA

NO.   11-2129                                          DIVISION "D"

### CONCRETE BUSTERS OF LOUISIANA, INC.
### AND WASTE REMEDIATION OF PLAQUEMINES, LLC

### VERSUS



### FREDERICK R. HEEBE,  ALBERT J. WARD, JR.,
### RIVER BIRCH INCORPORATED AND HWY 90, LLC



_____                    _____
                        **DEPUTY CLERK**

## MOTION FOR TRIAL BY JURY

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs Concrete Busters of

Louisiana, Inc. (hereinafter referred to as "Concrete Busters") and Waste Remediation of

Plaquemines, LLC (hereinafter referred to as "Waste Remediation"), pursuant to Article 1733 of the

Louisiana Code of Civil Procedure, and who hereby request that this matter proceed as a trial by

jury, while adopting and re-averring all allegations and prayers in the *Petition*, as if copied herein

*in extenso*, and represents and avers as follows:

I.

Plaintiffs' *Petition for Damages* was filed on February 25, 2011, which is less than ten (10)

days before the filing of this *Motion*.

II.

No party has yet filed an answer or responsive pleading to the original *Petition for Damages*.

III.

Plaintiffs hereby requests a trial by jury on all issues raised in these proceedings.

**WHEREFORE**, Concrete Busters and Waste Remediation request that this *Motion* be

granted and this matter proceed as a trial by jury.

VERIFIED
Regina Crockett
Deputy Clerk 030411

Respectfully Submitted,

**RANDALL A. SMITH, T.A.  (No. 2117)**
**STEPHEN M. GELÉ (#22385)**
**MELISSA M. DESORMEAUX (#33093)**
     -OF-
**SMITH & FAWER, L.L.C.**
201 St. Charles Ave., Suite 3702
New Orleans, LA 70170
Telephone: (504) 525-2200
Facsimile:  (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of*
*Louisiana, Inc.and Waste Remediation of*
*Plaquemines, LLC*

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 11-2129         DIVISION - D -         SECTION: 16

Concrete Busters of LA, Inc., et al

VERSUS

FILED: _____   Frederick R. Heebe, et al

DEPUTY CLERK

## JURY DEPOSIT ORDER PURSUANT TO LA. C.C.P. art. 1734.1

Demand for trial by jury having been made herein and this matter now being set for trial,

IT IS ORDERED that the party requesting trial by jury deposit with the Clerk of Court cash in the amount of $2,000.00 for the first day of trial and $400.00 for each additional day the trial is expected to last, which sum shall be deposited no later than thirty (30) days prior to trial. Trial is set for the _____ day of _____, ____.

In the event the case is resolved without the necessity of proceeding to trial by jury, the party depositing the funds shall receive a refund of this deposit as follows:

1.    All of the funds on deposit shall be refunded if the Court is notified by written notice filed with the Clerk of Court, more than 30 days in advance of the trial, indicating that the case is compromised or will proceed to a trial by judge;

2.    All but $600 shall be refunded if the Court is notified by written notice filed with the Clerk of Court more than 72 hours in advance of trial indicating that the case is compromised or will proceed to trial by judge;

3.    Thereafter, in the event the case does not proceed to trial by jury, the Court shall cast an additional $240.00 as costs for the calling of a venire.

4.    If the case proceeds to trial, the remaining funds on deposit shall be used to pay all costs associated with the jury trial including parking, daily compensation, juror meals and miscellaneous expenses. The court may require an additional deposit for costs as needed.

This Order supersedes any prior Jury Order issued in the matter. The Court certifies that a copy of this Order has been served upon all counsel of record and/or parties by hand delivery or by mail.

New Orleans, Louisiana, this 2nd day of March, 2011.

_____
JUDGE

VERIFIED
Regina Crockett
Deputy Clerk
03-0441

MAR 0 4 2011
ENTERED ON MINUTES

Adopted: Nov. 10, 2009

FILED

2011 MAR -2  P 3: 55

CIVIL
DISTRICT COURT

**PLEASE SERVE EXECUTED ORDER ON:**

River Birch Incorporated
through its registered agent for service of process:
Heebe & Heebe (PLC)
2000 Belle Chasse Hwy.
Third Floor
Terrytown, LA 70056

Frederick R. Heebe
5531 St. Charles Avenue
New Orleans, LA 70115

HWY 90, LLC
through its registered agent for service of process:
Richard P. Richter
909 Poydras Street, 28th Floor
New Orleans, La 70112

Albert J. Ward, Jr.
9 Colony Road
Gretna, LA 70056

FILED

2011 APR 13  A 11: 57

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS   CIVIL
DISTRICT COURT

STATE OF LOUISIANA

NO. 11-2129                                              DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____          _____
                                                    DEPUTY CLERK

### FREDERICK R. HEEBE'S PEREMPTORY EXCEPTIONS
### OF PEREMPTION, PRESCRIPTION AND NO CAUSE OF ACTION

NOW COMES, defendant, Frederick R. Heebe, through undersigned counsel, who respectfully submits these Peremptory Exceptions of Peremption, Prescription and No Cause of Action to the Petition for Damages filed against him by plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.

As more fully shown in the Memorandum in Support accompanying these Exceptions, plaintiffs' claim asserted under the Louisiana Unfair Trade Practices Act, La. R.S. §51:1401 *et. seq.*, ("LUTPA") is perempted and should be dismissed with prejudice. Plaintiffs' antitrust and monopoly claims also are prescribed on the face of the petition. Moreover, plaintiffs fail to state a cause of action in antitrust, monopoly or for unjust enrichment. If plaintiffs cannot demonstrate an ability to cure these deficiencies, these claims also should be dismissed with prejudice.

FILED

2011 APR 13  A 11: 57

CIVIL
DISTRICT COURT

WHEREFORE, defendant, Frederick R. Heebe, prays that, after hearing, these Exceptions be sustained and that all claims asserted against him in plaintiffs' Petition for Damages be dismissed with prejudice and for such other and further relief as is appropriate under the circumstances.

Respectfully submitted,

Kyle Schonekas, 11817
Joelle F. Evans, 23730
Andrea V. Timpa, 29455
William P. Gibbens, 27225
SCHONEKAS, EVANS, McGOEY
  & McEACHIN, L.L.C.
Poydras Center
650 Poydras Street, Suite 2105
New Orleans, Louisiana  70130
(504) 680-6050

Attorneys for Frederick R. Heebe

2011.04.13. avt exeptions peremption prescription no cause 1967.doc

FILED

2011 APR 13  A 11: 57

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

CIVIL DISTRICT COURT

STATE OF LOUISIANA

NO. 11-2129                                        DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____

_____
DEPUTY CLERK

## ORDER

The Peremptory Exceptions of Peremption, Prescription and No Cause of Action filed by defendant, Frederick R. Heebe, having been considered;

**IT IS ORDERED** that plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC, appear and show cause on the _21_ day of ___Sept.___, 2011 at _10_o'clock _A_.m. why the Exceptions should not be sustained and all claims asserted against Frederick R. Heebe dismissed with prejudice.

New Orleans, Louisiana this _29_ day of ___August___, 2011.

_____
JUDGE

**PLEASE SERVE:**
Concrete Busters of Louisiana, Inc. and
Waste Remediation of Plaquemines, LLC
through their attorneys of record:
Randall A. Smith
Stephen M. Gele
Melissa M. Desormeaux
Smith & Fawer, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana  70170

3

2011.04.13. swt exceptions peremption prescription no cause 1967.doc

FILED

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.  11-2129                                    DIVISION: "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____        _____
                                              DEPUTY CLERK

### MEMORANDUM IN SUPPORT OF
### FREDERICK R. HEEBE'S PEREMPTORY EXCEPTIONS
### OF PEREMPTION, PRESCRIPTION AND NO CAUSE OF ACTION

Defendant, Frederick R. Heebe ("Heebe"), through undersigned counsel, respectfully submits this Memorandum in Support of his Peremptory Exceptions of Peremption, Prescription and No Cause of Action to the Petition for Damages filed against him by plaintiffs, Concrete Busters of Louisiana, Inc. ("Concrete Busters") and Waste Remediation of Plaquemines, LLC ("Waste Remediation").

As shown below, plaintiffs' claim asserted under the Louisiana Unfair Trade Practices Act, La. R.S. §51:1401 *et. seq.*, ("LUTPA") is perempted. The LUTPA claim must, therefore, be dismissed with prejudice. Plaintiffs' antitrust and monopoly claims also are prescribed on the face of the petition. Moreover, plaintiffs fail to state a cause of action in antitrust, monopoly or for unjust enrichment. If plaintiffs cannot demonstrate an ability to cure these deficiencies, these claims should be dismissed with prejudice.

### BACKGROUND

Plaintiff, Concrete Busters, was the losing bidder on RFP 176 issued in October of 2008 by Jefferson Parish. On January 14, 2009, the Jefferson Parish Council voted to negotiate with River Birch. The contract, a 25 year exclusive waste disposal agreement, was awarded to defendant, River Birch Incorporated ("River Birch"), on June 29, 2009. Concrete Busters did nothing to contest or appeal the award of the contract or take any action for more than two years. On February 25, 2011, Concrete Busters and Waste Remediation filed the

present Petition for Damages asserting various claims against River Birch, HWY 90, LLC, as well as their alleged owners, Heebe and Jim Ward. In the Petition, plaintiffs attempt to assert a multitude of actions against defendants including a LUTPA claim, an antitrust claim, a monopoly claim and an unjust enrichment claim. Plaintiffs vaguely allege the existence of a purported "conspiracy" between defendants and various Jefferson Parish officials and others, who are not named as defendants in the Petition.

In connection with the LUTPA claim, plaintiffs allege that defendants "engaged in actions which are unethical, oppressive, unscrupulous, and substantially injurious to" its alleged competitor, Concrete Busters, which amount to "unfair methods of competition and unfair and deceptive acts or practices in the conduct" of its business. *See* Petition, ¶¶81-83. As can best be determined, the crux of plaintiffs' complaint is that Heebe or his company allegedly entered into insurance contracts with Tim Whitmer ("Whitmer"), former Chief Administrative Officer of Jefferson Parish, in 2005 to obtain influence in the issuance of public contracts. *See* Petition, ¶¶16, 81-83. Plaintiffs also list a litany of alleged conduct, the great majority of which was committed by persons other than defendants, *i.e.* the alleged non-party co-conspirators, to support their theory. *Id.* Plaintiffs allege defects and other wrongful conduct in connection with the RFP procedure and in the award of the contract to River Birch, all of which plaintiffs allege occurred between 2007 and 2009. *See* Petition, ¶¶21-61, 81.

Plaintiffs assert that defendants engaged in "impermissible and/or illegal restraint on trade" in violation of La. R.S. §51:121, *et seq.*, Louisiana's antitrust law. *Id.* at ¶84. They contend that defendants desired to drive plaintiffs out of the "waste reduction business in Louisiana" and "desired to drive all competitors out of the landfill business in the Greater New Orleans area…" and "attempted to monopolize the landfill business." *Id.* at ¶¶84-86.

As to the anti-trust and monopoly claims, plaintiffs allege that defendants engaged in a "… conspiracy to constrain and/or monopolize the landfill business in the Greater New Orleans area." *Id.* at ¶87. In support of these claims, plaintiffs contend that from 2003 to 2010, defendants paid $460,000 in alleged bribes to Henry Mouton ("Mouton"), a former Commissioner of the Louisiana Department of Wildlife and Fisheries, for the alleged purpose of

gaining his purported influence in keeping the Old Gentilly Landfill closed.   *Id.* at ¶87.[1]

Plaintiffs allege that Mouton, purportedly acting for defendants, wrote letters to various public

officials and otherwise engaged in conduct advocating the closure of the Old Gentilly Landfill

for environmental reasons.   *See* Petition at" ¶¶37-38, 40-46, 50-52, 56-58, 60, 64, 67.   All of

these alleged acts of Mouton purportedly occurred at various times in November, 2005 and from

January, 2006 through May, 2006.   *Id.*

      Plaintiffs also vaguely contend that defendants have been enriched without cause

at the expense of plaintiffs and are therefore bound to compensate plaintiffs.   *Id.* at ¶89.   As to all

claims, plaintiffs make the conclusory and unsupported allegation that "[a]ll of the above alleged

acts and omissions have been continuing and constitute a continuing tort."   *Id.* at ¶90.

      There can be little doubt that plaintiffs' LUTPA claim is perempted on the face of

the Petition as the allegedly injurious conduct occurred well over one year prior to filing.   The

anti-trust and monopoly claims are also prescribed on the face of the petition, as the great

majority of the conduct alleged, including the purported bribes of Mouton and his alleged actions

attempting to influence the closure of the Old Gentilly Landfill, all occurred well over one year

prior to the filing of the Petition.[2]   Moreover, plaintiffs have failed to plead sufficient facts to

support their claims for antitrust, monopoly or unjust enrichment.

<div align="center">LAW AND ARGUMENT</div>

I.    <u>EXCEPTION OF PEREMPTION.</u>

    A.    <u>Generally.</u>

      An objection of peremption is properly raised through a peremptory exception.

La. Code Civ. Proc. art. 927(A)(2).   "[W]hen the plaintiff's petition is perempted on its face, the

burden shifts to the plaintiff to show why the claim has not perempted."   *Dauterive Contractors,*

*Inc. v. Landry And Watkins*, 2001-1112 (La. App. 3 Cir. 3/13/02), 811 So. 2d 1242, 1253; *see*

*also Succession of Caldarera v. Zeno*, 2009-1397 (La. App. 4 Cir. 7/16/10), 43 So. 3d 1080,

1086 (expressly adopting the reasoning of *Dauterive Contractors* in placing burden on plaintiff

---

[1]    Plaintiffs specifically adopt and incorporate by reference into their Petition all allegations of the federal indictment of Henry Mouton.   A copy of the indictment is attached hereto as Exh. "A."

[2]    The indictment alleges no actions by Mouton, with the exception of 4 alleged payments received by him, within one year of the filing of plaintiffs' Petition for Damages.   *See* Exh. "A," ¶¶206-209.   These alleged payments total $4,000.   *Id.*

<div align="center">3</div>

when petition is perempted on its face).   When an exception of peremption is granted, the litigation is terminated.  *Dauterive Contractors*, 811 So. 2d at 1253; *see also Caldarera*, 43 So. 2d at 1086.

Peremption is described as "a period of time fixed by law for the existence of a right.  Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." La. Civ. Code art. 3458.  Unlike a prescriptive period, a peremptive period cannot be renounced, interrupted or suspended.  La. Civ. Code art. 3461.  As stated by the Louisiana Supreme Court:

> Peremption differs from prescription in several respects. Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation (La.C.C. art. 1762(1)); **peremption, however, extinguishes or destroys the right** (La.C.C. art. 3458). Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, **nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended;** nor is there provision for its renunciation. And **exceptions such as *contra non valentum* are not applicable.**

*Naghi v. Brener*, 2008-2527 (La. 6/26/09), 17 So. 3d 919, 923, (*quoting Hebert v. Doctors Memorial Hosp.*, 486 So. 2d 717, 723 (La.1986)) (emphasis added).

**B.     The LUTPA Claim is Perempted.**

The law is well-settled that LUTPA claims are subject to a one-year peremptive period.  The statute provides:

> The action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action.

La. R.S. §51:1409(E).

The Fourth Circuit Court of Appeal holds that the one year period under §51:1409(E) is peremptive, rather than prescriptive.  *Dominion Exploration & Prod., Inc. v. Waters*, 2007-0386 (La. App. 4 Cir. 11/14/07), 972 So. 2d 350, 356 (holding that the period established in §51:1409(E) is peremptive).   Thus, the Fourth Circuit holds, <u>the doctrines of contra non valentem and the continuing tort rule do not suspend the running of the peremptive period on a LUTPA claim</u>. *Dominion Exploration*, 972 So. 2d at 362; *see also Canal Marine Supply, Inc. v. Outboard Marine Corp. of Waukegan, Ill.*, 522 So. 2d 1201, 1203 (La. App. 4 Cir.

1988) (holding that LUTPA contains a one year peremptive period which is not subject to interruption or suspension); *Glod v. Baker*, 2004-1483 (La. App. 3 Cir. 3/23/05), 899 So. 2d 642, 648-49, *writ denied,* 2005-1574 (La. 1/13/06), 920 So. 2d 238 (holding that the one year period under LUTPA is peremptive and cannot be suspended under the continuing tort doctrine).

Here, the alleged wrongful "transaction[s] or act[s]" of defendants are the purported insurance contract with Whitmer entered in 2005 and the alleged wrongful conduct of the non-party public officials in the issuance of the RFP and award of the contract occurring from 2007 to 2009. *See* Petition, ¶¶16, 21-61, 81-83. Plaintiffs allege that River Birch's proposal was accepted in January of 2009 and that the landfill contract was entered in June of 2009. *Id.* at ¶¶ 54, 61. These are the purported acts which "gave rise to" plaintiffs' alleged "right of action" under §51:1409(E). Even if plaintiffs' conclusory allegation of continuing tort could be proven, which is denied, it has no effect on the peremption of plaintiffs' LUTPA claim under the above authorities. As the Petition was not filed until February 25, 2011, more than one year after "the time of the transaction[s] or act[s] which gave rise to" the LUTPA claim, the claim is perempted and must be dismissed with prejudice as a matter of law.

## II.    EXCEPTION OF PRESCRIPTION.

### A.    Generally.

Liberative prescription is a means of "barring of actions as a result of inaction for a period of time." La. Civ. Code art. 3447. Prescription is interrupted by the filing of suit in a court of competent jurisdiction and venue. La. Civ. Code art. 3462.

The character of the plaintiff's action as described in the petition determines which prescriptive period is applicable to the action. *Starns v. Emmons*, 538 So. 2d 275, 277 (La. 1989); *Wonycott v. So. Business Machines, Inc.*, 595 So. 2d 723, 725 (La. App. 5 Cir. 2/18/92). When the petition reveals on its face that prescription has run, the burden is on the plaintiff to prove otherwise. *Campo v. Correa*, 2001-2707, p.7 (La. 6/21/02), 828 So. 2d 502, 508; *Primus v. Touro Infirmary*, 2005-0662 p.2 (La. App. 4 Cir. 1/25/06), 925 So. 2d 609, 610.

The Louisiana Supreme Court holds that private actions under Louisiana's antitrust laws result from tort and are therefore subject to a one year liberative prescription under La. Civ. Code art. 3492. *Loew's, Inc. v. Don George, Inc.*, 237 La. 132, 148, 110 So. 2d 553,

559 (1959).   For the doctrine of continuing tort to apply, "[t]here must be continuing acts coupled with continued damages."  *State ex rel. Ieyoub v. Bordens, Inc.*, 95-2655 (La. App. 4 Cir. 11/27/96), 684 So. 2d 1024, 1026-27, *writ denied,* 97-0339 (La. 3/14/97), 690 So. 2d 42 (emphasis added).  The plaintiff must allege sufficient facts to show "continuous tortious conduct and resulting damages" for the continuing tort doctrine to apply.  *Outdoor Sys., Inc. v. Entergy Corp.*, 2001-0613 (La. App. 4 Cir. 12/19/01), 804 So. 2d 848, 850.  When the petition does not contain sufficient factual allegations of continuous acts and continuous damages, the petition is prescribed on its face and the burden rests with the plaintiff to prove otherwise.  *Id.* at 851-52.

B.     **Plaintiffs Antitrust and Monopoly Claims Are Prescribed On The Face Of The Petition.**

Plaintiffs' Petition was not filed until February 25, 2011.  The great majority of the purported conduct alleged by plaintiff in its Petition occurred well before a year prior to its filing.  The various transactions and events which plaintiffs contend amount to a conspiracy to restrain trade and monopolize occurred between 2005 and 2009.  *See* Petition, ¶¶16, 21-61, 81-87.  With the exception of four alleged payments, all of plaintiffs' allegations regarding Mouton occurred more than a year prior to the filing of the Petition.  *Id.* at ¶87; *See* Exh. "A," ¶¶37-38, 40-46, 50-52, 56-58, 60, 64, 67.  All of these alleged acts of Mouton purportedly occurred at various times in November, 2005 and from January, 2006 through May, 2006.  *Id.*

Although plaintiffs allege that "all of the alleged acts and omissions have been continuing and constitute a continuing tort," plaintiffs' Petition does not contain factual allegations to support this legal conclusion.  Moreover, plaintiffs' Petition contains no factual allegations to show "continued damages" necessary for the continuing tort doctrine to apply.  Being prescribed on the face of the Petition, therefore, plaintiffs bear the burden of proving otherwise, which they cannot do.  Accordingly, the anti-trust and monopoly claims should be dismissed.

III.   **EXCEPTION OF NO CAUSE OF ACTION.**

    A.   **Generally.**

       The peremptory exception of no cause of action tests the legal sufficiency of the petition, and the trial court must determine whether the law affords a remedy for the particular harm alleged. *Davy v. Reed*, 95-C-2445 (La. App. 4 Cir. 2/15/96), 669 So. 2d 1293, 1294 (citation omitted). The issue is whether, on the face of the petition, plaintiff is legally entitled to relief. *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So. 2d 1234, 1235 (La. 1993).

       Generally, no evidence may be introduced in support of the exception. La. Code Civ. P. art. 931. However, the law is well-settled that the trial court may consider any documents annexed to the petition in ruling on the exception of no cause of action. *Charia v. Hulse*, 619 So. 2d 1099, 1100-01 (La. App. 4 Cir. 1993); *Everhardt v. Sighinolfi*, 95 So. 2d 632, 633 (La. 1957).

       For purposes of ruling on an exception of no cause of action, the court must accept all allegations of the petition as true. *Id.* Nonetheless, "Louisiana utilizes fact pleading, which means that the 'mere conclusion of the pleader unsupported by facts does not set forth a cause or right of action.'" *Tuban Petroleum, L.L.C. v. SIARC, Inc.*, 2009-0302 (La. App. 4 Cir. 4/15/09), 11 So. 3d 519, 522 (*quoting Montalvo v. Sondes*, 93–2813, p. 6 (La.5/23/94), 637 So. 2d 127, 131); *see also Raimey v. Decaire*, 2003-CC-1299, p.7 (La. 3/19/04), 869 So. 2d 114, 118 (holding "the mere conclusions of the plaintiff unsupported by facts does not set forth a cause of action"). As explained by the Louisiana Supreme Court:

> Although the correctness of the plaintiff's well pleaded allegations of fact is assumed, **the correctness of its conclusions of law is not conceded** for purposes of a ruling on an exception of no cause of action. [citations omitted].
>
> C.C.P. 891 provides that a petition 'shall contain a short, clear, and concise statement of the object of the demand and of the material facts upon which the cause of action is based . . .' **From that language it is clear that a court when considering an exception of no cause of action must consider only the facts alleged by the plaintiff, and that a mere statement of a conclusion of law will not state a cause of action.**

*Delta Bank & Trust v. Lassiter*, 383 So. 2d 330, 336 (La. 1980) (emphasis added). Thus, when a petition is "completely devoid of any factual allegations that would support" the claim alleged,

2011.04.13. uvt memo exceptions 1967.doc

the exception of no cause of action must be sustained. *Id.* The mere regurgitation of statutory

language or legal elements, *without "specific facts pleaded" to support those conclusions*, does

not state a cause of action. *Id.* "In the absence of a statement of the material facts upon which it

bases its claim, the plaintiff's pleadings do not set forth a cause of action." *Id.* Further, when the

grounds plead in a peremptory exception cannot be removed by amendment, the claim shall be

dismissed. La. Code Civ. P. art. 934.

B.     **Plaintiffs Do Not State A Cause Of Action For Antitrust.**

Louisiana's antitrust and monopoly laws "are virtually identical to Sections 1 and

2 of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., and federal analysis of the Sherman

Antitrust Act is persuasive, though not controlling." *Plaquemine Marine, Inc. v. Mercury

Marine,* 2003-1036 (La. App. 1 Cir. 7/25/03), 859 So. 2d 110, 117 (*citing Louisiana Power &

Light Co. v. United Gas Pipe Line Co.,* 493 So. 2d 1149, 1154, 1158 (La. 1986)).

La. R.S. §51:122 provides, in part:

> Every contract, combination in the form of trust or otherwise, or
> conspiracy, in restraint of trade or commerce in this state is illegal.

La. R.S. § 51:122. As with §1 of the Sherman Act, Louisiana "does not prohibit all unreasonable

restraints of trade ... but only restraints effected by a contract, combination, or conspiracy." *Bell

Atl. Corp. v. Twombly,* 550 U.S. 544, 553, 127 S.Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)

(internal quotations omitted) (emphasis added).   Here, plaintiffs make no allegations of a

"combination" and the Petition, at best, reveals only vague contentions of the existence of a

contract or conspiracy that restrains trade.

"To state a claim under LSA-R.S. 51:122, the plaintiffs must allege that defendant

is a party to a contract that results in an unreasonable restraint of trade." *Plaquemine Marine,* 859

So. 2d at 118 (*citing Jefferson v. Chevron USA, Inc.,* 98-0254 (La. App. 4 Cir. 1998), 713 So. 2d

785, 788); *Reppond v. City of Denham Springs,* 572 So. 2d 224, 230 (La. App. 1 Cir.1990).

"Except for vertical restraints involving price, this category of restraint is governed by the rule of

reason." *S. Tool & Supply, Inc. v. Beerman Precision, Inc.,* 2003-0960 (La. App. 4 Cir.

11/26/03), 862 So. 2d 271, 280.  On the rule of reason, the Supreme Court holds that "the inquiry

mandated by the Rule of Reason is whether the challenged agreement is one that promotes

competition or one that suppresses competition." *Nat'l Soc. of Prof'l Engineers v. U. S.*, 435 U.S. 679, 691, 98 S. Ct. 1355, 1364-65, 55 L. Ed. 2d 637 (1978).

To state a claim for antitrust conspiracy the plaintiff must allege that "the defendants '(1) engaged in a conspiracy (2) that restrained trade (3) in a particular market.'" *Tunica Web Adver. v. Tunica Casino Operators Ass'n, Inc.*, 496 F.3d 403, 409 (5th Cir. 2007) (*quoting Spectators' Commc'n Network Inc. v. Colonial Country Club,* 253 F.3d 215, 220 (5th Cir. 2001)). Further, a "party claiming a conspiracy 'must include an allegation of damage to competition.'" *Tuban Petroleum*, 11 So. 3d at 523 (*quoting Abraham v. Richland Parish Hosp. Serv. Dist. 1–B,* 41,141, p. 7 (La. App. 2 Cir. 8/23/06), 938 So. 2d 1163, 1169). To plead a conspiracy, plaintiffs must allege "concerted action on the part of the defendants" which requires allegations that defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Id.* (*citing Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752, 761, 768, 104 S. Ct. 1464, 79 L.Ed.2d 775 (1984)). "Without more, **parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.**" *Id.* (*quoting Twombly,* 550 U.S. at 556– 57, 127 S.Ct. 1955, 1966) (emphasis added).

Importantly, "**[c]onclusory statements of fact are insufficient to support the antitrust claim of conspiracy.**" *Tuban Petroleum*, 11 So. 3d at 523 (*quoting State ex rel. Ieyoub v. Racetrac Petroleum, Inc.,* 01–0458, p. 5, (La. App. 3 Cir. 6/20/01), 790 So. 2d 673, 678) (emphasis added). In *Tuban Petroleum*, the Fourth Circuit Court of Appeal, reversing the trial court, found that plaintiffs' conclusory allegations were insufficient to state a cause of action for conspiracy to restrain trade:

> We find that Tuban's **petition states mere conclusions that are unsupported by factual allegations.** Tuban concluded that Motiva entered into a contract, without identifying the alleged contract, with Home and SIARC and that Motiva knew SIARC stopped selling Tuban Texaco branded fuel with no other factual support. Tuban also failed to indicate how it could amend its petition to comply with the fact pleading requirements of a La. R.S. 51:122 claim. Therefore, we find that Tuban's action against Motiva pursuant to La. R.S. 51:122 should be dismissed.

*Id.* at 523-24 (emphasis added).

Similarly, in *Plaquemine Marine*, the appellate court held that plaintiff failed to state a cause of action for an antitrust injury where its petition contained only conclusory allegations:

> Even an act of pure malice by one business competitor against another does not, without more, state an antitrust claim; **the antitrust laws do not create a federal law of unfair competition or 'purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.'** *Brooke Group*, 509 U.S. at 225, 113 S.Ct. at 2589, quoting *Hunt v. Crumboch*, 325 U.S. 821, 826, 65 S.Ct. 1545, 1548, 89 L.Ed. 1954 (1945). **Plaintiffs herein offer conclusory allegations that Travis and defendant conspired to eliminate other Mercury dealerships in Louisiana and thereby unreasonably restrained trade.** ... We find these allegations insufficient to support a claim under LSA-R.S. 51:122.

*Plaquemine Marine*, 859 So. 2d at 119 (emphasis added).

Here, there can be no conclusion but that plaintiffs fail to state a cause of action in antitrust against Heebe. Plaintiffs state no facts in support of their contention that defendants desired to drive plaintiffs or any other competitors out of the "waste reduction" or "landfill" business. *See* Petition, ¶¶84-87. Plaintiffs, in fact, do not and cannot claim that they are even competitors in the "landfill" business. At best, plaintiffs contend that the purported bribes to Mouton were in furtherance of defendants' alleged desire to restrain trade. *Id.* at ¶87. As noted above, all of Mouton's conduct occurred well prior to the one year period preceding the filing of the Petition and any claims arising from that alleged conduct is, therefore, prescribed on the face of the Petition.

The above authorities make clear that to state a cause of action in antitrust, plaintiffs must identify a <u>specific contract</u> to which the defendant is a party and allege that this contract "results in an unreasonable restraint of trade." *Plaquemine Marine*, 859 So. 2d at 118. The only contract at issue in the Petition is the 2009 disposal agreement awarded to River Birch, and plaintiffs cannot and do not allege that *the contract itself unreasonably restrains trade.* Rather, the crux of their antitrust claim is that the alleged *actions* and *desires* of defendants to drive competitors out of business illegally restrains trade. *See* Petition, ¶¶84-85 ("These actions [i.e. defendants' alleged 'desire[ ]' to drive alleged competitors out of business] constitute an

illegal and/or impermissible restraint on trade in violation of La. R.S. 51:121 et seq.") This does not state a cause of action in antitrust.

Plaintiffs also attempt, but fail, to state a cause of action for an antitrust conspiracy. The law is clear that plaintiffs must allege a "concerted effort" and a "conscious commitment to a common scheme" to unlawfully restrain trade. Plaintiffs' frequent insertion of the term "conspiracy" in the Petition does not satisfy the pleading requirement. As in *Tuban Petroleum*, there is no allegation of a concerted effort or a specific agreement among the alleged conspirators to unlawfully restrain trade. *Tuban Petroleum*, 11 So. 3d at 523-24. Plaintiffs allege nothing more than a series of purported events over the course of several years which plaintiff concludes are related and amount to a conspiracy. The Petition contains nothing which demonstrates *concerted action* to show that defendants and the alleged non-party co-conspirators *consciously committed* to a common, unlawful scheme to restrain trade. Plaintiffs also completely fail to "include an allegation of damage to competition.'" *Id.* at 523. Plaintiffs' vague and conclusory assertion that defendants' alleged conduct was "to the detriment of" plaintiffs does not suffice. *See* Petition, ¶¶86-85. The law in this Circuit is clear that these types of conclusory allegations will not sustain an antitrust cause of action. Plaintiffs, therefore, fail to state a cause of action for antitrust injury and, unless plaintiffs can demonstrate an ability to amend the Petition to allege sufficient factual support for the claim, it should be dismissed.

C.   **Plaintiffs Do Not State A Cause Of Action For Monopoly.**

La. R.S. §51:123 provides, in part:

> No person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state.

La. R.S. §51:123. To state a "claim under LSA-R.S. 51:123 requires allegations that defendant either attempted to monopolize or conspired with any other person to monopolize any part of the trade or commerce within the state." *Plaquemine Marine*, 859 So. 2d at 118 (*citing Reppond*, 572 So. 2d at 230); *State ex rel. Ieyoub*, 790 So. 2d at 678. As stated by the Fourth Circuit Court of Appeal, plaintiff must allege that defendants:

> 'either (1) monopolized, (2) attempted to monopolize, or (3) conspired to monopolize any part of the trade or commerce within this state' [and plaintiff's] pleadings 'must state facts sufficient to

> show that' [defendant] 'possessed monopoly power in a clearly
> defined economic and geographic market and had the general
> purpose or intent to exercise or maintain that power.' Failure to
> define the relevant market, including the product market and
> geographic market is fatal.

*Tuban Petroleum*, 11 So. 3d at 524 (*quoting State ex rel. Ieyoub*, 790 So. 2d at 678); *see also*

*Plaquemine Marine*, 859 So. 2d at 119 (*citing United States v. Grinnell Corp.*, 384 U.S. 563,

570-571, 86 S.Ct. 1698, 1703-1704, 16 L.Ed.2d 778 (1966)); *Ieyoub*, 790 So. 2d at 678-679

(stating that plaintiffs must allege "that defendant (1) possessed monopoly power *in a clearly*

*defined economic and geographic market* (the relevant market) and (2) that defendant had the

specific purpose or intent to exercise or maintain that power, as distinguished from growth or

development as a consequence of a superior product, business acumen, or historic accident")

(emphasis added).

For claims of a conspiracy to monopolize, the plaintiff must allege "that the

defendant or defendants '(1) had the specific intent to monopolize, (2) took overt acts in

furtherance of a scheme to monopolize, and (3) had a dangerous probability of success.'"

*Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 257 F. Supp. 2d 819, 842-43

(M.D. La. 2002) (*quoting North Mississippi Communications, Inc. v. Jones*, 792 F.2d 1330, 1335

(5th Cir.1986)).   A conspiracy to monopolize claim requires that plaintiff allege "'(1) the

existence of specific intent to monopolize; (2) the existence of a combination or conspiracy to

achieve that end; (3) overt acts in furtherance of the combination or conspiracy; and (4) an effect

upon a substantial amount of interstate commerce.'" *Id.* at 843.  As noted by the district court in

*Livingston Downs*, "the burden under either §2 [anti-monopoly] theory of liability is much

greater than the burden under §1 [anti-trust]." *Id.*

> As stated in *Plaquemine Marine*:
>
> Monopoly power is the ability to control prices or to exclude
> competition from the market. The relevant market is the area of
> effective competition within which the defendant operates. It
> includes a geographic market, which is the section of the country
> in which sellers of a particular product operate, as well as the
> product market, which encompasses the differences among various
> commodities and the willingness of buyers to substitute one
> product for another. *Failure to define the market in which the*
> *monopoly is allegedly exercised is fatal to a monopolization claim.*

*Id.* at 119-20 (*citing United States v. E.I. duPont deNemours & Co.,* 351 U.S. 377, 391-92, 76

S.Ct. 994, 1005-06, 100 L.Ed. 1264 (1956)); *Eastman Kodak Co. v. Image Technical Services,*

*Inc.,* 504 U.S. 451, 481-482, 112 S.Ct. 2072, 2090, 119 L.Ed.2d 265 (1992); *Louisiana Power &*

*Light Co.,* 493 So. 2d at 1162; *Ieyoub,* 790 So. 2d at 679 (emphasis added); *see also Tuban*

*Petroleum,* 11 So. 3d at 524 (*quoting Abraham,* 41,141, pp. 7–8, 938 So. 2d at 1169) (defining

the geographic market as "the section of the country in which sellers of a particular product

operate" and the product market as "the differences among various commodities and the

willingness of buyers to substitute one product for another.")

   In *Plaquemine Marine*, the appellate court, reversing the trial court's denial of

defendant's exception of no cause of action held:

> Plaintiffs have made no factual allegations that suggest defendant
> possessed the market power or ability to control prices or exclude
> competition from the market as required to plead a cause of action
> under LSA-R.S. 51:123. They do not allege that defendant has
> schemed to raise prices above a competitive level, nor do they
> allege a specific intent to monopolize and a dangerous probability
> of success.
>
> Furthermore, plaintiffs have failed to properly allege the relevant
> market. The petition's only reference to a geographic market is that
> Travis operates in 'the Baton Rouge, Louisiana market,' although
> the petition later states defendant's actions affected plaintiffs'
> ability to compete in 'the Louisiana market.' Plaintiffs make no
> reference to the economic market, i.e., the scope of other products
> against which it must compete. They have neither alleged damage
> to interbrand competition, nor have they alleged that defendant
> sells a unique product for which there is no competition from other
> brands of marine products.

*Plaquemine Marine*, 859 So. 2d at 120. Similarly, the Fourth Circuit Court of Appeal in *Tuban*

*Petroleum* found the plaintiffs' allegations of a monopoly insufficient and dismissed the claim:

> Tuban's petition does not include specific facts demonstrating that
> Motiva possessed market power or excluded competition. The
> conclusory allegations that Motiva was aware that SIARC stopped
> providing Texaco branded fuel and that Motiva entered into a
> contract with Home and SIARC are insufficient to show that
> Motiva possessed monopoly power. Further, Tuban did not define
> the relevant geographic market regarding Texaco branded fuel or
> product market. Again, Tuban failed to demonstrate its ability to
> amend the petition to cure these defects. Accordingly, we find that
> the trial court erred in denying Motiva's exception of no cause of
> action and reverse.

*Tuban Petroleum*, 11 So. 3d at 524.

Here, plaintiffs fail to sufficiently allege any of the required elements to show the existence of a monopoly, an attempt to monopolize or a conspiracy to monopolize in violation of La. R.S. §51:123. Plaintiffs have failed to allege that defendants possessed monopoly power or excluded competition; they have failed to define the relevant economic and geographic market; have failed to allege that defendants had a dangerous probability of success of achieving a monopoly; or that there was a substantial effect on interstate commerce. Other than their vague and conclusory allegations, plaintiffs have failed to allege any facts to support their claim of a conspiracy. They have not alleged the existence of a specific agreement between the alleged conspirators or a specific intent to monopolize. *Tuban Petroleum* and *Plaquemine Marine* make it clear that the types of vague and conclusory allegations supplied by plaintiffs will not suffice to sustain a claim for monopoly under La. R.S. §51:123. Consequently, this claim also should be dismissed.

D.     <u>Plaintiffs Do Not State A Cause Of Action For Unjust Enrichment.</u>

The doctrine of enrichment without cause is codified in article 2298 of the Louisiana Civil Code, which states:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term 'without cause' is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule. ...

La. Civ. Code art. 2298. Our jurisprudence establishes five required elements to state a claim for unjust enrichment: (1) an enrichment on the part of the defendant; (2) an impoverishment on the part of the plaintiff; (3) a causal relationship between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment or impoverishment; and (5) no other remedy at law. *Edwards v. Conforto*, 636 So. 2d 901, 907 (La. 1993). As to the final element, unavailability of any other remedy at law:

> The root principle of an unjustified enrichment is that the plaintiff suffers an economic detriment for which he should not be responsible, while the defendant receives an economic benefit for which he has not paid. **An action for unjust enrichment is allowed only when the plaintiff has no other remedy at law.** However where there is a rule of law directed to the issue, an action must not be allowed to defeat the purpose of said rule.

> Stated differently, **unjust enrichment principles are only applicable to fill a gap in the law where no express remedy is provided.**

*Bd. of Supervisors of L.S.U. v. La. Agriculture Finance Authority*, 2007-CA-0107 (La. App. 1 Cir. 2/8/08), 2008 W.L. 398893, *6 (emphasis added).   The remedy of unjust enrichment "is subsidiary in nature, and 'shall not be available if the law provides another remedy.'" *Walters v. MedSouth Record Mgmt., LLC*, 2010-0351 (La. 6/4/10), 38 So. 3d 245, 246 (*quoting Carriere v. Bank of Louisiana*, 95–3058, p. 17 (La.12/13/96), 702 So. 2d 648, 671) (on rehearing).   As stated by the Louisiana Supreme Court, it is:

> of no moment that plaintiff's tort claims have been held to be prescribed. **The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment.**

*Walters*, 38 So. 3d at 246 (emphasis added).

Here, there can be no doubt that plaintiffs have not alleged all of the elements of an unjust enrichment claim, much less sufficient facts in support.   Plaintiffs have not alleged a causal relationship between the alleged enrichment and impoverishment nor have they alleged a lack of justification.   More importantly, even if all the elements were properly plead, which is denied, plaintiffs clearly have no cause of action for unjust enrichment as they have alleged the existence of other remedies at law.   Plaintiffs' unjust enrichment claim should, therefore, be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Peremptory Exceptions of Peremption, Prescription and No Cause of Action filed by defendant, Frederick R. Heebe should be sustained and all claims asserted in plaintiffs' Petition for Damages against him dismissed with prejudice.

Respectfully submitted,

Kyle Schonekas, 11817
Joelle F. Evans, 23730
Andrea V. Timpa, 29455
William P. Gibbens, 27225
SCHONEKAS, EVANS, McGOEY
 & McEACHIN, L.L.C.
Poydras Center
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
(504) 680-6050

Attorneys for Frederick R. Heebe

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this _13_ day of April, 2011.

JOELLE F. EVANS

16

FILED

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2011 APR 13  A 11: 58

2011 FEB 25  PH 12: 43

CIVIL
DISTRICT COURT

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

# FELONY

INDICTMENT FOR CONSPIRACY TO RECEIVE ILLEGAL PAYOFFS BY AN
AGENT OF A PROGRAM RECEIVING FEDERAL FUNDS, RECEIPT OF
ILLEGAL PAYOFFS BY AN AGENT OF A PROGRAM RECEIVING
FEDERAL FUNDS, MAKING FALSE STATEMENTS TO
FEDERAL AGENTS, AND NOTICE OF FORFEITURE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 11-048 |
| v. | * | SECTION: SECT. F MAG. 5 |
| HENRY M. MOUTON | * | VIOLATION: 18 U.S.C. § 371 |
| | | 18 U.S.C. § 666(a)(1)(B) |
| | * | 18 U.S.C. § 1001 |

*     *     *

The Grand Jury charges that:

## COUNT 1

A.    AT ALL TIMES MATERIAL HEREIN:

1.    The Louisiana Department of Wildlife and Fisheries (LDWF) is a state agency
responsible for the management of Louisiana's renewable natural resources including wildlife
and aquatic life.

___ Fee _____
___ Process _____
 X  Dktd _____
___ CtRmDep _____
___ Doc. No. _____

2.      According to the Louisiana Constitution, the Louisiana Wildlife and Fisheries Commission is part of the executive branch and consists of seven members appointed by the governor.

3.      In about January 2003, defendant, HENRY M. MOUTON, was appointed to serve as a Commissioner on the Louisiana Wildlife and Fisheries Commission and held the position until December 2008.

4.      The LDWF is an agency of the State of Louisiana that received federal assistance in excess of the $10,000.00 during each of the one year periods beginning on January 1st and ending on December 31st for the years 2003, 2004, 2005, 2006, 2007, 2008, and 2009.

5.      The Federal Bureau of Investigation (FBI), New Orleans Division, located in the Eastern District of Louisiana, was the lead federal investigative agency responsible for the investigation into the defendant, HENRY M. MOUTON, co-conspirator "A", and other co-conspirators known and unknown to the grand jury.

6.      Co-conspirator "A" and other co-conspirators known and unknown to the grand jury operate businesses W.C.S., Inc.; W. Inc.; D & A; A. P., LLC; and landfill companies located in the Eastern District of Louisiana.

7.      Co-conspirator "A" and other co-conspirators known to the grand jury paid defendant HENRY M. MOUTON approximately $463,000.00 in the form of checks that were written in the Eastern District of Louisiana and drawn on bank accounts also located in the Eastern District of Louisiana.

8.      The Old Gentilly Landfill is located in the Eastern District of Louisiana.

- 2 -

B.   **THE CONSPIRACY**

Beginning at a time unknown, but prior to on or about April 14, 2003, and continuing until on or about April 16, 2010, in the Eastern District of Louisiana and elsewhere, the defendant, HENRY M. MOUTON, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire and agree with each other to knowingly and corruptly solicit, demand, accept and agree to accept something of value from companies owned by and/or operated by co-conspirator "A" and other co-conspirators known and unknown to the grand jury, including, but not limited to W.C.S., Inc.; W. Inc.; D&A; and A.P., LLC., with the intent to be influenced and rewarded in connection with any business, transaction, or series of transactions of the Louisiana Department of Wildlife and Fisheries, a government agency of the State of Louisiana, involving something of value of $5,000 or more; all in violation of Title 18, United States Code, Section 666(a)(1)(B).

C.   **OVERT ACTS**

On or about the following dates, in furtherance of the conspiracy and to accomplish its purposes, the defendant, HENRY M. MOUTON, and others known and unknown to the Grand Jury committed the following overt acts, among others, in the Eastern District of Louisiana and elsewhere:

1.   On or about April 14, 2003, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 139790, from W. Inc. to influence and reward him for his official action.

2.     On or about May 7, 2003, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 140263, from W. Inc. to influence and reward him for his official action.

3.     On or about June 10, 2003, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 140803, from W. Inc. to influence and reward him for his official action.

4.     On or about June 30, 2003, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 141313, from W. Inc. to influence and reward him for his official action.

5.     On or about August 18, 2003, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 141930, from W. Inc. to influence and reward him for his official action.

6.     On or about September 2, 2003, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 142519, from W. Inc. to influence and reward him for his official action.

7.     On or about September 29, 2003, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $3,500.00, check number 143184, from W. Inc. to influence and reward him for his official action.

8.     On or about September 30, 2003, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 143104, from W. Inc. to influence and reward him for his official action.

9.     On or about October 27, 2003, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $12,000.00, check number 3509, from co-conspirator "A" to influence and reward him for his official action.

10.     On or about November 7, 2003, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 143791, from W. Inc. to influence and reward him for his official action.

11.     On or about December 8, 2003, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 144345, from W. Inc. to influence and reward him for his official action.

12.     On or about December 24, 2003, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $12,000.00, check number 144928, from W. Inc. to influence and reward him for his official action.

13.     On or about January 9, 2004, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 144968, from W. Inc. to influence and reward him for his official action.

14.     On or about February 3, 2004, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 145492, from W. Inc. to influence and reward him for his official action.

15.     On or about April 1, 2004, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 146289, from W. Inc. to influence and reward him for his official action.

16.     On or about April 14, 2004, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 146615, from W. Inc. to influence and reward him for his official action.

17.     On or about May 10, 2004, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 147427, from W. Inc. to influence and reward him for his official action.

18.     On or about June 1, 2004, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 147987, from W. Inc. to influence and reward him for his official action.

19.     On or about July 8, 2004, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 148690, from W. Inc. to influence and reward him for his official action.

20.     On or about July 30, 2004, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $18,000.00, check number 149346, from W. Inc. to influence and reward him for his official action.

21.     On or about August 5, 2004, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 149263, from W. Inc. to influence and reward him for his official action.

22.     On or about September 1, 2004, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 149801, from W. Inc. to influence and reward him for his official action.

23.     On or about October 5, 2004, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 150460, from W. Inc. to influence and reward him for his official action.

24.     On or about November 10, 2004, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 150985, from W. Inc. to influence and reward him for his official action.

25.     On or about December 3, 2004, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 151462, from W. Inc. to influence and reward him for his official action.

26.     On or about January 4, 2005, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 152090, from W. Inc. to influence and reward him for his official action.

27.     On or about February 4, 2005, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 152571, from W. Inc. to influence and reward him for his official action.

28.     On or about February 10, 2005, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $18,000.00, check number 3876, from co-conspirator "A" to influence and reward him for his official action.

29.     On or about March 2, 2005, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 153075, from W. Inc. to influence and reward him for his official action.

30.     On or about April 6, 2005, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 153694, from W. Inc. to influence and reward him for his official action.

31.     On or about May 4, 2005, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 154252, from W. Inc. to influence and reward him for his official action.

32.     On or about June 1, 2005, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 154763, from W. Inc. to influence and reward him for his official action.

33.     On or about July 14, 2005, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 155389, from W. Inc. to influence and reward him for his official action.

34.     On or about July 29, 2005, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 155838, from W. Inc. to influence and reward him for his official action.

35.     On or about September 9, 2005, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 156337, from W. Inc. to influence and reward him for his official action.

36.     On or about October 17, 2005, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 156626, from W. Inc. to influence and reward him for his official action.

37.     On or about November 1, 2005, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans. **MOUTON** wrote that the "Gentilly Landfill is charging $3.50 per CY Ton while River Birch is charging $2.50, which was the Pre Katrina price so this is costing the Taxpayers MORE money."

38.     On or about November 4, 2005, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote letters to approximately 17 United States Senators and represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission and attempted to gain the assistance of these U.S. Senators in an effort to keep closed the Old Gentilly Landfill located in New Orleans.

39.     On or about November 4, 2005, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 156876, from W. Inc. to influence and reward him for his official action.

40.     On or about November 10, 2005, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to an official with the Environmental Protection Agency in Dallas and represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission and attempted to affect the EPA official's actions in an effort to keep closed the Old Gentilly Landfill located in New Orleans.

41.    On or about November 14, 2005, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, went to the offices of the FBI, represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission, and reported to the FBI that he had rented a helicopter on November 7, 2005, and flew over the Old Gentilly Landfill and filmed what he had observed to demonstrate the "illegal nature of the landfill."

42.    On or about November 14, 2005, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to a FBI Special Agent and attempted to direct FBI resources to investigate the Old Gentilly Landfill located in New Orleans with the goal of keeping that landfill closed and while concealing his and others' financial motives and making it appear he was merely concerned because of his role in preserving Louisiana's natural resources.

43.    On or about November 17, 2005, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to a FBI Special Agent and attempted to direct FBI resources to investigate the Old Gentilly Landfill located in New Orleans with the goal of keeping that landfill closed and while concealing his and others' financial motives and making it appear he was merely concerned because of his role in preserving Louisiana's natural resources.

44.    On or about November 28, 2005, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to a FBI Special Agent and attempted to direct FBI resources to investigate the Old Gentilly Landfill located in New Orleans with the goal of keeping that landfill closed and while

concealing his and others' financial motives and making it appear he was merely concerned because of his role in preserving Louisiana's natural resources..

45.     On or about November 30, 2005, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to a FBI Special Agent and attempted to direct FBI resources to investigate the Old Gentilly Landfill located in New Orleans with the goal of keeping that landfill closed and while concealing his and others' financial motives and making it appear he was merely concerned because of his role in preserving Louisiana's natural resources.

46.     On or about November 30, 2005, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

47.     On or about December 7, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 157361, from W. Inc. to influence and reward him for his official action.

48.     On or about December 8, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 157362, from W. Inc. to influence and reward him for his official action.

49.     On or about December 16, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $18,000.00, check number 157491, from W. Inc. to influence and reward him for his official action.

50.     On or about January 3, 2006, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

51.     On or about January 3, 2006, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to an official with the Environmental Protection Agency (EPA) in Washington, D.C. while concealing the financial motives of himself and others and represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission and attempted to gain the assistance of the EPA official in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

52.     On or about January 3, 2006, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to a Colonel with the U.S. Army Corp of Engineers while concealing the financial motives of himself and others and represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission and attempted to gain the assistance of the official in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

53.     On or about January 3, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $17,000.00, check number 157741, from W. Inc. to influence and reward him for his official action.

- 12 -

54.     On or about January 9, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 157704, from W. Inc. to influence and reward him for his official action.

55.     On or about January 9, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 157703, from W. Inc. to influence and reward him for his official action.

56.     On or about January 10, 2006, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

57.     On or about January 27, 2006, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

58.     On or about January 31, 2006, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

59.    On or about January 31, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,958.00, check number 158129, from W. Inc. to influence and reward him for his official action.

60.    On or about February 3, 2006, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

61.    On or about February 8, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 158087, from W. Inc. to influence and reward him for his official action.

62.    On or about February 8, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 158086, from W. Inc. to influence and reward him for his official action.

63.    On or about February 17, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,400.00, check number 158362, from W. Inc. to influence and reward him for his official action.

64.    On or about March 1, 2006, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to a FBI Special Agent and attempted to direct FBI resources to investigate the Old Gentilly Landfill located in New Orleans with the goal of keeping that landfill closed and while concealing his and others' financial motives and making it appear he was merely concerned

- 14 -

because of his role preserving Louisiana's natural resources. In his letter MOUTON wrote that "other landfills, Hiway 90 (sic) C and D, Inc, River Birch, Inc, KV Landfill have enough Capacity to take at least 10 times the amount of Waste/Debris that DEQ is estimating and maybe 20 times, all three of these landfill (sic) are properly permitted and properly constructed and are NOT a threat to the environment."

65.     On or about March 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 158467, from W. Inc. to influence and reward him for his official action.

66.     On or about March 14, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $3,329.00, check number 158694, from W. Inc. to influence and reward him for his official action.

67.     On or about April 6, 2006, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to an official with the Environmental Protection Agency in Washington D.C. and other officials while concealing the financial motives of himself and others and represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission and provided the EPA official with "Notice of Intention to File Citizen's Suit, Violations at 16600 Chef Menteur Highway, New Orleans, Louisiana."

68.     On or about April 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $5,000.00, check number 159159, from W. Inc. to influence and reward him for his official action.

69.    On or about April 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 159103, from W. Inc. to influence and reward him for his official action.

70.    On or about April 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 159102, from W. Inc. to influence and reward him for his official action.

71.    On or about April 7, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $7,500.00, check number 159158, from W. Inc. to influence and reward him for his official action.

72.    On or about April 15, 2006, defendant, HENRY M. MOUTON, concealed his involvement in this payoff conspiracy by failing to report approximately $35,000.00 in illegal payoffs received from co-conspirator "A" and other co-conspirators known and unknown to the grand jury on his 2005 federal income tax return.

73.    On or about April 24, 2006, defendant, HENRY M. MOUTON, to further his and others' goal of influencing decision makers for financial reasons, approached an individual known to the grand jury and asked him to make straw campaign contributions to a federal congressional campaign on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury.

74.    On or about April 24, 2006, defendant, HENRY M. MOUTON, faxed to a co-conspirator, known to the grand jury, and wrote that he had spoken to co-conspirator "A" and that defendant HENRY M. MOUTON was to obtain checks from the co-conspirator "so we can disguise a contribution."

- 16 -

75.    On or about April 24, 2006, defendant, **HENRY M. MOUTON**, to further his and others' goal of influencing decisions makers for financial reasons, delivered check number 159429, in the amount of $2,200.00, from W. Inc., to a straw campaign contributor.

76.    On or about April 25, 2006, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, to further his and others' goal of influencing decisions makers for financial reasons, collected check number 1966, in the amount of $2,200.00 made payable to a federal congressional candidate from a straw campaign contributor.

77.    On or about April 25, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $4,400.00, check number 159430, from W. Inc. to influence and reward him for his official action.

78.    On or about April 27, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $4,400.00, check number 159431, from W. Inc. to influence and reward him for his official action.

79.    On or about May 4, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 159487, from W. Inc. to influence and reward him for his official action.

80.    On or about May 4, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 159488, from W. Inc. to influence and reward him for his official action.

81.    On or about May 12, 2006, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to

a FBI Special Agent while concealing the financial motives of himself and others and attempted to gain the assistance of the FBI in an effort to keep closed the Old Gentilly Landfill located in New Orleans.

82.   On or about May 18, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $3,882.14, check number 159720, from W. Inc. to influence and reward him for his official action.

83.   On or about June 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 159975, from W. Inc. to influence and reward him for his official action.

84.   On or about June 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 159974, from W. Inc. to influence and reward him for his official action.

85.   On or about June 28, 2006, defendant, HENRY M. MOUTON, faxed an invoice to co-conspirator "A." The invoice requested $5,148.78 in reimbursements for "Expenses Related to Waste Issues."

86.   On or about June 30, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $5,148.78, check number 160291, from W. Inc. to influence and reward him for his official action.

87.   On or about July 5, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 160366, from W. Inc. to influence and reward him for his official action.

88.     On or about July 5, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 160367, from W. Inc. to influence and reward him for his official action.

89.     On or about July 19, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,500.93, check number 126, from W.C.S., Inc. to influence and reward him for his official action.

90.     On or about August 2, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $18,250.00, check number 130, from W.C.S., Inc. to influence and reward him for his official action.

91.     On or about August 3, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 160692, from W. Inc. to influence and reward him for his official action.

92.     On or about August 3, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 160693, from W. Inc. to influence and reward him for his official action.

93.     On or about August 16, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $30,000.00, check number 195, from W.C.S., Inc. to influence and reward him for his official action.

94.     On or about August 29, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 201, from W.C.S., Inc. to influence and reward him for his official action.

- 19 -

95.    On or about September 1, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $4,994.12, check number 207, from W.C.S., Inc. to influence and reward him for his official action.

96.    On or about September 7, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 161179, from W. Inc. to influence and reward him for his official action.

97.    On or about September 7, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 161180, from W. Inc. to influence and reward him for his official action.

98.    On or about September 13, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $17,040.10, check number 211, from W.C.S., Inc. to influence and reward him for his official action.

99.    On or about September 13, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $12,320.00, check number 212, from W.C.S., Inc. to influence and reward him for his official action.

100.    On or about October 4, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 161535, from W. Inc. to influence and reward him for his official action.

101.    On or about October 4, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 161536, from W. Inc. to influence and reward him for his official action.

102.    On or about October 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $16,500.00, check number 218, from W.C.S., Inc. to influence and reward him for his official action.

103.    On or about October 12, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $4,000.00, check number 135, from W.C.S., Inc. to influence and reward him for his official action.

104.    On or about November 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 161904, from W. Inc. to influence and reward him for his official action.

105.    On or about November 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 161905, from W. Inc. to influence and reward him for his official action.

106.    On or about December 13, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 162385, from W. Inc. to influence and reward him for his official action.

107.    On or about December 13, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 162386, from W. Inc. to influence and reward him for his official action.

108.    On or about January 5, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 162784, from W. Inc. to influence and reward him for his official action.

109.   On or about January 5, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 162785, from W. Inc. to influence and reward him for his official action.

110.   On or about February 2, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 163144, from W. Inc. to influence and reward him for his official action.

111.   On or about February 2, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 163145, from W. Inc. to influence and reward him for his official action.

112.   On or about March 12, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 163601, from W. Inc. to influence and reward him for his official action.

113.   On or about March 12, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 163602, from W. Inc. to influence and reward him for his official action.

114.   On or about April 5, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 164000, from W. Inc. to influence and reward him for his official action.

115.   On or about April 5, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 164001, from W. Inc. to influence and reward him for his official action.

116.   On or about April 15, 2007, defendant, HENRY M. MOUTON, concealing his involvement in this payoff conspiracy by failing to report approximately $161,093.92 in illegal payoffs received from co-conspirator "A" and other co-conspirators known and unknown to the grand jury on his 2006 federal income tax return.

117.   On or about May 10, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 164526, from W. Inc. to influence and reward him for his official action.

118.   On or about May 10, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 164527, from W. Inc. to influence and reward him for his official action.

119.   On or about June 7, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 164861, from W. Inc. to influence and reward him for his official action.

120.   On or about June 7, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 164862, from W. Inc. to influence and reward him for his official action.

121.   On or about July 12, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 165229, from W. Inc. to influence and reward him for his official action.

122.   On or about July 12, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 165230, from W. Inc. to influence and reward him for his official action.

- 23 -

123.   On or about August 2, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 165602, from W. Inc. to influence and reward him for his official action.

124.   On or about August 2, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 165603, from W. Inc. to influence and reward him for his official action.

125.   On or about September 12, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 166061, from W. Inc. to influence and reward him for his official action.

126.   On or about September 12, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 166062, from W. Inc. to influence and reward him for his official action.

127.   On or about September 14, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $21,000.00, check number 166185, from W. Inc. to influence and reward him for his official action.

128.   On or about September 14, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $4,000.00, check number 166186, from W. Inc. to influence and reward him for his official action.

129.   On or about October 4, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 166421, from W. Inc. to influence and reward him for his official action.

130. On or about October 4, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 166422, from W. Inc. to influence and reward him for his official action.

131. On or about November 9, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 166837, from W. Inc. to influence and reward him for his official action.

132. On or about November 9, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 166838, from W. Inc. to influence and reward him for his official action.

133. On or about December 7, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 167133, from W. Inc. to influence and reward him for his official action.

134. On or about December 7, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 167134, from W. Inc. to influence and reward him for his official action.

135. On or about December 24, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $4,000.00, check number 1042, from D & A to influence and reward him for his official action.

136. On or about December 26, 2007, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,500.00, check number 1043, from D & A to influence and reward him for his official action.

137.   On or about December 26, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,500.00, check number 1044, from D & A to influence and reward him for his official action.

138.   On or about December 26, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $500.00, check number 1045, from D & A to influence and reward him for his official action.

139.   On or about January 10, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 167449, from W. Inc. to influence and reward him for his official action.

140.   On or about January 10, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 167450, from W. Inc. to influence and reward him for his official action.

141.   On or about February 11, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 167691, from W. Inc. to influence and reward him for his official action.

142.   On or about February 11, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 167692, from W. Inc. to influence and reward him for his official action.

143.   On or about March 6, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 167919, from W. Inc. to influence and reward him for his official action.

144.    On or about March 6, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 167920, from W. Inc. to influence and reward him for his official action.

145.    On or about April 7, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 168151, from W. Inc. to influence and reward him for his official action.

146.    On or about April 7, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 168152, from W. Inc. to influence and reward him for his official action.

147.    On or about April 15, 2008, defendant, HENRY M. MOUTON, concealing his involvement in this payoff conspiracy by failing to report approximately $25,383.00 in illegal payoffs received from co-conspirator "A" and other co-conspirators known and unknown to the grand jury on his 2007 federal income tax return.

148.    On or about April 28, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 168395, from W. Inc. to influence and reward him for his official action.

149.    On or about April 28, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 168398, from W. Inc. to influence and reward him for his official action.

150.    On or about April 28, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 168399, from W. Inc. to influence and reward him for his official action.

151.    On or about April 28, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 168400, from W. Inc. to influence and reward him for his official action.

152.    On or about April 28, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 168401, from W. Inc. to influence and reward him for his official action.

153.    On or about April 28, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,000.00, check number 168402, from W. Inc. to influence and reward him for his official action.

154.    On or about May 1, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 168396, from W. Inc. to influence and reward him for his official action.

155.    On or about May 1, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $2,000.00, check number 168397, from W. Inc. to influence and reward him for his official action.

156.    On or about May 15, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 168372, from W. Inc. to influence and reward him for his official action.

157.    On or about May 15, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 168373, from W. Inc. to influence and reward him for his official action.

158.    On or about June 11, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 168663, from W. Inc. to influence and reward him for his official action.

159.    On or about June 11, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 168664, from W. Inc. to influence and reward him for his official action.

160.    On or about July 3, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 168920, from W. Inc. to influence and reward him for his official action.

161.    On or about July 3, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 168921, from W. Inc. to influence and reward him for his official action.

162.    On or about August 6, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 169200, from W. Inc. to influence and reward him for his official action.

163.    On or about August 6, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 169201, from W. Inc. to influence and reward him for his official action.

164.    On or about September 10, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 169408, from W. Inc. to influence and reward him for his official action.

165.    On or about September 10, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 169409, from W. Inc. to influence and reward him for his official action.

166.    On or about September 22, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $860.88, check number 1050, from A. P., LLC to influence and reward him for his official action.

167.    On or about October 6, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 169561, from W. Inc. to influence and reward him for his official action.

168.    On or about October 8, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 169577, from W. Inc. to influence and reward him for his official action.

169.    On or about November 5, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 169775, from W. Inc. to influence and reward him for his official action.

170.    On or about November 5, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 169776, from W. Inc. to influence and reward him for his official action.

171.    On or about December 2, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 169932, from W. Inc. to influence and reward him for his official action.

172.    On or about December 2, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 169933, from W. Inc. to influence and reward him for his official action.

173.    On or about December 31, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 170061, from W. Inc. to influence and reward him for his official action.

174.    On or about December 31, 2008, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 170062, from W. Inc. to influence and reward him for his official action.

175.    On or about February 3, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 170205, from W. Inc. to influence and reward him for his official action.

176.    On or about February 4, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 170206, from W. Inc. to influence and reward him for his official action.

177.    On or about March 10, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 170327, from W. Inc. to influence and reward him for his official action.

178.    On or about March 11, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 170328, from W. Inc. to influence and reward him for his official action.

179.   On or about April 7, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 170433, from W. Inc. to influence and reward him for his official action.

180.   On or about April 8, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 170434, from W. Inc. to influence and reward him for his official action.

181.   On or about April 15, 2009, defendant, HENRY M. MOUTON, concealing his involvement in this payoff conspiracy by failing to report approximately $65,837.00 in illegal payoffs received from co-conspirator "A" and other co-conspirators known and unknown to the grand jury on his 2008 federal income tax return.

182.   On or about May 8, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 170550, from W. Inc. to influence and reward him for his official action.

183.   On or about May 11, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 170551, from W. Inc. to influence and reward him for his official action.

184.   On or about June 10, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 170752, from W. Inc. to influence and reward him for his official action.

185.   On or about June 11, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 170753, from W. Inc. to influence and reward him for his official action.

186. On or about July 8, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 170876, from W. Inc. to influence and reward him for his official action.

187. On or about July 15, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 170875, from W. Inc. to influence and reward him for his official action.

188. On or about August 10, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 171078, from W. Inc. to influence and reward him for his official action.

189. On or about August 13, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 171077, from W. Inc. to influence and reward him for his official action.

190. On or about September 3, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 171196, from W. Inc. to influence and reward him for his official action.

191. On or about September 11, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 171197, from W. Inc. to influence and reward him for his official action.

192. On or about October 13, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 171393, from W. Inc. to influence and reward him for his official action.

193.    On or about October 15, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 171392, from W. Inc. to influence and reward him for his official action.

194.    On or about November 9, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 171547, from W. Inc. to influence and reward him for his official action.

195.    On or about November 9, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 171548, from W. Inc. to influence and reward him for his official action.

196.    On or about December 15, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 171642, from W. Inc. to influence and reward him for his official action.

197.    On or about December 15, 2009, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 171643, from W. Inc. to influence and reward him for his official action.

198.    On or about January 8, 2010, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $513.00, check number 171783, from W. Inc. to influence and reward him for his official action.

199.    On or about January 13, 2010, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $1,487.00, check number 171782, from W. Inc. to influence and reward him for his official action.

200.    On or about February 8, 2010, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 171899, from W. Inc. to influence and reward him for his official action.

201.    On or about February 8, 2010, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 171900, from W. Inc. to influence and reward him for his official action.

202.    On or about February 12, 2010, defendant, HENRY M. MOUTON, to conceal his relationship with co-conspirator "A" lied to FBI Special Agents when he said a wealthy friend from Mobile, Alabama provided a helicopter and a pilot for MOUTON to fly over the Old Gentilly Landfill and obtain aerial video and photographs, when in truth and fact, co-conspirator "A" or other co-conspirators known and unknown to the grand jury actually paid for the helicopter rental.

203.    On or about February 12, 2010, defendant, HENRY M. MOUTON, lied to FBI Special Agents when he claimed not to have any business relationship with any landfill and claimed that he had not received any compensation from any landfill, when in truth and fact, HENRY M. MOUTON actually had a relationship with a landfill company owned by co-conspirator "A" and other co-conspirators known and unknown to the grand jury and he received approximately $463,970.00 from companies closely related to a landfill company owned by co-conspirator "A" and co-conspirators known and unknown to the grand jury.

204.    On or about February 12, 2010, defendant, HENRY M. MOUTON, lied to FBI Special Agents when he said he was not reimbursed by anyone for his involvement with his attempts to close the Old Gentilly Landfill in New Orleans, when in truth and fact, HENRY M.

- 35 -

MOUTON actually received approximately $463,970.00 for his efforts to close the Old Gentilly Landfill on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury.

205.    On or about February 18, 2010, defendant, HENRY M. MOUTON, lied to FBI Special Agents when he said he received $2,000.00 a month from co-conspirator "A" for building and air conditioning consulting work, when in truth and fact, he was paid $2,000.00 a month by co-conspirator "A" and other co-conspirators known and unknown to the grand jury to influence and reward him for his efforts as a Commissioner with the Louisiana Department of Wildlife and Fisheries to close the Old Gentilly Landfill in New Orleans on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury.

206.    On or about March 18, 2010, defendant, HENRY M. MOUTON, received an illegal payment in the amount of $1,487.00, check number 172012, from W. Inc. to influence and reward him for his official action.

207.    On or about March 18, 2010, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 172013, from W. Inc. to influence and reward him for his official action.

208.    On or about April 12, 2010, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 172141, from W. Inc. to influence and reward him for his official action.

209.    On or about April 16, 2010, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 172142, from W. Inc. to influence and reward him for his official action.

All in violation of Title 18, United States Code, Section 371.

<u>COUNT 2</u>

### RECEIPT OF ILLEGAL PAYOFFS BY AN
### <u>AGENT OF A PROGRAM RECEIVING FEDERAL FUNDS</u>

A.      The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated

herein by reference.

B.      Beginning on or about January 1, 2006, through December 31, 2006, in the Eastern

District of Louisiana and elsewhere, defendant HENRY M. MOUTON did corruptly accept a

thing of value, to wit: approximately $186,110.00 from co-conspirator "A" and other co-

conspirators known and unknown to the grand jury, intending to be influenced and rewarded in

connection with a transaction and series of transactions of the Louisiana Department of Wildlife

and Fisheries, a government agency of the State of Louisiana, involving something of value of

$5,000.00 or more.

All in violation of Title 18, United States Code, Section 666(a)(1)(B).

<u>COUNT 3</u>

### RECEIPT OF ILLEGAL PAYOFFS BY AN
### <u>AGENT OF A PROGRAM RECEIVING FEDERAL FUNDS</u>

A.      The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated

herein by reference.

B.      Beginning on or about January 1, 2007, through December 31, 2007, in the Eastern

District of Louisiana and elsewhere, defendant HENRY M. MOUTON did corruptly accept a

thing of value, to wit: approximately $58,500.00 from co-conspirator "A" and other co-

conspirators known and unknown to the grand jury, intending to be influenced and rewarded in

connection with a transaction and series of transactions of the Louisiana Department of Wildlife

and Fisheries, a government agency of the State of Louisiana, involving something of value of $5,000.00 or more.

All in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT 4

### RECEIPT OF ILLEGAL PAYOFFS BY AN
### AGENT OF A PROGRAM RECEIVING FEDERAL FUNDS

A.    The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated herein by reference.

B.    Beginning on or about January 1, 2008, through December 31, 2008, in the Eastern District of Louisiana and elsewhere, defendant HENRY M. MOUTON did corruptly accept a thing of value, to wit: approximately $41,860.00 from co-conspirator "A" and other co-conspirators known and unknown to the grand jury, intending to be influenced and rewarded in connection with a transaction and series of transactions of the Louisiana Department of Wildlife and Fisheries, a government agency of the State of Louisiana, involving something of value of $5,000.00 or more.

All in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT 5

### MAKING FALSE STATEMENTS TO FEDERAL AGENTS

A.    The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated herein by reference.

B.    On or about February 12, 2010, in the Eastern District of Louisiana and elsewhere, in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the

- 38 -

United States, the defendant, **HENRY M. MOUTON**, did knowingly and willfully make a false, fraudulent, and fictitious material statement and representation; that is the defendant, lied to Special Agents with the FBI, New Orleans Division, when **MOUTON** said a wealthy friend from Mobile, Alabama provided a helicopter and a pilot for **MOUTON** to fly over the Old Gentilly Landfill in New Orleans and obtain aerial video and photographs, when in truth and fact, co-conspirator "A" and other co-conspirators known and unknown to the grand jury actually paid for the helicopter rental;

All in violation of Title 18, United States Code, Section 1001.

## COUNT 6

### MAKING FALSE STATEMENTS TO FEDERAL AGENTS

A.    The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated herein by reference.

B.    On or about February 12, 2010, in the Eastern District of Louisiana and elsewhere, in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the United States, the defendant, **HENRY M. MOUTON**, did knowingly and willfully make a false, fraudulent, and fictitious material statement and representation; that is the defendant, lied to Special Agents with the FBI, New Orleans Division, when he claimed not to have any business relationship with any landfill and claimed that he had not received any compensation from any landfill, when in truth and fact, **HENRY M. MOUTON** actually had a relationship with a landfill company located in the Eastern District of Louisiana and received approximately

$463,970.00 from companies closely related to a landfill company owned by co-conspirator "A" and other co-conspirators known and unknown to the grand jury;

       All in violation of Title 18, United States Code, Section 1001.

<div align="center">

COUNT 7

MAKING FALSE STATEMENTS TO FEDERAL AGENTS
</div>

A.     The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated herein by reference.

B.     On or about February 12, 2010, in the Eastern District of Louisiana and elsewhere, in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the United States, the defendant, HENRY M. MOUTON, did knowingly and willfully make a false, fraudulent, and fictitious material statement and representation; that is the defendant, lied to Special Agents with the FBI, New Orleans Division, when the defendant said he was not reimbursed by anyone for his involvement with his attempts to close the Old Gentilly Landfill in New Orleans, when in truth and fact, HENRY M. MOUTON actually received approximately $463,970.00 for his efforts to close the Old Gentilly Landfill on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury;

       All in violation of Title 18, United States Code, Section 1001.

<div align="center">

COUNT 8

MAKING FALSE STATEMENTS TO FEDERAL AGENTS
</div>

A.     The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated herein by reference.

<div align="center">

- 40 -
</div>

B.      On or about February 18, 2010, in the Eastern District of Louisiana and elsewhere, in a

matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the

United States, the defendant, **HENRY M. MOUTON**, did knowingly and willfully make a false,

fraudulent, and fictitious material statement and representation; that is the defendant, lied to

Special Agents with the FBI, New Orleans Division, when the defendant said he received

$2,000.00 a month from co-conspirator "A" and other co-conspirators known and unknown to

the grand jury for building and air conditioning consulting work, when in truth and fact, he was

paid $2,000.00 a month by co-conspirator "A" and other co-conspirators known and unknown to

the grand jury for his efforts as a Commissioner with the Louisiana Department of Wildlife and

Fisheries to close the Old Gentilly Landfill in New Orleans on behalf of co-conspirator "A" and

other co-conspirators known and unknown to the grand jury;

        All in violation of Title 18, United States Code, Section 1001.

## NOTICE OF FORFEITURE

        1.      The allegations of Counts 1 through 4 of this Indictment are realleged and

incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to

the United States of America pursuant to the provisions of Title 18, United States Code, Sections

371, 666 and 981(a)(1)(C), made applicable through Title 28, United States Code, Section

2461(c).

        2.      As a result of the offenses alleged in Counts 1 through 4, defendant, **HENRY M.**

**MOUTON**, shall forfeit to the United States pursuant to Title 18, United States Code, Section

981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c), any and all

- 41 -

property, real or personal, which constitutes or is derived from proceeds traceable to violations of

Title 18, United States Code, Sections 371 and 666, including but not limited to:

     a.    $463,970.00 in United States Currency and all interest and proceeds traceable thereto.

     b.    The government specifically provides notice of its intent to seek a personal money judgment against the defendant in the amount of the fraudulently-obtained proceeds.

3.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

     a.    cannot be located upon the exercise of due diligence;

     b.    has been transferred or sold to, or deposited with, a third person;

     c.    has been placed beyond the jurisdiction of the Court;

     d.    has been substantially diminished in value; or

     e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of said defendant up to the value of the above forfeitable

property.

All in violation of Title 18, United States Code, Sections 371, 666 and 981(a)(1)(C),

made applicable through Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____

F O R E P E R S O N

_____
JIM LETTEN
UNITED STATES ATTORNEY
Bar Roll No. 8517

_____
JAN MASELLI MANN
First Assistant United States Attorney
Bar Roll No. 9020

_____
SALVADOR PERRICONE
Assistant United States Attorney
Bar Roll No. 10515

_____
JAMES R. MANN
Assistant United States Attorney
Bar Roll No. 20513

_____
BRIAN M. KLEBBA
Assistant United States Attorney
New York Bar Roll No. 2938728

_____
GREGORY KENNEDY
Assistant United States Attorney
Bar Roll No. 20896

_____
WILLIAM J. QUINLAN, JR.
Assistant United States Attorney
Bar Roll No. 22600

New Orleans, Louisiana
February 25, 2011

## TO: DOCKET CLERK          11-048

### __MAGISTRATE CASE NUMBER_____

### OR

### __X____NO  MAGISTRATE  PAPERS  WERE FOUND

### for

NAME: __HENRY M. MOUTON__

Initials: __BB_____

If you receive this note without any initials,

please return the entire packet to criminal desk .

Thank you

Case 2:11-cr-00048-MLCF-ALC   Document 1-2   Filed 02/25/11   Page 1 of 18   PER 18 U.S.C. 3170

**DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT**

BY: ☐ INFORMATION   ☒ INDICTMENT

Matter Sealed: ☐ Juvenile   ☐ Other than Juvenile
☐ Pre-Indictment Plea   ☐ Superseding
☒ Indictment   ☐ Defendant Added
☐ Information   ☐ Charges/Counts Added

Name of District Court, and/or Judge/Magistrate Location (City)

UNITED STATES DISTRICT COURT   EASTERN
DISTRICT OF LOUISIANA   Divisional Office

Name and Office of Person   Patricia G. Ortiz
Furnishing Information on   ☒ U.S. Atty   ☐ Other U.S. Agency
THIS FORM   Phone No. (504) 680-3159
Name of Asst.
U.S. Attorney   Brian M. Klebba
(if assigned)

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
Special Agent Lisa Horner, FBI

☐ person is awaiting trial in another Federal or State Court
(give name of court)

☐ this person/proceeding transferred from another district
per (circle one) FRCrP  20, 21  or  40. Show District

☐ this is a reprosecution of charges
previously dismissed which were
dismissed on motion of:
☐ U.S. Atty   ☐ Defense

☐ this prosecution relates to a
pending case involving this same
defendant. (Notice of Related
Case must still be filed with the
Clerk.)

☐ prior proceedings or appearance(s)
before U.S. Magistrate Judge
regarding this defendant were
recorded under

SHOW
DOCKET NO.

MAG. JUDGE
CASE NO.

Place of   Jefferson Parish
offense   County   USA

---

CASE NO.

USA vs.

**11-048**

Defendant:   HENRY M. MOUTON

Address:

☐ Interpreter Required   Dialect: _____

Birth   1956   ☒ Male   ☐ Alien
Date   ☐ Female   (if applicable)

Social Security Number   xxx-xx-7311

**DEFENDANT**

Issue: ☐ Warrant   ☒ Summons

Location Status:

Arrest Date _____ or Date Transferred to Federal Custody _____

☐ Currently in Federal Custody
☐ Currently in State Custody
☐ Writ Required
☐ Currently on bond
☐ Fugitive

Defense Counsel (if any):   Mary Olive Pierson

☐ FPD   ☐ CJA   ☒ RET'D
☐ Appointed on Target Letter

☐ This report amends AO 257 previously submitted

---

**OFFENSE CHARGED - U.S.C. CITATION - STATUTORY MAXIMUM PENALTIES - ADDITIONAL INFORMATION OR COMMENTS**

Total # of Counts ____ 8

| Set | Title & Section/Offense Level (Petty = 1 / Misdemeanor = 3 / Felony = 4) | | Description of Offense Charged | Count(s) |
|---|---|---|---|---|
| 1 | 18 U.S.C. 371 | 4-Felony | Conspiracy to receive Illegal Payoffs | 1 |
| 2 | 18 U.S.C. 666(a)(1)(B) | 4-Felony | Receipt of Illegal Payoffs | 2, 3, 4 |
| 3 | 18 U.S.C. 1001 | 4-Felony | Making False Statements to Federal Agents | 5, 6, 7, 8 |
| | | | | |
| | | | | |

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                                  DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____          _____
                                                    DEPUTY CLERK

## ALBERT J. WARD, JR.'S PEREMPTORY EXCEPTIONS OF PEREMPTION, PRESCRIPTION AND NO CAUSE OF ACTION & INCORPORATED MEMORANDUM

NOW INTO COURT, through undersigned counsel, comes defendant, Albert J. Ward, Jr., who respectfully excepts to the Petition of Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, L.L.C. as follows:

Defendant, Albert J. Ward, Jr., hereby adopts the exceptions of peremption, prescription and no cause of action as filed by defendant Frederick R. Heebe and incorporates by reference Frederick R. Heebe's Peremptory Exceptions of Peremption, Prescription and No Cause of Action, along with the Memorandum in Support of Frederick R. Heebe's Peremptory Exceptions of Peremption, Prescription and No Cause of Action, as if copied and pled herein *in extenso*.

WHEREFORE, defendant, Albert J. Ward, Jr., prays that, after hearing, these Exceptions be sustained and that all claims asserted against him in plaintiffs' Petition for Damages be dismissed with prejudice and for such other and further relief as is appropriate under the circumstances.

Respectfully submitted,

Robert N. Habans, Jr., 06395
HABANS & CARRIERE
10843 N. Oak Hills Parkway
Baton Rouge, Louisiana  70810
Telephone: (225) 757-0225
Facsimile: (225) 757-0398

Attorneys for Albert J. Ward, Jr.

2

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                             DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____

                                          _____
                                                  DEPUTY CLERK

## ORDER

The Peremptory Exceptions of Peremption, Prescription and No Cause of Action

filed by defendant, Albert J. Ward, Jr., having been considered;

**IT IS ORDERED** that plaintiffs, Concrete Busters of Louisiana, Inc. and Waste

Remediation of Plaquemines, LLC, appear and show cause on the _21_ day of

_Sept._, 2011 at _10_ o'clock A.m. why the Exceptions should not be sustained and

all claims asserted against Albert J. Ward, Jr. dismissed with prejudice.

New Orleans, Louisiana this _29_ day of _August_, 2011.

                                          _____
                                                  JUDGE

**PLEASE SERVE**:
Concrete Busters of Louisiana, Inc. and
Waste Remediation of Plaquemines, LLC
through their attorneys of record:
Randall A. Smith
Stephen M. Gele
Melissa M. Desormeaux
Smith & Fawer, LLC
201 St. Charles Avenue
Suite 3702
New Orleans, Louisiana  70170

3

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                             DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____

                                        DEPUTY CLERK

## RIVER BIRCH INC. AND HWY 90'S PEREMPTORY EXCEPTIONS OF PEREMPTION, PRESCRIPTION AND NO CAUSE OF ACTION & INCORPORATED MEMORANDUM

NOW INTO COURT, through undersigned counsel, come defendants, River Birch Incorporated and Hwy 90, L.L.C., which respectfully except to the Petition of Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, L.L.C. as follows:

Defendants, River Birch Incorporated and Hwy 90, L.L.C., hereby adopt the exceptions of peremption, prescription and no cause of action as filed by defendant Frederick R. Heebe and incorporate by reference Frederick R. Heebe's Peremptory Exceptions of Peremption, Prescription and No Cause of Action, along with the Memorandum in Support of Frederick R. Heebe's Peremptory Exceptions of Peremption, Prescription and No Cause of Action, as if copied and pled herein *in extenso*.

WHEREFORE, defendants, River Birch Incorporated and Hwy 90, L.L.C., pray that, after hearing, these Exceptions be sustained and that all claims asserted against them in plaintiffs' Petition for Damages be dismissed with prejudice and for such other and further relief as is appropriate under the circumstances.

Respectfully submitted,

*Edward J. Castaing*

Edward J. Castaing, Jr.,4022
CRULL, CASTAING, LILLY & HERMAN
601 Poydras Street, Suite 2323
New Orleans, Louisiana 70130
Telephone: (504) 581-7700
Facsimile: (504) 581-5523

Attorneys for River Birch Incorporated and Hwy 90, L.L.C.

2

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                         DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____        _____
                                              DEPUTY CLERK

## ORDER

The Peremptory Exceptions of Peremption, Prescription and No Cause of Action

filed by defendants, River Birch Incorporated and Hwy 90, L.L.C., having been considered;

**IT IS ORDERED** that plaintiffs, Concrete Busters of Louisiana, Inc. and Waste

Remediation of Plaquemines, LLC, appear and show cause on the ___21___ day of

___SEPT___, 2011 at _10_ o'clock _A_.m. why the Exceptions should not be sustained and

all claims asserted against River Birch Incorporated and Hwy 90, L.L.C. dismissed with

prejudice.

New Orleans, Louisiana this __29__ day of __August__, 2011.

_____
JUDGE

**PLEASE SERVE**:
Concrete Busters of Louisiana, Inc. and
Waste Remediation of Plaquemines, LLC
through their attorneys of record:
Randall A. Smith
Stephen M. Gele
Melissa M. Desormeaux
Smith & Fawer, LLC
201 St. Charles Avenue
Suite 3702
New Orleans, Louisiana  70170

Form 95 - Rev. 3/00

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

No.: 2011-2129                    2011 MAY 25   P 2:42   D-16    Division: D-16

Concrete Busters of Louisiana, Inc., et al.

<div align="center">versus</div>

Frederick R. Heebe, et al

PARTY TO BE SERVED: Frederick R. Heebe

THROUGH: Kyle Schonekas, Esq.

ADDRESS: 650 Poydras Street.

SUITE/ROOM: Suite 2105

CITY: New Orleans   70130                                2

SPECIAL SERVICE INSTRUCTIONS: _____

JULY 13

DOCUMENT TYPE: Motion for scheduling Order

FILED BY ATTORNEY: Stephen M. Gelé   BAR NO. 22385

DATE OF FILING: May 4th

ATTACHMENTS/EXHIBITS: _____

| RETURN FOR PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On the 6 day of JUNE 2011 served a copy of the within MOTION | On this_____ day of_____ 20____ served a copy of the within_____ |
| On FREDERICK R HEEBE | on_____ |
| in person ATTY KYLE SCHONEKAS 930   C Martin 138 (AM)   Return same day | by leaving same at_____ domicile or usual place of adobe_____ in the hand of_____ a person of suitable age and discretion, residing therein as a member of_____ domiciliary establishment, whose name and other facts connected, with this service I learned by interrogating the said |
| Deputy Sheriff of Orleans Parish | the said_____ being absent from_____ domicile at time of said service. |
| ENTERED | Returned same day |
| PAPER | |
| 13 / 9102 / | |
| SERIAL NO.   DEPUTY   PARISH | Deputy Sheriff of Orleans Parish |

RETURN

<div align="center">SHERIFF'S RETURN</div>

Jade Scott
Deputy Clerk   8-11

Form 95 - Rev. 3/00

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

No.: 2011-2129                                      Division: D-16

Concrete Busters of Louisiana, Inc., et al.

versus

Frederick R. Heebe, et al.

PARTY TO BE SERVED:  Albert J. Ward, JR.

THROUGH:  Robert N. Habans, JR., Esq.

ADDRESS:  10843 N. Oak Hills Parkway

SUITE/ROOM:

CITY:  Baton Rouge ; 70810

SPECIAL SERVICE INSTRUCTIONS: _____

DOCUMENT TYPE:  Motion for Scheduling Order

FILED BY ATTORNEY:  Stephen M. Gele        BAR NO. 22385

DATE OF FILING:  May 4th, 2011

ATTACHMENTS/EXHIBITS: _____

RECEIVED
JUN 09 2011
E.B.R. SHERIFF'S OFFICE

| RETURN FOR PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On the 10 day of June 20 11 served | On this ____ day of ____ 20 ____ served |
| a copy of the within_____ | a copy of the within_____ |
| | _____ |
| On above | on_____ |
| | by leaving same at_____ domicile or usual |
| in person | place of adobe_____ |
| | in the hand of_____ |
| | a person of suitable age and discretion, residing therein |
| Return same day | as a member of_____ domiciliary |
| EBRSO Dy. S. Zell #7015 | establishment, whose name and other facts connected, |
| Deputy Sheriff of Orleans Parish | with this service I learned by interrogating the said |
| | the said_____ being |
| ENTERED _____ | absent from_____ domicile at time of said service. |
| PAPER          RETURN | Returned same day |
| 14    /    /    01 | VERIFIED |
| SERIAL NO.   DEPUTY   PARISH | Deputy Sheriff of Orleans Parish |
| | Jade Scott |
| | Deputy Clerk |
| SHERIFF'S RETURN | |

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.   11-2129                                                    DIVISION "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE,  ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____          _____

                                            DEPUTY CLERK

## MOTION AND INCORPORATED MEMORANDUM FOR SCHEDULING ORDER

NOW INTO COURT, through undersigned counsel, come Plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC, and who hereby request, pursuant to

Article 1551 of the Louisiana Code of Civil Procedure, a Scheduling Conference before this

Honorable Court, as follows:

I.

Plaintiffs' *Petition for Damages* was filed on February 25, 2011.

II.

Defendants requested an extension of time to file responsive pleadings.

III.

Defendants have filed peremptory exceptions, the last of which were filed last week, which

have yet to be set for hearing.  The peremptory exceptions, if granted, could dismiss substantial

portions, if not all, of plaintiffs' claims.  No answers have been filed.

IV.

Defendant Fred Heebe has demanded depositions of plaintiffs later this month.

V.

This litigation involved complex issues of law and fact, including the complication that

relevant documents may have been seized by the United States Government.

-1-

VI.

A scheduling order, pursuant to Article 1551(A)(6) and (8) of the Louisiana Code of Civil Procedure, regarding the "scheduling of discovery" and the "identification of witnesses, documents, and exhibits," will assist in the matter proceeding orderly and with minimum disputes between the parties brought before this Honorable Court.

**WHEREFORE,** Concrete Busters and Waste Remediation request that this *Motion for Scheduling Order* be granted, and a scheduling conference be set for the purpose of establishing a scheduling order governing, *inter alia*, written discovery, depositions and experts.

Respectfully Submitted,

RANDALL A. SMITH, T.A. (No. 2117)
STEPHEN M. GELÉ (#22385)
MELISSA M. DESORMEAUX (#33093)
-OF-
SMITH & FAWER, L.L.C.
201 St. Charles Ave., Suite 3702
New Orleans, LA 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to all counsel of record, via telecopy, this 3rd day of May, 2011.

STEPHEN M. GELÉ

FILED

2011 MAY -4  A  9 50

CIVIL

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.   11-2129

DIVISION "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE,  ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____       _____

DEPUTY CLERK

**ORDER**

Considering the foregoing:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Plaintiffs' Concrete

Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC's *Motion for Scheduling*

*Order* be and is hereby **GRANTED**; and

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that counsel for all parties

appear before this Honorable Court, with their calendars, on the 13ᵗʰ day of July,

2011, at 9 :45 a.m. for a scheduling conference.

New Orleans, Louisiana, this 1ˢᵗ day of June, 2011.

Toni Arnone
~~JUDGE~~ law clerk

SERVICE WILL BE EFFECTED PURSUANT TO LA. C.C.P. 1313

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

-1-

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

FILED

SUBPOENA

No. 11-2129        DIV./SEC   D-16

Concrete Busters of Louisiana, Inc. And     Frederick R. Heebe, Albert Ward,
Waste Remediation of Plaquemines, LLC   vs.   Jr., River Birch Incorporated and BRT
                                            90, LLC

TO:   Louis Lauricella (PERSONAL SERVICE ONLY)
      1200 Clearview Parkway, Suite 1166, Harahan, LA 70123

**CLERK, CIVIL DISTRICT COURT**    - Please issue a subpoena to the above party as directed below.

### SUBPOENA REQUEST

☐   **YOU ARE COMMANDED**   to appear in the Civil District Court, Parish of Orleans in Division
" D-16 ", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _____ 20 ____ at
_____ o'clock _____ . m., to testify the truth according to your knowledge, in a controversy pending herein
between the parties above named; and hereof you are not to fail under the penalty of the law. By order of the
Court.

### DEPOSITION SUBPOENA REQUEST

☒   **YOU ARE COMMANDED**   to appear at the place, date and time specified below to testify at the taking
of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Smith & Fawer LLC, 201 St. Charles Ave., Ste 3702, New Orleans, LA 70170 | May 25, 2011 at 10:00 AM |

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

☐   **YOU ARE COMMANDED**   to produce and permit inspection and copying of the following documents or objects for the ☐ trial ☐ deposition ☐ hearing   (state type) _____
at the place, date and time specified below (list documents or objects) pursuant to the provisions of Article 1354 et.
seq. of the LA Code of Civil Procedure.

**NOTICE: ARTICLE 1354 APPEARS IN FULL ON BACK OF SERVICE COPY**

| PLACE | DATE AND TIME |
|---|---|
| | |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY                                                   
                                     Attorney's signature

ATTORNEY'S
NAME AND BAR NUMBER     Kyle Schonekas, 11817

ADDRESS                     650 Poydras Street, Suite 2105
and
TELEPHONE NUMBER          New Orleans, LA 70130

                                      (504) 680-6050

File original and two copies with Clerk
fourth copy for Attorney's File

E-105

ATTORNEY'S FILE COPY

© 2000 WordMill Inc.

FILED

₂₀₁₁ MAY -4  P 2: 01

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
CIVIL
DISTRICT COURT

STATE OF LOUISIANA

NO.  11-2129                                                DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____      _____
                                                    DEPUTY CLERK

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that Fred Heebe, through undersigned counsel, will take the deposition upon oral examination of Mr. Louis Lauricella on May 25, 2011 at 10:00 AM at the office of Smith & Fawer, L.L.C., 201 St. Charles Avenue, Suite 3702, New Orleans, Louisiana 70170.  The deposition will continue from day to day until completed, subject to such modification as may be mutually agreed upon by counsel attending the deposition.  The deposition will be conducted pursuant to the Louisiana Code of Civil Procedure and will be taken for all purposes consistent therewith.  You are invited to attend and participate as may be deemed fit and proper.

Respectfully submitted,

_____
Kyle Schonekas, 11817
William P. Gibbens, 27225
Andrea V. Timpa, 29455
SCHONEKAS, EVANS, McGOEY
  & McEACHIN, L.L.C.
Poydras Center
650 Poydras Street, Suite 2105
New Orleans, Louisiana  70130
(504) 680-6050

Attorneys for Frederick R. Heebe

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Notice of Deposition has

been duly served upon all counsel of record by facsimile, e-mail, and/or by placing a copy in the

United States mail, postage prepaid and properly addressed, this ____ day of May, 2011

_____

KYLE SCHONEKAS

2

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA      FILED

2011 MAY - 4 SUBPOENA

No. 11-2129 _____ DIV./SEC ___ D-16 _____

Concrete Busters of Louisiana, Inc. And      Frederick R. Heebe, Albert J. Ward,
Waste Remediation of Plaquemines, LLC  vs.   Jr., River Birch Incorporated and Hwy
                                             90, LLC

TO:  Francis "Tiger" Roussell (PERSONAL SERVICE ONLY)
     6101 River Road, Avondale, LA 70094

CLERK, CIVIL DISTRICT COURT      - Please issue a subpoena to the above party as directed
below.

### SUBPOENA REQUEST

☐  YOU ARE COMMANDED    to appear in the Civil District Court, Parish of Orleans in Division
" D-16 ", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _____ 20 ____ at
_____ o'clock _____ . m., to testify the truth according to your knowledge, in a controversy pending herein
between the parties above named; and hereof you are not to fail under the penalty of the law.  By order of the
Court.

### DEPOSITION SUBPOENA REQUEST

☒  YOU ARE COMMANDED    to appear at the place, date and time specified below to testify at the taking
of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Smith & Fawer LLC, 201 St. Charles Ave., Ste 3702, New Orleans, LA 70170 | May 26, 2011 at 10:00 AM |

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

☐  YOU ARE COMMANDED    to produce and permit inspection and copying of the following docu-
ments or objects for the ☐ trial  ☐ deposition ☐ hearing    (state type) _____
at the place, date and time specified below (list documents or objects) pursuant to the provisions of Article 1354 et.
seq. of the LA Code of Civil Procedure.

NOTICE: ARTICLE 1354 APPEARS IN FULL ON BACK OF SERVICE COPY

| PLACE | DATE AND TIME |
|---|---|
|  |  |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

**ATTORNEY**

ATTORNEY'S
NAME AND BAR NUMBER

ADDRESS
and
TELEPHONE NUMBER

Attorney's signature

Kyle Schonekas, 11817

650 Poydras Street, Suite 2105

New Orleans, LA 70130

(504) 680-6050

File original and two copies with Clerk
fourth copy for Attorney's File

E-105

ATTORNEY'S FILE COPY

© 2000 WordMill Inc.

FILED

201 MAY -4 P 2: 01

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS   CIVIL
DISTRICT COURT
STATE OF LOUISIANA

NO. 11-2129                                    DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____     _____
                                              DEPUTY CLERK

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that Fred Heebe, through undersigned counsel, will

take the deposition upon oral examination of Mr. Francis "Tiger" Roussell on May 26, 2011 at

10:00 AM at the office of Smith & Fawer, L.L.C., 201 St. Charles Avenue, Suite 3702, New

Orleans, Louisiana 70170. The deposition will continue from day to day until completed, subject

to such modification as may be mutually agreed upon by counsel attending the deposition. The

deposition will be conducted pursuant to the Louisiana Code of Civil Procedure and will be

taken for all purposes consistent therewith. You are invited to attend and participate as may be

deemed fit and proper.

Respectfully submitted,

_____
Kyle Schonekas, 11817
William P. Gibbens, 27225
Andrea V. Timpa, 29455
SCHONEKAS, EVANS, McGOEY
 & McEACHIN, L.L.C.
Poydras Center
650 Poydras Street, Suite 2105
New Orleans, Louisiana  70130
(504) 680-6050

Attorneys for Frederick R. Heebe

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Notice of Deposition has been duly served upon all counsel of record by facsimile, e-mail, and/or by placing a copy in the United States mail, postage prepaid and properly addressed, this ____ day of May, 2011

_____
KYLE SCHONEKAS

2

1967

FILED
2011 MAY 10 P 3: 30
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                          DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____          _____
                                                  DEPUTY CLERK

MOTION TO QUASH SUBPOENAS

NOW INTO COURT, through undersigned counsel, come plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC (hereafter collectively "Movants").

For the reasons expressed in the attached *Memorandum*, Movants suggest that the subpoenas issued

in this case on May 4, 2011 to Louis Lauricella and Francois "Tiger" Roussell to appear to be

deposed on May 24 and May 25, 2011, respectively, are premature as this litigation involves

complex issues of law and facts, defendants have filed peremptory exceptions, no answers have been

filed, and Plaintiffs have filed a Motion for Scheduling Order.

WHEREFORE, plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of

Plaquemines, LLC move this Court to quash the subpoenas issued in this matter to Francois "Tiger"

Roussell and Louis Lauricella.

-1-

Respectfully submitted,

RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELE (#22835)
MELISSA M. DESORMEAUX (#33093)
Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue - Suite 3702
New Orleans, Louisiana 70170
Telephone:  (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via telecopy, on this the 10th day of May 2011.

STEPHEN M. GELE

FILED

2011 MAY 10 P 3: 29

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CIVIL
DISTRICT COURT

NO: 11-2129

DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____

_____
DEPUTY CLERK

<u>RULE TO SHOW CAUSE</u>

CONSIDERING THE FOREGOING,

IT IS HEREBY ORDERED that defendant Frederick Heebe show cause on the 17th day

of ___MAY___ 2011, at 9:00 o'clock a.m. why Plaintiffs' *Motion to Quash Subpoenas*

should not be granted.

New Orleans, Louisiana this 10 day of May 2010.

_____
J U D G E

SERVICE WILL BE EFFECTUATED
PURSUANT TO LA. C.C.P. ART 1313

ENTERED ON MINUTES

MAY 1 2 2011

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                          DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____     _____
                                  DEPUTY CLERK

## MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENAS

MAY IT PLEASE THE COURT:

This *Memorandum* is respectfully submitted on behalf of plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC (collectively "Movants").

### ARGUMENT

The complexity of this matter coupled with the outstanding peremptory exceptions, lack of

filed answers, the recently propounded discovery requests, and the outstanding *Motion for

Scheduling Order* make Frederick Heebe's deposition subpoenas of Francois "Tiger" Roussell and

Louis Lauricella premature. For these reasons, the subpoenas must be quashed.

I.     **Subpoenas to Francois "Tiger" Roussell and Louis Lauricella.**

These subpoenas were issued to Francois "Tiger" Roussell ("Mr. Roussell") and Louis

Lauricella ("Mr. Lauricella") on May 4, 2011. Currently, Defendants' peremptory exceptions (the

last of which were filed the week before last) have yet to be set for hearing, there is an outstanding

*Motion for Scheduling Order* not yet set, and unanswered discovery requests. The culmination of

these items, coupled with the complexity of the law and facts at play in this matter, support

Plaintiffs' position that these depositions are premature.[1]  Additionally, Plaintiffs' filed the outstanding *Motion for Scheduling Order* on May 3, 2011—after Plaintiffs' counsel's offer to schedule deposition dates in August was rejected— to minimize contentious actions, such as Defendants' unilateral scheduling of depositions.  Further, as there are currently unanswered discovery requests, should these depositions go forward, then Defendants may very well request additional depositions in light of any new information post-depositions.  To avoid making these premature depositions unduly burdensome on Mr. Roussell and Mr. Lauricella, the Court should quash these subpoenas.

The trial court has "broad discretion in ruling on pre-trial discovery," which "includes the right to refuse or limit discovery of matters that are not relevant to the issues." *Walker, Tooks & Lyons, L.L.P. v. Sapp.*, 37,966 (La. App. 2d Cir. 12/10/03), 862 So.2d 41, 419, *citing King v. Phelps Dunbar, L.L.P.*, 01-1735 (La.App. 4 Cir. 4/2/03), 844 So.2d 1012. A party seeking to require the production of discovery bears the burden of proving that the matters sought to be discovered are relevant or likely to lead to the discovery of admissible evidence. *State ex rel. Ieyoub v. Racetrac Petroleum, Inc.*, 2001-0458 (La.App. 3 Cir. 6/20/01), 790 So.2d 673. Additionally, while discovery is supposed to be had of materials reasonably calculated to lead to the discovery of admissible evidence, "there are limitations to this rule, however, when justice requires that a party or other person be protected from annoyance, embarrassment, oppression, or undue burden or expense." *Belonga v. Crescent City Dodge, L.L.C.*, No. 2000-3419 (La. 3/9/01); 781 So.2d 1247, 1248. Just such annoyance and undue burden— by Defendants' maneuvering to position themselves to depose Mr. Roussel and Mr. Lauricella more than once— requires the quashing of the subpoenas.

CONCLUSION

For the foregoing reasons, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC move the Court to quash the subpoenas issued to Francois "Tiger" Roussell and Louis Lauricella .

---

[1] Further, should this Court grant the peremptory exceptions these depositions might also be rendered moot- thereby being used only to annoy or unduly burden the deponents.

Respectfully submitted,

_____
RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELE (#22385)
MELISSA M. DESORMEAUX (#33093)
                    Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue - Suite 3702
New Orleans, Louisiana 70170
Telephone:  (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via telecopy, on this the 10th day of May 2011.

_____
STEPHEN M. GELE

-3-

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                        DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____          _____
                                                    DEPUTY CLERK

## RULE 10.1 CONFERENCE

Undersigned counsel hereby certifies, pursuant to Rule 10.1 of the Uniform District Court

Rules, that he contacted opposing counsel and attempted to resolve the discovery dispute addressed

in the *Motion to Quash Subpoenas*, but has been unsuccessful.

Respectfully submitted,

_____
RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELE (#22385)
MELISSA M. DESORMEAUX (#33093)
                    Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue - Suite 3702
New Orleans, Louisiana 70170
Telephone:  (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of
Louisiana, Inc. and Waste Remediation of
Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to
counsel of record for all other parties, via telecopy, on this the 10th day of May 2011.

_____
STEPHEN M. GELE

1967

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                              DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____          _____
                                                  DEPUTY CLERK

### FREDERICK R. HEEBE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO QUASH SUBPOENAS

Defendant, Frederick R. Heebe, through undersigned counsel, respectfully submits this Memorandum in Opposition to the Motion to Quash Subpoenas filed by plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.

On May 20, 2011, counsel for Mr. Heebe contacted the Court to inquire about an expedited hearing on plaintiffs' motion to quash. The Court advised defendant's counsel that it had set plaintiffs' motion for hearing on May 19, 2011 at 10:00 a.m., but neither plaintiffs nor defendants appeared. Defendant's counsel advised that defendants received no notice of the hearing and the Court stated that was because plaintiffs' counsel indicated on the Order that service would be made by plaintiffs' office rather than the sheriff. Defendant's counsel then contacted plaintiffs' counsel who indicated that he would contact the Court to request an expedited hearing on plaintiffs' motion to quash.

As shown below, plaintiffs seek to modify the normal course of discovery and to require defendant to depose plaintiffs' principals on plaintiffs' timetable. Plaintiffs' cannot demonstrate good cause necessary for the subpoenas to be quashed and there is nothing in the law, or the particular facts of this case, which requires defendant to wait to depose plaintiffs' principals.

### FACTS

This lawsuit was filed by plaintiffs on February 25, 2011. On April 19, 2011, Heebe's counsel sent a written request to plaintiffs' counsel to provide dates for the scheduling

of the depositions of plaintiffs' principals, Louis Lauricella ("Lauricella") and Francis (Tiger) Roussel ("Roussel"). Heebe's counsel offered several open dates in May, 2011. In response, plaintiffs' counsel requested a telephone conference to discuss deposition scheduling. The attorneys spoke by telephone on April 29, 2011. Plaintiffs' counsel refused to schedule any depositions prior to August of 2011. Plaintiffs' counsel proposed that all written discovery be completed first, to take place between now and August, and that no depositions be taken until all written discovery is complete. Notably, at the time, plaintiffs' counsel has not yet issued any document requests or other written discovery to Heebe or any other party.

Heebe's counsel sent plaintiffs' counsel a letter on April 29 rejecting plaintiffs' proposed discovery schedule and again requested that he select dates for the depositions. *See* Exh. "A," attached. In response, plaintiffs' counsel filed a Motion for Scheduling Order arguing that the purported complexity of the facts and law in this suit require this Court to issue a discovery schedule.

Heebe caused subpoenas to be issued to Lauricella and Roussel on May 4, 2011 setting their depositions for May 25 and May 26. On that same date, plaintiffs issued their first set of Interrogatories and Requests for Production of Documents to defendants.

Plaintiffs now move to quash Heebe's subpoenas on the grounds that (1) defendants have filed exceptions which have not been heard; (2) plaintiffs have issued written discovery which has not been answered; (3) plaintiffs' motion for scheduling order has not been heard; and (4) this matter involves purportedly "complex" law and facts. *See* Plaintiffs' Memorandum in Support of Motion to Quash Subpoenas. Plaintiffs also speculate that because written discovery is not complete, the depositions of Lauricella and Roussel are premature and will result in multiple depositions. *Id.* None of these alleged reasons serves as a justification for quashing the subpoenas setting depositions of plaintiffs' principals, Lauricella and Roussel by defendants. Plaintiffs have made no showing whatsoever that would justify the denial of Heebe's right to conduct discovery. Plaintiffs' motion to quash should, therefore, be denied.

## LAW AND ARGUMENT

1.  **Plaintiffs Must Demonstrate "Good Cause" Supported By Adequate Reasons For The Relief Sought.**

The trial court has broad discretion in ruling on discovery issues. *Johnson v. La. Dept. of Labor, Off. of Worker's Compensation*, 98-CA-0690, p.8 (La. App. 1 Cir. 5/14/99), 737 So. 2d 898, 902; *Moak v. Cent. R. Co.*, 631 So. 2d 401, 403 (La. 1994). As stated by the Louisiana Supreme Court, the basic objectives of the discovery process are:

> (1) to afford all parties a fair opportunity to obtain facts pertinent to the litigation, (2) to discover the true facts and compel disclosure of these facts wherever they may be found, (3) to assist litigants in preparing their cases for trial, (4) to narrow and clarify the basic issues between the parties, and (5) to facilitate and expedite the legal process by encouraging settlement or abandonment of less than meritorious claims.

*Moak*, 631 So. 2d at 403 (*quoting Hodges v. So. Farm Bureau Cas. Ins. Co.*, 433 So. 2d 125, (La. 1981)).

In order to achieve these objectives, "the courts are to construe the discovery statutes liberally and broadly." *Moak*, 631 So. 2d at 403 (emphasis added). The broad scope of discovery is reflected in article 1422 which permits a party to "obtain discovery regarding *any* matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party...." La. Code Civ. P. art. 1422.

Further, "[d]iscovery is designed generally to proceed at the initiative of the parties without requiring the involvement of the court." *MTU of North America, Inc. v. Raven Marine, Inc.*, 475 So. 2d 1060, 1070 (La. 1985). Thus, the parties are required to participate in discovery *voluntarily* and to adequately respond to all *reasonable* discovery requests. *LeJeune v. Lafayette Tower Service*, 94-1240, p.4 (La. App. 3 Cir. 4/5/95), 653 So. 2d 112, 114. Further, as stated by the Louisiana Supreme Court: "Ordinarily, **the party to the suit is presumed to have the unlimited right of discovery against another party.**" *Nicholson v. Holloway Planting Co., Inc.*, 284 So. 2d 898, 903 (La. 1973) (*quoting Chesson v. Hungerford*, 228 So. 2d 332, 335 (La. App. 3 Cir. 1969)). Accordingly, the party seeking to avoid production of the information sought bears the burden of proving his objection to its production. *Ogea v. Jacobs*, 344 So. 2d

953, 955 (La. 1977); *Chesson*, 228 So. 2d at 335.

> The Code of Civil Procedure also provides:

> Unless the court upon motion, for the **convenience of parties and witnesses and in the interest of justice**, orders otherwise, methods of discovery may be used in any sequence and the fact that a party is conducting discovery, whether by deposition or otherwise, **shall not operate to delay any other party's discovery.**

La. Code Civ. P. art. 1427 (emphasis added).  Thus, the Code permits methods of discovery to be used in any sequence and the fact that one party desires to conduct one form of discovery does not preclude another party from engaging in other forms of discovery.  *Id.*  Further, for the Court to deviate from this general rule, the moving party must show that the modification is "for the convenience of parties and witnesses and in the interest of justice."  *Id.*

In interpreting the federal counterpart to article 1427, Rule 26(d)(2) of the Federal Rules of Civil Procedure,[1] it has been said that:

> The principal effect of Rule 26(d) is 'to eliminate any fixed priority in the sequence of discovery.'  A court has discretion to vary the usual priority, however, such relief is granted '**only for the most obviously compelling reasons.**'

*Gabarick v. Laurin Maritime (America), Inc.*, 2008 W.L. 3560426 (E.D. La. 2008) *quoting* Comment to Fed.R.Civ.P. 26(d) (quoting 2A Barron & Holtzoff, *Federal Practice and Procedure* 44-47 (Wright ed.1961) (emphasis added).  Absent this showing, courts should not deviate from the general rule that discovery proceed in any order.

Moreover, the issuance of a protective order, as sought by plaintiffs here, is governed by Article 1426 of the Louisiana Code of Civil Procedure.  This article permits the court, upon motion "**and for good cause shown**" to enter "any order which justice requires to

---

[1]  As the Louisiana discovery provisions are substantially similar to the federal provisions, consideration of federal jurisprudence on discovery is appropriate.  *Ogea v. Jacobs*, 344 So.2d 953, 957 (La. 1977).  Rule 26(d)(2) states:

(2)    Sequence. Unless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:

    (A)    methods of discovery may be used in any sequence; and
    (B)    discovery by one party does not require any other party to delay its discovery.

Fed. R. Civ. P. 26(d)(2).

protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." La. Code Civ. Pro. Art. 1426(A). Contrary to plaintiffs' argument that the burden rests with Heebe to prove the discovery sought is "relevant":

> The burden rests on the party whose deposition is sought to show 'good cause' for prohibiting or for limiting the scope of the examination.

*Chesson*, 228 So. 2d at 335 (emphasis added). In discussing the showing that must be made by a party seeking a protective order, the Louisiana Supreme Court holds:

> There must be a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause. The existence of good cause for a protective order is a factual matter to be determined from the nature and character of the information sought weighed in the balance of the factual issues involved and a comparison of the consequential hardships caused by granting or denying the order.

*MTU of North Am., Inc. v. Raven Marine, Inc.*, 475 So. 2d 1063, 1069 (La. 1985) (emphasis added).

## III. Plaintiffs Have Not Made A Sufficient Showing To Justify Quashing The Subpoenas.

There can be no doubt that the "reasons" supplied by plaintiffs for quashing the subpoenas are stereotypical and conclusory, and therefore, insufficient. Plaintiffs have not supplied adequate reasons; have not shown good cause; and have not shown that quashing the subpoenas is for the convenience of all parties or in the interests of justice.

Plaintiffs cannot make the showing necessary for this Court to quash the subpoenas issued for deposition of plaintiffs' principals. There is no support in the law that depositions should proceed in any particular order or that written discovery should be completed first. For example, in *Boggs v. Highland Towing, LLC*, 1999 W.L. 539459 (E.D. La. 1999), the parties disputed, among other things, the order in which depositions should be taken. The defendant noticed the plaintiff's deposition well prior to the plaintiff's issuance of notice for the deposition of the defendant's captain. Nonetheless, the plaintiff resisted appearing for the deposition urging that the defendant's captain should be deposed first. The district court, citing Rule 26(d)(2), the federal counterpart to article 1427, found there was no justification for delaying the plaintiff's deposition, holding:

> There appears to be no reason why the deposition of the captain should occur before the deposition of the plaintiff. On the contrary, it makes sense in this case that **the party whose allegations commenced the lawsuit should be deposed first so that a full understanding of his claims may be obtained before other discovery occurs.**

*Id.*, at *2 (emphasis added).

Plaintiffs cannot supply a single valid reason, much less "good cause," for prohibiting Heebe from conducting depositions until written discovery is complete or the exceptions are heard. While it may be more convenient and beneficial for plaintiffs to attempt to gather proof for their purported claims prior to being deposed, the law does not require defendants to sit back and wait for this to happen. *See Baggs*, 1999 W.L. 539459, *2. Defendants are entitled to confront plaintiffs regarding the serious allegations they have raised in this lawsuit. *Id.*; *see also Chesson*, 228 So. 2d at 335 (holding that where plaintiff in reconvention could not show that he would be subjected to "annoyance, embarrassment, oppression, or undue expense by submitting to an unrestricted examination" he was not entitled to a protective order). Defendants are not required to conduct their discovery on plaintiffs' timetable.

Equally unavailing is plaintiffs' suggestion that the depositions are premature because written discovery is not complete, and, as a result, defendants will be required to notice the depositions of Lauricella and Roussel twice. Plaintiffs' argument is pure speculation. When, and if, a second deposition of either witness is noticed, plaintiffs may have better legal footing upon which to base a motion to quash. At present, however, this argument cannot seriously be considered.

Moreover, the only written discovery issued has been *by plaintiffs to defendants*. Answering this discovery will have no effect on plaintiffs' depositions by defendants. Plaintiffs' ability to participate in depositions is not contingent on first obtaining document production from defendants. Plaintiffs do not need to obtain documents from defendants before they are able to respond to a question in a deposition. Plaintiffs presumably filed the present claims in this lawsuit without the documents they now claim are needed, and defendants are entitled to question plaintiffs as to those matters within their personal knowledge upon which the litigation

6

was brought. As in *Baggs*, "it makes sense ... that the party whose allegations commenced the lawsuit should be deposed first so that a full understanding of his claims may be obtained *before other discovery occurs*." *Baggs*, 1999 W.L. 539459, at *2 (emphasis added).

Additionally, the complexity of the law has no bearing on the depositions of Lauricella or Roussel, as neither could be expected to testify as to the law, but merely the facts. Further, that the facts are unduly complex, which is denied, is of no moment. Plaintiffs are not permitted to file a lawsuit containing complicated facts and then use that as an excuse for refusing to participate in discovery. Complicated or not, plaintiffs brought this lawsuit and must be prepared to supply in discovery the bases for the serious claims alleged.

Further, granting plaintiffs' motion would not serve the interest of justice and would be materially unfair to defendants. Restricting a defendant's ability to depose the plaintiffs until after the plaintiffs have completed written discovery is manifestly unfair.

Certainly, in light of all these factors, there can be little doubt that plaintiffs have not carried their burden of proof on the motion to quash. Plaintiffs have supplied nothing more than "stereotyped and conclusory statements" in support of the motion. *MTU*, 475 So. 2d at 1069. They have not demonstrated adequate reasons for prohibiting Heebe from taking the depositions of Lauricella and Roussel and have not demonstrated good cause. The motion must, therefore, be denied.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Quash Subpoenas should be denied.

Respectfully submitted,

Kyle Schonekas, 11817
William P. Gibbens, 27225
Andrea V. Timpa, 29455
SCHONEKAS, EVANS, McGOEY
  & McEACHIN, L.L.C.
Poydras Center
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
(504) 680-6050

Attorneys for Frederick R. Heebe

7                                    2011 05 20 AVT MEMO OPP MOT QUASH 1967.doc

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this _____ day of May, 2011.

WILLIAM P. GIBBENS



FILED
MAY 2 0 2011
DEPUTY CLERK
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                              DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____        _____
                                              DEPUTY CLERK

### MOTION FOR EXPEDITED HEARING
### WITH INCORPORATED MEMORANDUM OF LAW

NOW COMES, defendant, Frederick R. Heebe, through undersigned counsel, who respectfully requests that this Court set an expedited hearing on plaintiffs' Motion to Quash Subpoenas as follows:

1.

Heebe caused subpoenas to be issued to plaintiffs' principals, Louis Lauricella and Tiger Roussel, on May 4, 2011 setting their depositions for next week, May 25 and May 26, 2011.

2.

Plaintiffs filed a Motion to Quash the Subpoenas on or around May 10, 2011. On the Rule to Show Cause Order, plaintiffs indicated that plaintiffs would serve the order setting the hearing date on defendants.

3.

Heebe does not believe that plaintiffs have demonstrated sufficient cause to justify quashing the subpoenas and has filed an Opposition to plaintiffs' Motion.

4.

Heebe learned today that this Court set a hearing on plaintiffs' Motion for Thursday, May 19, 2011 at 10:00 a.m. However, none of the defendants, including Heebe, were notified in advance of the hearing date by the Court or plaintiffs.

5.

Plaintiffs' counsel has advised that he was also unaware of the hearing date. As a result, neither plaintiffs nor defendants appeared at the May 19 hearing.

6.

Because the depositions are scheduled for May 25 and May 26, Heebe asks this Court to schedule an expedited hearing on plaintiffs' Motion for Monday, May 23 or Tuesday, May 24.

**WHEREFORE**, defendant, Frederick R. Heebe, prays that this Motion be granted and that an expedited hearing be set on plaintiffs' Motion to Quash Subpoenas on Monday, May 23 or Tuesday, May 24, 2011 and for such other and further relief as is appropriate under the circumstances.

Respectfully submitted,

Kyle Schonekas, 11817
Joelle F. Evans, 23730
Andrea V. Timpa, 29455
SCHONEKAS, EVANS, McGOEY
   & McEACHIN, L.L.C.
Poydras Center
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
(504) 680-6050

Attorneys for Frederick R. Heebe

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by email and by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this _26th_ day of May, 2011.

Kyle Schonekas

2



FILED

MAY 2 0 2011

DEPUTY CLERK
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                      DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____              _____
                                                    DEPUTY CLERK

## ORDER

The Motion for Expedited Hearing filed by defendant, Frederick R. Heebe, having

been considered;

**IT IS ORDERED** that the Motion to Quash Subpoenas filed by plaintiffs,

Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC, be and is

hereby set for hearing on the _____ day of _____, 2011 at ___ o'clock ___.m.

New Orleans, Louisiana this __23__ day of __May__, 2011.

                                                    _____
                                                    JUDGE

_____
                                                    ENTERED ON MINUTES

                                                    MAY 2 5 2011

**PLEASE SERVE:**
Concrete Busters of Louisiana, Inc. and
Waste Remediation of Plaquemines,
LLC through their attorneys of record:
Randall A. Smith
Stephen M. Gele
Melissa M. Desormeaux
Smith & Fawer, LLC
201 St. Charles Avenue
Suite 3702
New Orleans, Louisiana  70170

*Reasons*

*The Court previously set this matter for hearing on an expedited basis, but neither party appeared and neither party notified the court that the matter was not going forward. This matter will be set on the regular rule docket.*

A TRUE COPY

_____
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

3

5-20-11

$S6$, $PC$

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS COURT

STATE OF LOUISIANA

NO.   11-2129                                                          DIVISION "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE,  ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____        _____

                                                            DEPUTY CLERK

## MOTION AND INCORPORATED MEMORANDUM FOR SCHEDULING ORDER

NOW INTO COURT, through undersigned counsel, come Plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC, and who hereby request, pursuant to

Article 1551 of the Louisiana Code of Civil Procedure, a Scheduling Conference before this

Honorable Court, as follows:

I.

Plaintiffs' *Petition for Damages* was filed on February 25, 2011.

II.

Defendants requested an extension of time to file responsive pleadings.

III.

Defendants have filed peremptory exceptions, the last of which were filed a couple of weeks

ago, which have yet to be set for hearing.  The peremptory exceptions, if granted, could dismiss

substantial portions, if not all, of plaintiffs' claims.  No answers have been filed.

IV.

Defendant Fred Heebe has demanded depositions of plaintiffs later this month.

V.

This litigation involved complex issues of law and fact, including the potential complication

that relevant documents may have been seized by the United States Government.

VI.

A scheduling order, pursuant to Article 1551(A)(6) and (8) of the Louisiana Code of Civil

Procedure, regarding the "scheduling of discovery" and the "identification of witnesses, documents,

and exhibits," will assist in the matter proceeding orderly and with minimum disputes between the

parties brought before this Honorable Court.

**WHEREFORE,** Concrete Busters and Waste Remediation request that this *Motion for*

*Scheduling Order* be granted, and a scheduling conference be set for the purpose of establishing a

scheduling order governing, *inter alia*, written discovery, depositions and experts.

Respectfully Submitted,

RANDALL A. SMITH, T.A. (No. 2117)
STEPHEN M. GELÉ (#22385)
MELISSA M. DESORMEAUX (#33093)
-OF-
SMITH & FAWER, L.L.C.
201 St. Charles Ave., Suite 3702
New Orleans, LA 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of*
*Louisiana, Inc.and Waste Remediation of*
*Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to
all counsel of record, via telecopy, this 20th day of May, 2011. An almost identical version of the
foregoing was furnished to all counsel of record, via telecopy, on the 3rd day of May, 2011, and
believed to have been filed.

STEPHEN M. GELÉ

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.   11-2129                                        DIVISION "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE,  ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____      _____

                                    DEPUTY CLERK

## ORDER

Considering the foregoing:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs' Concrete

Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC's *Motion for Scheduling*

*Order* be and is hereby **GRANTED**; and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that counsel for all parties

appear before this Honorable Court, with their calendars, on the _____ day of _____,

2011, at _____.m. for a scheduling conference.

New Orleans, Louisiana, this ___1st___ day of __June__, 2011.

→ Set for July 13ᵀᴴ, 2011

                                    _____
                                              JUDGE

SERVICE WILL BE EFFECTED PURSUANT TO LA. C.C.P. 1313

A TRUE COPY
_____
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

-1-

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.   11-2129                                                    DIVISION "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE,  ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____        _____

                                                 DEPUTY CLERK

MOTION AND INCORPORATED MEMORANDUM FOR SCHEDULING ORDER

NOW INTO COURT, through undersigned counsel, come Plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC, and who hereby request, pursuant to

Article 1551 of the Louisiana Code of Civil Procedure, a Scheduling Conference before this

Honorable Court, as follows:

I.

Plaintiffs' *Petition for Damages* was filed on February 25, 2011.

II.

Defendants requested an extension of time to file responsive pleadings.

III.

Defendants have filed peremptory exceptions, the last of which were filed a couple of weeks

ago, which have yet to be set for hearing.  The peremptory exceptions, if granted, could dismiss

substantial portions, if not all, of plaintiffs' claims.  No answers have been filed.

IV.

Defendant Fred Heebe has demanded depositions of plaintiffs later this month.

V.

This litigation involved complex issues of law and fact, including the potential complication

that relevant documents may have been seized by the United States Government.

VI.

A scheduling order, pursuant to Article 1551(A)(6) and (8) of the Louisiana Code of Civil Procedure, regarding the "scheduling of discovery" and the "identification of witnesses, documents, and exhibits," will assist in the matter proceeding orderly and with minimum disputes between the parties brought before this Honorable Court.

**WHEREFORE,** Concrete Busters and Waste Remediation request that this *Motion for Scheduling Order* be granted, and a scheduling conference be set for the purpose of establishing a scheduling order governing, *inter alia*, written discovery, depositions and experts.

Respectfully Submitted,

RANDALL A. SMITH, T.A.  (No. 2117)
STEPHEN M. GELÉ (#22385)
MELISSA M. DESORMEAUX (#33093)
-OF-
SMITH & FAWER, L.L.C.
201 St. Charles Ave., Suite 3702
New Orleans, LA 70170
Telephone: (504) 525-2200
Facsimile:  (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc.and Waste Remediation of Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to all counsel of record, via telecopy, this 20th day of May, 2011.  An almost identical version of the foregoing was furnished to all counsel of record, via telecopy, on the 3rd day of May, 2011, and believed to have been filed.

STEPHEN M. GELÉ

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.   11-2129                                                   DIVISION "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE,  ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____        _____

DEPUTY CLERK

ORDER

Considering the foregoing:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs' Concrete

Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC's *Motion for Scheduling*

*Order* be and is hereby **GRANTED**; and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that counsel for all parties

appear before this Honorable Court, with their calendars, on the 13TH day of July,

2011, at 9 : 45 A .m. for a scheduling conference.

New Orleans, Louisiana, this 1st day of June, 2011.

~~JUDGE~~ *law clerk*

SERVICE WILL BE EFFECTED PURSUANT TO LA. C.C.P. 1313

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

-1-

1967

FILED

2011 MAY 23 A 11: 38

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                                  DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____         _____
                                                   DEPUTY CLERK

MOTION TO RESET
MOTION TO QUASH SUBPOENAS

NOW INTO COURT, through undersigned counsel, come plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC (hereafter collectively "Movants").

For the reasons expressed in the attached *Memorandum*, Movants pray that this Court reset for

hearing the *Motion to Quash Subpoenas*, which was previously set for hearing on May 19, 2011, but

not heard.

WHEREFORE, plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of

Plaquemines, LLC move this Court to reset for hearing the *Motion to Quash Subpoenas* issued to

Francois "Tiger" Roussell and Louis Lauricella.

Respectfully submitted,

_____
RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELE (#22835)
MELISSA M. DESORMEAUX (#33093)
Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue - Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of
Louisiana, Inc. and Waste Remediation of
Plaquemines, LLC*

-1-

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via telecopy, on this the 23rd day of May 2011.

STEPHEN M. GELE

FILED

2011 MAY 23   A 11: 37

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CIVIL
DISTRICT COURT

NO: 11-2129                                             DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____          _____
                                              DEPUTY CLERK

### RULE TO SHOW CAUSE

CONSIDERING THE FOREGOING,

IT IS HEREBY ORDERED that defendant Frederick Heebe show cause on the _24_ day

of _June_ 2011, at _9:00_ o'clock _A_.m. why Plaintiffs' *Motion to Quash*

*Subpoenas* should not be granted.

New Orleans, Louisiana this _23rd_ day of May 2011.

_____
J U D G E

SERVICE WILL BE EFFECTUATED
PURSUANT TO LA. C.C.P. ART 1313

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                          DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____      _____
                                              DEPUTY CLERK

MEMORANDUM IN SUPPORT OF
MOTION TO RESET MOTION TO QUASH SUBPOENAS

MAY IT PLEASE THE COURT:

Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC

(collectively "Movants") filed a *Motion to Quash Subpoenas* on May 10, 2011. The record reflects

that this Honorable Court set the *Motion to Quash Subpoenas* for hearing on May 19, 2011.

Undersigned counsel have no record of ever receiving notice of the hearing. Counsel for defendant

Frederick R. Heebe also did not receive notice of the hearing. All counsel were unaware of the

hearing. No one appeared for the hearing on May 19, 2011. Movants and their counsel beg the

Court's indulgence, and request that the Court reset the *Motion to Quash Subpoenas*.

-1-

Respectfully submitted,

_____

RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELÉ (#22385)
MELISSA M. DESORMEAUX (#33093)
Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue - Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via telecopy, on this the 23rd day of May 2011.

_____

STEPHEN M. GELÉ

Page 1 of 1

🖹 - *Click the drill down icon to view detailed return information*

**Service Detail**

| | | | |
|---|---|---|---|
| Serial # | 16 | Date Released for Service | 6/6/2011 |
| Service Code | MOTION | Amount | $20.00 |
| Description | Motion | Balance Due | $0.00 |
| Attorney | Schonekas, Kyle | | |

**Paper Information**

| | |
|---|---|
| Name | CONCRETE BUSTERS OF LA. INC AND WASTE REMEDICATIONTHRU STEPHEN GELE |
| Assigned Deputy | Spindel, Richard |
| Due Date | 6/24/2011 |
| Returned | Yes |

**Returns**

| Date | Time | Returned | Status | Deputy | Address Served |
|---|---|---|---|---|---|
| 🖹 6/7/2011 | | Yes | Personal | Spindel, Richard | 201 St Charles N O , LA 70130 |

 Back to Case Summary 

1967

CIVIL DISTRICT COURT—PARISH OF ORLEANS
DIVISION: D

You are advised that your Rule, in
*Concrete Busters* vs. *Frederick Heebe* ,
CDC No. 2011-2129 , filed on 5-26-11 ,
is set for hearing on 6-24-11 ,
at 9 Am ,
It is your duty, as mover in the rule, to notify all parties.

_____, Minute Clerk
Division
BY ORDER OF THE COURT

Received:
May. 23. 2011 10:47AM    Smith & Fawe    C          May 23 2011 10:37am      No. 6644   P.   12

1967

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                    DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____     _____

                                        DEPUTY CLERK

REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENAS

MAY IT PLEASE THE COURT:

Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC

(collectively "Movants") filed a *Motion to Quash Subpoenas* to quash deposition subpoenas issued

on May 4, 2011 commanding Louis Lauricella and Francois "Tiger" Roussell to appear to be

deposed on May 25 and May 26, 2011, . Defendant Frederick R. Heebe (hereinafter "Heebe") filed

a *Memorandum in Opposition to Plaintiffs' Motion to Quash Subpoenas*, to which Movants reply:

**Defendants Do Not Seek The Normal Course of Discovery**

Defendant Heebe argues that "plaintiffs seek to modify the normal course of discovery."

However, setting depositions unilaterally[1] in a complex case before any written discovery has been

produced, before answers have been filed, within weeks of any responsive pleadings being filed,

before exceptions have been set for hearing, and before any scheduling order has been issued, is not

the "normal course of discovery."

It is not normal for depositions to proceed on all issues before answers have been filed.

_____

[1]It should be noted that defendant Heebe has never represented that the other defendants
are available for the depositions his counsel unilaterally set. It should further be noted that
counsel Edward J. Castaing, Jr. represents defendant River Birch Incorporated and Hwy 90,
LLC, and is currently proceeding with a criminal trial in the United States District Court for the
Eastern District of Louisiana.

-1-

May. 23. 2011 10:47AM    Smith & Fawer   LC          May 23 2011 10:37am          No. 6644    P.   /12

Movants note that the exceptions that pend are peremptory- not dilatory- exceptions, and therefore Heebe has already waived any right to file dilatory or declinatory exceptions, and would waive no right to file other peremptory exceptions by now filing an answer. By not timely filing an answer, Heebe seeks to conduct depositions before revealing his affirmative defenses in his answer. Without knowing the affirmative defenses, it will be difficult for counsel to determine whether questions are reasonably calculated to lead to admissible evidence. Further, if this Court grants the peremptory exceptions, in whole or part, a substantial part, if not all, of the case may be dismissed, rendering these depositions, or substantial portions thereof, moot. Defendant Heebe would therefore require movants and Francois "Tiger" Roussell and Louis Lauricella to undergo undue burden and expense by demanding depositions that may be rendered moot.

It is also not normal for depositions to proceed before any written discovery. Heebe contends that "plaintiff counsel has not yet issued any document requests or any other written discovery to Heebe or any other party." However, on May 4, 2011, Plaintiffs propounded upon defendants, including Heebe, a *First Set of Interrogatories and Request for Production of Documents*. To date plaintiffs have not received any responses, despite the fifteen day delay provided by Articles 1458 and 1462 of the Louisiana Code of Civil Procedure passing. Heebe demands Louis Lauricella and Francois "Tiger" Roussell appear to be deposed quickly, on a date unilaterally set by his counsel, but fails to timely respond to written discovery propounded upon him. Normally, basic written discovery is exchanged before depositions proceed to allow for the narrowing of issues, and therefore questioning, at depositions. Heebe's demand that he must quickly depose witnesses, before the exchange of written discovery, is not normal or customary.

Another reason why depositions usually are conducted after answers are filed, and initial written discovery is exchanged, is to prevent requests to re-depose witnesses. Heebe conclusorily argues that the concern of movants that "the depositions of Lauricella and Roussell... will result in multiple depositions" does not serve as a justification for quashing the subpoenas. However, Heebe never assures movants or this Court that Heebe does not intend to seek multiple depositions of Louis Lauricella and Francois "Tiger" Roussell.

Received:
May. 23. 2011 10:47AM    Smith & Fawe    LC         May 23 2011 10:37am         No. 6644   P. 5/12

**Plaintiffs Do Not Refuse To Participate In Discovery**

Defendant Heebe accuses plaintiffs of "refusing to participate in discovery." Plaintiffs have never refused to participate in discovery. Plaintiffs offered counsel for defendant Heebe a rational timetable for discovery to proceed, common for commercial civil litigation; and counsel for defendant Heebe refused to participate in any such discussion. Plaintiffs then, to facilitate discovery, prepared a *Motion for Scheduling Order* seeking a scheduling order, pursuant to Article 1551(A)(6) and (8) of the Louisiana Code of Civil Procedure, regarding the "scheduling of discovery." Plaintiffs forwarded a copy of the *Motion for Scheduling Order* to counsel for Heebe.[2] Plaintiffs never refused to participate in discovery. Plaintiffs only sought, and still seek, a scheduling order to rationally sequence the pleadings and discovery.

**The Plaintiffs Need Not Defend Their Good Faith In Filing Suit**

Defendant Heebe implies that movants seek to quash the depositions because the deponents as "plaintiffs" have filed a frivolous suit they can not defend in deposition. Such an accusation coming from defendant Heebe is laughable. The deponents are not the plaintiffs. The testimony of the deponents would not necessarily be the sole, or even the primary, source of evidence for the allegations of plaintiffs. Good faith bases for the filing of the suit, as detailed in the Petition, abound: the Louisiana inspector general has issued a report; ethics charges have been filed; a parish president has resigned; the U.S. government has seized thousands of documents; a federal indictment has been filed; a multimillion dollar public contract has been canceled; a multimillion dollar federal civil lawsuit has been settled; and dozens of news articles have been published. Movants are not concerned that they have no basis for their lawsuit and therefore fear their principals' depositions. Rather, movants seek a comprehensive discovery plan guided by this Court, rather than the spasm of disjointed and unreasonable discovery demands of defendant Heebe.

---

[2] Counsel for Movants believed the *Motion for Scheduling Order* to be filed on May 3, 2011, as evidenced by the references to the *Motion for Scheduling Order* in the later filed *Motion to Quash Subpoenas*. When counsel realized that the *Motion for Scheduling Order* had inadvertently not been filed, counsel immediately filed the *Motion for Scheduling Order*.

May. 23. 2011 10:47AM   Received:   Smith & Fawer   LC          May 23 2011 10:37am          No. 6644   P. ? /12

**No Jurisprudence Justifies Heebe's Unreasonable And Odd Demands**

Defendant Heebe sprinkles jurisprudence in his opposition memorandum, but none of the cases apply. Defendant Heebe primarily cites an unpublished federal district court decision as jurisprudential authority for his demands, to wit *Baggs v. Highland Towing, L.L. C.*, No. Civ. A. 99-1318, 1999 WL 539459 (E.D.La. July 22, 1999). *Baggs* is neither controlling authority, nor applicable. *Baggs* addressed whether a personal injury plaintiff could belatedly demand that a key defense witness be deposed before the plaintiff, not whether one defendant could unilaterally set depositions in a complex commercial case. *Id.* Defendant Heebe also cites *MTU of North America, Inc. v. Raven Marine, Inc.*, 475 So.2d 1063, 1069 (La.1985), which addresses the positing of specific questions during a deposition, not the unilateral setting of depositions before the issuance of a scheduling order. Heebe has no jurisprudential basis for his contentions.

**Defendant Heebe Should Not Have Unilaterally Set The Depositions**

If unwilling to agree to, or wait for the Court to set, a scheduling order, defendant Heebe should have filed a motion to compel the depositions, per Article 1469 of the Louisiana Code of Civil Procedure, rather than unilaterally setting the depositions, when his counsel decided to reject any discovery schedule and insist on the depositions before the filing of answers or exchange of written discovery. Parties should not be allowed to unilaterally set depositions without due consultation with opposing counsel and the deponents. Had counsel for Heebe not terminated discussions regarding the scheduling of depositions, and issued subpoenas, counsel for Heebe would have learned that prospective deponent Louis Lauricella had, and has, plans to be out of town on the date that counsel for Heebe chose to conduct the deposition.

**CONCLUSION**

Defendant Heebe should not be permitted to engage in the procedural gamesmanship of demanding depositions within a few weeks of filing responsive pleadings, before filing an answer, while exceptions are pending, before a requested scheduling order is established, before responding to written discovery, and without allowing for the availability of the deponents and other counsel. This Honorable Court should quash the subpoenas issued to Francois "Tiger" Roussell and Louis

Lauricella, set the *Motion for Scheduling Order*, and establish a scheduling order rationally sequencing pleadings and discovery.

Respectfully submitted,

RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELE (#22385)
MELISSA M. DESORMEAUX (#33093)
Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue - Suite 3702
New Orleans, Louisiana 70170
Telephone:  (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via telecopy, on this the 23rd day of May 2011.

STEPHEN M. GELE

1967
PC

FILED

~~~~ MAY 25  P 12: 05

CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                                        DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____        _____
                                                          DEPUTY CLERK

## FREDERICK R. HEEBE'S MOTION FOR
## CONTEMPT, SANCTIONS AND TO COMPEL DISCOVERY

NOW COMES, defendant, Frederick R. Heebe, through undersigned counsel,

who respectfully submits this Motion for Contempt, Sanctions and to Compel Discovery.  As

more fully shown in the Memorandum in Support accompanying this Motion, Plaintiffs'

principals, Louis Lauricella ("Lauricella") and Francis "Tiger" Roussel ("Roussel"), should be

held in contempt and sanctioned for failing to comply with subpoenas commanding their

appearance at depositions set for May 25 and May 26, 2011.  Moreover, Lauricella and Roussel

should be compelled by Order of this Court to immediately appear for depositions and ordered to

pay all fees and costs incurred by Heebe in connection with this Order.

WHEREFORE, Frederick R. Heebe, prays, that after hearing, this Motion be

granted and an Order entered holding Louis Lauricella and Francis "Tiger" Roussel in contempt

of court; sanctioning them; and compelling them to immediately appear for depositions and

further ordering them to pay all fees and costs incurred by Heebe in connection with this Motion

and Order; and for such other and further relief as is appropriate under the circumstances.

06-06-11

 

Respectfully submitted,

_W MW VWV_

Kyle Schonekas, 11817
William P. Gibbens, 27225
Andrea V. Timpa, 29455
SCHONEKAS, EVANS, McGOEY
  & McEACHIN, L.L.C.
Poydras Center
650 Poydras Street, Suite 2105
New Orleans, Louisiana  70130
(504) 680-6050

Attorneys for Frederick R. Heebe

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served

upon all counsel of record by placing a copy of same in the United States Mail, properly

addressed and postage prepaid, this 26th day of May, 2011.

_WW P WM_

WILLIAM P. GIBBENS

2011 05 26 avt. mut contempt sanctions.1967

FILED

'11 MAY 26 P 12: 05

CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                    DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____          _____
                                               DEPUTY CLERK

## ORDER

The Motion for Contempt, Sanctions and to Compel Discovery filed by
defendant, Frederick R. Heebe, having been considered;

**IT IS ORDERED** that the plaintiffs' representatives, Louis Lauricella and
Francis "Tiger" Roussel, appear and show cause on the _24_ day of _June_,
2011 at _9_ o'clock _A_.m., why the Motion should not be granted.

New Orleans, Louisiana this _27_ day of _May_, 2011.

_____
                    JUDGE

ENTERED ON MINUTES

JUN 0 6 2011

**PLEASE SERVE:**
Concrete Busters of Louisiana, Inc. and
Waste Remediation of Plaquemines, LLC
through their attorneys of record:
Randall A. Smith
Stephen M. Gele
Melissa M. Desormeaux
Smith & Fawer, LLC
201 St. Charles Avenue
Suite 3702
New Orleans, Louisiana 70170

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

2011 05.26  avt. mot contempt sanctions.1967

 

**FILED**

COI MAY 26  P 12: 05

CIVIL

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                              DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____       _____
                                          DEPUTY CLERK

### FREDERICK R. HEEBE'S MEMORANDUM IN SUPPORT
### OF MOTION FOR CONTEMPT, SANCTIONS AND TO COMPEL DISCOVERY

Defendant, Frederick R. Heebe ("Heebe"), through undersigned counsel, respectfully submits this Memorandum in Support of his Motion for Contempt, Sanctions and to Compel Discovery.  As shown below, plaintiffs' principals, Louis Lauricella ("Lauricella") and Francis "Tiger" Roussel ("Roussel"), should be held in contempt and sanctioned for failing to comply with subpoenas commanding their appearance at depositions set for May 25 and May 26, 2011.  Moreover, Lauricella and Roussel should be compelled by Order of this Court to immediately appear for depositions and ordered to pay all fees and costs incurred by Heebe in connection with this Motion and Order.

### FACTS

This lawsuit was filed by plaintiffs on February 25, 2011.  On April 19, 2011, Heebe's counsel sent a written request to plaintiffs' counsel to provide dates for the scheduling of the depositions of Lauricella and Roussel.  Heebe's counsel offered several open dates in May, 2011.  In response, plaintiffs' counsel requested a telephone conference to discuss deposition scheduling.  The attorneys spoke by telephone on April 29, 2011.  Plaintiffs' counsel refused to schedule any depositions prior to August of 2011.  Plaintiffs' counsel proposed that all written discovery be completed first, to take place between now and August, and that no depositions be taken until all written discovery is complete.  Notably, at the time, plaintiffs' counsel has not yet issued any document requests or other written discovery to Heebe or any other party.

 

Heebe's counsel sent plaintiffs' counsel a letter on April 29 rejecting plaintiffs' proposed discovery schedule and again requested that he select dates for the depositions. *See* Exh. "A," attached. In response, plaintiffs' counsel filed a Motion for Scheduling Order arguing that the purported complexity of the facts and law in this suit require this Court to issue a discovery schedule. Plaintiff's Motion for Scheduling Order has never been set for hearing. Frustrated with plaintiffs' lack of cooperation, Heebe caused subpoenas to be issued to Lauricella and Roussel on May 4, 2011 setting their depositions for May 25 and May 26, on dates suggested to plaintiffs' counsel on April 19, 2011. The subpoenas subsequently were served on plaintiffs' counsel.

On May 10, 2011, Plaintiffs moved to quash Heebe's subpoenas on various baseless grounds. Plaintiffs' counsel indicated on the Rule to Show Cause Order, that plaintiffs would serve the order setting the hearing date on defendants. Plaintiffs' counsel mailed a copy of the Motion and blank Rule to Heebe's counsel. The Court set the hearing on the motion for Thursday, May 19, 2011 at 10:00 a.m. However, none of the defendants, including Heebe, received any notice of the hearing date by the Court or plaintiffs. Neither party appeared at the hearing. Heebe unsuccessfully attempted to have the Motion to Quash Subpoenas reset on an expedited basis.

On May 20, 2011, defendants filed an Opposition to Plaintiffs' Motion to Quash and filed a motion requesting an expedited hearing. Heebe's counsel also contacted plaintiffs' counsel on May 20, 2011, regarding the Motion to Quash Subpoenas and the depositions. Plaintiffs' counsel advised Heebe's counsel that Lauricella and Roussel would not appear for their properly noticed and scheduled depositions. *See* May 20, 2011 Letter from Andrea V. Timpa to Stephen Gele, attached as Exh. "B."

On May 23, 2011, plaintiffs filed a Motion to Reset Motion to Quash Subpoenas, again indicating that plaintiffs will serve the Order setting the hearing date on defendants.

2011.05.26.svt memo contempt sanctions.1967

 

## LAW AND ARGUMENT

I. **LAURICELLA AND ROUSSEL SHOULD BE HELD IN CONTEMPT OF COURT.**

Article 1357 of the Louisiana Code of Civil Procedure provides:

> A person who, without reasonable excuse, fails to obey a subpoena may be adjudged in contempt of the court which issued the subpoena. The court may also order a recalcitrant witness to be attached and brought to court forthwith or on a designated day.

La. Code Civ. P. art. 1357. Article 221 of the Louisiana Code of Civil Procedure defines a contempt of court as "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La. Code Civ. P. art. 221.

There are two types of contempts of court, direct and constructive. *Id.* It is well-settled that the failure to appear for a deposition, when the subpoena has been properly served, is a contempt of court. La. Code Civ. P. art. 222 (defining a direct contempt of court as "a contumacious failure to comply with a subpoena"); La. Code Civ. P. art. 224 (defining a constructive contempt of court as the "willful disobedience of any lawful judgment, order, mandate, writ, or process of the court" or "any other act ... intended to obstruct or interfere with the orderly administration of justice..."); *Johnson v. Nguyen*, 2000-CA-1148, p.4 (La. App. 4 Cir. 7/11/01), 793 So.2d 370, 373 ("[t]he failure to appear for a deposition pursuant to a properly served subpoena is a contumacious act, which is properly punishable by the trial judge"); *Bernard v. State Farm Mut. Auto Ins. Co.*, 1998-CA-2509, pp.9-10 (La. App. 4 Cir. 6/30/99), 742 So.2d 609, 613-14 (non-party witnesses' "failure to appear for a deposition pursuant to a properly-served subpoena qualifies as a contumacious act, which may be punished after a trial by the judge").

Here, the subpoenas were properly served on plaintiffs' counsel. Neither Lauricella nor Roussel appeared for their depositions, and in fact, their counsel advised in advance of the depositions that they would not appear. Accordingly, they should be held in contempt of this court.

## II.   LAURICELLA AND ROUSSEL SHOULD BE SANCTIONED.

The trial court has wide discretion in deciding whether to impose sanctions for contempt of court. *Johnson,* 793 So.2d at 373. That decision and the court's choice of sanctions may not be reversed absent an abuse of discretion. *Id.* Nonetheless, the court's power to impose sanctions is limited by law. La. Const. Art. V, §2. Punishment for contempt of court is governed by La. R.S. 13:4611. That statute provides, among other things, that a district court may imprison an offender for "a deliberate refusal to perform an act which is yet within the power of the offender to perform...until he performs the act" and/or impose "a fine of not more than five hundred dollars or imprisonment for not more than three months, or both." La. R.S. 13:4611(1)(c), (d).

Considering that Lauricella and Roussel refused to appear for their depositions, without any reasonable excuse, the entry of a sanction award against them is appropriate. Heebe strongly urges the imposition of sanctions in these circumstances in order to deter any further recalcitrance by these witnesses.

## III.   LAURICELLA AND ROUSSEL SHOULD BE COMPELLED TO IMMEDIATELY APPEAR FOR DEPOSITIONS.

Article 1469 of the Louisiana Code of Civil Procedure provides, in relevant part, that a party may apply for an order compelling discovery when a deponent refuses to be deposed upon oral examination; or when a corporate party fails to designate an offer to testify on its behalf; or when a party fails to comply with a request for production of documents. La. Code Civ. P. art. 1469.

If a motion to compel discovery is granted:

> the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

La. Code Civ. P. art. 1469(4). Non-party deponents "may properly be liable to pay reasonable expenses incurred in obtaining an order compelling discovery, including attorney's fees." *Smith v. Rodwig,* 382 So.2d 162 (La. 1980). Moreover, if a party persists in his refusal to produce the

discovery sought after having been ordered to do so, he may be held in contempt of court and sanctioned. La. Code Civ. P. art. 1470; 1471.

The trial judge has vast discretion in determining whether a party's refusal to produce discovery is "substantially justified" within the meaning of article 1469. *Bryant v. Justiss Oil Co.*, 2001-832, p.3 (La. App. 3 Cir. 12/12/01), 801 So.2d 659, 662; *Lajeune v. Lafayette Tower Serv.*, 653 So.2d 112, 114 (La. App. 3 Cir. 1995). Groundless and prolonged refusals to comply with reasonable discovery requests, however, clearly merit an award of attorney's fees and expenses under article 1469. *Lajeune*, 653 So.2d at 114.

Since April 19, 2011, Heebe has made numerous reasonable requests for plaintiffs to provide deposition dates for Lauricella and Roussel. Plaintiffs' only objection to the discovery sought is that it is purportedly premature for Lauricella and Roussel to be deposed before written discovery is completed. In furtherance of this groundless argument, plaintiffs have filed a Motion for Scheduling Order, which has never been set for hearing, and a Motion to Quash Subpoenas, which they failed to prosecute timely. Under these circumstances, Lauricella and Roussel should be immediately compelled to appear for depositions. Further, Heebe should be awarded reasonable expenses incurred in obtaining the order, including attorney's fees as per article 1469.

## CONCLUSION

For the foregoing reasons, the Motion for Contempt, Sanctions and to Compel Discovery filed by defendant, Frederick R. Heebe, should be granted.

Respectfully submitted,

Kyle Schonekas, 11817
William P. Gibbens, 27225
Andrea V. Timpa, 29455
SCHONEKAS, EVANS, McGOEY
& McEACHIN, L.L.C.
Poydras Center
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
Telephone: (504) 680-6050

Attorneys for Frederick R. Heebe

2011 05.26.avt memo contempt sanctions 1967



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this 26th day of May, 2011.

_____
WILLIAM P. GIBBENS

2011.05.26.avt memo contempt sanctions.1967


SCHONEKAS
EVANS
McGOEY &
McEACHIN, LLC


FILED

201 MAY 26  P 12: 05

CIVIL
DISTRICT COURT

Kyle Schonekas
504.680.6052
Kyle@semmlaw.com

April 29, 2011

**VIA TELEFAX & U. S. MAIL**
Stephen M. Gele, Esq.
Smith & Fawer, LLC
201 St. Charles Avenue
Suite 3702
New Orleans, Louisiana 70170

Re:   *Concrete Busters, et al v. Heebe, et al*, CDC No. 11-2129 "D-16"

Dear Steve:

As you know, we have been attempting to schedule the depositions of your clients Louis Lauricella and Francis (Tiger) Roussell since April 19.  Andrea has advised me of your request that we stage discovery to do written discovery first and then begin depositions in August.  My client is not agreeable to your proposal.  The Louisiana Code of Civil Procedure permits methods of discovery to be used in any sequence and the fact that one party is conducting discovery does not delay another party's discovery.  La. C.C.P. art. 1427.  Thus, your desire to conduct written discovery does not preclude me from deposing the plaintiffs.

Accordingly, I ask that you please advise of your preference of dates for the depositions of Louis Lauricella and Francis (Tiger) Roussell.  We are available on May 16, 17, 25 and 26.  If we do not hear back from you by Tuesday, May 3, I will have no choice but to notice the depositions without your input.

With best regards, I am

Sincerely,

Kyle Schonekas

*Signed in Mr. Schonekas' absence to avoid delay.*
KDS/


**EXHIBIT**
**A**

 SCHONEKAS
EVANS
McGOEY &
McEACHIN, LLC

 FILED

2011 MAY 26   Andrea V. Timpa
504.680.6050
Andrea@semmlaw.com
CIVIL
DISTRICT COURT

May 20, 2011

**VIA TELEFAX & U. S. MAIL**
Stephen M. Gele, Esq.
Smith & Fawer, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170

Re:   *Concrete Busters, et al v. Heebe, et al*, CDC No. 11-2129 "D-16"

Dear Steve:

Let this confirm our conversation today wherein you advised me that Mr. Lauricella and Mr. Roussell will not appear for their depositions set for May 25 and May 26, 2011.

With best regards, I am

Sincerely,

Andrea V. Timpa /rhv

Andrea V. Timpa

*Signed in Ms. Timpa's absence to avoid delay.*
AVT/rhv



EXHIBIT

**B**

2011.05.20.avt.lu.gele.1967.doc

196-1

PC   6-1-11

Certified
mail
6-10-11

2011 JUN -1 12 4: 10

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

## STATE OF LOUISIANA

NO: 11-2129                                                        DIVISION: "D"

## CONCRETE BUSTERS OF LOUISIANA, INC.
## AND WASTE REMEDIATION OF PLAQUEMINES, LLC

### VERSUS

## FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
## RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____   _____
                                                          **DEPUTY CLERK**

## MOTION TO COMPEL ANSWERS TO INTERROGATORIES
## AND RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

NOW INTO COURT, through undersigned counsel, come plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC (hereafter collectively "Movants").

For the reasons expressed in the attached *Memorandum*, Movants suggest that *Defendant's*

*Responses to Plaintiffs' Interrogatories and Requests for Production of Documents* produced on

May 25, 2011, are wholly insufficient and incomplete, as Defendant Frederick R. Heebe has objected

and/or asserted privilege under the Fifth Amendment of the United States Constitution to every

Interrogatory and Request for Production of Documents. *See* Exhibit "A," *Plaintiffs' Interrogatories*

*and Requests for Production of Documents,* and Exhibit "B," *Defendant's Responses to Plaintiffs'*

*Interrogatories and Requests for Production of Documents* produced on May 25, 2011.

Movants note that this Honorable Court has set Movants' *Motion to Quash Subpoenas* for

hearing on June 24, 2011 at 9:00 a.m., and, in the interest of judicial economy, request that the Court

set this *Motion to Compel Answers to Interrogatories and Responses to Requests for Production of*

*Documents* for hearing also on June 24, 2011 at 9:00 a.m.

**WHEREFORE,** plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of

Plaquemines, LLC move this Court to compel Defendant Frederick R. Heebe to answer the

interrogatories and respond to the requests for production of documents.

-1-

Respectfully submitted,

_____
RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELE (#22835)
MELISSA M. DESORMEAUX (#33093)
                    Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue - Suite 3702
New Orleans, Louisiana 70170
Telephone:  (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via telecopy, on this the 1st day of June 2011.

_____
STEPHEN M. GELE

-2-

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                                    DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____     _____
                                          DEPUTY CLERK

MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ANSWERS TO INTERROGATORIES
AND RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

MAY IT PLEASE THE COURT:

This *Memorandum* is respectfully submitted on behalf of plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC (collectively "Movants") in support

of their motion to compel discovery against defendant Frederick R. Heebe ("Heebe").

I.    **Defendant Heebe Did Not Answer A Single Interrogatory Or Produce A Single
      Document In Response To Discovery**

In *Defendant's Responses to Plaintiffs' Interrogatories and Requests for Production of*

*Documents* Heebe objected to every interrogatory and request for production of documents. Not one

iota of information was produced. Not even a privilege log was produced identifying the documents

or types of documents Heebe claimed to be privileged.

Defendant Heebe repeatedly asserts a string of objections to successive discovery requests

without explaining why the individual interrogatories or requests for production of documents were

objectionable. The objections are boilerplate, and lack specificity as to each discovery request. As

such, Heebe has failed to properly object to the discovery propounded upon him.

It is well settled under Louisiana law that the discovery statutes are to be liberally and broadly

construed to achieve their intended objectives. *Hodges v. Southern Farm Bureau Cas. Ins. Co.*, 433

-1-

So.2d 125 (La.1983). A party generally may obtain discovery of any information which is relevant to the subject matter involved in the pending action. La. Code Civ. P. art. 1422; *Stolzle v. Safety & Systems Assurance Consultants, Inc.*, 02-1197 (La.5/24/02), 819 So.2d 287. Beginning with his answer to the first interrogatory, Heebe objects because the information sought was "irrelevant, overbroad, seeks personal, sensitive and confidential financial information, and ... is not reasonably calculated to lead to the discovery of admissible evidence." Heebe further alleges that "Plaintiffs have not obtained a judgment against Defendant, Defendant's wife is not a party to this litigation, and Plaintiffs are not entitled to discovery regarding their personal finances or assets."

Certain financial information about a defendant may be discovered when one of the issues in controversy in the action relates to a business transaction or financial issue. *See, e.g., Hill on Behalf of Williams v. City of New Orleans*, 549 So. 2d 858 (La. 1989); *Ward v. Tenneco Oil Co.*, 564 So. 2d 814 (La. App. 3 Cir. 1990); *Succession of Davidson v. Forrest*, 577 So. 2d 1222 (La. App. 3 Cir. 1991). The information sought throughout movants' discovery requests is relevant, and/or reasonably calculated to lead to the discovery of admissible evidence, because the information pertains to financial transactions, communications and/or documents involving Heebe, his wife, and persons and/or entities involved in Jefferson Parish government and/or the local landfill industry. Financial transactions, communications and/or documents involving Heebe are relevant, and/or reasonably calculated to lead to the discovery of admissible evidence, because Fred Heebe served as Vice-President of River Birch Incorporated at all pertinent times. Further, the financial transactions of the wife of Fred Heebe are reasonably calculated to lead to the discovery of admissible evidence because Heebe and his wife may have shared joint accounts and/or had authority to transact with community property.

Additionally, as alleged in the indictment of Henry Mouton, the defendants employed a "straw man" to transfer money to a candidate for federal office. *See* Paragraphs 73 to 76 of the indictment of Henry Mouton attached as Exhibit "C". Further, plaintiffs allege that defendants made payments to Jefferson Parish officials through insurance premiums paid to Lagniappe Industries, LLC. Payments of monies by indirect means is a central allegation of movants. Thus, the financial

transactions of Fred Heebe, his wife and associates are reasonably calculated to lead to the discovery of admissible evidence. Movants should be allowed to discover how monies were conveyed, and instructions delivered, to the alleged co-conspirators of Heebe.

Thus, although financial information is sensitive and confidential, here, as noted in *Hill on Behalf of Williams*, financial transactions are at the crux of this case, and discovery of same is necessary for movants to prove their case. As such, this Court should not allow Heebe to hide behind the objection of "highly personal, sensitive and confidential ... ."

Heebe also asserts that the discovery requests seek "identification of all financial accounts for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit." The timeframe is relevant because the transactions and occurrences alleged in the Petition begin in 1985 with "the formation Shadowlake Managment Co., Inc. an umbrella corporation registered in Louisiana in 1985 that includes among its subsidiaries River Birch Incorporated, established in 1990." *See* Paragraph 3 of the *Petition for Damages*. The allegations continue through the late 1990s into this century. In fact, the indictment of Henry Mouton alleges Henry Mouton began receiving payments in 2003. *See* Exhibit "C." Seeking information from 2001 through present clearly falls within the scope of years pertinent to this matter, thereby making requests for information from 2001 to present reasonable.

Defendant Heebe also alleges that plaintiffs "are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation." This rhetorical flourish adds nothing of substance to the other objections.

Beginning with Interrogatory No. 4, Heebe asserts various privileges, including the "attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege." However, Heebe in no way explains how the privileges apply, or to what information. As such, these objections do not create an actual basis on which Heebe may rely on in refusing to answer the discovery.

In Response to Request for Production of Documents No. 1, Heebe alleges that "the documents sought are on file with the Secretary of State, they are equally accessible to Plaintiffs as

to Defendant." However, in Response to Request for Production of Documents No. 1, and in his Answers to Interrogatories No. 3, Heebe refuses to identify any companies in which he or his spouse has an ownership percentage of fifteen (15%) percent or more. As such, movants can not obtain documents from the Secretary of State for companies for which movants do not know the names. Additionally, it is not necessarily true that all of the requested documents would be filed with the Secretary of State. In fact, after claiming that the documents are public record, Heebe then objects because the documents "include confidential business records Defendant should not be required to produce absent a showing of good cause, which Plaintiffs have not made or the entry of a protective order." However, Defendant Heebe has never requested a protective order. Further, Defendant Heebe still has a duty to produce the documents even if they could theoretically be obtained by other means.

In Response to Requests for Production of Documents Nos. 4 and 5, Heebe objects "to the extent" the requests call for privileged documents, but again produces no documents and no privilege log. In Response to Request for Production of Documents No. 8, Heebe claims, *inter alia*, the request calls for the "production of personal and sensitive health care information protected from disclosure by federal and state privacy laws, including but not limited to HIPAA." Although the request demanded "all documents related to any insurance policies serviced by Lagniappe Industries, LLC and/or THT Group, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana," the specific documents requested did not include medical records. Further, Heebe produced no documents, whereas there would be numerous responsive documents that would in no way include personal and sensitive health care information, such as the policies themselves and the documents regarding related premium payments.

In Response to Request for Production of Documents No. 9, Heebe argues that "a vast number of documents for a period of fourteen years ... is not reasonably limited in scope to a timeframe relevant to this lawsuit." In 1997, the site where River Birch Landfill is today located was re-zoned, despite much public outcry, which enabled River Birch Incorporated to operate the landfill at issue in this suit. Tim Coulon, then Parish President, and Aaron Broussard, then Council

-4-

Chairman, oversaw and supported the re-zoning of River Birch Landfill, thereby making the time-frame in the Request relevant to the scope of time related to this lawsuit. *See* Paragraph 7 of the *Petition for Damages.*

In Response to Request for Production of Documents No. 25 Heebe claims that a request for "any exhibits you may introduce at the hearing on exceptions in this matter" is "premature [as n]o date has been set for the hearing and discovery has just begun." Although Heebe may not yet have identified all of the exhibits he "may introduce at the hearing on exceptions in this matter," he should have identified some exhibits by now, and at minimum should be ordered to respond fully to Request for Production of Documents No. 25 at least thirty (30) days before the hearing on the exceptions.

**II.  To Properly Invoke the Fifth Amendment, The Threat of Incrimination Must Actually Exist**

In addition to repeatedly asserting boilerplate objections, Heebe refused to answer a single question, or produce any documents, in response to Plaintiffs *First Set of Interrogatories and Requests for Production of Documents,* based upon a repeated assertion of his right against self-incrimination under the Fifth Amendment of the United States Constitution. The purpose for the Fifth Amendment is to ensure that a person cannot be compelled to be a witness against himself. However, blanket assertions of the privilege are not permitted, as the assertion of the privilege against self-incrimination must be raised in response to each specific inquiry. *See United States v. White,* 589 F.2d 1283, 1286-87 (5th Cir. 1979).

Although Heebe did in fact assert the Fifth Amendment in response to each interrogatory and request for production, the assertion was made without any thought or contemplation of the actual question he was being asked. To properly assert the Fifth Amendment protection, Heebe's potential response to the particular interrogatory or request must either incriminate him, or furnish a link in the chain of evidence necessary to prosecute him. *See Hoffman v. United States,* 341 U.S. 479, 486-87 (1951). However, it is evident in looking at Defendant Heebe's responses to Plaintiffs *First Set of Interrogatories and Requests for Production of Documents,* his automatic Fifth Amendment invocation is essentially just a blanket assertion of the privilege.

For example, in response to Interrogatory No. 2, which asks for the list of his employer(s)

-5-

and in what capacity he serves as an employee, Heebe refuses to answer this question, invoking the Fifth Amendment. Similarly, in Interrogatory No. 6, wherein Heebe is asked to list email addresses utilized by him from 2001 through present, again the Fifth Amendment is asserted as his response. Heebe continued his blanket assertion of the Fifth Amendment in answering the Requests for Production of Documents. In response to Request for Production No. 21, which asked for production of documents and correspondence regarding the Plaintiffs or its directors/members, Heebe invoked the Fifth Amendment. Again, in Response to Request for Production Nos. 22 and 23, seeking any documents or recordings of surveillance of the Plaintiffs, as well as any print outs or downloads of Plaintiffs from the internet, respectively, Heebe invoked the Fifth Amendment privilege for both.

In *Malloy v. Hogan*, 378 U.S. 1 (1964), the U.S. Supreme Court set forth the test for determining if a privilege is validly asserted. The test requires a court to consider the implication of the question, the setting in which the question is asked, and whether its answer would be dangerous because of injurious results. It is clear from reading these Interrogatories and Requests for Production that the answers sought could not possibly have a tendency to incriminate Heebe. As such, Heebe should be compelled to provide answers and documents in a manner that does not resemble a blanket assertion of the Fifth Amendment, and more particularly to provide meaningful responses to the above-described discovery.

III.    **Alternatively, This Court Should Order That an Irrevocable "Negative Inference" Be Attached to Defendant Heebe's Inadequate Discovery Responses.**

In *Baxter v. Palmigiano*, 425 U.S. 308, (1976), the United States Supreme Court commented on the issue of silence by a party in a civil proceeding:

> The 5th Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them; the amendment does not preclude the inference where the privilege is claimed by a party to a civil cause.

Louisiana courts have cited this very proposition in several cases. In *Boyd v. Boyd*, 26,292 (La. App. 2 Cir. 12/7/94) 647 So.2d 414, the appellate court held that a "negative inference may be drawn against a party to the action who asserts his 5th Amendment privileges." *See also Economy Auto*

*Salvage, Inc. v. Allstate Ins. Co.*, 499 So.2d 963 (holding that in a civil case a negative inference may be drawn against a party to the action who asserts his 5th Amendment privileges); *Miles v. Louisiana Landscape Specialty*, 97-118 (La. App. 5 Cir. 6/30/97) 697 So.2d 348 (holding that the trial court correctly applied an adverse inference upon the defendant's failure to appear for a civil deposition, based on 5th Amendment grounds).

The courts of Louisiana clearly recognize that in a civil matter, a defendant's invocation of his right against self-incrimination allows for a negative inference to be applied. Thus, if Heebe continues to refuse to participate in discovery proceedings, including by not adequately responding to Plaintiffs' written discovery, then this Court should subject Heebe to an irrevocable adverse inference.

<div align="center">CONCLUSION</div>

For the foregoing reasons, this Honorable Court should GRANT the *Motion to Compel Answers to Interrogatories and Responses to Requests for Production of Documents* filed by Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC, and compel Defendant Frederick R. Heebe to answer the interrogatories and respond to the requests for production of documents.

Movants further pray in the alternative that this Court issue an Order establishing an irrevocable "negative inference" against Defendant Frederick R. Heebe for his silence and refusal to respond to Movants discovery requests in this civil litigation based on Defendant Frederick R. Heebe's assertion of his Fifth Amendment right against self-incrimination in any criminal proceeding that is interrelated with this civil litigation.

Respectfully submitted,

_____
RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELE (#22385)
MELISSA M. DESORMEAUX (#33093)
Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue – Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via telecopy, on this the 1st day of June 2011.

_____
STEPHEN M. GELE

-8-

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                                    DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____                    _____
                                                DEPUTY CLERK

### RULE TO SHOW CAUSE

CONSIDERING THE FOREGOING,

IT IS HEREBY ORDERED that defendant Frederick Heebe show cause on the 24th day of

June, 2011, at 9:00 o'clock a.m. why Plaintiffs' *Motion to Compel Answers to Interrogatories and*

*Responses to Requests for Production of Documents* should not be granted.

New Orleans, Louisiana this ___2___ day of June 2011.

_____
JUDGE

ENTERED ON MINUTES

JUN 0 6 2011

SERVICE WILL BE EFFECTUATED
PURSUANT TO LA. C.C.P. ART 1313

6-2-11
1967 pc

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                          DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____     _____
                                        DEPUTY CLERK

### MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

NOW INTO COURT, through undersigned counsel, come plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC (hereafter collectively "Movants").

For the reasons expressed in the attached *Memorandum*, Movants suggest that *Defendant's*

*Responses to Plaintiffs' Interrogatories and Requests for Production of Documents* produced on

May 25, 2011, are wholly insufficient and incomplete, as Defendant Albert J. Ward, Jr. has objected

and/or asserted privilege under the Fifth Amendment of the United States Constitution to every

Interrogatory and Request for Production of Documents. *See* Exhibit "A," *Plaintiffs' Interrogatories*

*and Requests for Production of Documents,* and Exhibit "B," *Defendant's Responses to Plaintiffs'*

*Interrogatories and Requests for Production of Documents* produced on May 26, 2011.

Movants note that this Honorable Court has set Movants' *Motion to Quash Subpoenas* for

hearing on June 24, 2011 at 9:00 a.m., and, in the interest of judicial economy, request that the Court

set this *Motion to Compel Answers to Interrogatories and Responses to Requests for Production of*

*Documents* for hearing also on June 24, 2011 at 9:00 a.m.

WHEREFORE, plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of

Plaquemines, LLC move this Court to compel Defendant Albert J. Ward, Jr. to answer the

interrogatories and respond to the requests for production of documents.

-1-

Respectfully submitted,

RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELE (#22385)
MELISSA M. DESORMEAUX (#33093)
Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue - Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via U.S. mail, on this the 2nd day of June 2011.

STEPHEN M. GELE

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                          DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____                    _____
                                            DEPUTY CLERK

RULE TO SHOW CAUSE

CONSIDERING THE FOREGOING,

IT IS HEREBY ORDERED that defendant Albert J. Ward, Jr. show cause on the 24th day

of June, 2011, at 9:00 o'clock a.m. why Plaintiffs' *Motion to Compel Answers to Interrogatories and*

*Responses to Requests for Production of Documents* should not be granted.

New Orleans, Louisiana this ___ day of June 2011.

                              (Sgd.) Lloyd J. Medley, Jr
                    _____
                    J U D G E

SERVICE WILL BE EFFECTUATED
PURSUANT TO LA. C.C.P. ART 1313

                              A TRUE COPY
                    _____
                    DEPUTY CLERK, CIVIL DISTRICT COURT
                         PARISH OF ORLEANS
                            STATE OF LA.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                              DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____          _____
                                                        DEPUTY CLERK

MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ANSWERS TO INTERROGATORIES
AND RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

MAY IT PLEASE THE COURT:

This *Memorandum* is respectfully submitted on behalf of plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC (collectively "Movants") in support

of their motion to compel discovery against defendant Albert J. Ward, Jr. ("Ward").

I.     **Defendant Ward Did Not Answer A Single Interrogatory Or Produce A Single
       Document In Response To Discovery**

In *Defendant's Responses to Plaintiffs' Interrogatories and Requests for Production of*

*Documents,* Ward objected to every interrogatory and request for production of documents. Not one

iota of information was produced nor was a privilege log produced identifying the documents or

types of documents Ward claimed to be privileged.

Defendant Ward repeatedly asserts a string of objections to successive discovery requests

without explaining why the individual interrogatories or requests for production of documents were

objectionable. The objections are boilerplate, and lack specificity as to each discovery request. As

such, Ward has failed to properly object to the discovery propounded upon him.

It is well settled under Louisiana law that the discovery statutes are to be liberally and

broadly construed to achieve their intended objectives. *Hodges v. Southern Farm Bureau Cas. Ins.*

-1-

*Co.*, 433 So.2d 125 (La.1983). A party generally may obtain discovery of any information which is relevant to the subject matter involved in the pending action. La. Code Civ. P. art. 1422; *Stolzle v. Safety & Systems Assurance Consultants, Inc.*, 02-1197 (La.5/24/02), 819 So.2d 287. Beginning with his answer to the first interrogatory, Ward objects because the information sought was "irrelevant, overbroad, seeks personal, sensitive and confidential financial information, and ... is not reasonably calculated to lead to the discovery of admissible evidence." Ward further alleges that "Plaintiffs have not obtained a judgment against Defendant, Defendant's wife is not a party to this litigation, and Plaintiffs are not entitled to discovery regarding their personal finances or assets."

Certain financial information about a defendant may be discovered when one of the issues in controversy in the action relates to a business transaction or financial issue. *See, e.g., Hill on Behalf of Williams v. City of New Orleans*, 549 So. 2d 858 (La. 1989); *Ward v. Tenneco Oil Co.*, 564 So. 2d 814 (La. App. 3 Cir. 1990); *Succession of Davidson v. Forrest*, 577 So. 2d 1222 (La. App. 3 Cir. 1991). The information sought throughout movants' discovery requests is relevant, and/or reasonably calculated to lead to the discovery of admissible evidence, because the information pertains to financial transactions, communications and/or documents involving Ward, his wife, and persons and/or entities involved in Jefferson Parish government and/or the local landfill industry. Financial transactions, communications and/or documents involving Ward are relevant, and/or reasonably calculated to lead to the discovery of admissible evidence, because Albert Ward served as President of River Birch Incorporated at all pertinent times. Further, the financial transactions of the wife of Albert J. Ward, Jr. are reasonably calculated to lead to the discovery of admissible evidence because Ward and his wife may have shared joint accounts and/or had authority to transact with community property.

Additionally, as alleged in the indictment of Henry Mouton, the defendants employed a "straw man" to transfer money to a candidate for federal office. *See* Paragraphs 73 to 76 of the indictment of Henry Mouton attached to *Motion to Compel Defendant Frederick R. Heebe* as Exhibit "C"; *see also Factual Basis for Henry Mouton Plea Agreement* attached hereto as Exhibit "C." Further, movants allege that defendants made payments to Jefferson Parish officials through insurance premiums paid to Lagniappe Industries, LLC. Payments of monies by indirect means is

-2-

a central allegation of movants.  Thus, the financial transactions of Albert Ward, his wife and associates are reasonably calculated to lead to the discovery of admissible evidence.  Movants should be allowed to discover how monies were conveyed, and instructions delivered, to the alleged co-conspirators of Ward.

Thus, although financial information is sensitive and confidential, here, as noted in *Hill on Behalf of Williams*, financial transactions are at the crux of this case, and discovery of same is necessary for movants to prove their case.  As such, this Court should not allow Ward to hide behind the objection of "highly personal, sensitive and confidential ... ."

Ward also asserts that the discovery requests seek "identification of all financial accounts for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit."  The timeframe is relevant because the transactions and occurrences alleged in the Petition begin in 1985 with "the formation Shadowlake Managment Co., Inc. an umbrella corporation registered in Louisiana in 1985 that includes among its subsidiaries River Birch Incorporated, established in 1990."  *See* Paragraph 3 of the *Petition for Damages*.  The allegations continue through the late 1990s into this century. In fact, the indictment of Henry Mouton alleges Henry Mouton began receiving payments in 2003. *See Motion to Compel Frederick R. Heebe* and Exhibit "C" attached thereto.  Seeking information from 2001 through present clearly falls within the scope of years pertinent to this matter, thereby making requests for information from 2001 to present reasonable.

Defendant Ward also alleges that plaintiffs "are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation."  This rhetorical flourish adds nothing of substance to the other objections.

Beginning with Interrogatory No. 4, Ward asserts various privileges, including the "attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege."  However, Ward in no way explains how the privileges apply, or to what information.  As such, these objections do not create an actual basis on which Ward may rely in refusing to answer the discovery.

In Response to Request for Production of Documents No. 1, Ward alleges that "the documents sought are on file with the Secretary of State, they are equally accessible to Plaintiffs as to Defendant." However, in Response to Request for Production of Documents No. 1, and in his Answers to Interrogatories No. 3, Ward refuses to identify any companies in which he or his spouse has an ownership percentage of fifteen (15%) percent or more. As such, movants can not obtain documents from the Secretary of State for companies for which movants do not know the names. Additionally, it is not necessarily true that all of the requested documents would be filed with the Secretary of State. In fact, after claiming that the documents are public record, Ward then objects because the documents "include confidential business records Defendant should not be required to produce absent a showing of good cause, which Plaintiffs have not made or the entry of a protective order." However, Defendant Ward has never requested a protective order. Further, Defendant Ward still has a duty to produce the documents even if they could theoretically be obtained by other means.

In Response to Requests for Production of Documents Nos. 4 and 5, Ward objects "to the extent" the requests call for privileged documents, but again produces no documents and no privilege log. In Response to Request for Production of Documents No. 8, Ward claims, *inter alia*, the request calls for the "production of personal and sensitive health care information protected from disclosure by federal and state privacy laws, including but not limited to HIPAA." Although the request demanded "all documents related to any insurance policies serviced by Lagniappe Industries, LLC and/or THT Group, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana," the specific documents requested did not include medical records. Further, Ward produced no documents, whereas there would be numerous responsive documents that would in no way include personal and sensitive health care information, such as the policies themselves and the documents regarding related premium payments.

In Response to Request for Production of Documents No. 9, Ward argues that "a vast number of documents for a period of fourteen years ... is not reasonably limited in scope to a timeframe relevant to this lawsuit." In 1997, the site where River Birch Landfill is today located was re-zoned,

-4-

despite much public outcry, which enabled River Birch Incorporated to operate the landfill at issue in this suit.  Tim Coulon, then Parish President, and Aaron Broussard, then Council Chairman, oversaw and supported the re-zoning of River Birch Landfill, thereby making the time-frame in the Request relevant to the scope of time related to this lawsuit.  *See* Paragraph 7 of the *Petition for Damages.*

In Response to Request for Production of Documents No. 25, Ward claims that a request for "any exhibits you may introduce at the hearing on exceptions in this matter" is "premature [as n]o date has been set for the hearing and discovery has just begun."  Although Ward may not yet have identified all of the exhibits he "may introduce at the hearing on exceptions in this matter," he should have identified some exhibits by now, and at minimum should be ordered to respond fully to Request for Production of Documents No. 25 at least thirty (30) days before the hearing on the exceptions.

II.    **To Properly Invoke the Fifth Amendment, The Threat of Incrimination Must Actually Exist**

In addition to repeatedly asserting boilerplate objections, Ward refused to answer a single question, or produce any documents, in response to Plaintiffs *First Set of Interrogatories and Requests for Production of Documents,* based upon a repeated assertion of his right against self-incrimination under the Fifth Amendment of the United States Constitution.  The purpose for the Fifth Amendment is to ensure that a person cannot be compelled to be a witness against himself.  However, blanket assertions of the privilege are not permitted, as the assertion of the privilege against self-incrimination must be raised in response to each specific inquiry.  *See United States v. White*, 589 F.2d 1283, 1286-87 (5th Cir. 1979).

Although Ward did in fact assert the Fifth Amendment in response to each interrogatory and request for production, the assertion was made without any thought or contemplation of the actual question he was being asked.  To properly assert the Fifth Amendment protection, Ward's potential response to the particular interrogatory or request must either incriminate him, or furnish a link in the chain of evidence necessary to prosecute him.  *See Hoffman v. United States*, 341 U.S. 479, 486-87 (1951).  However, it is evident in looking at Defendant Ward's responses to Plaintiffs *First Set*

*of Interrogatories and Requests for Production of Documents*, his automatic Fifth Amendment invocation is essentially just a blanket assertion of the privilege.

For example, in response to Interrogatory No. 2, which asks for the list of his employer(s) and in what capacity he serves as an employee, Ward refuses to answer this question, invoking the Fifth Amendment. Similarly, in response to Interrogatory No. 6, wherein Ward is asked to list email addresses utilized by him from 2001 through present, again the Fifth Amendment is asserted as his response. Ward continued his blanket assertion of the Fifth Amendment in answering the Requests for Production of Documents. In response to Request for Production No. 21, which asked for production of documents and correspondence regarding the Plaintiffs or its directors/members, Ward invoked the Fifth Amendment. Again, in Response to Request for Production Nos. 22 and 23, seeking any documents or recordings of surveillance of the Plaintiffs, as well as any print outs or downloads of Plaintiffs from the internet, respectively, Ward invoked the Fifth Amendment privilege for both.

In *Malloy v. Hogan*, 378 U.S. 1 (1964), the U.S. Supreme Court set forth the test for determining if a privilege is validly asserted. The test requires a court to consider the implication of the question, the setting in which the question is asked, and whether its answer would be dangerous because of injurious results. It is clear from reading these Interrogatories and Requests for Production that the answers sought could not possibly have a tendency to incriminate Ward. As such, Ward should be compelled to provide answers and documents in a manner that does not resemble a blanket assertion of the Fifth Amendment, and more particularly to provide meaningful responses to the above-described discovery.

III.   **Alternatively, This Court Should Order That an Irrevocable "Negative Inference" Be Attached to Defendant Ward's Inadequate Discovery Responses.**

In *Baxter v. Palmigiano*, 425 U.S. 308, (1976), the United States Supreme Court commented on the issue of silence by a party in a civil proceeding:

> The 5th Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them; the amendment does not preclude the inference where the privilege is claimed by a party to a civil cause.

Louisiana courts have cited this very proposition in several cases. In *Boyd v. Boyd*, 26,292 (La. App. 2 Cir. 12/7/94) 647 So.2d 414, the appellate court held that a "negative inference may be drawn against a party to the action who asserts his 5th Amendment privileges." *See also Economy Auto Salvage, Inc. v. Allstate Ins. Co.*, 499 So.2d 963 (holding that in a civil case a negative inference may be drawn against a party to the action who asserts his 5th Amendment privileges); *Miles v. Louisiana Landscape Specialty*, 97-118 (La. App. 5 Cir. 6/30/97) 697 So.2d 348 (holding that the trial court correctly applied an adverse inference upon the defendant's failure to appear for a civil deposition, based on 5th Amendment grounds).

The courts of Louisiana clearly recognize that in a civil matter, a defendant's invocation of his right against self-incrimination allows for a negative inference to be applied. Thus, if Ward continues to refuse to participate in discovery proceedings, including by not adequately responding to Plaintiffs' written discovery, then this Court should subject Ward to an irrevocable adverse inference.

## CONCLUSION

For the foregoing reasons, this Honorable Court should GRANT the *Motion to Compel Answers to Interrogatories and Responses to Requests for Production of Documents* filed by Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC, and compel Defendant Albert J. Ward, Jr. to answer the interrogatories and respond to the requests for production of documents.

Movants further pray in the alternative that this Court issue an Order establishing an irrevocable "negative inference" against Defendant Albert J. Ward, Jr. for his silence and refusal to respond to Movants discovery requests in this civil litigation based on Defendant Albert J. Ward, Jr.'s assertion of his Fifth Amendment right against self-incrimination in any criminal proceeding that is interrelated with this civil litigation.

Respectfully submitted,

_____

RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELE (#22385)
MELISSA M. DESORMEAUX (#33093)
Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue - Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of
Louisiana, Inc. and Waste Remediation of
Plaquemines, LLC*

## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via U.S. mail, on this the 2nd day of June 2011.

_____

STEPHEN M. GELE

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                          DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____     _____
                                                              DEPUTY CLERK

## RULE 10.1 CONFERENCE

Undersigned counsel hereby certifies, pursuant to Rule 10.1 of the Uniform District Court

Rules, that he contacted opposing counsel and attempted to resolve the discovery dispute addressed

in the *Motion to Compel Answers to Interrogatories and Responses to Requests for Production of*

*Documents*, but has been unsuccessful. On May 24, 2011, undersigned counsel wrote counsel for

Albert J. Ward, Jr., stating:

> On May 4, 2011, we propounded upon each of your respective clients
> *Interrogatories* and *Requests for Production of Documents*. We have yet to
> receive any objections or responses to same.  Please be available for a
> discovery conference, pursuant to Rule 10.1 of the Uniform Rules of Court,
> via telephone on Thursday, May 26, 2011, at 10:00 a.m. to discuss the
> overdue discovery responses.  I shall initiate the call.

*See* Exhibit "D".

On May 26, 2011, undersigned counsel called, per the above correspondence, counsel for

Albert J. Ward, Jr. Counsel for Albert J. Ward, Jr. informed undersigned counsel that the discovery

responses were in the mail. After receiving the discovery responses, and noting that no information

or documents were produced, on May 31, 2011, undersigned counsel called Robert Habans, Jr.,

counsel for Albert J. Ward, Jr., and was informed that Albert J. Ward, Jr. was asserting his Fifth

Amendment privilege and other objections per *Defendant's Responses to Plaintiffs' Interrogatories*

*and Requests for Production of Documents* produced on May 26, 2011, and therefore he would not

be supplementing any responses, but the issue of further production must be litigated.

Respectfully submitted,

_____
RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELE (#22835)
MELISSA M. DESORMEAUX (#33093)
Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue - Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via U.S. mail, on this the 2nd day of June 2011.

_____
STEPHEN M. GELE

-2-

CIVIL DISTRICT COURT PARISH OF ORLEANS

STATE OF LOUISIANA

NO.   11-2129                                          DIVISION "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE,  ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____          _____
                                          DEPUTY CLERK

FIRST SET OF INTERROGATORIES AND
REQUEST FOR PRODUCTION OF DOCUMENTS

TO:   ALBERT J. WARD, JR.
      through counsel of record
      Robert N. Habans, Jr., Esq.
      Habans & Carriere
      10843 N. Oak Hills Parkway
      Baton Rouge, LA 70810

Pursuant to Louisiana Code of Civil Procedure Article 1461, *et. seq*, CONCRETE

BUSTERS OF LOUISIANA, INC. and WASTE REMEDIATION OF PLAQUEMINES, LLC

(hereinafter "Plaintiffs") hereby propound the following interrogatories and request for production

to defendant ALBERT J. WARD, JR. requiring a response within fifteen (15) days pursuant to

Louisiana Code of Civil Procedure Article 1462:

I.

GENERAL INSTRUCTIONS AND DEFINITIONS

The following general instructions and definitions shall apply throughout these requests for

production of documents:

A.   Definitions:

As used herein, the following definitions apply:

1. The terms "you," "your," and "yours" shall refer to the defendant, personally, as well as

to all persons employed by, representing, or otherwise anyone acting or purporting to act on their


EXHIBIT
A

behalf, for any purpose whatsoever and shall be deemed to require information concerning the knowledge of such persons, as well as knowledge of the defendant personally.

2. The term "document" shall mean any written, printed, non-printed, typed, photocopied, photographic, reproduced, and graphic matter of any kind or character and any recorded or stored information, however produced or reproduced, (I) in your possession, custody or control, or (ii) known by you to exist, including (without limiting the generality of the foregoing) affidavits, agreements, books, calendars, communications, contracts, correspondence, desk pads, diaries, diary or calendar entries, interim or tentative drafts, journals and journal entries, ledgers and ledger entries, lists, memoranda, minutes and minute entries, notes, printouts, records of meetings, telephone or other conferences, conversations or communications, reports, statements, studies, telegraphs, telexes, printed copies of electronic mail, teletypes and/or work papers, and information stored in computers or other data storage or processing equipment, or in magnetic or electronic media, microfilm or microfiche or other form which can be retrieved or printed out or reduced or readable form through proper programming, decoding, or processing, together with necessary instructions for understanding, using, or reproducing same. The term "document" also includes originals and all copies of documents containing notes, notations, comments, observations, remarks, underscoring, marks made for emphasis, highlighting, or attention or encircling, relating or referring in any way to the subject matter of these interrogatories and requests for production of documents.

3. The term "person" shall mean all natural and civil persons and includes any individual, association, corporation, partnership, and any other business, legal or government entity.

4. "Identify" in connection with a document means to:

(a) State the type of document (for example, a letter, a memorandum, etc.); the date(s) upon which the document was prepared and/or executed; the name and address of its author; and the name and address of the recipients and intended recipients of the document or copies of the document.

(b) In lieu of identifying a document as required by an interrogatory, it shall be an acceptable response to the interrogatory to attach a legible copy of the document to the responses, and to make reference to the specific document in the response to the interrogatory. By responding

in this fashion, you agree to waive all objections to the authenticity of the copy so produced.

5. "Identify" or "name" in connection with a natural person means to:

(a) State the person's name, present address and telephone number, if known, or most recent past address and telephone number, if the present address and telephone number are not known.

(b) State the person's relationship to you, identify his present employer and the person's position with that employer, and state the person's title which is derived from that position.

6. "Identify" in connection with a corporation means to:

(a) State its full name, its state of incorporation, and its principal place of business; and

(b) State the corporation's relationship to you.

7. "Identify" in connection with a person other than an individual or a corporation means to state the person's official name, the person's organizational form, and the person's present address.

8. "Identify" in connection with any act, occurrence, even, action, doing, occasion, meeting, transaction, or conduct (all of which are included within the term "act" when it is used herein in connection with the term "identify"), shall mean to set forth the event or events constituting such act; state its location; state the date of the act; identify the persons participating, present, or involved at any time during the act, or having knowledge concerning the act; and identify all documents relating or referring in any way thereto.  When used in reference to any oral conversation or discussion, "identify" shall mean, in additional to the foregoing, to set forth the substance of what was said, when, where, by and to whom.

B.    **Personal and Business Files:**

The discovery sought by these interrogatories and requests for production of documents encompasses, but is not limited to, material contained in, or which might be derived or ascertained from, any of your personal and/or business files and the personal and/or business files of your agents, employees, representatives and the files of your attorney(s) and his (their) agents, employees, representatives, or investigators.

C.    **Continuing Nature:**

These interrogatories are continuing in nature pursuant to the Louisiana Code of Civil

3

Procedure.

D.    **Production of Documents**

Please indicate when and where the documents requested can be made available for inspection. If you deem compliance with any request for production of documents too burdensome or too cumbersome, identify the documents and fully explain why you deem their production to be too burdensome.

## II.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Please list all financial institutions including but not limited to banks, savings & loans companies, credit card companies, and credit unions with which you and/or your current spouse have or had accounts from 2001 through present.

**INTERROGATORY NO. 2:**

Please list your employer(s) and the capacity in which you serve for your employer(s).

**INTERROGATORY NO. 3:**

Please identify any legal entities, including but not limited to River Birch Incorporated, Hwy 90 LLC, Shadowlake Mangaement, LLC, Willow, Inc., which you and/or your current spouse own or partially own, and state your percentages of ownership.

**INTERROGATORY NO. 4:**

Please identify any and all documents turned over or seized to the United States government in connection with its investigation; please also state whether a copy of the identified documents are in your possession.

**INTERROGATORY NO. 5:**

Please identify any financial transactions, from 2001 through present, including the date of the transaction, the subject of the transaction, and the monetary value of the transaction, between you, individually or in your capacity as a representative, either as an owner or employee of an entity, and:

4

1) Henry Mouton;

2) Tim Whitmer;

3) Dawn Whitmer;

4) Tim Coulon;

5) Lagniappe Industries, LLC;

6) Tom Wilkenson;

7) Aaron Broussard;

8) DHP, L.L.C. or any employee thereof;

9) CWC Gaming, LLC or any employee thereof;

10) David Fos

11) Nancy Cassagne

12) Zydeco Holdings, L.L.C.

13) Water Front Properties, LLC

14) Ring Associates, LLC

15) B & C Contractors, LLC

16) Dangle & Associates, LLC

17) Anne's Properties, LLC

18) Big Bang Properties, LLC

19) Trout Point Lodge

20) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

**INTERROGATORY NO. 6:**

Please list any and all e-mail addresses utilized you, whether individually or in your capacity as an owner or employee of an entity, for the period of 2001 through present.

## III.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

Please produce a copy of the Articles of Organization, Articles of Incorporation, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, for any company in which you and/or your spouse have an ownership percentage of fifteen (15%) percent of more, and/or any predecessor or successor entity.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce evidence of any distributions, including but not limited to, any K-1s you and/or your spouse have received for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce a copy of your federal and state tax-returns for the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, and 2010.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, whether written or received, between you, individually, or as an owner or employee of an entity and:

      1) Tim Coulon

      2) Aaron Broussard

      3) Tom Wilkenson

**REQUEST FOR PRODUCTION NO. 5**:

Please produce any documents and correspondence, including e-mails, or recordings relating to the River Birch Incorporated and/or its parent company, Shadowlake Management, LLC's cancellation of its contract with Group Insurance Associates Inc.

**REQUEST FOR PRODUCTION NO. 6**:

Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer for the period 2001, 2002, 2003, 2004, 2005, and 2006.

**REQUEST FOR PRODUCTION NO. 7**:

Please produce any documents or correspondence, including e-mails, or recordings relating to the River Birch Incorporated and/or its parent company, Shadowlake Management, LLC's move to Lagniappe Industries, L.L.C. and/or THT Group to provide its employees with insurance products.

**REQUEST FOR PRODUCTION NO. 8**:

Please produce a copy of any and all documents related to any insurance policies serviced by **Lagniappe Industries, L.L.C. and/or THT Group**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer for the periods 2006, 2007, 2008, 2009, 2010, and 2011.

7

**REQUEST FOR PRODUCTION NO. 9**:

Please produce copies of any and all bank statements, including cancelled checks, and check registers from 1997 through present.

**REQUEST FOR PRODUCTION NO. 10**:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between you and/or any entities in which you have an ownership interest and Lagniappe Industries, LLC and/or THT Group from 2006 through present.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce any and all documents, correspondence, including e-mails, or recordings relating to Jefferson Parish RFP No. 158.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce any and all documents, correspondence, including e-mails, or recordings relating to Jefferson Parish Council's Resolution 110366 or any other Resolution which contemplated cancelling RFP No. 158.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce any documents, correspondence, including e-mails, or recordings relating to Jefferson Parish RFP No. 176, including but not limited to the bid package submitted to Jefferson Parish in response to RFP No. 176.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce any documents, correspondence, including e-mails, or recordings relating to the Office of the Attorney General for the State of Louisiana's issued Opinion No. 08-0270.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce a copy of any and all communications, including e-mails, or memorializations of communications, from 2001 through present between you, acting either individually or as an

owner or employee of an entity, and:

    1) Tim Whitmer

    2) Tom Wilkenson

    3) Tim Coulon

    4) Aaron Broussard

    5) Dawn Whitmer

    6) Henry Mouton

    7) David Fos

    8) Al Gandolfi

    9) Dutchie Connick

    10) Nancy Cassagne

    11) Any employee of Lagniappe Industries, LLC

    12) Any employee of Tim Coulon Campaign Committee, Inc.

    13) Any employee of DHP, L.L.C.

    14) Any employee of CWC Gaming, LLC

    15) Any member of the Jefferson Parish Council from January 1, 2007-present.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce any and all documents, correspondence, including e-mails, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated regarding the waste removal/landfill contract.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce any and all documents, correspondence, including e-mails, and/or recordings

regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition) from 2001 through present.

**REQUEST FOR PRODUCTION NO. 19**:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, from 2001 through present, between you, acting either individually or as an owner or employee of an entity, and:

1) Henry Mouton;

2) Tim Whitmer;

3) Dawn Whitmer;

4) Tim Coulon;

5) Lagniappe Industries, LLC;

6) Tom Wilkenson;

7) Aaron Broussard;

8) DHP, L.L.C. or any employee thereof;

9) CWC Gaming, LLC or any employee thereof;

10) David Fos

11) Nancy Cassagne

12) Zydeco Holdings, L.L.C.

13) Water Front Properties, LLC

14) Ring Associates, LLC

15) B & C Contractors, LLC

16) Dangle & Associates, LLC

17) Anne's Properties, LLC

18) Big Bang Properties, LLC

19) Trout Point Lodge

20) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce copies of any studies commissioned by you that consider the impact of the closing of landfills in Greater New Orleans.

**REQUEST FOR PRODUCTION NO. 21:**

Please produce any documents, correspondence, including e-mails, or recordings regarding the Plaintiffs or any of its directors or members.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce any documents or recordings that would memorialize any surveillance of the Plaintiffs or any of its directors or members, including reports or video or audio recordings.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce a copy of any and all print outs, download html, jpg or other digital files, of any representation or depiction of, or any typed writings of Plaintiffs or any of its directors or members located on the World Wide Web.

**REQUEST FOR PRODUCTION NO. 24:**

Please produce a copy of all documents identified in response to interrogatories propounded upon you.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce a copy of any exhibits you may introduce at the hearing on exceptions in this matter.

11

Respectfully submitted,

RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELÉ (#22385)
MELISSA M. DESORMEAUX (#33093)
Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Telecopy: (504) 525-2205

*Counsel for Plaintiffs, Concrete Busters of Louisiana,
Inc. and Waste Remediation of Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing on all counsel of record in this matter this 4th day of May, 2011 by facsimile.

STEPHEN M. GELÉ

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                           DIVISION: "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____      _____
                                                  DEPUTY CLERK

## DEFENDANT'S RESPONSES TO PLAINTIFF'S
## INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant, Albert J. Ward, Jr., responds to the following Interrogatories and Request for Production of Documents from Plaintiffs as follows:

### GENERAL OBJECTIONS

1.      To the extent that any interrogatory or request for production requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, the work product or anticipation of litigation doctrines, or rule of confidentiality provided by law, defendant objects to the interrogatory or request for production on that grounds and claims such privilege or doctrinal protection. Moreover, the production of any protected information pursuant to the interrogatories and requests for production is inadvertent and without prejudice to defendant's right later to object that such information is protected and that production of such information was inadvertent.

2.      Defendant further objects to any interrogatory or request for production to the extent that it seeks disclosure of information or documents where such disclosure would violate the privacy rights of individuals, confidentiality agreements, governmental regulations, or court orders restricting the disclosure of information. Moreover, the production of any protected information or document pursuant to the interrogatories and requests for production is inadvertent and without prejudice to defendant's right later to object that such information or document is protected and that its production was inadvertent.



EXHIBIT
B

3.     In responding to these interrogatories and request for production, defendant does not waive and specifically reserves all general and specific objections. Additionally, defendant does not concede by responding that the information sought or provided is relevant to the subject matter of this action or is calculated to lead to the discovery of admissible evidence. Nor shall the production of any information be construed as an admission by defendant that said information is relevant, material, authentic, or otherwise admissible as evidence. Defendant expressly reserves the right to object to further discovery and to the subject matter of these interrogatories, as well as to the introduction into evidence of any responses to these interrogatories.

4.     These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

## INTERROGATORY NO. 1:

Please list all financial institutions including but not limited to banks, savings & loans companies, credit card companies, and credit unions with which you and/or your current spouse have or had accounts from 2001 through present.

## RESPONSE TO INTERROGATORY NO. 1:

Defendant objects to this Interrogatory because it is irrelevant, overbroad, seeks personal, sensitive and confidential financial information, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation. Plaintiffs have not obtained a judgment against Defendant, Defendant's wife is not a party to this litigation, and Plaintiffs are not entitled to discovery regarding their personal finances or assets.

Further, even if the information sought was relevant, information regarding Defendant's financial accounts is highly personal, sensitive and confidential and Defendant should not be required to identify it absent a showing of good cause, which Plaintiffs have not made. Finally, this Interrogatory appears propounded only to harass Defendant, as it seeks identification of all financial accounts for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

Defendant invokes the Fifth Amendment privilege.

**INTERROGATORY NO. 2:**

Please list your employer(s) and the capacity in which you serve for your employer(s).

**RESPONSE TO INTERROGATORY NO. 2:**

Defendant objects to this Interrogatory because it is irrelevant, overbroad, seeks personal, sensitive and confidential financial information, and it is not reasonably calculated to lead to the discovery of admissible evidence.

Defendant invokes the Fifth Amendment privilege.

**INTERROGATORY NO. 3:**

Please identify any legal entities, including but not limited to River Birch Incorporated, Hwy. 90 LLC, Shadowlake Management, LLC, Willow, Inc., which you and/or your current spouse own or partially own, and state your percentages of ownership.

**RESPONSE TO INTERROGATORY NO. 3:**

Defendant objects to this Interrogatory because it is overbroad and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant's wife is not a party to this litigation. Further, Plaintiffs have not obtained a judgment against Defendant and Plaintiffs are not entitled to discovery regarding his personal assets.

Defendant invokes the Fifth Amendment privilege.

**INTERROGATORY NO. 4:**

Please identify any and all documents turned over or seized to the United States government in connection with its investigation; please also state whether a copy of the identified documents are in your possession.

**RESPONSE TO INTERROGATORY NO. 4:**

Defendant objects to this Interrogatory to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Interrogatory because it is irrelevant, overbroad, seeks personal, sensitive and confidential information, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation. For the same reason, the Interrogatory is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

Further, even if the information sought was relevant, some of the information is personal, sensitive and confidential and Defendant should not be required to identify it absent a showing of good cause, which Plaintiffs have not made.

Defendant invokes the Fifth Amendment privilege.

**INTERROGATORY NO. 5:**

Please identify any financial transactions from 2001 through present, including the date of the transaction, the subject of the transaction, and the monetary value of the transaction, between you, individually or in your capacity as a representative, either as an owner or employee of an entity, and

1.  Henry Mouton;

2.  Tim Whitmer;

3.  Dawn Whitmer;

4.  Tim Coulon;

5.  Lagniappe Industries, LLC;

6.  Tom Wilkenson;

7.  Aaron Broussard;

8.  DHP, LLC or any employee thereof;

9.  CWC Gaming, LLC or any employee thereof;

10. David Fos;

11. Nancy Cassagne;

12. Zydeco Holdings, LLC;

13. Water Front Properties, LLC;

14. Ring Associates, LLC;

15.   B&C Contractors, LLC;

16.   Dangle & Associates, LLC;

17.   Anne's Properties, LLC;

18.   Big Bang Properties, LLC;

19.   Trout Point Lodge;

20.   Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

**RESPONSE TO INTERROGATORY NO. 5:**

Defendant objects to this Interrogatory because it is irrelevant, overbroad, seeks personal, sensitive and confidential information, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation. For the same reason, the Interrogatory is harassing as it encompasses irrelevant information unrelated to issues in this litigation and is not reasonably limited to a timeframe relevant to this litigation.

Defendant invokes the Fifth Amendment privilege.

**INTERROGATORY NO. 6:**

Please list any and all email addresses utilized you, whether individually or in your capacity as an owner or employee of an entity, for the period of 2001 through present.

**RESPONSE TO INTERROGATORY NO. 6:**

Defendant objects to this Interrogatory because it is irrelevant, overbroad, seeks personal, sensitive and confidential financial information, and it is not reasonably calculated to lead to the discovery of admissible evidence.

Defendant invokes the Fifth Amendment privilege.

5

<u>REQUEST FOR PRODUCTION OF DOCUMENTS</u>

<u>REQUEST FOR PRODUCTION NO. 1</u>:

Please produce a copy of the Articles of Organization, Articles of Incorporation, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of managers or members, and any and all documents submitted to the Louisiana Secretary of State, including but not limited to, annual reports, application for certificate of authority, application for appointment of registered agent, registered agent/office statement of change, articles of correction, articles of amendment, articles of merger or share exchange, reservation of name, letter of intent to dissolve, and/or application for registration of name, change of members and/or managers, for any company in which you and/or your spouse have an ownership percentage of fifteen (15%) percent or more, and/or any predecessor or successor entity.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 1</u>:

Defendant objects to this Request because it is irrelevant, overbroad, seeks personal, sensitive and confidential information, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Plaintiffs have not obtained a judgment against Defendant, Defendant's wife is not a party to this litigation, and Plaintiffs are not entitled to discovery regarding their assets. Moreover, to the extent that the documents sought are on file with the Secretary of State, they are equally accessible to Plaintiffs as to Defendant.

Further, even if the information sought was relevant, the documents sought include confidential business records Defendant should not be required to produce absent a showing of good cause, which Plaintiffs have not made or the entry of a protective order. Finally, this Request appears propounded only to harass Defendant, as it seeks production of a wide variety of business documents and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce evidence of any distributions, including but not limited to any K-1's you and/or your spouse have received for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendant objects to this Request because it is irrelevant, overbroad, seeks personal, sensitive and confidential financial documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Plaintiffs have not obtained a judgment against Defendant, Defendant's wife is not a party to this litigation, and Plaintiffs are not entitled to discovery regarding their assets.

Further, even if the information sought was relevant, the documents sought include confidential business records Defendant should not be required to produce absent a showing of good cause, which Plaintiffs have not made or the entry of a protective order. Finally, this Request appears propounded only to harass Defendant, as it seeks production of documents for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce a copy of your federal and state tax returns for the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, and 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Defendant objects to this Request because it is irrelevant, overbroad, seeks personal, sensitive and confidential documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Plaintiffs have not obtained a judgment against Defendant and are not entitled to discovery regarding his assets.

Further, even if the information sought was relevant, tax returns are highly sensitive and confidential records that Defendant should not be required to produce absent a showing of good cause, which Plaintiffs have not made or the entry of a protective order. Finally, this Request appears propounded only to harass Defendant, as it seeks production of documents for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce any correspondence, including emails, or recordings relating to the re-zoning of the River Birch Landfill, whether written or received between you, individually, or as an owner or employee of an entity and:

1.    Tim Coulon

2.    Aaron Broussard

3.    Tom Wilkinson

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce any documents and correspondence, including emails, or recordings relating to the River Birch Incorporated and/or its parent company, Shadowlake Management, LLC's cancellation of its contract with Group Insurance Associates, Inc.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc. with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer for the period 2001, 2002, 2003, 2004, 2005, 2006.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce any documents or correspondence, including email, or recordings relating to the River Birch Incorporated and/or its parent company, Shadowlake Management, LLC's move to Lagniappe Industries, LLC and/or THT Group to provide its employees with insurance products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is overbroad and seeks production of confidential business documents which Defendant should not be required to produce absent a showing of good cause, which Plaintiffs have not made.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce a copy of any and all documents related to any insurance policies serviced by Lagniappe Industries, LLC and/or THT Group, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers/and communications with the insurer for the periods 2006, 2007, 2008, 2009, 2010, and 2011.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, seeks production of confidential and sensitive documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

Moreover, Plaintiffs' Request encompasses production of personal and sensitive health care information protected from disclosure by federal and state privacy laws, including but not limited to HIPAA.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 9**:

Please produce copies of any and all bank statements, including canceled checks, and check registers from 1997 through present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9**:

Defendant objects to this Request because it is irrelevant, overbroad, seeks production of confidential financial records, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Plaintiffs have not obtained a judgment against Defendant and are not entitled to discovery regarding his assets. Defendant should not be required to produce his confidential and private financial records absent a showing of good cause, which Plaintiffs have not made.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents for a period of fourteen years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 10**:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, canceled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between you and/or any entities in which you have an ownership interest and Lagniappe Industries, LLC and/or THT Group from 2006 through present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce any and all documents, correspondence, including emails, or recordings relating to Jefferson Parish RFP No. 158.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is overbroad and seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and this Request requires production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, this Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce any and all documents, correspondence, including emails, or recordings relating to Jefferson Parish Council's Resolution 110366 or any other Resolution which contemplated canceling RFP No. 158.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is overbroad and seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and this Request requires production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, this Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce any documents, correspondence, including emails, or recordings relating to Jefferson Parish RFP No. 176, including but not limited to the bid package submitted to Jefferson Parish in response to RFP No. 176.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is overbroad and seeks production of confidential business documents, without a showing of good cause, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and this Request requires production of documents which bear

no relevance to any claim or defense asserted in this litigation. For the same reason, this Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce any documents, correspondence, including emails, or recordings relating to the office of the Attorney General for the State of Louisiana's issued Opinion No. 08-0270.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and this Request requires production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, this Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce a copy of any and all communications, including emails, or memorializations of communications from 2001 through present between you, acting either individually or as an owner or employee of an entity, and:

1. Tim Whitmer
2. Tom Wilkinson
3. Tim Coulon
4. Aaron Broussard
5. Dawn Whitmer
6. Henry Mouton
7. David Fos

8.      Al Gandolfi

9.      Dutchie Connick

10.     Nancy Cassagne

11.     Any employee of Lagniappe Industries, LLC

12.     Any employee of Tim Coulon Campaign Committee, Inc.

13.     Any employee of DHP, LLC

14.     Any employee of CWC Gaming, LLC

15.     Any member of the Jefferson Parish Council from January 1, 2007 to
        present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, seeks production of confidential business records, and it is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

Defendant invokes the Fifth Amendment privilege.

## REQUEST FOR PRODUCTION NO. 16:

Please produce any and all documents, correspondence, including emails, and/or records related to, or utilized in the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, seeks production of confidential business records, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated regarding the waste removal/landfill contract.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce any and all documents, correspondence, including emails and/or recordings regarding the Jefferson parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition) from 2001 through present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, seeks production of confidential business records, and it is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents for a ten year time period and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 19:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, canceled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, from 2001 through present, between you, acting either individually or as an owner or employee of an entity, and:

1.     Henry Mouton

2.     Tim Whitmer

3.     Dawn Whitmer

17

4.      Tim Coulon

5.      Lagniappe Industries, LLC

6.      Tom Wilkenson

7.      Aaron Broussard

8.      DHP, LLC or any employee thereof

9.      CWC Gaming, LLC or any employee thereof

10.     David Fos

11.     Nancy Cassagne

12.     Zydeco Holdings, LLC

13.     Water Front Properties, LLC

14.     Ring Associates, LLC

15.     B&C Contractors, LLC

16.     Dangle & Associates, LLC

17.     Anne's Properties, LLC

18.     Big Bank Properties, LLC

19.     Trout Point Lodge

20.     Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 19:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents for a ten year time period and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce copies of any studies commissioned by you that consider the impact of the closing of landfills in Greater New Orleans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 21:**

Please produce any documents, correspondence, including emails, or recordings regarding the plaintiffs or any of its directors or members.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it is not reasonably limited in scope to a timeframe relevant to this lawsuit.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce any documents or recording that would memorialize any surveillance of the Plaintiffs or any of its directors or members, including reports or video or audio recordings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce a copy of any and all print outs, download html, jpg or other digital files, of any representation or depiction of, or any typed writings of Plaintiffs or any of its directors or members located on the World Wide Web.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it is not reasonably limited in scope to a timeframe relevant to this lawsuit.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 24:**

Please produce a copy of all documents identified in response to interrogatories propounded upon you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

Defendant invokes the Fifth Amendment privilege.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce a copy of any exhibits you may introduce at the hearing on exceptions in this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Defendant objects to this request as premature. No date has been set for the hearing and discovery has just begun. Additional evidence may be uncovered as the case proceeds. Defendant, therefore, specifically reserves the right to supplement this response.

Respectfully submitted,

Robert Habans, Jr. 06395
HABANS & CARRIERE
10843 N. Oak Hills Parkway
Baton Rouge, Louisiana 70810
Telephone: (225) 757-0225
Fax: (225) 757-0398

Attorneys for Albert Ward, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Responses to Interrogatories and Request for Production of Documents have been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 26 day of May, 2011.

Robert Habans, Jr.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO: 11-048 |
| v. | * | SECTION:   "F" |
| HENRY M. MOUTON | * | VIOLATION: 18 U.S.C. § 371 |
| | | 18 U.S.C. § 666(a)(1)(B) |
| | * | |

\*       \*       \*

## F A C T U A L   B A S I S

Should this matter proceed to trial, both the government and the defendant, **HENRY M. MOUTON**, do hereby stipulate and agree that the following facts set forth a sufficient factual basis for the crime to which the defendant is pleading guilty and that the government would prove the following beyond a reasonable doubt at trial:

In about 1996, **HENRY M. MOUTON**, organized an overnight duck hunting fundraiser for a former Louisiana governor.  At this fundraiser, MOUTON met Co-conspirator "A" who was an attendee.   Shortly thereafter, Co-conspirator "A" contacted MOUTON and offered to pay MOUTON $2,000.00 a month and, in exchange, MOUTON agreed to provide Co-conspirator "A" with insider political information and access to the Governor.  MOUTON did not register as a


EXHIBIT
C

lobbyist for Co-conspirator "A" or for any of his entities with the State of Louisiana. Co-conspirator "A" did not request **MOUTON** to register as a lobbyist with the State of Louisiana.

In January 2003, **MOUTON** was appointed by the Governor to serve as a Commissioner on the Louisiana Department of Wildlife and Fisheries Commission. The Louisiana Department of Wildlife and Fisheries (LDWF) is a state agency responsible for the management of Louisiana's renewable resources including wildlife and aquatic life. The LDWF is an agency of the State of Louisiana that received federal assistance in excess of $10,000.00 during each of the one year periods beginning on January 1st and ending on December 31st for the years 2003 - 2009. **MOUTON** became a public official upon his appointment as a Commissioner to the LDWF. In 2003, and during all times material herein, Co-conspirator "A" owned and operated landfill companies located in Southeast Louisiana. After **MOUTON**'s appointment as Commissioner to the LDWF, **MOUTON** became a more valuable asset to Co-conspirator "A" now that he was a state public official. Accordingly, on or about April 14, 2003, **MOUTON** received the first of approximately 180 illegal payoffs/bribes from Co-conspirator "A."

**MOUTON** received hundreds of thousands of dollars in illegal bribes from Co-conspirator "A" during his appointment as Commissioner on the LDWF. Many of these bribes came from various companies owned and/or operated by Co-conspirator "A." In return for these bribes, Co-conspirator "A" sought **MOUTON**'s participation in various illegal schemes. These illegal schemes included efforts to eliminate business competitors of Co-conspirator "A" as well as the funneling of illegal campaign contributions to state and federal election campaigns. As a public official, it was illegal for **MOUTON** to receive payments from Co-conspirator "A."

- 2 -

## Old Gentilly Landfill Scheme

Shortly after Hurricane Katrina made landfall in August of 2005, Co-conspirator "A" and other Co-conspirators recognized the potential to obtain millions of dollars in revenue for the collection and disposal of storm debris from storm ravaged areas.   The Federal Emergency Management Agency (FEMA) agreed to award and/or reimburse parishes in storm impacted areas for the costs associated with the collection and disposal of storm debris.  A portion of these federal funds were eventually paid to Co-conspirator "A."

Co-conspirator "A" conspired with MOUTON to shutter the competition.  The plan was to eliminate the competition and increase the revenue of Co-conspirator "A" by increasing the amount of storm debris deposited in the landfills owned by Co-conspirator "A."  One such competitor was the Old Gentilly Landfill in New Orleans.  Co-conspirator "A" devised a scheme that would exploit and utilize MOUTON's appointed position as a public official and specifically his position and title as a Commissioner on the LDWF.  It was agreed that MOUTON would assist Co-conspirator "A" in his secret efforts to close the Old Gentilly Landfill.  Because MOUTON's office could not directly close or deny an operational permit for the Old Gentilly Landfill, MOUTON and Co-conspirator "A" used the status and legitimacy of the office of the Commission of the LDWF to influence decision makers in an effort to close the Old Gentilly Landfill as well as other landfills. MOUTON received hundreds of thousands of dollars in illegal bribes from Co-conspirator "A" in return for these official acts as a Commissioner on the LDWF.

For example, acting on behalf of and at the direction of Co-conspirator "A", MOUTON contacted numerous federal officials, on multiple occasions, and sought to convince these officials that the Old Gentilly Landfill and other landfills should remain closed and/or not be allowed to open.

- 3 -

These officials included 17 United States Senators, officials with the Environmental Protection Agency, United States Attorneys, Special Agents with the Federal Bureau of Investigation, officials with the U. S. Army Corps of Engineers, as well as members of the news media. Co-conspirator "A" wanted MOUTON to represent himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission when contacting these officials. Co-conspirator "A" and/or his employees acting under his direction, helped create a letterhead for MOUTON to use when contacting these officials. This letterhead highlighted MOUTON's position as a Commissioner with the LDWF. In addition, Co-conspirator "A" helped author letters for MOUTON that discussed reasons, in detail, to support the closure of the Old Gentilly Landfill. Many of these letters written by Co-conspirator "A", and mailed by MOUTON, discussed how the re-opening of the Old Gentilly Landfill would adversely impact wildlife and the environment. For example, in a five page letter addressed and mailed to United States Senator John W. Warner, Co-conspirator "A" had MOUTON write in part:

<div align="center">

HENRY M. MOUTON
COMMISSIONER
LOUISIANA DEPARTMENT OF WILDLIFE AND FISHERIES
P. O. BOX 53097
LAFAYETTE, LA 70505-3097

</div>

November 4, 2005

Senator John W. Warner
United States Senate Committee on Environment & Public Works
225 Russell Senate Office Building
Washington, DC 20510

Dear Senator Warner:

I am writing this letter to you as a member of the Louisiana Department of Wildlife & Fisheries.   As a member of the

<div align="center">- 4 -</div>

Commission, I believe I have some responsibility as a caretaker of the environment and fish and game in Louisiana. I am extremely concerned over the recent re-opening of an open dump in New Orleans, Louisiana, which was ordered closed approximately fifteen (15) years ago by the Louisiana Department of Environmental Quality ("LDEQ") because it was an imminent danger to the environment. This area is call the "Gentilly Dump."

In another five page letter written and mailed to an official with the Environmental Protection

Agency, Enforcement Division, Co-conspirator "A" had **MOUTON** write in part:

**HENRY W.[sic] MOUTON**
**Commissioner**
**Louisiana Department of Wildlife and Fisheries**
**Post Office Box 53097**
**Lafayette, Louisiana 70505-3097**
**Telephone: (337) 280-2616**
**E-Mail: henrymouton@star-service.com**

November 10, 2005

Mr. Greg DeAtley
Environmental Protection Agency
Enforcement Division - Region Six 6PD-UC
1445 Ross Avenue
Dallas, Texas 752002[sic]

RE:    Old Gentilly Landfill

Dear Greg:

Many thanks for taking my telephone call on Monday, November 7, 2005 relating to the Old Gentilly Landfill located in the eastern outskirts of the City of New Orleans. As a Commissioner of the Louisiana Department of Wildlife and Fisheries, I am deeply concerned over the disastrous environmental impact which the re-opening of this dump has visited upon this area and, in particular, the immediately adjacent wetlands.

Also, Co-conspirator "A" and/or his employees acting under his direction created labels for

**MOUTON** to use when mailing letters written by Co-conspirator "A." Co-conspirator "A"

- 5 -

attempted to convince these officials to undertake some official action to close the Old Gentilly Landfill in New Orleans. Co-conspirator "A" highlighted **MOUTON's** official state position in an effort to increase the likelihood that **MOUTON** would be successful in his endeavor to eliminate the competition of Co-conspirator "A."

### Two Rivers Recycling Landfill Scheme

On or about May 8, 2006, Co-conspirator "A" had **MOUTON** write a letter to Members of the Rapides Parish Police Jury in Alexandria, Louisiana in an effort to prevent the permitting of the Two Rivers Recycling Landfill (Two Rivers) in Catahoula Parish. Co-conspirator "A" was concerned that his landfills would loose revenue if Two Rivers were allowed to open because storm debris from the New Orleans area would be diverted to Two Rivers in Catahoula Parish. In the May 8, 2006 letter, **MOUTON**, acting on behalf of Co-conspirator "A," represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries. In the letter, **MOUTON** sought to convince the members of the Rapides Parish Police Jury to oppose the permitting of Two Rivers and, specifically, to vote to oppose the landfill.

On or about August 16, 2006, Co-conspirator "A" paid **MOUTON** $30,000.00 to hire an advertizing/public relations firm for the purpose of creating negative public opinion about Two Rivers. Acting on behalf of and at the direction of Co-conspirator "A," **MOUTON** hired an advertizing/public relations firm located in Western Louisiana. Consequently, numerous advertisements, including several full page ads, were placed in newspapers in an effort to convince public officials and residents to oppose Two Rivers. It was further part of the scheme that none of the ads were attributed to Co-conspirator "A" or **MOUTON**. Ultimately, the permit for Two Rivers was denied.

It was further part of this illegal bribery scheme for MOUTON to conceal his relationship with Co-conspirator "A" and to conceal the fact that MOUTON was receiving illegal bribes from Co-conspirator "A." Accordingly, MOUTON did not disclose to the officials he contacted in the Old Gentilly and Two Rivers schemes that he was receiving bribes from Co-conspirator "A" nor did MOUTON disclose that Co-conspirator "A" was a landfill owner who stood to benefit significantly from the closure of the Old Gentilly Landfill and from the denial of operational permits for other competitor landfills such as Two Rivers.

## Illegal Campaign Contribution Scheme

Co-conspirator "A" also enlisted MOUTON in a scheme to commit election fraud in order to further attempt to influence decision makers and to circumvent state and federal election laws. On or about April 24, 2006, MOUTON agreed to help Co-conspirator "A" make approximately $11,000.00 in illegal campaign contributions to a U. S. Congressional candidate's campaign. On or about April 24, 2006, Co-conspirator "A" had another co-conspirator write $11,000.00 in checks to MOUTON and others known and unknown to the grand jury with the intention to make illegal campaign contributions to a federal election campaign. In addition, on or about December 27, 2006, MOUTON helped Co-conspirator "A" make an illegal campaign contribution to a state candidate. In both instances, Co-conspirator "A" used MOUTON and others so that the contributions would not be attributed to Co-conspirator "A."

## Summary of Bribes

In addition to the monthly payoffs, Co-conspirator "A" bribed MOUTON with payments that, in some cases, were characterized as no interest loans. In reality, these loans were a sham; no interest or payments were ever collected or paid on these loans nor were any loan documents

- 7 -

executed. In other instances, Co-conspirator "A" reimbursed **MOUTON** for lavish fishing trips, meals, and gifts for other public officials. Co-conspirator "A" made the following payments to **MOUTON** among others:

| DATE | AMOUNT |
|------|--------|
| 10/27/2003 | $12,000.00 |
| 12/24/2003 | $12,000.00 |
| 07/30/2004 | $18,000.00 |
| 02/10/2005 | $18,000.00 |
| 12/16/2005 | $18,000.00 |
| 01/03/2006 | $17,000.00 |
| 04/06/2006 | $5,000.00 |
| 04/07/2006 | $7,500.00 |
| 04/25/2006 | $4,400.00 |
| 04/27/2006 | $4,400.00 |
| 05/18/2006 | $3,882.14 |
| 06/30/2006 | $5,148.78 |
| 08/02/2006 | $18,250.00 |
| 08/16/2006 | $30,000.00 |
| 09/13/2006 | $17,040.10 |
| 09/13/2006 | $12,320.00 |
| 10/06/2006 | $16,500.00 |
| 10/12/2006 | $4,000.00 |
| 12/28/2006 | $10,000.00 |
| 09/14/2007 | $21,000.00 |
| 09/14/2007 | $4,000.00 |
| 12/24/2007 | $4,000.00 |

| DATE | AMOUNT |
|------|--------|
| 12/26/2007 | $2,500.00 |
| 12/26/2007 | $2,500.00 |
| 12/26/2007 | $500.00 |

MOUTON resigned from his term as a Commissioner on the LDWF in November 2008 but Co-conspirator "A" continued to pay MOUTON, in an effort to conceal the illegal bribery scheme and election fraud. These illegal payments continued until attorneys working for Co-conspirator "A", aware that Co-conspirator "A" was under federal investigation, decided that Co-conspirator "A" should discontinue the payments to MOUTON. In 2011, an attorney for Co-conspirator "A" contacted MOUTON's attorney and advised that no further payments would be made to MOUTON.

From on or about April 14, 2003, to on or about January 2011, Co-conspirator "A" paid MOUTON hundreds of thousands of dollars in illegal bribes and payoffs.

## Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by MOUTON and described by MOUTON to the government, but rather is a minimum statement of facts intended to prove the necessary factual predicate for his guilty plea. The limited purpose

of this factual basis is to demonstrate that there exists a sufficient legal basis for **MOUTON's** plea

of guilty to the charged offense.

_____     5-6-11
HENRY M. MOUTON                    DATE
Defendant

_____     5-6-11
MARY OLIVE PIERSON                 DATE
Counsel for Defendant

_____     5-19-11
SALVADOR PERRICONE                 DATE
Assistant United States Attorney

_____     5-19-2011
JAMES R. MANN                      DATE
Assistant United States Attorney

_____     5/17/11
BRIAN M. KLEBBA                    DATE
Assistant United States Attorney

_____     5-19-11
GREGORY KENNEDY                    DATE
Assistant United States Attorney

_____     5/17/11
WILLIAM J. QUINLAN, JR.            DATE
Assistant United States Attorney

- 10 -



**SMITH & FAWER LLC**
A T T O R N E Y S   A T   L A W

201 St. Charles Avenue, Suite 3702 • New Orleans, Louisiana 70170
Telephone: (504) 525-2200 • Facsimile: (504) 525-2205

VIA TELECOPY                24 May 2011                File No. 3094

Kyle Schonekas, Esq.
Billy Gibbens, Esq.                          Robert N. Habans, Jr., Esq.
Schonekas, Evans, McGoey & McEachin, LLC     Habans & Carriere
650 Poydras Street, Suite 2105               10843 N. Oak Hills Parkway
New Orleans, Louisiana 70130                 Baton Rouge, LA  70810

Edward J. Castaing, Jr., Esq.
Crull, Castang, Lilly & Herman
601 Poydras Street, Suite 2323
New Orleans, LA  70130

             Re:   *Concrete Busters, et al. v. Heebe, et al.*
                   CDC No. 11-2129 (D)

Dear Counsel:

          On May 4, 2011, we propounded upon each of your respective clients *Interrogatories* and *Requests for Production of Documents*. We have yet to receive any objections or responses to same. Please be available for a discovery conference, pursuant to Rule 10.1 of the Uniform Rules of Court, via telephone on Thursday, May 26, 2011, at 10:00 a.m. to discuss the overdue discovery responses. I shall initiate the call.

          With kind regards, I remain

                                   Sincerely,

                                   Stephen M. Gelé

SMG/smg

**EXHIBIT**

D

P. 1

※ ※ ※  Communication Result Report ( May. 24. 2011  9:21AM ) ※ ※ ※

1) Smith & Fawer, LLC
2) Smith & Fawer, LLC

ate/Time: May. 24. 2011  9:12AM

| ile No. | Mode | Destination | | Pg(s) | Result | Page Not Sent |
|------|--------|-------------------|--|-------|--------|---------------|
| 565 | Memory TX | 96806051 | | P.  2 | OK | |
| | Concrete Busters | 95815523 | | | OK | |
| | | 153094#912257570398 | | | OK | |

---

Reason for error
  E. 1) Hang up or line fail          E. 2) Busy
  E. 3) No answer                     E. 4) No facsimile connection
  E. 5) Exceeded max. E-mail size

**SMITH & FAWER LLC**
ATTORNEYS AT LAW
201 St. Charles Avenue, Suite 3702 • New Orleans, Louisiana 70170
Telephone: (504) 525-2200 • Facsimile: (504) 525-2205

DATE:        24 May 2011

TO:          Kyle Schonekas, Esq.
             Edward Castaing, Jr., Esq.
             Robert N. Habans, Jr., Esq.

FAX NO.      680-6851
             581-5523
             (225) 757-0398

FROM:        Stephen M. Gelé, Esq.

REF/FILE NO: *Concrete Busters, et al. v. Heebe, et al.*
             File #3094

COMMENTS:    Please see attached.

Number of pages including cover sheet: _2_

If there are any problems with receipt of this transmission, please call (504) 525-2200.

*This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended solely for the use of the individual or entity named above.*

Jackson, Mississippi Office:
774 Avery Boulevard North • Ridgeland, Mississippi 39157 • Telephone: (601) 899-6726 • Facsimile: (601) 899-6727

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                                DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____     _____

                                                    DEPUTY CLERK

## MOTION TO COMPEL ANSWERS TO INTERROGATORIES
## AND RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

NOW INTO COURT, through undersigned counsel, come plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC (hereafter collectively "Movants").

For the reasons expressed in the attached *Memorandum*, Movants suggest that *Defendant's*

*Responses to Plaintiffs' Interrogatories and Requests for Production of Documents* produced by

River Birch Incorporated and Hwy. 90, LLC, dated May 26, 2011, are wholly insufficient and

incomplete, as Defendants River Birch Incorporated and Hwy. 90, LLC have objected to every

Interrogatory and Request for Production of Documents, not answered one Interrogatory, and only

produced a few documents partially responsive to a few requests for production of documents. *See*

Exhibit "A," *Plaintiffs' Interrogatories and Requests for Production of Documents, in globo,* and

Exhibit "B," *Defendant's Responses to Plaintiffs' Interrogatories and Requests for Production of*

*Documents, in globo,* dated May 26, 2011.

Movants note that this Honorable Court has set Movants' *Motion to Quash Subpoenas,* and

Movants' *Motions to Compel Answers to Interrogatories and Responses to Requests for Production*

*of Documents* against Frederick R. Heebe and Albert J. Ward, Jr., for hearing on June 24, 2011 at

9:00 a.m., and, in the interest of judicial economy, request that the Court set this *Motion to Compel*

*Answers to Interrogatories and Responses to Requests for Production of Documents* for hearing also

on June 24, 2011 at 9:00 a.m.

-1-

WHEREFORE, plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC move this Court to compel Defendants River Birch Incorporated and Hwy. 90, LLC to answer the interrogatories and respond to the requests for production of documents.

Respectfully submitted,

RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELE (#22835)
MELISSA M. DESORMEAUX (#33093)
Of
**SMITH & FAWER, L.L.C.**
201 St. Charles Avenue - Suite 3702
New Orleans, Louisiana 70170
Telephone:  (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via email, on this the 8th day of June 2011.

STEPHEN M. GELE

-2-

**FILED**

JUN 0 8 2011

DEPUTY CLERK
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                      DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____                    _____
                                                    DEPUTY CLERK

## RULE TO SHOW CAUSE

CONSIDERING THE FOREGOING,

IT IS HEREBY ORDERED that Defendants River Birch Incorporated and Hwy. 90, LLC

show cause on the 24th day of June, 2011, at 9:00 o'clock a.m. why Plaintiffs' *Motion to Compel*

*Answers to Interrogatories and Responses to Requests for Production of Documents* should not be

granted.

New Orleans, Louisiana this 10 TM day of June 2011.

_____
J U D G E

SERVICE WILL BE EFFECTUATED                 ENTERED ON MINUTES
PURSUANT TO LA. C.C.P. ART 1313
                                                    JUN 1 5 2011



FILED

JUN 0 8 2011

DEPUTY CLERK
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                                          DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____      _____
                                                                       DEPUTY CLERK

MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ANSWERS TO INTERROGATORIES
AND RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

MAY IT PLEASE THE COURT:

This *Memorandum* is respectfully submitted on behalf of plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC (collectively "Movants") in support

of their motion to compel discovery against Defendants River Birch Incorporated and Hwy. 90, LLC

(collectively "River Birch")[1].

In *Defendant's Responses to Plaintiffs' Interrogatories and Requests for Production of*

*Documents,* River Birch objected to every interrogatory and request for production of documents.

Not one iota of information was produced in response to interrogatories, nor was a privilege log

produced identifying the documents or types of documents River Birch claimed to be privileged.

The only documents produced were: 1) a copy of *RFP 0176*; 2) an *Act of Establishment of Negative*

*Non-Apparent Predial Servitude And Restrictive Covenant*; 3) the *Time Contract for Disposal*

*Services*; 4) the *Proposal to Jefferson Parish in Response to RFP-0176*; 5) the *Articles of*

---

[1] Identical interrogatories and requests for production of documents were propounded upon
Defendants River Birch Incorporated and Hwy. 90, LLC, and Defendants River Birch Incorporated and
Hwy. 90, LLC produced identical responses, with the exception of River Birch Incorporated producing
its *Articles of Incorporation* and Hwy 90, LLC producing its *Articles of Organization*.

*Incorporation of River Birch Incorporated;* 6) the *Articles of Organization of Hwy 90, LLC;* 7) the *Agreement For Disposal And Convenience Center Services Between The City of New Orleans And River Birch Incorporated;* and 8) the *Operational Plan* of River Birch Landfill. No documents constituting communications or financial records were produced. No indication was made as to what documents produced related to what requests.

River Birch repeatedly asserts a string of objections to successive discovery requests without explaining why the individual interrogatories or requests for production of documents were objectionable. The objections are boilerplate, and lack specificity as to each discovery request. As such, River Birch has failed to properly object to the discovery propounded upon it.

It is well settled under Louisiana law that the discovery statutes are to be liberally and broadly construed to achieve their intended objectives. *Hodges v. Southern Farm Bureau Cas. Ins. Co.*, 433 So.2d 125 (La.1983). A party generally may obtain discovery of any information which is relevant to the subject matter involved in the pending action. La. Code Civ. P. art. 1422; *Stolzle v. Safety & Systems Assurance Consultants, Inc.*, 02-1197 (La.5/24/02), 819 So.2d 287.

Beginning with its answer to the first Interrogatory, River Birch objects because the information sought was "irrelevant, overbroad, seeks personal, sensitive and confidential financial information, and ... is not reasonably calculated to lead to the discovery of admissible evidence." Interrogatory No. 1 seeks a simple listing of financial institutions with which River Birch had accounts. Certain financial information about a defendant may be discovered when one of the issues in controversy in the action relates to a business transaction or financial issue. *See, e.g., Hill on Behalf of Williams v. City of New Orleans*, 549 So. 2d 858 (La. 1989); *Ward v. Tenneco Oil Co.*, 564 So. 2d 814 (La. App. 3 Cir. 1990); *Succession of Davidson v. Forrest*, 577 So. 2d 1222 (La. App. 3 Cir. 1991). The information sought throughout Movants' discovery requests is relevant, and/or reasonably calculated to lead to the discovery of admissible evidence, because the information pertains to financial transactions, communications and/or documents involving River Birch and persons and/or entities involved in Jefferson Parish government and/or the local landfill industry. The petition clearly alleges that River Birch engaged in unethical or illegal financial transactions.

Additionally, as alleged in the indictment of Henry Mouton, certain defendants employed a "straw man" to transfer money to a candidate for federal office. *See* Paragraphs 73 to 76 of the indictment of Henry Mouton attached to *Motion to Compel Defendant Frederick R. Heebe* as Exhibit "C"; *see also Factual Basis for Henry Mouton Plea Agreement* attached to *Motion to Compel Defendant Albert J. Ward, Jr.* as Exhibit "C." Further, Movants allege that defendants made payments to Jefferson Parish officials through insurance premiums paid to Lagniappe Industries, LLC. Payments of monies by indirect means is a central allegation of Movants. Thus, the financial transactions of River Birch are reasonably calculated to lead to the discovery of admissible evidence. Movants should be allowed to discover how monies were conveyed, and instructions delivered, to the alleged co-conspirators of River Birch.

Thus, although financial information is sensitive and confidential, here, as noted in *Hill on Behalf of Williams*, financial transactions are at the crux of this case, and discovery of same is necessary for movants to prove their case. As such, this Court should not allow River Birch to hide behind the objection of "highly personal, sensitive and confidential ... ."

River Birch also asserts that the discovery requests seek "identification of all financial accounts for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit." The timeframe is relevant because the transactions and occurrences alleged in the Petition begin in 1985 with "the formation Shadowlake Managment Co., Inc. an umbrella corporation registered in Louisiana in 1985 that includes among its subsidiaries River Birch Incorporated, established in 1990." *See* Paragraph 3 of the *Petition for Damages*. The allegations continue through the late 1990s into this century. In fact, the indictment of Henry Mouton alleges Henry Mouton began receiving payments in 2003. *See Motion to Compel Frederick R. Heebe* and Exhibit "C" attached thereto. Seeking information from 2001 through present clearly falls within the scope of years pertinent to this matter, thereby making requests for information from 2001 to present reasonable.

Similarly, the requests in Interrogatories Nos. 2, 3 and 4 for lists of employees, consultants, and owners of River Birch are reasonably calculated to lead to admissible evidence, as responses to

these interrogatories will reveal potential witnesses with knowledge of the activities of River Birch. Further, responses to these interrogatories will reveal potential parties through which River Birch may have made unethical or illegal payments to others, as River Birch is alleged to have done through Henry Mouton.

River Birch's attempt to dodge responding to Interrogatory No. 5 should not succeed. The United States government seized thousands of documents from River Birch, and River Birch has sued in federal court over that seizure. Movants have a right to know whether River Birch is failing to produce any of those documents because River Birch currently lacks a copy of the documents because they are in the possession of the United States government.

In response to the misnumbered Interrogatory No. 5, River Birch claims that a request to list "any exhibits you may introduce at the hearing on exceptions in this matter" is "premature [as n]o date has been set for the hearing and discovery has just begun." Although River Birch may not yet have identified all of the exhibits it "may introduce at the hearing on exceptions in this matter," it should have identified some exhibits by now, and at minimum should be ordered to respond fully to the interrogatory at least thirty (30) days before the hearing on the exceptions.

Defendant River Birch also alleges that Movants "are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation." This rhetorical flourish adds nothing of substance to the other objections.

In Response to Request for Production of Documents No. 1, River Birch alleges that "the documents sought are on file with the Secretary of State, they are equally accessible to Plaintiffs as to Defendant." It is not necessarily true that all of the requested documents would be filed with the Secretary of State. In fact, after claiming that the documents are public record, River Birch then objects because the documents "include confidential business records Defendant should not be required to produce absent a showing of good cause, which Plaintiffs have not made or the entry of a protective order." However, River Birch has never requested a protective order. Further, River Birch still has a duty to produce the documents even if they could theoretically be obtained by other means. River Birch only produced *Articles of Organization* and *Articles of Incorporation*. River

Birch should be compelled to produce the other corporate documents as they are reasonably calculated to reveal the ownership, management and operations of River Birch which are relevant to this litigation.

River Birch failed to produce any documents in response to Request for Production of Documents No. 2 which requests evidence of distributions to owners and investors. This request, like the list of owners discussed above, is reasonably calculated to lead to information regarding the unethical or illegal payments to others. River Birch further failed to produce any documents in response to requests for Production of Documents Nos. 4 and 5 which requests documents regarding the re-zoning of the River Birch Landfill. These requests are reasonably calculated to lead to information regarding the relationship between River Birch and other alleged co-conspirators who were involved in the re-zoning of the River Birch Landfill. *See* Paragraph 7 of the *Petition for Damages*.

River Birch also refused to produce any documents in response to Requests for Production of Documents Nos. 6, 7 and 8, which request documents regarding insurance contracts through which unethical or illegal payments may have been made to others. *See* Paragraphs 13 to 19, 66 and 78 of the *Petition for Damages*. River Birch asserts various privileges, including the "attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege." However, again, River Birch does not produce a privilege log, and in no way explains how the privileges apply, or to what information. As such, these objections do not create an actual basis on which River Birch may rely in refusing to answer the discovery.

Further, in Response to Request for Production of Documents No. 8, River Birch claims, in addition to the boilerplate objections discussed above, that the request calls for the "production of personal and sensitive health care information protected from disclosure by federal and state privacy laws, including but not limited to HIPAA." Although the request demanded "all documents related to any insurance policies serviced by Lagniappe Industries, LLC and/or THT Group, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana," the specific documents requested did not include medical records. Further, River Birch produced no documents,

-5-

whereas there would be numerous responsive documents that would in no way include personal and sensitive health care information, such as the policies themselves and the documents regarding related premium payments.

In Response to Request for Production of Documents No. 9, River Birch claims, in addition to the boilerplate objections discussed above, that "a wide variety of financial documents for fourteen year period ... is not reasonably limited in scope to a timeframe relevant to this lawsuit." In 1997, the site where River Birch Landfill is today located was re-zoned, despite much public outcry, which enabled River Birch Incorporated to operate the landfill at issue in this suit. Tim Coulon, then Parish President, and Aaron Broussard, then Council Chairman, oversaw and supported the re-zoning of River Birch Landfill, thereby making the time-frame in the Request relevant to the scope of time related to this lawsuit. *See* Paragraph 7 of the *Petition for Damages*.

River Birch failed to produce any documents in response to Requests for Production of Documents Nos. 9, 10, and 19 all of which regard relevant financial data reasonably calculated to lead to discovery of unethical and/or illegal payments to third parties, including Lagniappe Industries, LLC, the very crux of Movants' claims.

In Response to Request for Production of Documents Nos. 11 and 12 River Birch only produced the RFP, its response and the resultant contract, but no other responsive documents, such as internal memoranda or emails, correspondence or recordings. River Birch completely failed to respond to Request for Production of Documents Nos. 13 and 14 which regarded a related RFP and an Attorney General's Opinion regarding the RFP. These RFPs lead to the very contract which Movants allege they lost because of the tortious actions of River Birch.

In Responses to Requests for Production of Documents Nos. 15, 16, 17 and 18, River Birch failed to produce any documents regarding communications between the relevant persons, either named in the *Petition for Damages*, or related thereto. Communications between the relevant persons listed are reasonably calculated to evidence the conspiracies alleged.

In Responses to Requests for Production of Documents Nos. 20, 21 and 22, River Birch failed to produce any documents regarding relevant studies, persons or entities who may have

conducted studies, or persons or entities through which River Birch may have made unethical or illegal payments. In Responses to Requests for Production of Documents Nos. 23, 24 and 25 River Birch fails to produce documents regarding Movants. In Responses to Requests for Production of Documents No. 26 River Birch failed to produce documents identified in answers to interrogatories, because, of course, River Birch failed to answer any interrogatories.

In Response to Request for Production of Documents No. 27, River Birch claims that a request for "any exhibits you may introduce at the hearing on exceptions in this matter" is "premature [as n]o date has been set for the hearing and discovery has just begun." Again, although River Birch may not yet have identified all of the exhibits it "may introduce at the hearing on exceptions in this matter," it should have identified some exhibits by now, and at minimum should be ordered to respond fully to Request for Production of Documents No. 2 at least thirty (30) days before the hearing on the exceptions.

## CONCLUSION

For the foregoing reasons, this Honorable Court should GRANT the *Motion to Compel Answers to Interrogatories and Responses to Requests for Production of Documents* filed by Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC, and compel Defendants River Birch Incorporated and Hwy. 90, LLC to answer the interrogatories and respond to the requests for production of documents.

Respectfully submitted,

RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELE (#22385)
MELISSA M. DESORMEAUX (#33093)
Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue - Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*

-7-



## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via email, on this the 8th day of June 2011.

STEPHEN M. GELE

F I L E D

JUN 08 2011

DEPUTY CLERK
CIVIL DISTRICT COURT

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

### STATE OF LOUISIANA

NO: 11-2129                                                      DIVISION: "D"

### CONCRETE BUSTERS OF LOUISIANA, INC.
### AND WASTE REMEDIATION OF PLAQUEMINES, LLC

### VERSUS

### FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
### RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____        _____
                                                       **DEPUTY CLERK**

### RULE 10.1 CONFERENCE

Undersigned counsel hereby certifies, pursuant to Rule 10.1 of the Uniform District Court

Rules, that he contacted opposing counsel and attempted to resolve the discovery dispute addressed

in the *Motion to Compel Answers to Interrogatories and Responses to Requests for Production of

Documents*, but has been unsuccessful. On May 24, 2011, undersigned counsel wrote counsel for

River Birch Incorporated and Hwy 90, LLC, stating:

> On May 4, 2011, we propounded upon each of your respective clients
> *Interrogatories* and *Requests for Production of Documents*. We have yet to
> receive any objections or responses to same. Please be available for a
> discovery conference, pursuant to Rule 10.1 of the Uniform Rules of Court,
> via telephone on Thursday, May 26, 2011, at 10:00 a.m. to discuss the
> overdue discovery responses. I shall initiate the call.

*See* Exhibit "D" to *Motion to Compel* against Albert J. Ward, Jr.

After later receiving the discovery responses, and noting that no information and few

documents were produced, on June 6, 2011, undersigned counsel called Edward J. Castaing, Jr.,

counsel for River Birch Incorporated and Hwy 90, LLC, and was informed that River Birch

Incorporated and Hwy 90, LLC were still asserting objections per *Defendant's Responses to

Plaintiffs' Interrogatories and Requests for Production of Documents* dated May 26, 2011, and

therefore they would not be supplementing any responses, but the issue of further production must

be litigated.

Respectfully submitted,

_____

RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELE (#22385)
MELISSA M. DESORMEAUX (#33093)
              Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue - Suite 3702
New Orleans, Louisiana 70170
Telephone:  (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via U.S. mail, on this the 8th day of June 2011.

_____

STEPHEN M. GELE



FILED

JUN 0 8 2011

DEPUTY CLERK
CIVIL DISTRICT COURT

## CIVIL DISTRICT COURT PARISH OF ORLEANS

## STATE OF LOUISIANA

NO.   11-2129                                                DIVISION "D"

### CONCRETE BUSTERS OF LOUISIANA, INC.
### AND WASTE REMEDIATION OF PLAQUEMINES, LLC

### VERSUS

### FREDERICK R. HEEBE,  ALBERT J. WARD, JR.,
### RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____        _____

                                                    DEPUTY CLERK


### FIRST SET OF INTERROGATORIES AND
### REQUEST FOR PRODUCTION OF DOCUMENTS

TO:   RIVER BIRCH INCORPORATED
      through counsel of record
      **Edward J. Castaing**
      Crull, Castaing, Lilly & Herman
      601 Poydras St., Suite 2323
      New Orleans, LA 70130

Pursuant to Louisiana Code of Civil Procedure Article 1461, *et. seq*, **CONCRETE BUSTERS OF LOUISIANA, INC. and WASTE REMEDIATION OF PLAQUEMINES, LLC** (hereinafter "Plaintiffs") hereby propound the following interrogatories and request for production to defendant **RIVER BIRCH INCORPORATED** requiring a response within fifteen (15) days pursuant to Louisiana Code of Civil Procedure Article 1462:

### I.

### GENERAL INSTRUCTIONS AND DEFINITIONS

The following general instructions and definitions shall apply throughout these requests for production of documents:

A.   **Definitions:**

As used herein, the following definitions apply:

1.  The terms "you," "your," and "yours" shall refer to all present or former employees, agents, representatives, partners, or anyone acting or purporting to act on their behalf, for any purpose whatsoever.



EXHIBIT
A

2. The term "document" shall mean any written, printed, non-printed, typed, photocopied, photographic, reproduced, and graphic matter of any kind or character and any recorded or stored information, however produced or reproduced, (I) in your possession, custody or control, or (ii) known by you to exist, including (without limiting the generality of the foregoing) affidavits, agreements, books, calendars, communications, contracts, correspondence, desk pads, diaries, diary or calendar entries, interim or tentative drafts, journals and journal entries, ledgers and ledger entries, lists, memoranda, minutes and minute entries, notes, printouts, records of meetings, telephone or other conferences, conversations or communications, reports, statements, studies, telegraphs, telexes, printed copies of electronic mail, teletypes and/or work papers, and information stored in computers or other data storage or processing equipment, or in magnetic or electronic media, microfilm or microfiche or other form which can be retrieved or printed out or reduced or readable form through proper programming, decoding, or processing, together with necessary instructions for understanding, using, or reproducing same. The term "document" also includes originals and all copies of documents containing notes, notations, comments, observations, remarks, underscoring, marks made for emphasis, highlighting, or attention or encircling, relating or referring in any way to the subject matter of these interrogatories and requests for production of documents.

3. The term "person" shall mean all natural and civil persons and includes any individual, association, corporation, partnership, and any other business, legal or government entity.

4. "Identify" in connection with a document means to:

(a) State the type of document (for example, a letter, a memorandum, etc.); the date(s) upon which the document was prepared and/or executed; the name and address of its author; and the name and address of the recipients and intended recipients of the document or copies of the document.

(b) In lieu of identifying a document as required by an interrogatory, it shall be an acceptable response to the interrogatory to attach a legible copy of the document to the responses, and to make reference to the specific document in the response to the interrogatory. By responding in this fashion, you agree to waive all objections to the authenticity of the copy so produced.

5. "Identify" or "name" in connection with a natural person means to:

2

(a) State the person's name, present address and telephone number, if known, or most recent past address and telephone number, if the present address and telephone number are not known.

(b) State the person's relationship to you, identify his present employer and the person's position with that employer, and state the person's title which is derived from that position.

6. "Identify" in connection with a corporation means to:

(a) State its full name, its state of incorporation, and its principal place of business; and

(b) State the corporation's relationship to you.

7. "Identify" in connection with a person other than an individual or a corporation means to state the person's official name, the person's organizational form, and the person's present address.

8. "Identify" in connection with any act, occurrence, even, action, doing, occasion, meeting, transaction, or conduct (all of which are included within the term "act" when it is used herein in connection with the term "identify"), shall mean to set forth the event or events constituting such act; state its location; state the date of the act; identify the persons participating, present, or involved at any time during the act, or having knowledge concerning the act; and identify all documents relating or referring in any way thereto.  When used in reference to any oral conversation or discussion, "identify" shall mean, in additional to the foregoing, to set forth the substance of what was said, when, where, by and to whom.

B.   **Personal and Business Files:**

The discovery sought by these interrogatories and requests for production of documents encompasses, but is not limited to, material contained in, or which might be derived or ascertained from, any of your personal and/or business files and the personal and/or business files of your agents, employees, representatives and the files of your attorney(s) and his (their) agents, employees, representatives, or investigators.

C.   **Continuing Nature:**

These interrogatories are continuing in nature pursuant to the Louisiana Code of Civil Procedure.

**D.**   **Production of Documents**

Please indicate when and where the documents requested can be made available for inspection. If you deem compliance with any request for production of documents too burdensome or too cumbersome, identify the documents and fully explain why you deem their production to be too burdensome.

## II.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Please list all financial institutions including but not limited to banks, savings & loans companies, credit card companies, and credit unions with which you have or have had accounts from 2001 through present.

**INTERROGATORY NO. 2:**

Please list all employees of River Birch Incorporated, by year, for the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011. Please include in your response all employees' current home addresses, telephone number, and job descriptions.

**INTERROGATORY NO. 3:**

Please identify any professional consultants hired by you during the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**INTERROGATORY NO. 4:**

Please identify the owners (and their percentages of ownership) of River Birch Incorporated and its officers and board of directors, for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**INTERROGATORY NO. 5:**

Please identify any and all documents in the possession of River Birch Incorporated, or housed at any of its offices, including the offices located at 2000 Belle Chase Hwy., Third Floor, Terrytown, LA 70056, turned over to, or seized by, since 2001; please also state whether a copy of the identified documents are in your possession.

**INTERROGATORY NO. 5:**

Please list any exhibits you may introduce at the hearing on exceptions in this matter.

**III.**

**REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **River Birch Incorporated**, and/or any predecessor or successor entity from the date of incorporation to present.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce a copy of any documents, including but not limited to a copy of the deed, showing an ownership interest in the land or contributions made for its purchase on which River Birch Incorporated operates its landfill.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present..

**REQUEST FOR PRODUCTION NO. 5:**

Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you

and:

      1) Tim Coulon

      2) Aaron Broussard

      3) Tom Wilkenson

## REQUEST FOR PRODUCTION NO. 6:

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to the River Birch Incorporated and/or its parent company, Shadowlake Management, LLC's cancellation of its contract with Group Insurance Associates Inc.

## REQUEST FOR PRODUCTION NO. 7:

Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

## REQUEST FOR PRODUCTION NO. 7:

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to the River Birch Incorporated and/or its parent company, Shadowlake Management, LLC's move to Lagniappe Industries, L.L.C. and/or THT Group to provide its employees with insurance products.

## REQUEST FOR PRODUCTION NO. 8:

Please produce a copy of any and all documents related to any insurance policies serviced by **Lagniappe Industries, L.L.C. and/or THT Group**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks,

worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**REQUEST FOR PRODUCTION NO. 9**:

Please produce copies of any and all bank statements, including cancelled checks, "Quickbooks" accountings, check registers, accounts receivable subledgers and accounts payable subledgers for River Birch Incorporated from 1997- present.

**REQUEST FOR PRODUCTION NO. 10**:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between River Birch Incorporated or Shadowlake Management, LLC, and Lagniappe Industries, LLC.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, or recordings relating to Jefferson Parish RFP No. 158.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, or recordings relating to Jefferson Parish Council's Resolution 110366 or any other Resolution which contemplated or referenced cancelling RFP No. 158.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce any documents, internal memoranda or e-mails, correspondence, or recordings relating to Jefferson Parish RFP No. 176, including but not limited to the bid package submitted to Jefferson Parish in response to RFP No. 176.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce any documents, internal memoranda or e-mails, correspondence, or

recordings relating to the Office of the Attorney General for the State of Louisiana's issued Opinion No. 08-0270.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce a copy of any and all communications, including e-mails, or memorializations of communications, between any of employee of River Birch Incorporated and/or its parent company, Shadowlake Mangement, LLC, and:

1) Tim Whitmer

2) Tom Wilkenson

3) Tim Coulon

4) Aaron Broussard

5) Dawn Whitmer

6) Henry Mouton

7) David Fos

8) Al Gandolfi

9) Dutchie Connick

10) Nancy Cassagne

11) Any employee of Lagniappe Industries, LLC

12) Any employee of Tim Coulon Campaign Committee, Inc.

13) Any employee of DHP, L.L.C.

14) Any employee of CWC Gaming, LLC

15) Any member of the Jefferson Parish Council from January 1, 2007-present.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce any and all contracts, drafts of contracts, forms, memorandums of

understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated regarding the waste removal/landfill contract.

**REQUEST FOR PRODUCTION NO. 18**:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

**REQUEST FOR PRODUCTION NO. 19**:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, K-1s, W-2s,  accounting records, between River Birch Incorporated or its parent company Shadowlake Management, LLC and:

      1) Henry Mouton;

      2) Tim Whitmer;

      3) Dawn Whitmer;

      4) Tim Coulon;

      5) Lagniappe Industries, LLC;

      6) Tom Wilkenson;

      7) Aaron Broussard;

      8) DHP, L.L.C. or any employee thereof;

      9) CWC Gaming, LLC or any employee thereof;

      10) David Fos

      11) Nancy Cassagne

      12) Zydeco Holdings, L.L.C.

      13) Water Front Properties, LLC

14) Ring Associates, LLC

15) B & C Contractors, LLC

16) Dangle & Associates, LLC

17) Anne's Properties, LLC

18) Big Bang Properties, LLC

19) Trout Point Lodge

20) West Jefferson Hospital

20) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce copies of any studies commissioned by River Birch Incorporated or any of its employees that consider the impact of the closing of landfills in Greater New Orleans.

**REQUEST FOR PRODUCTION NO. 21:**

Please produce any and all contracts you had with consultants from 2004 through present.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce any and all contracts you have with subcontractors from 2004 through present.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings regarding the Plaintiffs or any of its directors or members.

**REQUEST FOR PRODUCTION NO. 24:**

Please produce any documents or recordings that would memorialize any surveillance of the Plaintiffs or any of its directors or members, including reports or video or audio recordings.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce a copy of any and all print outs, download html, jpg or other digital files, of any representation or depiction of, or any typed writings of Plaintiffs, or any of their directors or

members located on the World Wide Web.

**REQUEST FOR PRODUCTION NO. 26:**

Please produce a copy of all documents identified in response to interrogatories propounded upon you.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce a copy of any exhibits you may introduce at the hearing on exceptions in this matter.

Respectfully submitted,

RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELÉ (#22385)
MELISSA M. DESORMEAUX (#33093)
Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Telecopy: (504) 525-2205

*Counsel for Plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served the foregoing on all counsel of record in this matter this 4th day of May, 2011 by facsimile.

STEPHEN M. GELÉ

11

CIVIL DISTRICT COURT PARISH OF ORLEANS

STATE OF LOUISIANA

NO.   11-2129                                                                 DIVISION "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE,  ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____            _____
                                          DEPUTY CLERK


FIRST SET OF INTERROGATORIES AND
REQUEST FOR PRODUCTION OF DOCUMENTS

TO:  HWY 90, LLC
     through counsel of record
     Edward J. Castaing
     Crull, Castaing, Lilly & Herman
     601 Poydras St., Suite 2323
     New Orleans, LA 70130

Pursuant to Louisiana Code of Civil Procedure Article 1461, *et. seq*, CONCRETE

BUSTERS OF LOUISIANA, INC. and WASTE REMEDIATION OF PLAQUEMINES, LLC

(hereinafter "Plaintiffs") hereby propound the following interrogatories and request for production

to defendant HWY 90, LLC requiring a response within fifteen (15) days pursuant to Louisiana

Code of Civil Procedure Article 1462:

I.

GENERAL INSTRUCTIONS AND DEFINITIONS

The following general instructions and definitions shall apply throughout these requests for

production of documents:

A.   **Definitions:**

As used herein, the following definitions apply:

1. The terms "you," "your," and "yours" shall refer to all present or former employees,

agents, representatives, partners, or anyone acting or purporting to act on their behalf, for any

purpose whatsoever.

2. The term "document" shall mean any written, printed, non-printed, typed, photocopied, photographic, reproduced, and graphic matter of any kind or character and any recorded or stored information, however produced or reproduced, (I) in your possession, custody or control, or (ii) known by you to exist, including (without limiting the generality of the foregoing) affidavits, agreements, books, calendars, communications, contracts, correspondence, desk pads, diaries, diary or calendar entries, interim or tentative drafts, journals and journal entries, ledgers and ledger entries, lists, memoranda, minutes and minute entries, notes, printouts, records of meetings, telephone or other conferences, conversations or communications, reports, statements, studies, telegraphs, telexes, printed copies of electronic mail, teletypes and/or work papers, and information stored in computers or other data storage or processing equipment, or in magnetic or electronic media, microfilm or microfiche or other form which can be retrieved or printed out or reduced or readable form through proper programming, decoding, or processing, together with necessary instructions for understanding, using, or reproducing same. The term "document" also includes originals and all copies of documents containing notes, notations, comments, observations, remarks, underscoring, marks made for emphasis, highlighting, or attention or encircling, relating or referring in any way to the subject matter of these interrogatories and requests for production of documents.

3. The term "person" shall mean all natural and civil persons and includes any individual, association, corporation, partnership, and any other business, legal or government entity.

4. "Identify" in connection with a document means to:

(a) State the type of document (for example, a letter, a memorandum, etc.); the date(s) upon which the document was prepared and/or executed; the name and address of its author; and the name and address of the recipients and intended recipients of the document or copies of the document.

(b) In lieu of identifying a document as required by an interrogatory, it shall be an acceptable response to the interrogatory to attach a legible copy of the document to the responses, and to make reference to the specific document in the response to the interrogatory. By responding in this fashion, you agree to waive all objections to the authenticity of the copy so produced.

5. "Identify" or "name" in connection with a natural person means to:

2

(a) State the person's name, present address and telephone number, if known, or most recent past address and telephone number, if the present address and telephone number are not known.

(b)  State the person's relationship to you, identify his present employer and the person's position with that employer, and state the person's title which is derived from that position.

6.  "Identify" in connection with a corporation means to:

(a)  State its full name, its state of incorporation, and its principal place of business; and

(b)  State the corporation's relationship to you.

7.  "Identify" in connection with a person other than an individual or a corporation means to state the person's official name, the person's organizational form, and the person's present address.

8.  "Identify" in connection with any act, occurrence, even, action, doing, occasion, meeting, transaction, or conduct (all of which are included within the term "act" when it is used herein in connection with the term "identify"), shall mean to set forth the event or events constituting such act; state its location; state the date of the act; identify the persons participating, present, or involved at any time during the act, or having knowledge concerning the act; and identify all documents relating or referring in any way thereto.  When used in reference to any oral conversation or discussion, "identify" shall mean, in additional to the foregoing, to set forth the substance of what was said, when, where, by and to whom.

**B.**      <u>**Personal and Business Files:**</u>

The discovery sought by these interrogatories and requests for production of documents encompasses, but is not limited to, material contained in, or which might be derived or ascertained from, any of your personal and/or business files and the personal and/or business files of your agents, employees, representatives <u>and the files of your attorney(s)</u> and his (their) agents, employees, representatives, or investigators.

**C.**   <u>**Continuing Nature:**</u>

These interrogatories are continuing in nature pursuant to the Louisiana Code of Civil Procedure.

3

**D.    Production of Documents**

Please indicate when and where the documents requested can be made available for inspection. If you deem compliance with any request for production of documents too burdensome or too cumbersome, identify the documents and fully explain why you deem their production to be too burdensome.

## II.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Please list all financial institutions including but not limited to banks, savings & loans companies, credit card companies, and credit unions with which you have or have had accounts from 2001 through present.

**INTERROGATORY NO. 2:**

Please list all employees of HWY 90, LLC, by year, for the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011. Please include in your response all employees' current home addresses, telephone number, and job descriptions.

**INTERROGATORY NO. 3:**

Please identify any professional consultants hired by you during the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**INTERROGATORY NO. 4:**

Please identify the owners (and their percentages of ownership) of HWY 90, LLC and its officers and board of directors, for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**INTERROGATORY NO. 5:**

Please identify any and all documents in the possession of HWY 90, LLC, or housed at any of its offices, including the offices located at 2000 Belle Chase Hwy., Third Floor, Terrytown, LA 70056, turned over to, or seized by, since 2001; please also state whether a copy of the identified documents are in your possession.

4

## INTERROGATORY NO. 5:

Please list any exhibits you may introduce at the hearing on exceptions in this matter.

### III.

### REQUEST FOR PRODUCTION OF DOCUMENTS

## REQUEST FOR PRODUCTION NO. 1:

Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **HWY 90, LLC,** and/or any predecessor or successor entity from the date of incorporation to present.

## REQUEST FOR PRODUCTION NO. 2:

Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

## REQUEST FOR PRODUCTION NO. 3:

Please produce a copy of any documents, including but not limited to a copy of the deed, showing an ownership interest in the land or contributions made for its purchase on which HWY 90, LLC operates its landfill.

## REQUEST FOR PRODUCTION NO. 4:

Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present..

## REQUEST FOR PRODUCTION NO. 5:

Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you

and:

        1) Tim Coulon

        2) Aaron Broussard

        3) Tom Wilkenson

**REQUEST FOR PRODUCTION NO. 6:**

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to the HWY 90, LLC and/or its parent company, Shadowlake Management, LLC's cancellation of its contract with Group Insurance Associates Inc.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to the HWY 90, LLC and/or its parent company, Shadowlake Management, LLC's move to Lagniappe Industries, L.L.C. and/or THT Group to provide its employees with insurance products.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce a copy of any and all documents related to any insurance policies serviced by **Lagniappe Industries, L.L.C. and/or THT Group**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks,

worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce copies of any and all bank statements, including cancelled checks, "Quickbooks" accountings, check registers, accounts receivable subledgers and accounts payable subledgers for HWY 90, LLC from 1997- present.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between HWY 90, LLC or Shadowlake Management, LLC, and Lagniappe Industries, LLC.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, or recordings relating to Jefferson Parish RFP No. 158.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, or recordings relating to Jefferson Parish Council's Resolution 110366 or any other Resolution which contemplated or referenced cancelling RFP No. 158.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce any documents, internal memoranda or e-mails, correspondence, or recordings relating to Jefferson Parish RFP No. 176, including but not limited to the bid package submitted to Jefferson Parish in response to RFP No. 176.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce any documents, internal memoranda or e-mails, correspondence, or

recordings relating to the Office of the Attorney General for the State of Louisiana's issued Opinion No. 08-0270.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce a copy of any and all communications, including e-mails, or memorializations of communications, between any of employee of HWY 90, LLC and/or its parent company, Shadowlake Mangement, LLC, and:

      1) Tim Whitmer

      2) Tom Wilkenson

      3) Tim Coulon

      4) Aaron Broussard

      5) Dawn Whitmer

      6) Henry Mouton

      7) David Fos

      8) Al Gandolfi

      9) Dutchie Connick

      10) Nancy Cassagne

      11) Any employee of Lagniappe Industries, LLC

      12) Any employee of Tim Coulon Campaign Committee, Inc.

      13) Any employee of DHP, L.L.C.

      14) Any employee of CWC Gaming, LLC

      15) Any member of the Jefferson Parish Council from January 1, 2007-present.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with HWY 90, LLC.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce any and all contracts, drafts of contracts, forms, memorandums of

understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and HWY 90, LLC regarding the waste removal/landfill contract.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

**REQUEST FOR PRODUCTION NO. 19:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, K-1s, W-2s,  accounting records, between HWY 90, LLC or its parent company Shadowlake Management, LLC and:

> 1) Henry Mouton;
>
> 2) Tim Whitmer;
>
> 3) Dawn Whitmer;
>
> 4) Tim Coulon;
>
> 5) Lagniappe Industries, LLC;
>
> 6) Tom Wilkenson;
>
> 7) Aaron Broussard;
>
> 8) DHP, L.L.C. or any employee thereof;
>
> 9) CWC Gaming, LLC or any employee thereof;
>
> 10) David Fos
>
> 11) Nancy Cassagne
>
> 12) Zydeco Holdings, L.L.C.
>
> 13) Water Front Properties, LLC

9

14) Ring Associates, LLC

15) B & C Contractors, LLC

16) Dangle & Associates, LLC

17) Anne's Properties, LLC

18) Big Bang Properties, LLC

19) Trout Point Lodge

20) West Jefferson Hospital

20) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce copies of any studies commissioned by HWY 90, LLC or any of its employees that consider the impact of the closing of landfills in Greater New Orleans.

**REQUEST FOR PRODUCTION NO. 21:**

Please produce any and all contracts you had with consultants from 2004 through present.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce any and all contracts you have with subcontractors from 2004 through present.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings regarding the Plaintiffs or any of its directors or members.

**REQUEST FOR PRODUCTION NO. 24:**

Please produce any documents or recordings that would memorialize any surveillance of the Plaintiffs or any of its directors or members, including reports or video or audio recordings.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce a copy of any and all print outs, download html, jpg or other digital files, of any representation or depiction of, or any typed writings of Plaintiffs, or any of their directors or

members located on the World Wide Web.

**REQUEST FOR PRODUCTION NO. 26:**

Please produce a copy of all documents identified in response to interrogatories propounded upon you.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce a copy of any exhibits you may introduce at the hearing on exceptions in this matter.

Respectfully submitted,

RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. GELÉ (#22385)
MELISSA M. DESORMEAUX (#33093)
Of
SMITH & FAWER, L.L.C.
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Telecopy: (504) 525-2205

*Counsel for Plaintiffs, Concrete Busters of Louisiana, Inc.
and Waste Remediation of Plaquemines, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served the foregoing on all counsel of record in this matter this 4th day of May, 2011 by facsimile.

STEPHEN M. GELÉ

11

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                              DIVISION: "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____          _____
                                              DEPUTY CLERK

### DEFENDANT'S RESPONSES TO PLAINTIFF'S
### INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant, River Birch Incorporated, responds to the following Interrogatories and Request for Production of Documents from Plaintiffs as follows:

### GENERAL OBJECTIONS

1.      To the extent that any interrogatory or request for production requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, the work product or anticipation of litigation doctrines, or rule of confidentiality provided by law, defendant objects to the interrogatory or request for production on that grounds and claims such privilege or doctrinal protection. Moreover, the production of any protected information pursuant to the interrogatories and requests for production is inadvertent and without prejudice to defendant's right later to object that such information is protected and that production of such information was inadvertent.

2.      Defendant further objects to any interrogatory or request for production to the extent that it seeks disclosure of information or documents where such disclosure would violate the privacy rights of individuals, confidentiality agreements, governmental regulations, or court orders restricting the disclosure of information. Moreover, the production of any protected information or document pursuant to the interrogatories and requests for production is inadvertent and without prejudice to defendant's right later to object that such information or document is protected and that its production was inadvertent.



EXHIBIT
B

3.     In responding to these interrogatories and request for production, defendant does not waive and specifically reserves all general and specific objections. Additionally, defendant does not concede by responding that the information sought or provided is relevant to the subject matter of this action or is calculated to lead to the discovery of admissible evidence. Nor shall the production of any information be construed as an admission by defendant that said information is relevant, material, authentic, or otherwise admissible as evidence. Defendant expressly reserves the right to object to further discovery and to the subject matter of these interrogatories, as well as to the introduction into evidence of any responses to these interrogatories.

4.     These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

## INTERROGATORIES

## INTERROGATORY NO. 1:

Please list all financial institutions including but not limited to banks, savings & loans companies, credit card companies, and credit unions with which you have or have had accounts from 2001 through present.

## RESPONSE TO INTERROGATORY NO. 1:

Defendant objects to this Interrogatory because it is irrelevant, overbroad, unduly burdensome, seeks personal, sensitive and confidential financial information, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation. Plaintiffs have not obtained a judgment against Defendant and Plaintiffs are not entitled to discovery regarding Defendant's personal finances or assets.

Further, even if the information sought was relevant, information regarding Defendant's financial accounts is highly personal, sensitive and confidential and Defendant should not be required to identify it absent a showing of good cause, which Plaintiffs have not made. Finally, this Interrogatory appears propounded only to harass Defendant, as it seeks

2

identification of all financial accounts for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

## INTERROGATORY NO. 2:

Please list all employees of River Birch Incorporated, by year, for the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010 and 2011.  Please include in your response all employees' current home addresses, telephone number, and job descriptions.

## RESPONSE TO INTERROGATORY NO. 2:

Defendant objects to this Interrogatory because it is irrelevant, overbroad, unduly burdensome, seeks personal, sensitive and confidential information, and it is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation.

Further, even if the information sought was relevant, information regarding Defendant's employees, who are not parties to this litigation, is private and confidential and Defendant should not be required to identify it absent a showing of good cause, which Plaintiffs have not made.  Finally, this Interrogatory appears propounded only to harass Defendant, as it seeks identification of information for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

## INTERROGATORY NO. 3:

Please identify any professional consultants hired by you during the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

## RESPONSE TO INTERROGATORY NO. 3:

Defendant objects to this Interrogatory because it is irrelevant, overbroad, unduly burdensome, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation.

Further, this Interrogatory appears propounded only to harass Defendant, as it seeks identification of information for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

3

**INTERROGATORY NO. 4:**

Please identify the owners (and their percentages of ownership) of River Birch Incorporated and its officers and board of directors for the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**RESPONSE TO INTERROGATORY NO. 4:**

Defendant objects to this Interrogatory because it is irrelevant, overbroad, unduly burdensome, seeks confidential information, and it is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation.

Further, even if the information sought was relevant, information regarding Defendant's officers and board of directors, who are not parties to this litigation, is private and confidential and Defendant should not be required to identify it absent a showing of good cause, which Plaintiffs have not made.  Finally, this Interrogatory appears propounded only to harass Defendant, as it seeks identification of information for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**INTERROGATORY NO. 5:**

Please identify any and all documents in the possession of River Birch Incorporated, or housed at any of its offices, including the offices located at 2000 Belle Chase Highway, Third Floor, Terrytown, La. 70056, turned over to or seized by since 2001, please also state whether a copy of the identified documents are in your possession.

**RESPONSE TO INTERROGATORY NO. 5:**

Defendant objects to this Interrogatory because it is vague, irrelevant, overbroad, unduly burdensome, seeks personal, sensitive and confidential information, and it is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs demand identification of documents "in the possession of" Defendant that were "turned over to or seized by" an unnamed person or party.  The Interrogatory is inherently contradictory and confusing as documents cannot be in the possession of Defendant and at the same time seized by someone

4

else.  Moreover, the fact that Plaintiffs fail to name the alleged seizing party makes determination of which documents are sought to be identified impossible.

Further, this is a blanket request for information and Plaintiffs are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation.

Further, even if the information sought was reasonably identified and relevant, this Interrogatory appears propounded only to harass Defendant, as it seeks identification of information for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

## INTERROGATORY NO. 5:

Please list any exhibits you may introduce at the hearing on exceptions in this matter.

## RESPONSE TO INTERROGATORY NO. 5:

Defendant objects to this interrogatory as premature. No date has been set for the hearing and discovery has just begun.  Additional evidence may be uncovered as the case proceeds.  Defendant, therefore, specifically reserves the right to supplement this response.

## REQUEST FOR PRODUCTION OF DOCUMENTS

## REQUEST FOR PRODUCTION NO. 1:

Please produce a copy of the Articles of Organization, Articles of Incorporation, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of managers or members, and any and all documents submitted to the Louisiana Secretary of State, including but not limited to, annual reports, application for certificate of authority, application for appointment of registered agent, registered agent/office statement of change, articles of correction, articles of amendment, articles of merger or share exchange, reservation of name, letter of intent to dissolve, and/or application for registration of name, change of members and/or managers, regarding River Birch Incorporated, and/or any predecessor or successor entity from the date of incorporation to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks personal, sensitive and confidential information, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Moreover, to the extent that the documents sought are on file with the Secretary of State, they are equally accessible to Plaintiffs as to Defendant.

Further, even if the information sought was relevant, the documents sought include confidential business records Defendant should not be required to produce absent a showing of good cause, which Plaintiffs have not made or the entry of a protective order. Finally, this Request appears propounded only to harass Defendant, as it seeks production of a wide variety of business documents and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1's for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks personal, sensitive and confidential financial documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Plaintiffs have not obtained a judgment against any Defendant and are not entitled to discovery regarding the assets of Defendants or non-parties. Further, to the extent this Request seeks personal and confidential documents and tax records, Defendant should not be required to produce it absent a showing of good cause, which Plaintiffs have not made.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of documents for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 3**:

Please produce a copy of any documents, including but not limited to a copy of the deed, showing an ownership interest in the land or contributions made for its purchase on which River Birch Incorporated operated its landfill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3**:

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Moreover, to the extent that the documents sought are available in the public records, they are equally accessible to Plaintiffs as to Defendant.

**REQUEST FOR PRODUCTION NO. 4**:

Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**:

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Moreover, to the extent that the documents sought are available in the public records, they are equally accessible to Plaintiffs as to Defendant.

**REQUEST FOR PRODUCTION NO. 5**:

Please produce any correspondence, including emails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:

      1.     Tim Coulon

2.    Aaron Broussard

3.    Tom Wilkenson

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**:

*See* Objection to Request for Production No. 4.

**REQUEST FOR PRODUCTION NO. 6**:

Please produce any documents and correspondence, including emails, or recordings relating to the River Birch Incorporated and/or its parent company, Shadowlake Management, LLC's cancellation of its contract with Group Insurance Associates, Inc.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

**REQUEST FOR PRODUCTION NO. 7**:

Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc. with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not

reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce any documents, internal memoranda, correspondence, including email, or recordings relating to the River Birch Incorporated and/or its parent company, Shadowlake Management, LLC's move to Lagniappe Industries, LLC and/or THT Group to provide its employees with insurance products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it appears seeks production of confidential business documents which Defendant should not be required to produce absent a showing of good cause, which Plaintiffs have not made.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce a copy of any and all documents related to any insurance policies serviced by Lagniappe Industries, LLC and/or THT Group, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations

protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential and sensitive documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

Moreover, Plaintiffs' Request encompasses production of personal and sensitive health care information protected from disclosure by federal and state privacy laws, including but not limited to HIPAA.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce copies of any and all bank statements, including canceled checks, "Quickbooks" accounting, check registers, accounts receivable subledgers and accounts payable subledgers for River Birch Incorporated from 1997-present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks confidential financial information, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Plaintiffs have not obtained a judgment against Defendant and are not entitled to documents relating to Defendant's assets.

Further, even if the information sought was relevant, the documents sought include confidential financial records that Defendant should not be required to produce absent a showing of good cause, which Plaintiffs have not made. Finally, this Request appears propounded only to harass Defendant, as it seeks production of a wide variety of financial documents for a fourteen year period and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

10

**REQUEST FOR PRODUCTION NO. 10**:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, canceled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between River Birch Incorporated or Shadowlake Management, LLC, and Lagniappe Industries, LLC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 11**:

Please produce any and all documents, internal memoranda or emails, correspondence, or recordings relating to Jefferson Parish RFP No. 158.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and this Request

11

requires production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce any and all documents, internal memoranda or emails, correspondence, or recordings relating to Jefferson Parish Council's Resolution 110366 or any other Resolution which contemplated canceling RFP No. 158.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is overbroad, unduly burdensome and seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and this Request requires production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce any documents, internal memoranda or emails, correspondence, or recordings relating to Jefferson Parish RFP No. 176, including but not limited to the bid package submitted to Jefferson Parish in response to RFP No. 176.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is overbroad, unduly burdensome and seeks production of confidential business documents, without a showing of

good cause, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and this Request requires production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

Subject to these objections, Defendant will produce non-privileged, relevant documents for inspection and copying at a mutually convenient time and place.

**REQUEST FOR PRODUCTION NO. 14**:

Please produce any documents, internal memoranda or emails, correspondence, or recordings relating to the Office of the Attorney General for the State of Louisiana's issued Opinion No. 08-0270.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and this Request requires production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 15**:

Please produce a copy of any and all communications, including emails, or memorializations of communications between any of the employees of River Birch Incorporated and/or its parent company, Shadowlake Management, LLC, and:

1.    Tim Whitmer

2.    Tom Wilkenson

3.    Tim Coulon

4.      Aaron Broussard

5.      Dawn Whitmer

6.      Henry Mouton

7.      David Fos

8.      Al Gandolfi

9.      Dutchie Connick

10.     Nancy Cassagne

11.     Any employee of Lagniappe Industries, LLC

12.     Any employee of Tim Coulon Campaign Committee, Inc.

13.     Any employee of DHP, LLC

14.     Any employee of CWC Gaming, LLC

15.     Any member of the Jefferson Parish Council from January 1, 2007 to present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business records, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

## REQUEST FOR PRODUCTION NO. 16:

Please produce any and all documents, internal memoranda or emails, correspondence, and/or records related to, or utilized in the negotiations with Jefferson Parish

14

Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business records, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 17**:

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated regarding the waste removal/landfill contract.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

**REQUEST FOR PRODUCTION NO. 18**:

Please produce any and all documents, internal memoranda or emails, correspondence, and/or recordings regarding the Jefferson parish Landfill, Old Gentilly Landfill,

and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

      Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

      Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business records, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

      Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents for a ten year time period and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 19:**

      Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, canceled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, K-1's, W-2's, accounting records, between River Birch Incorporated or its parent company Shadowlake Management, LLC and:

1.     Henry Mouton

2.     Tim Whitmer

3.     Dawn Whitmer

4.     Tim Coulon

5.     Lagniappe Industries, LLC

6.     Tom Wilkenson

7.     Aaron Broussard

8.     DHP, LLC or any employee thereof

9.     CWC Gaming, LLC or any employee thereof

10.    David Fos

11.    Nancy Cassagne

12.    Zydeco Holdings, LLC

13.    Water Front Properties, LLC

14.    Ring Associates, LLC

15.    B&C Contractors, LLC

16.    Dangle & Associates, LLC

17.    Anne's Properties, LLC

18.    Big Bank Properties, LLC

19.    Trout Point Lodge

20.    West Jefferson Hospital

21.    Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents for a ten year time period and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

17

**REQUEST FOR PRODUCTION NO. 20**:

Please produce copies of any studies commissioned by River Birch Incorporated or any of its employees that consider the impact of the closing of landfills in Greater New Orleans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 21**:

Please produce any and all contracts you had with consultants from 2004 through present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21**:

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. For this same reason, the Request is overbroad, unduly burdensome and harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce any and all contracts you have with subcontractors from 2004 through present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. For this same reason, the Request is clearly overbroad, unduly burdensome and harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce any documents, internal memoranda, correspondence, including emails or recordings regarding the Plaintiffs or any of its directors or members.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 24**:

Please produce any documents or recordings that would memorialize any surveillance of the plaintiffs or any of its directors or members, including reports or video or audio recordings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

**REQUEST FOR PRODUCTION NO. 25**:

Please produce a copy of any and all print outs, download html, jpg or other digital files of any representation or depiction of, or any typed writings of Plaintiffs, or any of their directors or members located on the World Wide Web.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 26:**

Please produce a copy of all documents identified in response to interrogatories propounded upon you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce a copy of any and exhibits you may introduce at the hearing on exceptions in this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Defendant objects to this request as premature. No date has been set for the hearing and discovery has just begun. Additional evidence may be uncovered as the case proceeds. Defendant, therefore, specifically reserves the right to supplement this response.

Respectfully submitted,

_____
Edward J. Castaing, Jr., 4022
CRULL, CASTAING, LILLY & HERMAN
601 Poydras Street, Suite 2323
New Orleans, Louisiana 70130
Telephone: (504) 581-7700
Fax: (504) 581-5523

Attorneys for River Birch Incorporated


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Responses to Interrogatories and Request

for Production of Documents have been served upon all counsel of record by facsimile, email

and/or by placing same in the United States mail, postage prepaid and properly addressed, this

24th day of May, 2011.

_____
Edward J. Castaing, Jr.

22

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                                 DIVISION: "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____          _____
                                                         DEPUTY CLERK

## DEFENDANT'S RESPONSES TO PLAINTIFF'S
## INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant, Highway 90, L.L.C., hereby responds to the following Interrogatories and Request for Production of Documents from Plaintiffs as follows:

### GENERAL OBJECTIONS

1.      To the extent that any interrogatory or request for production requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, the work product or anticipation of litigation doctrines, or rule of confidentiality provided by law, defendant objects to the interrogatory or request for production on that grounds and claims such privilege or doctrinal protection. Moreover, the production of any protected information pursuant to the interrogatories and requests for production is inadvertent and without prejudice to defendant's right later to object that such information is protected and that production of such information was inadvertent.

2.      Defendant further objects to any interrogatory or request for production to the extent that it seeks disclosure of information or documents where such disclosure would violate the privacy rights of individuals, confidentiality agreements, governmental regulations, or court orders restricting the disclosure of information. Moreover, the production of any protected information or document pursuant to the interrogatories and requests for production is inadvertent and without prejudice to defendant's right later to object that such information or document is protected and that its production was inadvertent.

3.     In responding to these interrogatories and request for production, defendant does not waive and specifically reserves all general and specific objections. Additionally, defendant does not concede by responding that the information sought or provided is relevant to the subject matter of this action or is calculated to lead to the discovery of admissible evidence. Nor shall the production of any information be construed as an admission by defendant that said information is relevant, material, authentic, or otherwise admissible as evidence. Defendant expressly reserves the right to object to further discovery and to the subject matter of these interrogatories, as well as to the introduction into evidence of any responses to these interrogatories.

4.     These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Please list all financial institutions including but not limited to banks, savings & loans companies, credit card companies, and credit unions with which you have or have had accounts from 2001 through present.

### RESPONSE TO INTERROGATORY NO. 1:

Defendant objects to this Interrogatory because it is irrelevant, overbroad, unduly burdensome, seeks personal, sensitive and confidential financial information, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation. Plaintiffs have not obtained a judgment against Defendant and Plaintiffs are not entitled to discovery regarding Defendant's personal finances or assets.

Further, even if the information sought was relevant, information regarding Defendant's financial accounts is highly personal, sensitive and confidential and Defendant should not be required to identify it absent a showing of good cause, which Plaintiffs have not made. Finally, this Interrogatory appears propounded only to harass Defendant, as it seeks

identification of all financial accounts for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**INTERROGATORY NO. 2:**

Please list all employees of River Birch Incorporated, by year, for the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010 and 2011. Please include in your response all employees' current home addresses, telephone number, and job descriptions.

**RESPONSE TO INTERROGATORY NO. 2:**

Defendant objects to this Interrogatory because it is irrelevant, overbroad, unduly burdensome, seeks personal, sensitive and confidential information, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation.

Further, even if the information sought was relevant, information regarding Defendant's employees, who are not parties to this litigation, is private and confidential and Defendant should not be required to identify it absent a showing of good cause, which Plaintiffs have not made. Finally, this Interrogatory appears propounded only to harass Defendant, as it seeks identification of information for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**INTERROGATORY NO. 3:**

Please identify any professional consultants hired by you during the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**RESPONSE TO INTERROGATORY NO. 3:**

Defendant objects to this Interrogatory because it is irrelevant, overbroad, unduly burdensome, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation.

Further, this Interrogatory appears propounded only to harass Defendant, as it seeks identification of information for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

3

**INTERROGATORY NO. 4:**

Please identify the owners (and their percentages of ownership) of River Birch Incorporated and its officers and board of directors for the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**RESPONSE TO INTERROGATORY NO. 4:**

Defendant objects to this Interrogatory because it is irrelevant, overbroad, unduly burdensome, seeks confidential information, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation.

Further, even if the information sought was relevant, information regarding Defendant's officers and board of directors, who are not parties to this litigation, is private and confidential and Defendant should not be required to identify it absent a showing of good cause, which Plaintiffs have not made. Finally, this Interrogatory appears propounded only to harass Defendant, as it seeks identification of information for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**INTERROGATORY NO. 5:**

Please identify any and all documents in the possession of River Birch Incorporated, or housed at any of its offices, including the offices located at 2000 Belle Chase Highway, Third Floor, Terrytown, La. 70056, turned over to or seized by since 2001, please also state whether a copy of the identified documents are in your possession.

**RESPONSE TO INTERROGATORY NO. 5:**

Defendant objects to this Interrogatory because it is vague, irrelevant, overbroad, unduly burdensome, seeks personal, sensitive and confidential information, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs demand identification of documents "in the possession of" Defendant that were "turned over to or seized by" an unnamed person or party. The Interrogatory is inherently contradictory and confusing as documents cannot be in the possession of Defendant and at the same time seized by someone

4

else.   Moreover, the fact that Plaintiffs fail to name the alleged seizing party makes determination of which documents are sought to be identified impossible.

Further, this is a blanket request for information and Plaintiffs are clearly engaging on a fishing expedition and seek information which bears no relevance to any claim or defense asserted in this litigation.

Further, even if the information sought was reasonably identified and relevant, this Interrogatory appears propounded only to harass. Defendant, as it seeks identification of information for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

## INTERROGATORY NO. 5:

Please list any exhibits you may introduce at the hearing on exceptions in this matter.

## RESPONSE TO INTERROGATORY NO. 5:

Defendant objects to this interrogatory as premature. No date has been set for the hearing and discovery has just begun.   Additional evidence may be uncovered as the case proceeds.  Defendant, therefore, specifically reserves the right to supplement this response.

## REQUEST FOR PRODUCTION OF DOCUMENTS

## REQUEST FOR PRODUCTION NO. 1:

Please produce a copy of the Articles of Organization, Articles of Incorporation, operating. agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of managers or members, and any and all documents submitted to the Louisiana Secretary of State, including but not limited to, annual reports, application for certificate of authority, application for appointment of registered agent, registered agent/office statement of change, articles of correction, articles of amendment, articles of merger or share exchange, reservation of name, letter of intent to dissolve, and/or application for registration of name, change of members and/or managers, regarding River Birch Incorporated, and/or any predecessor or successor entity from the date of incorporation to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks personal, sensitive and confidential information, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Moreover, to the extent that the documents sought are on file with the Secretary of State, they are equally accessible to Plaintiffs as to Defendant.

Further, even if the information sought was relevant, the documents sought include confidential business records Defendant should not be required to produce absent a showing of good cause, which Plaintiffs have not made or the entry of a protective order. Finally, this Request appears propounded only to harass Defendant, as it seeks production of a wide variety of business documents and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1's for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks personal, sensitive and confidential financial documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Plaintiffs have not obtained a judgment against any Defendant and are not entitled to discovery regarding the assets of Defendants or non-parties. Further, to the extent this Request seeks personal and confidential documents and tax records, Defendant should not be required to produce it absent a showing of good cause, which Plaintiffs have not made.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of documents for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 3**:

Please produce a copy of any documents, including but not limited to a copy of the deed, showing an ownership interest in the land or contributions made for its purchase on which River Birch Incorporated operated its landfill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3**:

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Moreover, to the extent that the documents sought are available in the public records, they are equally accessible to Plaintiffs as to Defendant.

**REQUEST FOR PRODUCTION NO. 4**:

Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**:

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Moreover, to the extent that the documents sought are available in the public records, they are equally accessible to Plaintiffs as to Defendant.

**REQUEST FOR PRODUCTION NO. 5**:

Please produce any correspondence, including emails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:

1.   Tim Coulon

2.      Aaron Broussard

3.      Tom Wilkenson

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**:

   *See* Objection to Request for Production No. 4.

**REQUEST FOR PRODUCTION NO. 6**:

   Please produce any documents and correspondence, including emails, or recordings relating to the River Birch Incorporated and/or its parent company, Shadowlake Management, LLC's cancellation of its contract with Group Insurance Associates, Inc.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6**:

   Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

**REQUEST FOR PRODUCTION NO. 7**:

   Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc. with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7**:

   Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

   Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not

8

reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce any documents, internal memoranda, correspondence, including email, or recordings relating to the River Birch Incorporated and/or its parent company, Shadowlake Management, LLC's move to Lagniappe Industries, LLC and/or THT Group to provide its employees with insurance products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it appears seeks production of confidential business documents which Defendant should not be required to produce absent a showing of good cause, which Plaintiffs have not made.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce a copy of any and all documents related to any insurance policies serviced by Lagniappe Industries, LLC and/or THT Group, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations

protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential and sensitive documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

Moreover, Plaintiffs' Request encompasses production of personal and sensitive health care information protected from disclosure by federal and state privacy laws, including but not limited to HIPAA.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce copies of any and all bank statements, including canceled checks, "Quickbooks" accounting, check registers, accounts receivable subledgers and accounts payable subledgers for River Birch Incorporated from 1997-present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks confidential financial information, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. Plaintiffs have not obtained a judgment against Defendant and are not entitled to documents relating to Defendant's assets.

Further, even if the information sought was relevant, the documents sought include confidential financial records that Defendant should not be required to produce absent a showing of good cause, which Plaintiffs have not made. Finally, this Request appears propounded only to harass Defendant, as it seeks production of a wide variety of financial documents for a fourteen year period and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 10**:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, canceled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between River Birch Incorporated or Shadowlake Management, LLC, and Lagniappe Industries, LLC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 11**:

Please produce any and all documents, internal memoranda or emails, correspondence, or recordings relating to Jefferson Parish RFP No. 158.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and this Request

11

requires production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce any and all documents, internal memoranda or emails, correspondence, or recordings relating to Jefferson Parish Council's Resolution 110366 or any other Resolution which contemplated canceling RFP No. 158.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is overbroad, unduly burdensome and seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and this Request requires production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce any documents, internal memoranda or emails, correspondence, or recordings relating to Jefferson Parish RFP No. 176, including but not limited to the bid package submitted to Jefferson Parish in response to RFP No. 176.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is overbroad, unduly burdensome and seeks production of confidential business documents, without a showing of

good cause, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and this Request requires production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

Subject to these objections, Defendant will produce non-privileged, relevant documents for inspection and copying at a mutually convenient time and place.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce any documents, internal memoranda or emails, correspondence, or recordings relating to the Office of the Attorney General for the State of Louisiana's issued Opinion No. 08-0270.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and this Request requires production of documents which bear no relevance to any claim or defense asserted in this litigation. For the same reason, the Request is harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce a copy of any and all communications, including emails, or memorializations of communications between any of the employees of River Birch Incorporated and/or its parent company, Shadowlake Management, LLC, and:

    1.    Tim Whitmer

    2.    Tom Wilkenson

    3.    Tim Coulon

4.      Aaron Broussard

5.      Dawn Whitmer

6.      Henry Mouton

7.      David Fos

8.      Al Gandolfi

9.      Dutchie Connick

10.     Nancy Cassagne

11.     Any employee of Lagniappe Industries, LLC

12.     Any employee of Tim Coulon Campaign Committee, Inc.

13.     Any employee of DHP, LLC

14.     Any employee of CWC Gaming, LLC

15.     Any member of the Jefferson Parish Council from January 1, 2007 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business records, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents for a period of ten years and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 16**:

Please produce any and all documents, internal memoranda or emails, correspondence, and/or records related to, or utilized in the negotiations with Jefferson Parish

14

Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business records, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated regarding the waste removal/landfill contract.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce any and all documents, internal memoranda or emails, correspondence, and/or recordings regarding the Jefferson parish Landfill, Old Gentilly Landfill,

and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business records, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents for a ten year time period and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 19:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, canceled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, K-1's, W-2's, accounting records, between River Birch Incorporated or its parent company Shadowlake Management, LLC and:

1.    Henry Mouton

2.    Tim Whitmer

3.    Dawn Whitmer

4.    Tim Coulon

5.    Lagniappe Industries, LLC

6.    Tom Wilkenson

7.    Aaron Broussard

16

8.   DHP, LLC or any employee thereof

9.   CWC Gaming, LLC or any employee thereof

10.  David Fos

11.  Nancy Cassagne

12.  Zydeco Holdings, LLC

13.  Water Front Properties, LLC

14.  Ring Associates, LLC

15.  B&C Contractors, LLC

16.  Dangle & Associates, LLC

17.  Anne's Properties, LLC

18.  Big Bank Properties, LLC

19.  Trout Point Lodge

20.  West Jefferson Hospital

21.  Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 19:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents for a ten year time period and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 20**:

Please produce copies of any studies commissioned by River Birch Incorporated or any of its employees that consider the impact of the closing of landfills in Greater New Orleans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 21**:

Please produce any and all contracts you had with consultants from 2004 through present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21**:

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. For this same reason, the Request is overbroad, unduly burdensome and harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce any and all contracts you have with subcontractors from 2004 through present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Defendant objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation. For this same reason, the Request is clearly overbroad, unduly burdensome and harassing as it encompasses irrelevant information unrelated to issues in this litigation.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce any documents, internal memoranda, correspondence, including emails or recordings regarding the Plaintiffs or any of its directors or members.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it is not reasonably limited in scope to a timeframe relevant to this lawsuit.

19

**REQUEST FOR PRODUCTION NO. 24:**

Please produce any documents or recordings that would memorialize any surveillance of the plaintiffs or any of its directors or members, including reports or video or audio recordings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce a copy of any and all print outs, download html, jpg or other digital files of any representation or depiction of, or any typed writings of Plaintiffs, or any of their directors or members located on the World Wide Web.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 26**:

Please produce a copy of all documents identified in response to interrogatories propounded upon you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26**:

Defendant objects to this Request to the extent that it requires identification, production, or disclosure of correspondence, communications, reports, or conversations protected by the attorney-client privilege, work product doctrine, common interest privilege, or other applicable evidentiary privilege.

Defendant further objects to this Request because it is irrelevant, overbroad, unduly burdensome, seeks production of confidential business documents, and it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are clearly engaging on a fishing expedition and seek production of documents which bear no relevance to any claim or defense asserted in this litigation.

Finally, this Request appears propounded only to harass Defendant, as it seeks production of a vast number of documents and is not reasonably limited in scope to a timeframe relevant to this lawsuit.

**REQUEST FOR PRODUCTION NO. 27**:

Please produce a copy of any and exhibits you may introduce at the hearing on exceptions in this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27**:

Defendant objects to this request as premature. No date has been set for the hearing and discovery has just begun. Additional evidence may be uncovered as the case proceeds. Defendant, therefore, specifically reserves the right to supplement this response.

Respectfully submitted,

Edward J. Castaing, Jr., 4022
CRULL, CASTAING, LILLY & HERMAN
601 Poydras Street, Suite 2323
New Orleans, Louisiana 70130
Telephone: (504) 581-7700
Fax: (504) 581-5523

Attorneys for HWY 90, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Responses to Interrogatories and Request

for Production of Documents have been served upon all counsel of record by facsimile, email

and/or by placing same in the United States mail, postage prepaid and properly addressed, this

day of May, 2011.

Edward J. Castaing, Jr.

FILED

JUN 22 P 12:37

CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                              DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____          _____
                                                    DEPUTY CLERK

UNOPPOSED MOTION TO RESET HEARINGS

NOW INTO COURT, through undersigned counsel, come Defendants River Birch

Incorporated and Hwy. 90, LLC, who, with the consent of Defendant Frederick R. Heebe, Defendant

Albert J. Ward, Jr., and Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of

Plaquemines, LLC, move this Honorable Court to reset the motions set for hearing on June 24, 2011

at 9:00 a.m., including: 1) the Plaintiffs' *Motion to Quash Subpoenas*; 2) Plaintiffs' *Motion to

Compel Answers to Interrogatories and Responses to Requests for Production of Documents* against

Frederick R. Heebe; 3) Plaintiffs' *Motion to Compel Answers to Interrogatories and Responses to

Requests for Production of Documents* against Albert J. Ward, Jr.; 4) Plaintiffs' *Motion to Compel

Answers to Interrogatories and Responses to Requests for Production of Documents* against River

Birch Incorporated and Hwy. 90, LLC; and 5) Defendant *Frederick R. Heebe's Motion for Contempt,

Sanctions And To Compel Discovery*, to the later date and time of July 8, 2011 at 9:00 a.m.

WHEREFORE, Defendants, River Birch Incorporated and Hwy. 90, LLC, move this Court

to reset the motions set for hearing on June 24, 2011 at 9:00 a.m., including: 1) the Plaintiffs'

*Motion to Quash Subpoenas*; 2) Plaintiffs' *Motion to Compel Answers to Interrogatories and

Responses to Requests for Production of Documents* against Frederick R. Heebe; 3) Plaintiffs'

*Motion to Compel Answers to Interrogatories and Responses to Requests for Production of

Documents* against Albert J. Ward, Jr.; 4) Plaintiffs' *Motion to Compel Answers to Interrogatories

and Responses to Requests for Production of Documents* against River Birch Incorporated and Hwy.

ENTERED ON RULE DOCKET

SERVICE COPIES
TO SHERIFF

90, LLC; and 5) Defendant *Frederick R. Heebe's Motion for Contempt, Sanctions And To Compel Discovery*, to the later date and time of July 8, 2011 at 9:00 a.m.

Respectfully submitted,

EDWARD J. CASTAING, JR.
CRULL, CASTAING & LILLY
601 Poydras Street, Suite 2323
New Orleans, LA 70130
(504) 581-7700

***Counsel for River Birch Inc. and
Hwy. 90, LLC***

## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, on this this 21st day of June 2011.

EDWARD J. CASTAING, JR.

FILED

JUN 22 1? 12:37

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                    DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____        _____
                                           DEPUTY CLERK

ORDER

CONSIDERING THE FOREGOING,

IT IS HEREBY ORDERED that the Unopposed Motion to Reset Hearings is GRANTED;

IT IS FURTHER ORDERED that the motions set for hearing on June 24, 2011 at 9:00

a.m., including: 1) the Plaintiffs' *Motion to Quash Subpoenas*; 2) Plaintiffs' *Motion to Compel*

*Answers to Interrogatories and Responses to Requests for Production of Documents* against

Frederick R. Heebe; 3) Plaintiffs' *Motion to Compel Answers to Interrogatories and Responses to*

*Requests for Production of Documents* against Albert J. Ward, Jr.; 4) Plaintiffs' *Motion to Compel*

*Answers to Interrogatories and Responses to Requests for Production of Documents* against River

Birch Incorporated and Hwy. 90, LLC; and 5) Defendant *Frederick R. Heebe's Motion for Contempt,*

*Sanctions And To Compel Discovery,* are hereby reset to the later date and time of July 8, 2011 at

9:00 a.m.

New Orleans, Louisiana this 23rd day of June 2011.

                                    _____
                                    J U D G E

SERVICE INSTRUCTIONS:

Mr. Stephen M. Gele
SMITH & FAWER, L.L.C.
201 St. Charles Avenue, #3702
New Orleans, LA 70170

ENTERED ON RULE DOCKET

ENTERED ON MINUTES

JUN 27 2011

-1-

1967

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.  11-2129                                                                      DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____                    _____
                                                                      DEPUTY CLERK

### DEFENDANT HEEBE'S MEMORANDUM IN
### OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Defendant, Frederick R. Heebe ("Mr. Heebe"), through undersigned counsel, respectfully submits this Memorandum in Opposition to the Motion to Compel Answers to Interrogatories and Requests for Production of Documents filed by plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.  As shown below, plaintiffs' motion is without merit and should be denied and a protective order should be entered prohibiting discovery of the information sought by plaintiffs.

### FACTS

Plaintiff, Concrete Busters, was the losing bidder on RFP 176 issued in September of 2008 by Jefferson Parish.  The contract, a 25-year exclusive waste disposal agreement, was awarded by Jefferson Parish to defendant, River Birch Incorporated ("River Birch"), on January 14, 2009.  Concrete Busters did nothing to contest or appeal the award of the contract or take any action for more than two years.

On February 25, 2011, Concrete Busters and Waste Remediation filed the present Petition for Damages asserting various vague and speculative claims against River Birch, HWY 90, LLC, as well as their alleged owners, Mr. Heebe and Jim Ward.  In the Petition, plaintiffs attempt to assert a multitude of actions against defendants including a LUTPA claim, an antitrust claim, a monopoly claim and an unjust enrichment claim.  Notably, most of the specific conduct, including the purported irregularities in and violations of the RFP procedure, is alleged to have been committed by non-parties.  Plaintiffs vaguely allege the existence of a purported

"conspiracy" between defendants and various Jefferson Parish officials and others, who are not named as defendants in the Petition. Plaintiffs have done nothing more than loosely string together a series of unrelated events which they contend amount to a conspiracy. They have not alleged, nor could they, the existence of any **specific agreement** among the alleged conspirators to commit any wrongful or illegal acts.

Moreover, it is clear that the purported "facts" upon which the Petition is based are derived from pleadings in other litigation and newspaper accounts and not from any personal knowledge of plaintiffs. There can be no doubt that plaintiffs filed a purely speculative lawsuit without having any reliable basis for the serious allegations contained in it. Beginning on April 19, 2011, Heebe's counsel sent multiple written requests to plaintiffs' counsel to provide dates for the scheduling of the depositions of plaintiffs' principals, Louis Lauricella and Francis "Tiger" Roussel. Plaintiffs' counsel refused to cooperate in the setting of the depositions. Defendants, therefore, caused subpoenas to be issued to Mr. Lauricella and Mr. Roussel on May 4, 2011, setting their depositions for May 24 and May 25. Plaintiffs then issued their first set of Interrogatories and Requests for Production of Documents to defendants. The subpoenas are the subject of a Motion to Quash, which plaintiffs set on an expedited basis but failed to notice, and which has now been reset to be heard next month.

Plaintiffs refused to appear for the depositions, taking the unreasonable position that they should not be required to do so until written discovery is complete. Plaintiffs' written discovery consists of a series of overbroad, harassing and irrelevant requests essentially asking defendants to turn over more than a decade's worth of their business and financial records and information, regardless of whether or not it has any arguable relevance to this litigation. There is no better term for this discovery than a "fishing expedition." The unreasonableness of plaintiffs' discovery requests is made more apparent when considered in light of the fact that plaintiffs themselves have refused to appear for depositions. Plaintiffs have engaged in dilatory discovery tactics with the hope that they can compel answers to their unreasonable discovery before plaintiffs are ordered to appear for depositions. As shown below, a protective order should be entered prohibiting plaintiffs' discovery.

## LAW AND ARGUMENT

Plaintiffs complain that all of Mr. Heebe's responses to the Interrogatories and Requests for Production of Documents are deficient.  As shown below, the discovery is overbroad, irrelevant and unduly burdensome and should not be permitted and Mr. Heebe has properly invoked the Fifth Amendment privilege.

I.   PLAINTIFFS' INTERROGATORIES AND REQUESTS EXCEED THE PERMISSIBLE SCOPE OF DISCOVERY.

Plaintiffs complain that defendant's other objections to the Interrogatories and Requests for Production are deficient.  The Fifth Amendment privilege notwithstanding, plaintiffs' discovery is otherwise overbroad, irrelevant and unduly burdensome and should not be permitted.  The Court should enter a protective order accordingly.

A.   Scope Of Discovery.

The party seeking an order to compel discovery bears the burden of proving that the discovery sought is relevant to the subject matter involved in the pending action.  *Testa Distr. Co. v. Tarver*, 584 So. 2d 300, 307 (La. App. 1 Cir. 1991).  Article 1469 permits the court, upon denial in whole or in part, of a motion to compel discovery to "make such protective order as it would have been empowered to make on a motion made pursuant to Article 1426."  La. Code Civ. Proc. art. 1469(A)(2).  Article 1426 of the Louisiana Code of Civil Procedure provides, in pertinent part:

> A. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) That the discovery not be had.
>
> (2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place.
>
> (3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery.
>
> (4) That certain matters not be inquired into, or that the scope of the discovery be limited to certain matters. ...

La. Code Civ. Proc. art. 1426(A).

The Louisiana Code of Civil Procedure provides that: "[p]arties may obtain discovery regarding any matter not privileged, which is **relevant** to the subject matter involved in the pending action."  La. Code Civ. Proc. art. 1422 (emphasis added).  Although the information sought need only be "reasonably calculated to lead to the discovery of admissible evidence," discovery requests that are overbroad, oppressive, vague, and/or irrelevant exceed the scope of permissible discovery. La. Code Civ. Proc. art. 1422; *Stolze v. Safety & Systems Assur. Consultants, Inc.*, 2002-1197 (La. 5/24/02), 819 So. 2d 287, 289; *Belogna v. Crescent City Dodge, L.L.C.*, 2000-3419 (La. 3/9/01), 781 So. 2d 1247, 1248-49.  Thus, while "liberality of pre-trial discovery should be encouraged, **it must not be fostered without regard to the right of the party against whom it is invoked to be protected from harassment and financial loss.**" *Bianchi v. Pattison Pontiac Co.*, 258 So. 2d 388, 390 (La. App. 4 Cir. 1972) (emphasis added).  As aptly stated by one court:

> **Discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the Plaintiff must have some basis in fact for the action.** The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, **not to find out if it has any basis for a claim.**

*Russell v. Choicepoint Services, Inc.*, 302 F.Supp.2d 654, 671 (E.D. La. 2004) (emphasis added) (*quoting Zuk v. Eastern Pa. Psychiatric Inst. of the Med. College*, 103 F.3d 294, 299 (3d Cir. 1996)); *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (C.A. Fed. 1990); *see also Sal Ciolino & Associates v. First Extended Services*, 2006 W.L. 1581248, *2 (E.D. La. 2006) (finding that "the legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery").[1] Accordingly, the trial court does not abuse its discretion when it denies discovery requests which are "overly broad, burdensome, invasive and 'more designed to harass than to produce evidence.'" *Adams v. Deaton, Inc.*, 97-C-0059 (La. App. 4 Cir. 4/9/97), 694 So. 2d 482, 486 (quoting trial judge) *rev'd and judgment of trial court reinstated by* 97-CC-1237 (La. 6/30/97), 696 So. 2d 997.

---

[1] As the Louisiana discovery provisions are substantially similar to the federal provisions, consideration of federal jurisprudence on discovery is appropriate. *Ogea v. Jacobs*, 344 So. 2d 953, 957 (La. 1977).

Without question, Louisiana law limits discovery "to matters relevant to the case under consideration." *Alford v. Kaiser Alum. & Chem. Corp.*, 229 So. 2d 372, 374 (La. App. 4 Cir. 1969). When the discovery sought extends into matters not relevant to proving any issue under consideration by the trial court, the entry of a protective order limiting the scope of discovery is appropriate. *Id.* at 374-75.

B.   **A Protective Order Should Be Entered As To Discovery Requests Seeking Private Banking, Financial And/Or Tax Records And Information.**

In multiple requests, plaintiffs seek production of defendant's personal financial, banking, tax records and other asset information:

**INTERROGATORY NO. 1:**

Please list all financial institutions including but not limited to banks, savings & loans companies, credit card companies, and credit unions with which you and/or your current spouse have or had accounts from 2001 through present.

**REQUEST FOR PRODUCTION NO. 1:**

Please produce a copy of the Articles of Organization, Articles of Incorporation, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of managers or members, and any and all documents submitted to the Louisiana Secretary of State, including but not limited to, annual reports, application for certificate of authority, application for appointment of registered agent, registered agent/office statement of change, articles of correction, articles of amendment, articles of merger or share exchange, reservation of name, letter of intent to dissolve, and/or application for registration of name, change of members and/or managers, for any company in which you and/or your spouse have an ownership percentage of fifteen (15%) percent or more, and/or any predecessor or successor entity.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce evidence of any distributions, including but not limited to any K-1's you and/or your spouse have received for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**REQUEST FOR PRODUCTION NO. 3**:

Please produce a copy of your federal and state tax returns for the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, and 2010.

**REQUEST FOR PRODUCTION NO. 9**:

Please produce copies of any and all bank statements, including canceled checks, and check registers from 1997 through present.

*See* Exh. "A," attached to Plaintiffs' motion.

Defendant objected to all of these discovery requests on essentially the same grounds: that the requests or interrogatories are irrelevant, overbroad, and unduly burdensome; that they seek private, personal, sensitive and confidential financial documents or information aimed at asset identification even though plaintiffs have no judgment against any defendant; that plaintiffs are engaging in a fishing expedition; and that plaintiffs have failed to demonstrate relevance and good cause necessary for the production of private financial and tax information and documents. *See* Exh. "B," attached to Plaintiffs' motion.

Defendants also objected to these requests on the grounds that none of the requests are reasonably limited in scope to a timeframe relevant to this lawsuit. *Id.* Interrogatory No. 1 and Request for Production No. 2 seek information and documents for an 11-year period; Request for Production No. 9 for a 14-year period; and Request for Production No. 10 contains no timeframe whatsoever. As noted above, the RFP for which plaintiffs were the losing bidder was issued in September of 2008 and the contract at issue was awarded to River Birch in January of 2009. To the extent that these discovery requests well exceed a relevant timeframe, they are overbroad on their face. *Stolze*, 819 So. 2d at 289.

Plaintiffs contend that the information sought is relevant because one of the issues in this case "relates to a business transaction or financial issue," citing *Hill on Behalf of Williams v. City of New Orleans*, 549 So. 2d 858 (La. 1989); *Ward v. Tenneco Oil Co.*, 564 So. 2d 814 (La. App. 3d Cir. 1990); and *Succession of Davidson v. Forrest*, 577 So. 2d 1222 (La. App. 3 Cir. 1991). None of these cases involve that issue, or are in any way relevant or supportive of plaintiffs' argument. In fact, *Hill* actually demonstrates why production of this information is inappropriate at this stage in the case. *Hill,* a single paragraph opinion, involved a protective

order sought in connection with a **judgment debtor examination**. *Hill*, 549 So. 2d at 858. This is precisely the reason defendant's have objected to these requests: production of a defendants' financial records and information is not appropriate in general pre-trial discovery **where the plaintiffs have not yet obtained a judgment.**

Further, neither *Ward* nor *Succession of Davidson* involved objections to the production of financial or banking records or information. *Ward* concerned discovery requests aimed at identifying witnesses and for production of "projections, predictions, studies and/or analysis" and other "correspondence." *Ward*, 564 So. 2d at 821-22. *Succession of Davidson* concerned whether the Succession's admission in discovery, compelled after objection, that it owed the plaintiff $44,270.16, was sufficient to support summary judgment in that amount. *Succession of Davidson*, 577 So. 2d. at 1223.

Rather, the law is well settled that "to require the production of bank records over objection ... a party seeking production must make a showing of relevancy and of good cause for production." *Ouachita Nat. Bank in Monroe v. Palowsky*, 554 So. 2d 108, 112 (La. App. 2 Cir. 1989). Further, because "income tax returns are confidential in nature and are of a personal character, good cause must be shown for their production." *Simon v. Fasig-Tipton Co. of N.Y.*, 524 So. 2d 788, 792 (La. App. 3 Cir. 1988); *see also Stolze*, 819 So. 2d at 289; *Bianchi v. Pattison Pontiac Company, Inc.*, 258 So. 2d 388, 389-90 (La. App. 4 Cir. 1972); *Ouachita Natl. Bank*, 554 So. 2d at 112. As aptly stated by one court:

> [T]he court should be very cautious in permitting its inspection and copying [of tax returns]. Such action should be authorized only after the court is convinced both of its relevancy and necessity for the prosecution of the plaintiffs' suit.

*Bianchi*, 258 So. 2d at 390. Further:

> [T]he plaintiffs' rights, under discovery process, to obtain income tax data ... must be counterbalanced against the company's corresponding right to be protected from financial loss or other damage which may be occasioned by the disclosure of other tax information not pertinent to the adjudication of the matter in dispute.

*Id.* The trial court should resolve all reasonable doubts regarding to disputed discovery in favor of the party against whom it is sought, and apply liberally the protections afforded by article

1426 of the Louisiana Code of Civil Procedure. *Id.* Moreover, requests which go "beyond the time frame at issue in [the] litigation" are "overbroad." *Stolze*, 819 So. 2d at 289;

The requests at issue here are similar to those struck down by the trial court in *Adams v. Deaton, Inc.*, 696 So. 2d at 997, *reversing* 97-C-0059 (La. App. 4 Cir. 4/9/97), 694 So. 2d 482. That matter involved the consolidated personal injury claims of some 1,500 plaintiffs in connection with a collision between a train and a chemical truck driven by an allegedly intoxicated employee of the defendant. The plaintiffs sought in discovery a vast array of documents of questionable relevance, including defendant's tax returns, quarterly income statements and balance sheets, audited financial statements, and SEC form 10-K annual reports for an eighteen year period. *Adams*, 694 So. 2d at 487-89. The trial court denied these requests on the grounds that they were irrelevant, overbroad and harassing. *Id.* The trial court also denied the plaintiffs' motion to compel production of a certified copy of the of the defendants' articles of incorporation and amendments on the grounds that these records were irrelevant and equally accessible by the plaintiffs as the defendants and denied production of the minutes of all defendant's board of directors and/or shareholders meetings for an 18-year period as harassing and a fishing expedition. *Id.* The Louisiana Supreme Court reversed the appellate court finding that the trial court's judgment was not an abuse of discretion. *Adams*, 696 So. 2d at 997.

Here, plaintiffs have not made the showing required to obtain the information and documents sought. They urge the information is relevant because this litigation involves alleged "unethical and illegal financial transactions" and "payments" to alleged third parties. Even if this was a relevant topic of discovery, which is denied, the requests which they contend are designed to further this end are indisputably overbroad. Notably, the lawsuit itself contends only sparse and vague allegations of purportedly improper payments or transactions. Such allegations do not give plaintiffs a license to require defendant to identify his assets and open his books and records for over a 14-year period. Discovery may be broad when it is *relevant*, but it is not that broad by any definition.

C.   **A Protective Order Should Be Entered As To Discovery Requests Seeking Private Health Care Information.**

In multiple requests, plaintiffs seek to have defendant produce private health care information:

**REQUEST FOR PRODUCTION NO. 6:**

Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc. with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer for the period 2001, 2002, 2003, 2004, 2005, 2006.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce a copy of any and all documents related to any insurance policies serviced by Lagniappe Industries, LLC and/or THT Group, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers/and communications with the insurer for the periods 2006, 2007, 2008, 2009, 2010, and 2011.

*See* Exh. "A," attached to Plaintiffs' motion. Defendant objected to these Requests on numerous grounds including privilege and that the Requests are overbroad, irrelevant, unduly burdensome and require production of private and confidential information protected from disclosure by state and federal privacy laws, including the Health Insurance Portability and Accountability Act ("HIPAA"). *See* Exh. "B," attached to Plaintiffs' motion.

Clearly this information is not relevant. Even assuming that proof that River Birch entered into an agreement with Lagniappe Industries, LLC to provide insurance to River Birch employees is relevant to the purported "conspiracy," which is denied, that does not mean plaintiffs are entitled to access **all of the documents related to the administration the alleged policies** serviced by Lagniappe Industries, as well as by Group Insurance Associates, Inc. These

Requests are wholly overbroad and harassing on their face.

These requests are clearly designed to obtain records regarding claims handling and other private information which is in no way relevant to any issue asserted in this litigation. The requests specifically ask for: "the actual policy . . . applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer." *See* Exh. "A," attached to Plaintiffs' motion. In *Stolze*, the Louisiana Supreme Court held that the trial court abused its discretion in failing to enter a protective order as to requests for "personal information," which is arguably of a less sensitive nature than that at issue here. *Stolze*, 819 So. 2d at 289-90. The Court stated that such information is not discoverable absent "a showing of relevancy and good cause for production." *Id.* Plaintiffs have made no such showing.

In response to defendant's objection that the information is protected from disclosure by HIPAA, plaintiffs disingenuously suggest that HIPAA is not implicated because the request does not involve "medical records." *See* Plaintiffs' Memorandum in Support, p.4. HIPAA, however, prohibits unauthorized disclosure of protected "health information" which is not limited to medical records. 45 C.F.R. §164.50. Rather "health information" means:

> ...any information, whether oral or recorded in any form or medium, that:
>
> (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and
>
> (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

45 C.F.R. §160.103. Thus, even if the information and documents sought by plaintiffs in these discovery requests was relevant, which is denied, it is protected from disclosure by HIPAA's privacy rules. Accordingly, the Court should enter a protective order precluding this discovery.

D.   **Defendant Cannot Be Compelled To Produce Exhibits For A Hearing Which Is Not Set.**

Plaintiffs seek to require production of "exhibits" defendant may introduce in connection with the hearing on defendant's exceptions:

**REQUEST FOR PRODUCTION NO. 25:**

> Please produce a copy of any exhibits you may introduce at the hearing on exceptions in this matter.

*See* Exh. "A," attached to Plaintiffs' motion.  Defendant objected to this request as premature because discovery has just begun and the exceptions are not set for hearing.  *See* Exh. "B," attached to Plaintiffs' motion.  Defendant specifically reserved the right to supplement this response.  *Id.*

Nonetheless, plaintiffs complain that defendant should have identified his exhibits by now.  Plaintiffs further demand that defendant be ordered to identify exhibits "at least thirty (30) days" prior to any scheduled hearing but cite no authority for this position.  The appropriate remedy, should plaintiffs actually be prejudiced by an alleged lack of prior disclosure of an exhibit submitted at trial or a hearing, is an objection to its admissibility.  There is no basis whatsoever in law or fact for this Court to enter an order as plaintiffs propose at this stage of these proceedings.

E.   **A Protective Order Should Be Entered As To Discovery Requests Related To Irrelevant Zoning Matters.**

Plaintiffs also demand documents related to alleged "re-zoning" of the River Birch Landfill in 1996 and 1997:

**REQUEST FOR PRODUCTION NO. 4:**

> Please produce any correspondence, including emails, or recordings relating to the re-zoning of the River Birch Landfill, whether written or received between you, individually, or as an owner or employee of an entity and:
>
> 1.   Tim Coulon
> 2.   Aaron Broussard
> 3.   Tom Wilkinson

*See* Exh. "A," attached to Plaintiffs' motion.  Defendant objected to this Request on the grounds that it is irrelevant, overbroad, unduly burdensome, and it is not reasonably calculated to lead to the discovery of admissible evidence.  *See* Exh. "B," attached to Plaintiffs' motion.

11

Plaintiffs articulate no particular rebuttal to these objections in the Motion to Compel. *See* Plaintiffs' Memorandum in Support, p.4. The alleged "re-zoning of the River Birch Landfill," more than 10 years before the Request for Production at issue in this suit, is not relevant to any substantive allegation or claim made in the Petition.

The Petition, as noted above, asserts a long string of alleged facts and events which in reality have little or no connection to one another. As to the purported "re-zoning" which allegedly occurred in 1997, some 11 years ago, the Petition contains a single paragraph, comprised of a mere two sentences:

> In 1997, the site where River Birch Landfill is today located was re-zoned, despite much public outcry, which enabled River Birch Incorporated to operate a landfill in Waggaman. Tim Coulon, then Parish President, and Aaron Broussard, then Council Chairman, oversaw and supported the re-zoning of River Birch Landfill.

*See* Petition, ¶7. **Nowhere in the Petition is there a single allegation, contention or even speculation that the purported re-zoning of the River Birch Landfill was illegal, improper, unethical or in any way tied to an alleged "conspiracy" among defendants and the alleged nonparty co-conspirators.** Plaintiffs, in fact, fail to mention the re-zoning at all in connection with their substantive causes of action. *See* Petition, ¶¶79-91. Thus, the alleged 1997 re-zoning is not relevant to any claim or defense asserted in this litigation. Merely mentioning, in passing, this purported event in the Petition does not make it relevant.

In light of the irrelevancy of the alleged re-zoning of the River Birch Landfill, it would be unduly burdensome and oppressive to require defendant to respond to plaintiffs' request. Therefore, a protective order should be entered precluding this discovery.

F.    **A Protective Order Should Be Entered As To Discovery Requests Related To RFP 158.**

Plaintiffs also propounded a series of requests regarding RFP 158 which are irrelevant in this litigation:

> **REQUEST FOR PRODUCTION NO. 11:**
>
> Please produce any and all documents, internal memoranda or emails, correspondence, or recordings relating to Jefferson Parish RFP No. 158.

**REQUEST FOR PRODUCTION NO. 12**:

> Please produce any and all documents, internal memoranda or emails, correspondence, or recordings relating to Jefferson Parish Council's Resolution 110366 or any other Resolution which contemplated canceling RFP No. 158.

*See* Exh. "A," attached to Plaintiffs' motion.

Defendant objected to these Requests on the grounds that the information sought is irrelevant, and that the requests are overbroad, unduly burdensome and harassing. *See* Exh. "B," attached to Plaintiffs' motion. In the Motion to Compel, plaintiffs failed to rebut these objections.

There should be little doubt that these requests are not relevant and propounded solely to harass. The thrust of plaintiffs' Petition is that the procedure in connection with the issuance of RFP 176 was allegedly improper and/or corrupted and, accordingly that the award of the contract to River Birch was improper. As plaintiffs admit, RFP 158, which predated RFP 176 by nearly a year, was cancelled and recalled by the Parish in 2008. *See* Petition, ¶25. **Nowhere in the Petition is there a single allegation, contention or even speculation as to any illegal, improper, or unethical conduct in connection with RFP 158 or any indication that RFP 158 is in any way tied to an alleged "conspiracy" among defendants and the alleged nonparty co-conspirators.** The Petition, in fact, fails to demonstrate any connection whatsoever between RFP 158 and 176. Notably, RFP 158 is not mentioned at all in connection with plaintiffs' substantive causes of action. *See* Petition, ¶¶79-91. Thus, RFP 158 is not relevant to any claim or defense asserted in this litigation.

In light of the irrelevancy of RFP 158, it would be unduly burdensome and oppressive to require defendant to respond to plaintiffs' broad and sweeping demand for documents. Therefore, a protective order should be entered precluding this discovery.

G.   **Documents Regarding Alleged Investigations Of Plaintiffs By Defendant Are Irrelevant Or Protected From Disclosure.**

Plaintiffs further propound a series of overbroad requests apparently designed at learning whether or not defendant has engaged in any investigations of plaintiffs:

13

**REQUEST FOR PRODUCTION NO. 21:**

Please produce any documents, internal memoranda, correspondence, including emails or recordings regarding the Plaintiffs or any of its directors or members.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce any documents or recordings that would memorialize any surveillance of the plaintiffs or any of its directors or members, including reports or video or audio recordings.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce a copy of any and all print outs, download html, jpg or other digital files of any representation or depiction of, or any typed writings of Plaintiffs, or any of their directors or members located on the World Wide Web.

*See* Exh. "A," attached to Plaintiffs' motion. Defendant objected to these requests on the same grounds: that they are irrelevant, overbroad and unduly burdensome, and that the information sought, to the extent it exists, is protected by the work product doctrine or other evidentiary privilege. In the Motion to Compel, plaintiffs fail to put forth any argument to rebut defendant's objections.

Setting aside that the requests are not relevant to any claim asserted in the Petition and are not limited to a time period, any responsive documents, to the extent they exist, would clearly be protected as work product. Article 1424(A) of the Louisiana Code of Civil Procedure provides:

> The court shall not order the production or inspection of any writing, or electronically stored information, **obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial** unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. ...

La. Code Civ. Proc. art. 1424(A) (emphasis added). Thus, documents and information regarding plaintiffs that have been gathered by defendant or his agents in connection with this litigation are protected by the work product doctrine. Absent a showing by plaintiffs of unfair prejudice, undue hardship or injustice, these documents "shall not" be produced. Accordingly, a protective order should be entered as to these Requests.

**H.   A Protective Order Should Be Entered As To The Remaining, Blanket, Overbroad And Irrelevant Discovery Requests.**

Plaintiffs also demand information and documents in several blanket, grossly overbroad and irrelevant requests which bear no relation to any particular issues in this litigation:

**INTERROGATORY NO. 4:**

Please identify any and all documents turned over or seized to the United States government in connection with its investigation; please also state whether a copy of the identified documents are in your possession.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce any documents, internal memoranda or emails, correspondence, or recordings relating to the Office of the Attorney General for the State of Louisiana's issued Opinion No. 08-0270.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce any and all documents, internal memoranda or emails, correspondence, and/or recordings regarding the Jefferson parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

**REQUEST FOR PRODUCTION NO. 15:**

Please produce a copy of any and all communications, including emails, or memorializations of communications from 2001 through present between you, acting either individually or as an owner or employee of an entity, and:

1. Tim Whitmer
2. Tom Wilkenson
3. Tim Coulon
4. Aaron Broussard
5. Dawn Whitmer
6. Henry Mouton
7. David Fos
8. Al Gandolfi
9. Dutchie Connick
10. Nancy Cassagne
11. Any employee of Lagniappe Industries, LLC
12. Any employee of Tim Coulon Campaign Committee, Inc.
13. Any employee of DHP, LLC
14. Any employee of CWC Gaming, LLC
15. Any member of the Jefferson Parish Council from January 1, 2007 to present.

## REQUEST FOR PRODUCTION NO. 19:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, canceled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, from 2001 through present, between you, acting either individually or as an owner or employee of an entity, and:

1.    Henry Mouton
2.    Tim Whitmer
3.    Dawn Whitmer
4.    Tim Coulon
5.    Lagniappe Industries, LLC
6.    Tom Wilkenson
7.    Aaron Broussard
8.    DHP, LLC or any employee thereof
9.    CWC Gaming, LLC or any employee thereof
10.   David Fos
11.   Nancy Cassagne
12.   Zydeco Holdings, LLC
13.   Water Front Properties, LLC
14.   Ring Associates, LLC
15.   B&C Contractors, LLC
16.   Dangle & Associates, LLC
17.   Anne's Properties, LLC
18.   Big Bank Properties, LLC
19.   Trout Point Lodge
20.   Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

## REQUEST FOR PRODUCTION NO. 24:

Please produce a copy of all documents identified in response to interrogatories propounded upon you.

*See* Exh. "A," attached to Plaintiffs' motion.  Defendant objected to each of these discovery requests on similar grounds:  that the documents or information sought are irrelevant as to any claim or defense asserted in this litigation, and that the requests are overbroad, unduly burdensome and harassing.  *See* Exh. "B," attached to Plaintiffs' motion.  Defendant also objected on the grounds that the requests are not limited to a reasonable timeframe relevant to this litigation.  *Id.*  In most instances the requests contain no temporal limit at all, and those which do contain a limit seek in excess of 10 years of documents or information.  *Id.*

Plaintiffs failed to raise any particular argument in rebuttal to defendant's objections. Clearly, each of these requests is irrelevant and grossly overbroad. Plaintiffs' Petition does not concern the alleged seizure of documents and Interrogatory No. 4 is, therefore, irrelevant and overbroad on its face. Further, the plaintiffs' Petition is devoid of any allegations concerning an alleged Attorney General opinion. *See* Request for Production No. 14. Notably nowhere in the Petition is there any mention of the Old Gentilly Landfill, the St. Bernard Parish Landfill, or Gioe's Truck Service, Inc. *See* Request for Production No. 18.

Request Nos. 15 and 19 are textbook examples of harassing requests. Plaintiffs requested production of all manner of communications and financial documents for an unlimited timeframe without any restriction whatsoever to any issue relevant to this litigation. The vast majority of the persons and entities listed in these requests are not even mentioned in the Petition. Plaintiffs have failed to demonstrate that the documents sought bear any relevancy whatsoever to this litigation.

## II.    MR. HEEBE PROPERLY INVOKED THE FIFTH AMENDMENT PRIVILEGE.

Plaintiffs argue that Mr. Heebe has not properly invoked the Fifth Amendment privilege because "the answer[s] sought could not possibly have a tendency to incriminate ..." *See* Plaintiffs' Memorandum in Support, p.6. Plaintiffs' arguments, however, appear limited to Interrogatory Nos. 2 and 6 and Request for Production Nos. 21, 22 and 23. *Id.* It is unclear, therefore, whether plaintiffs contend that the privilege is improperly invoked as to just these requests, or as to all requests. Nonetheless, as shown below, the privilege is properly invoked as to all of plaintiffs' requests.

Plaintiffs further argue that an "irrevocable negative inference" be attached as a result of Mr. Heebe's objections. *Id.* As explained below, plaintiffs incorrectly state the law on inference.

### A.    The Privilege Has Been Properly Invoked.

Plaintiffs call upon defendant to supply further information to show how answers to these discovery requests could potentially implicate him. To do so would constitute a waiver of the privilege.

As the Court well knows, the Jefferson Parish disposal contract has been the subject of a long-term, highly publicized investigation by the federal government. No charges have been brought, but the investigation is active and ongoing. *See, e.g.,* Paul Rioux, *River Birch Landfill offices raided by federal agents,* THE TIMES-PICAYUNE, Sept. 24, 2010, at A1. Virtually all of the plaintiffs' discovery requests seek information related to the federal investigation. As is explained below, the defendants cannot be compelled to make any statements or disclosures related to this investigation.

A party may invoke the Fifth Amendment privilege if the answer to a question or testimony poses a real danger of criminal responsibility. *See McCarthy v. Arndstein,* 266 U.S. 34, 40, 45 S. Ct. 16, 69 L.Ed. 158 (1924).

> The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S. Ct. 316, 322 (1973).

Thus, the Fifth Amendment may be invoked as an objection to interrogatories. *See Gordon v. FDIC,* 427 F.2d 578, 580 (D.D.C. 1970). It may also be invoked in response to requests for production where the production would carry a testimonial aspect with a potentially incriminating effect. *Amato v. United States,* 450 F.3d 46, 50 (1st Cir. 2006) (*quoting Fisher v. United States,* 425 U.S. 391, 408 (1976)).

A party may, however, waive the privilege to subsequent questioning by answering questions that already disclosed incriminating facts. *Rogers v. United States,* 340 U.S. 367, 372-73, 71 S. Ct. 438, 95 L.Ed 344 (1951) ("[W]here incriminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details."). "Disclosure of a fact waives the privilege as to details." *Id.* at 373. Thus, a party who voluntarily reveals incriminating facts cannot invoke the privilege to prevent disclosure regarding the details of those facts. *Id.*

Defendant, therefore, cannot reveal any facts regarding the asserted privileges to demonstrate the possibility of incrimination, as that very act could constitute a waiver.

Moreover, contrary to Plaintiffs' assertions, the law does not require the defendant to do so to invoke the privilege. Rather, the proper inquiry in determining whether a witness may assert the privilege is two-fold:

> First, the court must determine whether answers to the questions might tend to reveal that the witness has engaged in criminal activities.

*In re Corrugated Anti-Trust Litigation*, 620 F.2d 1086, 1091 (5th Cir. 1980) *(citing Zicarelli v. New Jersey State Comm. of Investigation*, 406 U.S. 472, 92 S. Ct. 1670 (1972)). Significantly, "the privilege covers not only responses that would support the party's criminal conviction, but also **'embraces those which would furnish a link in the chain of evidence needed to prosecute.'**" *In re Enron Corp. Securities, Derivatives & ERISA Litigation*, 762 F.Supp.2d 942, (S.D. Tex. 2010) *(quoting Malloy v. Hogan*, 378 U.S. 1, 11, 84 S. Ct. 1489 (1964)) (emphasis added).

> If the answer to the first inquiry is yes:

> ... the court must next ask whether there is a risk, even a remote risk, that the witness will be prosecuted for the criminal activities that his testimony might touch on.

*Corrugated*, 620 F.2d at 1091. In making these determinations, "it is only when there is but a fanciful possibility of prosecution that a claim of fifth amendment privilege is not well taken." *Id.* *(quoting In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 871 (7th Cir. 1979)). Thus, where "a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster." *Id.* at 1092.

As plaintiffs themselves have stated, the discovery requests are purportedly designed to reveal facts proving an alleged illegal conspiracy and bribery scheme that is the crux of plaintiffs' Petition. There can be no question that Interrogatory Nos. 3, 4, and 5 and Request for Production Nos. 1, 2, 4 - 17, 19 and 24 all seek information and documents directly related to these allegations. Certainly, the revelation of any facts regarding these matters could constitute a waiver of the privilege. Further, Interrogatory Nos. 2 and 6 and Request for Production Nos. 4, 18, 20 - 23 seek information or documents, which may not be directly incriminating, but could "furnish a link" and constitute a waiver of the privilege.

Moreover, as plaintiffs are well aware, defendant is presently the subject of an ongoing federal criminal investigation. Thus, there exists more than "a fanciful possibility of prosecution." Accordingly, the privilege has been properly invoked as to each and every discovery request and discovery should be precluded on that basis.

B.   **The Law Does Not Mandate An "Irrevocable" Negative Inference Be Drawn As A Result Of The Invocation Of The Fifth Amendment.**

Plaintiffs next urge this Court to subject defendant to an "irrevocable adverse inference" as a result of defendant's invocation of the privilege. Plaintiffs' statement of the law is incorrect and their request for an inference, to the extent one is available, is premature.

First, plaintiffs' construction of the law is inaccurate. The law does not mandate the adoption of any inference whatsoever, much less an irrevocable one. Notably, "[w]hile an adverse inference may be drawn in a civil case when a party asserts his Fifth Amendment privilege, **the trier of fact is not required to draw a negative inference.**" *In re Enron*, 762 F. Supp.2d at 1017 (*citing Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551 (1976)) (emphasis added); *Daniels v. Pipefitters' Ass'n Local Union No.* 597, 983 F.2d 800, 802 (7th Cir. 1992). In fact, the court may decline to draw an adverse inference, when, for instance, the defendant "subsequently testifies or cooperates with an investigation." *Id.* at 962 (*citing Burdine v. Johnson*, 262 F.3d 336, 367 (5th Cir. 2001)).

Second, plaintiffs' demand for the adoption of an "inference" in this matter is premature. Any negative inference that could be drawn by the Court is appropriate only upon trial on the merits or, perhaps, on summary judgment. As correctly stated by one court, inferences are "deductions or conclusions which with reason and common sense lead **the jury to draw from facts which have been established by the evidence in the case.**" *Smith v. Lynn*, 32, 093 (La. App. 2 Cir. 8/18/99), 749 So. 2d 692, 696 (emphasis added). Inferences as to the invocation of the Fifth Amendment privilege, therefore, are recognized purely "in the context of the weight to be given to the party's evidence." *Id.* (emphasis added).

In fact, the cases plaintiffs cite all concerned inferences drawn upon the submission of the case for decision. *See Boyd v. Boyd*, 26, 292 (La. App. 2 Cir. 12/7/94), 647 So. 2d 414, 415-16 (inference drawn as a result of defendant's refusal to testify at custody

hearing in divorce proceeding); *Economy Auto Salvage, Inc. v. Allstate Ins. Co.*, 499 So. 2d 963, 977 (La. App. 3 Cir. 1986) (declining to impute negative inference as result of nonparty witness' invocation of privilege at trial on the merits); *Miles v. Louisiana Landscape Specialty, Inc.*, 97-CA-118 (La. App. 5 Cir. 6/30/97), 697 So. 2d 348, (in civil sexual assault and battery case, adopting adverse inference on summary judgment against defendant who failed to appear for deposition on Fifth Amendment grounds).  None of these cases, and no other authority that could be found, suggest that an inference can be adopted as part of an Order on a Motion to Compel in the early stages of discovery.  Thus, the adoption of an inference, much less an "irrevocable" one, at this stage of the proceedings, where discovery has only just begun, is inappropriate.

## CONCLUSION

For the foregoing reasons, the Motion to Compel Answers to Interrogatories and Requests for Production of Documents filed by plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC, should be denied and a protective order entered in favor of defendant, Mr. Heebe, finding that the discovery sought not be had.

Respectfully submitted,

Kyle Schonekas, 11817
William P. Gibbens, 27225
Andrea V. Timpa, 29455
SCHONEKAS, EVANS, McGOEY
& McEACHIN, L.L.C.
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
Telephone: (504) 680-6050

Attorneys for Frederick R. Heebe

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Memorandum in Opposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 30 day of June, 2011.

KYLE D. SCHONEKAS

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.  11-2129                                              DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____          _____
                                                    DEPUTY CLERK

## DEFENDANT WARD'S MEMORANDUM IN
## OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Defendant, Albert J. Ward, Jr. ("Mr. Ward"), through undersigned counsel, respectfully submits this Memorandum in Opposition to the Motion to Compel Answers to Interrogatories and Requests for Production of Documents filed by plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.  As shown below, plaintiffs' motion is without merit and should be denied and a protective order should be entered prohibiting discovery of the information sought by plaintiffs.

### FACTS

Plaintiff, Concrete Busters, was the losing bidder on RFP 176 issued in September of 2008 by Jefferson Parish.  The contract, a 25-year exclusive waste disposal agreement, was awarded by Jefferson Parish to defendant, River Birch Incorporated ("River Birch"), on January 14, 2009.  Concrete Busters did nothing to contest or appeal the award of the contract or take any action for more than two years.

On February 25, 2011, Concrete Busters and Waste Remediation filed the present Petition for Damages asserting various vague and speculative claims against River Birch, HWY 90, LLC, as well as their alleged owners, Mr. Heebe and Mr. Ward.  In the Petition, plaintiffs attempt to assert a multitude of actions against defendants including a LUTPA claim, an antitrust claim, a monopoly claim and an unjust enrichment claim.  Notably, most of the specific conduct, including the purported irregularities in and violations of the RFP procedure, **is alleged to have been committed by non-parties**.  Plaintiffs vaguely allege the existence of a purported

"conspiracy" between defendants and various Jefferson Parish officials and others, who are not named as defendants in the Petition. Plaintiffs have done nothing more than loosely string together a series of unrelated events which they contend amount to a conspiracy. They have not alleged, nor could they, the existence of any **specific agreement** among the alleged conspirators to commit any wrongful or illegal acts.

Moreover, it is clear that the purported "facts" upon which the Petition is based are derived from pleadings in other litigation and newspaper accounts and not from any personal knowledge of plaintiffs. There can be no doubt that plaintiffs filed a purely speculative lawsuit without having any reliable basis for the serious allegations contained in it. Beginning on April 19, 2011, Mr. Heebe's counsel sent multiple written requests to plaintiffs' counsel to provide dates for the scheduling of the depositions of plaintiffs' principals, Louis Lauricella and Francis "Tiger" Roussel. Plaintiffs' counsel refused to cooperate in the setting of the depositions. Defendants, therefore, caused subpoenas to be issued to Mr. Lauricella and Mr. Roussel on May 4, 2011, setting their depositions for May 24 and May 25. Plaintiffs then issued their first set of Interrogatories and Requests for Production of Documents to defendants. The subpoenas are the subject of a Motion to Quash, which plaintiffs set on an expedited basis but failed to notice, and which has now been reset to be heard next month.

Plaintiffs refused to appear for the depositions, taking the unreasonable position that they should not be required to do so until written discovery is complete. Plaintiffs' written discovery consists of a series of overbroad, harassing and irrelevant requests essentially asking defendants to turn over more than a decade's worth of their business and financial records and information, regardless of whether or not it has any arguable relevance to this litigation. There is no better term for this discovery than a "fishing expedition." The unreasonableness of plaintiffs' discovery requests is made more apparent when considered in light of the fact that plaintiffs themselves have refused to appear for depositions. Plaintiffs have engaged in dilatory discovery tactics with the hope that they can compel answers to their unreasonable discovery before plaintiffs are ordered to appear for depositions. As shown below, a protective order should be entered prohibiting plaintiffs' discovery.

## LAW AND ARGUMENT

Plaintiffs complain that all of Mr. Ward's responses to the Interrogatories and Requests for Production of Documents are deficient.  As shown below, the discovery is overbroad, irrelevant and unduly burdensome and should not be permitted and Mr. Ward has properly invoked the Fifth Amendment privilege.

## I.  PLAINTIFFS' INTERROGATORIES AND REQUESTS EXCEED THE PERMISSIBLE SCOPE OF DISCOVERY.

Plaintiffs complain that defendant's other objections to the Interrogatories and Requests for Production are deficient.  The Fifth Amendment privilege notwithstanding, plaintiffs' discovery is otherwise overbroad, irrelevant and unduly burdensome and should not be permitted.  The Court should enter a protective order accordingly.

### A.  Scope Of Discovery.

The party seeking an order to compel discovery bears the burden of proving that the discovery sought is relevant to the subject matter involved in the pending action. *Testa Distr. Co. v. Tarver*, 584 So. 2d 300, 307 (La. App. 1 Cir. 1991).  Article 1469 permits the court, upon denial in whole or in part, of a motion to compel discovery to "make such protective order as it would have been empowered to make on a motion made pursuant to Article 1426."  La. Code Civ. Proc. art. 1469(A)(2).  Article 1426 of the Louisiana Code of Civil Procedure provides, in pertinent part:

> A. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) That the discovery not be had.
>
> (2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place.
>
> (3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery.
>
> (4) That certain matters not be inquired into, or that the scope of the discovery be limited to certain matters. ...

La. Code Civ. Proc. art. 1426(A).

The Louisiana Code of Civil Procedure provides that: "[p]arties may obtain discovery regarding any matter not privileged, which is **relevant** to the subject matter involved in the pending action." La. Code Civ. Proc. art. 1422 (emphasis added). Although the information sought need only be "reasonably calculated to lead to the discovery of admissible evidence," discovery requests that are overbroad, oppressive, vague, and/or irrelevant exceed the scope of permissible discovery. La. Code Civ. Proc. art. 1422; *Stolze v. Safety & Systems Assur. Consultants, Inc.*, 2002-1197 (La. 5/24/02), 819 So. 2d 287, 289; *Belogna v. Crescent City Dodge, L.L.C.*, 2000-3419 (La. 3/9/01), 781 So. 2d 1247, 1248-49. Thus, while "liberality of pre-trial discovery should be encouraged, **it must not be fostered without regard to the right of the party against whom it is invoked to be protected from harassment and financial loss.**" *Bianchi v. Pattison Pontiac Co.*, 258 So. 2d 388, 390 (La. App. 4 Cir. 1972) (emphasis added). As aptly stated by one court:

> **Discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the Plaintiff must have some basis in fact for the action.** The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, **not to find out if it has any basis for a claim.**

*Russell v. Choicepoint Services, Inc.*, 302 F.Supp.2d 654, 671 (E.D. La. 2004) (emphasis added) (*quoting Zuk v. Eastern Pa. Psychiatric Inst. of the Med. College,* 103 F.3d 294, 299 (3d Cir. 1996)); *Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1327 (C.A. Fed. 1990); *see also Sal Ciolino & Associates v. First Extended Services,* 2006 W.L. 1581248, *2 (E.D. La. 2006) (finding that "the legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery").[1] Accordingly, the trial court does not abuse its discretion when it denies discovery requests which are "overly broad, burdensome, invasive and 'more designed to harass than to produce evidence.'" *Adams v. Deaton, Inc.*, 97-C-0059 (La. App. 4 Cir. 4/9/97), 694 So. 2d 482, 486 (quoting trial judge) *rev'd and judgment of trial court reinstated by* 97-CC-1237 (La. 6/30/97), 696 So. 2d 997.

---

[1] As the Louisiana discovery provisions are substantially similar to the federal provisions, consideration of federal jurisprudence on discovery is appropriate. *Ogea v. Jacobs*, 344 So. 2d 953, 957 (La. 1977).

Without question, Louisiana law limits discovery "to matters relevant to the case under consideration." *Alford v. Kaiser Alum. & Chem. Corp.*, 229 So. 2d 372, 374 (La. App. 4 Cir. 1969). When the discovery sought extends into matters not relevant to proving any issue under consideration by the trial court, the entry of a protective order limiting the scope of discovery is appropriate. *Id.* at 374-75.

**B.**     **A Protective Order Should Be Entered As To Discovery Requests Seeking Private Banking, Financial And/Or Tax Records And Information.**

In multiple requests, plaintiffs seek production of defendant's personal financial, banking, tax records and other asset information:

**INTERROGATORY NO. 1:**

Please list all financial institutions including but not limited to banks, savings & loans companies, credit card companies, and credit unions with which you and/or your current spouse have or had accounts from 2001 through present.

**REQUEST FOR PRODUCTION NO. 1:**

Please produce a copy of the Articles of Organization, Articles of Incorporation, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of managers or members, and any and all documents submitted to the Louisiana Secretary of State, including but not limited to, annual reports, application for certificate of authority, application for appointment of registered agent, registered agent/office statement of change, articles of correction, articles of amendment, articles of merger or share exchange, reservation of name, letter of intent to dissolve, and/or application for registration of name, change of members and/or managers, for any company in which you and/or your spouse have an ownership percentage of fifteen (15%) percent or more, and/or any predecessor or successor entity.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce evidence of any distributions, including but not limited to any K-1's you and/or your spouse have received for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce a copy of your federal and state tax returns for the years 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, and 2010.

**REQUEST FOR PRODUCTION NO. 9**:

> Please produce copies of any and all bank statements, including canceled checks, and check registers from 1997 through present.

*See* Exh. "A," attached to Plaintiffs' motion.

Defendant objected to all of these discovery requests on essentially the same grounds: that the requests or interrogatories are irrelevant, overbroad, and unduly burdensome; that they seek private, personal, sensitive and confidential financial documents or information aimed at asset identification even though plaintiffs have no judgment against any defendant; that plaintiffs are engaging in a fishing expedition; and that plaintiffs have failed to demonstrate relevance and good cause necessary for the production of private financial and tax information and documents. *See* Exh. "B," attached to Plaintiffs' motion.

Defendants also objected to these requests on the grounds that none of the requests are reasonably limited in scope to a timeframe relevant to this lawsuit. *Id.* Interrogatory No. 1 and Request for Production No. 2 seek information and documents for an 11-year period; Request for Production No. 9 for a 14-year period; and Request for Production No. 10 contains no timeframe whatsoever. As noted above, the RFP for which plaintiffs were the losing bidder was issued in September of 2008 and the contract at issue was awarded to River Birch in January of 2009. To the extent that these discovery requests well exceed a relevant timeframe, they are overbroad on their face. *Stolze*, 819 So. 2d at 289.

Plaintiffs contend that the information sought is relevant because one of the issues in this case "relates to a business transaction or financial issue," citing *Hill on Behalf of Williams v. City of New Orleans*, 549 So. 2d 858 (La. 1989); *Ward v. Tenneco Oil Co.*, 564 So. 2d 814 (La. App. 3d Cir. 1990); and *Succession of Davidson v. Forrest*, 577 So. 2d 1222 (La. App. 3 Cir. 1991). None of these cases involve that issue, or are in any way relevant or supportive of plaintiffs' argument. In fact, *Hill* actually demonstrates why production of this information is inappropriate at this stage in the case. *Hill*, a single paragraph opinion, involved a protective order sought in connection with a **judgment debtor examination**. *Hill*, 549 So. 2d at 858. This is precisely the reason defendant's have objected to these requests: production of a defendants' financial records and information is not appropriate in general pre-trial discovery **where the**

6

**plaintiffs have not yet obtained a judgment.**

Further, neither *Ward* nor *Succession of Davidson* involved objections to the production of financial or banking records or information. *Ward* concerned discovery requests aimed at identifying witnesses and for production of "projections, predictions, studies and/or analysis" and other "correspondence." *Ward*, 564 So. 2d at 821-22. *Succession of Davidson* concerned whether the Succession's admission in discovery, compelled after objection, that it owed the plaintiff $44,270.16, was sufficient to support summary judgment in that amount. *Succession of Davidson*, 577 So. 2d. at 1223.

Rather, the law is well settled that "to require the production of bank records over objection … a party seeking production must make a showing of relevancy and of good cause for production." *Ouachita Nat. Bank in Monroe v. Palowsky*, 554 So. 2d 108, 112 (La. App. 2 Cir. 1989). Further, because "income tax returns are confidential in nature and are of a personal character, good cause must be shown for their production." *Simon v. Fasig-Tipton Co. of N.Y.*, 524 So. 2d 788, 792 (La. App. 3 Cir. 1988); *see also Stolze*, 819 So. 2d at 289; *Bianchi v. Pattison Pontiac Company, Inc.*, 258 So. 2d 388, 389-90 (La. App. 4 Cir. 1972); *Ouachita Natl. Bank*, 554 So. 2d at 112. As aptly stated by one court:

> [T]he court should be very cautious in permitting its inspection and copying [of tax returns]. Such action should be authorized only after the court is convinced both of its relevancy and necessity for the prosecution of the plaintiffs' suit.

*Bianchi*, 258 So. 2d at 390. Further:

> [T]he plaintiffs' rights, under discovery process, to obtain income tax data … must be counterbalanced against the company's corresponding right to be protected from financial loss or other damage which may be occasioned by the disclosure of other tax information not pertinent to the adjudication of the matter in dispute.

*Id.* The trial court should resolve all reasonable doubts regarding to disputed discovery in favor of the party against whom it is sought, and apply liberally the protections afforded by article 1426 of the Louisiana Code of Civil Procedure. *Id.* Moreover, requests which go "beyond the time frame at issue in [the] litigation" are "overbroad." *Stolze*, 819 So. 2d at 289;

The requests at issue here are similar to those struck down by the trial court in *Adams v. Deaton, Inc.*, 696 So. 2d at 997, *reversing* 97-C-0059 (La. App. 4 Cir. 4/9/97), 694 So.

2d 482. That matter involved the consolidated personal injury claims of some 1,500 plaintiffs in connection with a collision between a train and a chemical truck driven by an allegedly intoxicated employee of the defendant. The plaintiffs sought in discovery a vast array of documents of questionable relevance, including defendant's tax returns, quarterly income statements and balance sheets, audited financial statements, and SEC form 10-K annual reports for an eighteen year period. *Adams*, 694 So. 2d at 487-89. The trial court denied these requests on the grounds that they were irrelevant, overbroad and harassing. *Id.* The trial court also denied the plaintiffs' motion to compel production of a certified copy of the of the defendants' articles of incorporation and amendments on the grounds that these records were irrelevant and equally accessible by the plaintiffs as the defendants and denied production of the minutes of all defendant's board of directors and/or shareholders meetings for an 18-year period as harassing and a fishing expedition. *Id.* The Louisiana Supreme Court reversed the appellate court finding that the trial court's judgment was not an abuse of discretion. *Adams*, 696 So. 2d at 997.

Here, plaintiffs have not made the showing required to obtain the information and documents sought. They urge the information is relevant because this litigation involves alleged "unethical and illegal financial transactions" and "payments" to alleged third parties. Even if this was a relevant topic of discovery, which is denied, the requests which they contend are designed to further this end are indisputably overbroad. Notably, the lawsuit itself contends only sparse and vague allegations of purportedly improper payments or transactions. Such allegations do not give plaintiffs a license to require defendant to identify his assets and open his books and records for over a 14-year period. Discovery may be broad when it is *relevant*, but it is not that broad by any definition.

C.   **A Protective Order Should Be Entered As To Discovery Requests Seeking Private Health Care Information.**

In multiple requests, plaintiffs seek to have defendant produce private health care information:

**REQUEST FOR PRODUCTION NO. 6:**

Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc. with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual

8

policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer for the period 2001, 2002, 2003, 2004, 2005, 2006.

### REQUEST FOR PRODUCTION NO. 8:

Please produce a copy of any and all documents related to any insurance policies serviced by Lagniappe Industries, LLC and/or THT Group, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers/and communications with the insurer for the periods 2006, 2007, 2008, 2009, 2010, and 2011.

*See* Exh. "A," attached to Plaintiffs' motion.  Defendant objected to these Requests on numerous grounds including privilege and that the Requests are overbroad, irrelevant, unduly burdensome and require production of private and confidential information protected from disclosure by state and federal privacy laws, including the Health Insurance Portability and Accountability Act ("HIPAA").  *See* Exh. "B," attached to Plaintiffs' motion.

Clearly this information is not relevant.  Even assuming that proof that River Birch entered into an agreement with Lagniappe Industries, LLC to provide insurance to River Birch employees is relevant to the purported "conspiracy," which is denied, that does not mean plaintiffs are entitled to access all of the documents related to the administration the alleged policies serviced by Lagniappe Industries, as well as by Group Insurance Associates, Inc. These Requests are wholly overbroad and harassing on their face.

These requests are clearly designed to obtain records regarding claims handling and other private information which is in no way relevant to any issue asserted in this litigation. The requests specifically ask for: "the actual policy . . . applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the

insurer." *See* Exh. "A," attached to Plaintiffs' motion. In *Stolze*, the Louisiana Supreme Court held that the trial court abused its discretion in failing to enter a protective order as to requests for "personal information," which is arguably of a less sensitive nature than that at issue here. *Stolze*, 819 So. 2d at 289-90. The Court stated that such information is not discoverable absent "a showing of relevancy and good cause for production." *Id.* Plaintiffs have made no such showing.

In response to defendant's objection that the information is protected from disclosure by HIPAA, plaintiffs disingenuously suggest that HIPAA is not implicated because the request does not involve "medical records." *See* Plaintiffs' Memorandum in Support, p.4. HIPAA, however, prohibits unauthorized disclosure of protected "health information" which is not limited to medical records. 45 C.F.R. §164.50. Rather "health information" means:

> ...any information, whether oral or recorded in any form or medium, that:
>
> (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and
>
> (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

45 C.F.R. §160.103. Thus, even if the information and documents sought by plaintiffs in these discovery requests was relevant, which is denied, it is protected from disclosure by HIPAA's privacy rules. Accordingly, the Court should enter a protective order precluding this discovery.

D.  **Defendant Cannot Be Compelled To Produce Exhibits For A Hearing Which Is Not Set.**

Plaintiffs seek to require production of "exhibits" defendant may introduce in connection with the hearing on defendant's exceptions:

**REQUEST FOR PRODUCTION NO. 25:**

> Please produce a copy of any exhibits you may introduce at the hearing on exceptions in this matter.

*See* Exh. "A," attached to Plaintiffs' motion. Defendant objected to this request as premature because discovery has just begun and the exceptions are not set for hearing. *See* Exh. "B,"

10

attached to Plaintiffs' motion.   Defendant specifically reserved the right to supplement this response. *Id.*

Nonetheless, plaintiffs complain that defendant should have identified his exhibits by now.  Plaintiffs further demand that defendant be ordered to identify exhibits "at least thirty (30) days" prior to any scheduled hearing but cite no authority for this position.  The appropriate remedy, should plaintiffs actually be prejudiced by an alleged lack of prior disclosure of an exhibit submitted at trial or a hearing, is an objection to its admissibility.  There is no basis whatsoever in law or fact for this Court to enter an order as plaintiffs propose at this stage of these proceedings.

E.     **A Protective Order Should Be Entered As To Discovery Requests Related To Irrelevant Zoning Matters.**

Plaintiffs also demand documents related to alleged "re-zoning" of the River Birch Landfill in 1996 and 1997:

> **REQUEST FOR PRODUCTION NO. 4:**
>
> Please produce any correspondence, including emails, or recordings relating to the re-zoning of the River Birch Landfill, whether written or received between you, individually, or as an owner or employee of an entity and:
>
> 1.     Tim Coulon
> 2.     Aaron Broussard
> 3.     Tom Wilkinson

*See* Exh. "A," attached to Plaintiffs' motion. Defendant objected to this Request on the grounds that it is irrelevant, overbroad, unduly burdensome, and it is not reasonably calculated to lead to the discovery of admissible evidence. *See* Exh. "B," attached to Plaintiffs' motion.

Plaintiffs articulate no particular rebuttal to these objections in the Motion to Compel. *See* Plaintiffs' Memorandum in Support, p.4.  The alleged "re-zoning of the River Birch Landfill," more than 10 years before the Request for Production at issue in this suit, is not relevant to any substantive allegation or claim made in the Petition.

The Petition, as noted above, asserts a long string of alleged facts and events which in reality have little or no connection to one another.  As to the purported "re-zoning" which allegedly occurred in 1997, some 11 years ago, the Petition contains a single paragraph, comprised of a mere two sentences:

In 1997, the site where River Birch Landfill is today located was re-zoned, despite much public outcry, which enabled River Birch Incorporated to operate a landfill in Waggaman. Tim Coulon, then Parish President, and Aaron Broussard, then Council Chairman, oversaw and supported the re-zoning of River Birch Landfill.

*See* Petition, ¶7. Nowhere in the Petition is there a single allegation, contention or even speculation that the purported re-zoning of the River Birch Landfill was illegal, improper, unethical or in any way tied to an alleged "conspiracy" among defendants and the alleged nonparty co-conspirators. Plaintiffs, in fact, fail to mention the re-zoning at all in connection with their substantive causes of action. *See* Petition, ¶¶79-91. Thus, the alleged 1997 re-zoning is not relevant to any claim or defense asserted in this litigation. Merely mentioning, in passing, this purported event in the Petition does not make it relevant.

In light of the irrelevancy of the alleged re-zoning of the River Birch Landfill, it would be unduly burdensome and oppressive to require defendant to respond to plaintiffs' request. Therefore, a protective order should be entered precluding this discovery.

F.     **A Protective Order Should Be Entered As To Discovery Requests Related To RFP 158.**

Plaintiffs also propounded a series of requests regarding RFP 158 which are irrelevant in this litigation:

**REQUEST FOR PRODUCTION NO. 11:**

Please produce any and all documents, internal memoranda or emails, correspondence, or recordings relating to Jefferson Parish RFP No. 158.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce any and all documents, internal memoranda or emails, correspondence, or recordings relating to Jefferson Parish Council's Resolution 110366 or any other Resolution which contemplated canceling RFP No. 158.

*See* Exh. "A," attached to Plaintiffs' motion.

Defendant objected to these Requests on the grounds that the information sought is irrelevant, and that the requests are overbroad, unduly burdensome and harassing. *See* Exh. "B," attached to Plaintiffs' motion. In the Motion to Compel, plaintiffs failed to rebut these objections.

There should be little doubt that these requests are not relevant and propounded solely to harass. The thrust of plaintiffs' Petition is that the procedure in connection with the issuance of RFP 176 was allegedly improper and/or corrupted and, accordingly that the award of the contract to River Birch was improper. As plaintiffs admit, RFP 158, which predated RFP 176 by nearly a year, was cancelled and recalled by the Parish in 2008. *See* Petition, ¶25. **Nowhere in the Petition is there a single allegation, contention or even speculation as to any illegal, improper, or unethical conduct in connection with RFP 158 or any indication that RFP 158 is in any way tied to an alleged "conspiracy" among defendants and the alleged nonparty co-conspirators.** The Petition, in fact, fails to demonstrate any connection whatsoever between RFP 158 and 176. Notably, RFP 158 is not mentioned at all in connection with plaintiffs' substantive causes of action. *See* Petition, ¶¶79-91. Thus, RFP 158 is not relevant to any claim or defense asserted in this litigation.

In light of the irrelevancy of RFP 158, it would be unduly burdensome and oppressive to require defendant to respond to plaintiffs' broad and sweeping demand for documents. Therefore, a protective order should be entered precluding this discovery.

G.   **Documents Regarding Alleged Investigations Of Plaintiffs By Defendant Are Irrelevant Or Protected From Disclosure.**

Plaintiffs further propound a series of overbroad requests apparently designed at learning whether or not defendant has engaged in any investigations of plaintiffs:

**REQUEST FOR PRODUCTION NO. 21:**

Please produce any documents, correspondence, including emails or recordings regarding the Plaintiffs or any of its directors or members.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce any documents or recordings that would memorialize any surveillance of the plaintiffs or any of its directors or members, including reports or video or audio recordings.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce a copy of any and all print outs, download html, jpg or other digital files of any representation or depiction of, or any typed writings of Plaintiffs, or any of their directors or members located on the World Wide Web.

*See* Exh. "A," attached to Plaintiffs' motion. Defendant objected to these requests on the same grounds: that they are irrelevant, overbroad and unduly burdensome, and that the information sought, to the extent it exists, is protected by the work product doctrine or other evidentiary privilege. In the Motion to Compel, plaintiffs fail to put forth any argument to rebut defendant's objections.

Setting aside that the requests are not relevant to any claim asserted in the Petition and are not limited to a time period, any responsive documents, to the extent they exist, would clearly be protected as work product. Article 1424(A) of the Louisiana Code of Civil Procedure provides:

> The court shall not order the production or inspection of any writing, or electronically stored information, **obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial** unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. ...

La. Code Civ. Proc. art. 1424(A) (emphasis added). Thus, documents and information regarding plaintiffs that have been gathered by defendant or his agents in connection with this litigation are protected by the work product doctrine. Absent a showing by plaintiffs of unfair prejudice, undue hardship or injustice, these documents "shall not" be produced. Accordingly, a protective order should be entered as to these Requests.

**H.     A Protective Order Should Be Entered As To The Remaining, Blanket, Overbroad And Irrelevant Discovery Requests.**

Plaintiffs also demand information and documents in several blanket, grossly overbroad and irrelevant requests which bear no relation to any particular issues in this litigation:

**INTERROGATORY NO. 4:**

Please identify any and all documents turned over or seized to the United States government in connection with its investigation; please also state whether a copy of the identified documents are in your possession.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce any documents, including emails or recordings relating to the Office of the Attorney General for the State of Louisiana's issued Opinion No. 08-0270.

14

**REQUEST FOR PRODUCTION NO. 18**:

Please produce any and all documents, correspondence, including e-mails, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition) from 2001 through present.

**REQUEST FOR PRODUCTION NO. 15**:

Please produce a copy of any and all communications, including emails, or memorializations of communications from 2001 through present between you, acting either individually or as an owner or employee of an entity, and:

1.  Tim Whitmer
2.  Tom Wilkenson
3.  Tim Coulon
4.  Aaron Broussard
5.  Dawn Whitmer
6.  Henry Mouton
7.  David Fos
8.  Al Gandolfi
9.  Dutchie Connick
10. Nancy Cassagne
11. Any employee of Lagniappe Industries, LLC
12. Any employee of Tim Coulon Campaign Committee, Inc.
13. Any employee of DHP, LLC
14. Any employee of CWC Gaming, LLC
15. Any member of the Jefferson Parish Council from January 1, 2007 to present.

**REQUEST FOR PRODUCTION NO. 19**:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, canceled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, from 2001 through present, between you, acting either individually or as an owner or employee of an entity, and:

1.  Henry Mouton
2.  Tim Whitmer
3.  Dawn Whitmer
4.  Tim Coulon
5.  Lagniappe Industries, LLC
6.  Tom Wilkenson
7.  Aaron Broussard

8.   DHP, LLC or any employee thereof
9.   CWC Gaming, LLC or any employee thereof
10.  David Fos
11.  Nancy Cassagne
12.  Zydeco Holdings, LLC
13.  Water Front Properties, LLC
14.  Ring Associates, LLC
15.  B&C Contractors, LLC
16.  Dangle & Associates, LLC
17.  Anne's Properties, LLC
18.  Big Bank Properties, LLC
19.  Trout Point Lodge
20.  Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

## REQUEST FOR PRODUCTION NO. 24:

Please produce a copy of all documents identified in response to interrogatories propounded upon you.

*See* Exh. "A," attached to Plaintiffs' motion.  Defendant objected to each of these discovery requests on similar grounds: that the documents or information sought are irrelevant as to any claim or defense asserted in this litigation, and that the requests are overbroad, unduly burdensome and harassing.  *See* Exh. "B," attached to Plaintiffs' motion.  Defendant also objected on the grounds that the requests are not limited to a reasonable timeframe relevant to this litigation.  *Id.*  In most instances the requests contain no temporal limit at all, and those which do contain a limit seek in excess of 10 years of documents or information.  *Id.*

Plaintiffs failed to raise any particular argument in rebuttal to defendant's objections.  Clearly, each of these requests is irrelevant and grossly overbroad.  Plaintiffs' Petition does not concern the alleged seizure of documents and Interrogatory No. 4 is, therefore, irrelevant and overbroad on its face.  Further, the plaintiffs' Petition is devoid of any allegations concerning an alleged Attorney General opinion.  *See* Request for Production No. 14.  Notably nowhere in the Petition is there any mention of the Old Gentilly Landfill, the St. Bernard Parish Landfill, or Gioe's Truck Service, Inc.  *See* Request for Production No. 18.

Request Nos. 15 and 19 are textbook examples of harassing requests.  Plaintiffs requested production of all manner of communications and financial documents for an unlimited timeframe without any restriction whatsoever to any issue relevant to this litigation.  The vast

16

majority of the persons and entities listed in these requests are not even mentioned in the Petition. Plaintiffs have failed to demonstrate that the documents sought bear any relevancy whatsoever to this litigation.

## II.    MR. WARD PROPERLY INVOKED THE FIFTH AMENDMENT PRIVILEGE.

Plaintiffs argue that Mr. Ward has not properly invoked the Fifth Amendment privilege because "the answer[s] sought could not possibly have a tendency to incriminate ..." *See* Plaintiffs' Memorandum in Support, p.6. Plaintiffs' arguments, however, appear limited to Interrogatory Nos. 2 and 6 and Request for Production Nos. 21, 22 and 23. *Id.* It is unclear, therefore, whether plaintiffs contend that the privilege is improperly invoked as to just these requests, or as to all requests. Nonetheless, as shown below, the privilege is properly invoked as to all of plaintiffs' requests.

Plaintiffs further argue that an "irrevocable negative inference" be attached as a result of Mr. Ward's objections. *Id.* As explained below, plaintiffs incorrectly state the law on inference.

### A.    The Privilege Has Been Properly Invoked.

Plaintiffs call upon defendant to supply further information to show how answers to these discovery requests could potentially implicate him. To do so would constitute a waiver of the privilege.

As the Court well knows, the Jefferson Parish disposal contract has been the subject of a long-term, highly publicized investigation by the federal government. No charges have been brought, but the investigation is active and ongoing. *See, e.g.,* Paul Rioux, *River Birch Landfill offices raided by federal agents*, THE TIMES-PICAYUNE, Sept. 24, 2010. Virtually all of the plaintiffs' discovery requests seek information related to the federal investigation. As is explained below, the defendants cannot be compelled to make any statements or disclosures related to this investigation.

A party may invoke the Fifth Amendment privilege if the answer to a question or testimony poses a real danger of criminal responsibility. *See McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S. Ct. 16, 69 L.Ed. 158 (1924).

The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S. Ct. 316, 322 (1973).

Thus, the Fifth Amendment may be invoked as an objection to interrogatories. *See Gordon v. FDIC*, 427 F.2d 578, 580 (D.D.C. 1970). It may also be invoked in response to requests for production where the production would carry a testimonial aspect with a potentially incriminating effect. *Amato v. United States*, 450 F.3d 46, 50 (1st Cir. 2006) (*quoting Fisher v. United States*, 425 U.S. 391, 408 (1976)).

A party may, however, waive the privilege to subsequent questioning by answering questions that already disclosed incriminating facts. *Rogers v. United States*, 340 U.S. 367, 372-73, 71 S. Ct. 438, 95 L.Ed 344 (1951) ("[W]here incriminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details."). "Disclosure of a fact waives the privilege as to details." *Id.* at 373. Thus, a party who voluntarily reveals incriminating facts cannot invoke the privilege to prevent disclosure regarding the details of those facts. *Id.*

Defendant, therefore, cannot reveal any facts regarding the asserted privileges to demonstrate the possibility of incrimination, as that very act could constitute a waiver. Moreover, contrary to Plaintiffs' assertions, the law does not require the defendant to do so to invoke the privilege. Rather, the proper inquiry in determining whether a witness may assert the privilege is two-fold:

First, the court must determine whether answers to the questions might tend to reveal that the witness has engaged in criminal activities.

*In re Corrugated Anti-Trust Litigation*, 620 F.2d 1086, 1091 (5th Cir. 1980) (*citing Zicarelli v. New Jersey State Comm. of Investigation*, 406 U.S. 472, 92 S. Ct. 1670 (1972)). Significantly, "the privilege covers not only responses that would support the party's criminal conviction, but also *'embraces those which would furnish a link in the chain of evidence needed to prosecute.'*" *In re Enron Corp. Securities, Derivatives & ERISA Litigation*, 762 F.Supp.2d 942,

(S.D. Tex. 2010) (*quoting Malloy v. Hogan*, 378 U.S. 1, 11, 84 S. Ct. 1489 (1964)) (emphasis added).

> ... the court must next ask whether there is a risk, even a remote risk, that the witness will be prosecuted for the criminal activities that his testimony might touch on.

*Corrugated*, 620 F.2d at 1091.  In making these determinations, "it is only when there is but a fanciful possibility of prosecution that a claim of fifth amendment privilege is not well taken." *Id.* (*quoting In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 871 (7th Cir. 1979)).  Thus, where "a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster." *Id.* at 1092.

As plaintiffs themselves have stated, the discovery requests are purportedly designed to reveal facts proving an alleged illegal conspiracy and bribery scheme that is the crux of plaintiffs' Petition.  There can be no question that Interrogatory Nos. 3, 4, and 5 and Request for Production Nos. 1, 2, 4 - 17, 19 and 24 all seek information and documents directly related to these allegations.  Certainly, the revelation of any facts regarding these matters could constitute a waiver of the privilege.  Further, Interrogatory Nos. 2 and 6 and Request for Production Nos. 4, 18, 20 - 23 seek information or documents, which may not be directly incriminating, but could "furnish a link" and constitute a waiver of the privilege.

Moreover, as plaintiffs are well aware, defendant is presently the subject of an ongoing federal criminal investigation.  Thus, there exists more than "a fanciful possibility of prosecution."  Accordingly, the privilege has been properly invoked as to each and every discovery request and discovery should be precluded on that basis.

B.   **The Law Does Not Mandate An "Irrevocable" Negative Inference Be Drawn As A Result Of The Invocation Of The Fifth Amendment.**

Plaintiffs next urge this Court to subject defendant to an "irrevocable adverse inference" as a result of defendant's invocation of the privilege.  Plaintiffs' statement of the law is incorrect and their request for an inference, to the extent one is available, is premature.

19

First, plaintiffs' construction of the law is inaccurate. The law does not mandate the adoption of any inference whatsoever, much less an irrevocable one. Notably, "[w]hile an adverse inference may be drawn in a civil case when a party asserts his Fifth Amendment privilege, **the trier of fact is not required to draw a negative inference.**" *In re Enron*, 762 F. Supp.2d at 1017 (*citing Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551 (1976)) (emphasis added); *Daniels v. Pipefitters' Ass'n Local Union No.* 597, 983 F.2d 800, 802 (7th Cir. 1992). In fact, the court may decline to draw an adverse inference, when, for instance, the defendant "subsequently testifies or cooperates with an investigation." *Id.* at 962 (*citing Burdine v. Johnson*, 262 F.3d 336, 367 (5th Cir. 2001)).

Second, plaintiffs' demand for the adoption of an "inference" in this matter is premature. Any negative inference that could be drawn by the Court is appropriate only upon trial on the merits or, perhaps, on summary judgment. As correctly stated by one court, inferences are "deductions or conclusions which with reason and common sense lead **the jury to draw from facts which have been established by the evidence in the case.**" *Smith v. Lynn*, 32, 093 (La. App. 2 Cir. 8/18/99), 749 So. 2d 692, 696 (emphasis added). Inferences as to the invocation of the Fifth Amendment privilege, therefore, are recognized purely "in the context of **the weight to be given to the party's evidence.**" *Id.* (emphasis added).

In fact, the cases plaintiffs cite all concerned inferences drawn upon the submission of the case for decision. *See Boyd v. Boyd*, 26, 292 (La. App. 2 Cir. 12/7/94), 647 So. 2d 414, 415-16 (inference drawn as a result of defendant's refusal to testify at custody hearing in divorce proceeding); *Economy Auto Salvage, Inc. v. Allstate Ins. Co.*, 499 So. 2d 963, 977 (La. App. 3 Cir. 1986) (declining to impute negative inference as result of nonparty witness' invocation of privilege at trial on the merits); *Miles v. Louisiana Landscape Specialty, Inc.*, 97-CA-118 (La. App. 5 Cir. 6/30/97), 697 So. 2d 348, (in civil sexual assault and battery case, adopting adverse inference on summary judgment against defendant who failed to appear for deposition on Fifth Amendment grounds). None of these cases, and no other authority that could be found, suggest that an inference can be adopted as part of an Order on a Motion to Compel in the early stages of discovery. Thus, the adoption of an inference, much less an "irrevocable" one, at this stage of the proceedings, where discovery has only just begun, is inappropriate.

## CONCLUSION

For the foregoing reasons, the Motion to Compel Answers to Interrogatories and Requests for Production of Documents filed by plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC, should be denied and a protective order entered in favor of defendant, Mr. Ward, finding that the discovery sought not be had.

Respectfully submitted,

Robert Habans, Jr. 06395
HABANS & CARRIERE
10843 N. Oak Hills Parkway
Baton Rouge, Louisiana 70810
Telephone: (225) 757-0225
Fax: (225) 757-0398

Attorney for Albert J. Ward, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Memorandum in Opposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 30 day of June, 2011.

Robert Habans, Jr.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129

DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____

_____
DEPUTY CLERK

## MOTION FOR SPECIAL SETTING

**NOW INTO COURT,** through undersigned counsel, come defendants, Frederick R. Heebe; Albert J. Ward, Jr.; River Birch, Inc.; and HWY 90, LLC, who jointly move this Honorable Court for a special setting on September 21, 2011 at 10:00 A.M. to hear the following:

1. Defendants' Peremptory Exceptions of Peremption, Prescription and No Cause of Action; and

2. Frederick R. Heebe's Motion for Contempt, Sanctions and to Compel Discovery.

Pursuant to Rule 9.8(a), defendants represent that no trial date has been set for this matter. Undersigned has contacted Steve Gele, counsel for plaintiffs, who has no objection to a special setting on September 21, 2011 at 10:00 A.M. Mr. Gele indicated that Concrete Busters of Louisiana, Inc. intends to call witnesses for testimony at the hearing on defendant's Exception of Prescription.

**WHEREFORE**, defendants, Frederick R. Heebe; Albert J. Ward, Jr.; River Birch, Inc.; and HWY 90, LLC pray that their Exceptions of Peremption, Prescription and No Cause of Action and Frederick R. Heebe's Motion for Contempt, Sanctions and to Compel Discovery be set for a special hearing on September 21, 2011 at 10:00 a.m.

Respectfully submitted,

Kyle Schonekas, 11817
William P. Gibbens, 27225
Andrea V. Timpa, 29455
SCHONEKAS, EVANS, McGOEY
& McEACHIN, L.L.C.
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
Telephone: (504) 680-6050
Facsimile: (504) 680-6051

*Attorneys for Frederick R. Heebe*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Motion for Special Setting has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 28th day of July, 2011.

WILLIAM P. GIBBENS

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.  11-2129                                                DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____          _____

                                                DEPUTY CLERK

### ORDER

The foregoing Motion for Special Setting having been considered;

**IT IS HEREBY ORDERED** that the hearing on Defendants' Peremptory Exceptions of Peremption, Prescription and No Cause of Action and Frederick R. Heebe's Motion for Contempt, Sanctions and to Compel Discovery, be and hereby are set for the 21st day of **September, 2011 at 10:00 AM**.

New Orleans, Louisiana, this $28$ day of July 2011.

                              ___(Sgd) Lloyd J. Medley, Jr.___
                              JUDGE

**SERVICE WAIVED BY ALL PARTIES**

3

2011.07.28.joint.motion.for.SPECIAL.SETTING.hearing.1967

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                    DIVISION "D "           Docket No.

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF
PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED
AND HWY 90, LLC

TO:   DHP, L.L.C., Registered Agent: Timothy Whitmer, 3809 Lake Winnepeg Dr., Harvey,
LA 70058

        CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed
below.

---

### SUBPOENA REQUEST

[     ]  YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in
Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _ 20_ at _o'clock
_.m., to testify the truth according to your knowledge, in a controversy pending herein between the
parties above named; and hereof you are not to fail under the penalty of the law.  By order of the Court.

---

### DEPOSITION SUBPOENA REQUEST

[     ]  YOU ARE COMMANDED to appear at the place, date and time specified below to testify
at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

---

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ]  YOU ARE COMMANDED to produce and permit inspection and copying of the following
documents or objects for the ___ trial, __X_____ deposition, or _ hearing (state type) _____
_____ at the place, date and time specified below (list documents or objects) pursuant to the provisions
of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY                          _____
                                      Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER        Stephen Gele   LA #22385

ADDRESS
&
TELEPHONE NUMBER        201 St. Charles Ave., Ste. 3702

                              New Orleans, LA 70170

                              (504) 525-2200

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

## ATTACHED EXHIBIT "A"

1)     Any and all correspondence and/or e-mails to the following:

        1) Henry M. Mouton;
        2) Frederick Heebe;
        3) Albert "Jim" Ward;
        4) Any employee of River Birch, Inc.;
        6) Any employee of Hwy 90, LLC;
        7) Any employee of Water Front Properties, LLC;
        8) Any employee of Ring Associates, LLC;
        9) Any employee of B&C Contractors, LLC;
        10) Any employee of Dangle & Associates, LLC;
        11) Any employee of Willow, Inc.
        12) Any employee of Big Bang Properties, L.L.C.;
        13) Any employee of Live Oak Homes, Co.;
        14) Any employee of Heebe & Heebe, P.L.C.;
        15) Any employee of Shadow Lake Management Company, Inc.;
        16) Any employee of B.L.U., LLC;
        17) Any employee of B.L.U. 2, LLC;
        18) Any employee of Fred Heebe Investments;
        19) Any employee of Anne's Properties, LLC;
        20) Dominick Fazzio;
        21) Dutchie Connick;

2)     Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between DHP, L.L.C. and the following individuals:

        1) Frederick Heebe;
        2) Albert "Jim" Ward;
        3) Dominick Fazzio;
        4) Henry Mouton.

3)     Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between DHP, L.L.C. and the following companies:

        1) Zydeco Holdings, L.L.C., or any employee thereof;
        2) Dangle & Associates, LLC, or any employee thereof;
        3) Water Front Properties, LLC, or any employee thereof;
        4) B & C Contractors, LLC, or any employee thereof;

     5) Anne's Properties, LLC, or any employee thereof;
     6) Willow, Inc., or any employee thereof;
     7) Ring Associates, LLC, or any employee thereof;
     8) Big Bang Properties, LLC, or any employee thereof;
     9) Heebe & Heebe, P.L.C., or any employee thereof;
     10) Trout Point Lodge, or any employee thereof;
     11) Live Oak Homes, Co., or any employee thereof;
     12) B.L.U. 2, LLC, or any employee thereof;
     13) Shadow Lake Management Co., Inc., or any employee thereof;
     14) Fred Heebe Investments, or any employee thereof;
     15) River Birch, Inc., or any employee thereof;
     16) Hwy 90, LLC, or any employee thereof;
     17) B.L.U., LLC, or any employee thereof;
     18) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

4)     Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding DHP, L.L.C., and/or any predecessor or successor entity from the date of incorporation to present.

5)     Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

6)     Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

7)     Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

8)     Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC

regarding the waste removal/landfill contract arising out of RFP No. 176.

9)   Please produce any and all contracts you had where you either hired consultants or were retained as a consultant from 2004 through present.

10)   Please produce any and all contracts you had where you were either hired subcontractors or were retained as a subcontractor from 2004 through present.

11)   Please provide a list of DHP, L.L.C.'s employees for the period of 2007-present.

12)   Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                    DIVISION "D "          Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED AND HWY 90, LLC

TO:  Caribe Resort Properties I, L.L.C., Registered Agent: Hilary Hurst Landry, 701 Poydras St., New Orleans, LA 70139

    CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed below.

―――――――――――――――――――――――――――――――――――――――――――――――――――――
SUBPOENA REQUEST

[    ]  YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _20_ at _o'clock _.m., to testify the truth according to your knowledge, in a controversy pending herein between the parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

―――――――――――――――――――――――――――――――――――――――――――――――――――――
DEPOSITION SUBPOENA REQUEST

[    ]  YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

―――――――――――――――――――――――――――――――――――――――――――――――――――――
REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ]  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects for the ___ trial, __X____ deposition, or _ hearing (state type) _____ _____ at the place, date and time specified below (list documents or objects) pursuant to the provisions of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY                    _____
                              Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER          Stephen Gele    LA #22385

ADDRESS                    201 St. Charles Ave., Ste. 3702
&
TELEPHONE NUMBER           New Orleans, LA 70170

                          (504) 525-2200

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

1)     Any and all correspondence and/or e-mails to the following:
       1) Henry M. Mouton;
       2) Frederick Heebe;
       3) Albert "Jim" Ward;
       4) Any employee of River Birch, Inc.;
       6) Any employee of Hwy 90, LLC;
       7) Any employee of Water Front Properties, LLC;
       8) Any employee of Ring Associates, LLC;
       9) Any employee of B&C Contractors, LLC;
       10) Any employee of Dangle & Associates, LLC;
       11) Any employee of Willow, Inc.
       12) Any employee of Big Bang Properties, L.L.C.;
       13) Any employee of Live Oak Homes, Co.;
       14) Any employee of Heebe & Heebe, P.L.C.;
       15) Any employee of Shadow Lake Management Company, Inc.;
       16) Any employee of B.L.U., LLC;
       17) Any employee of B.L.U. 2, LLC;
       18) Any employee of Fred Heebe Investments;
       19) Any employee of Anne's Properties, LLC;
       20) Dominick Fazzio;
       21) Dutchie Connick;

2)     Please produce copies of any and all documents, including electronic documents,
       evidencing or memorializing any and all moneys exchanged or contemplated to be
       exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
       registers, bank statements, wire transfers, settlement agreements, releases, promissory
       notes, financial instruments, financial statements, tax filings, accounting records, between
       **Caribe Resort Properties I, L.L.C.** and the following individuals:
       1) Frederick Heebe;
       2) Albert "Jim" Ward;
       3) Dominick Fazzio;
       4) Henry Mouton.

3)     Please produce copies of any and all documents, including electronic documents,
       evidencing or memorializing any and all moneys exchanged or contemplated to be
       exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
       registers, bank statements, wire transfers, settlement agreements, releases, promissory
       notes, financial instruments, financial statements, tax filings, accounting records, between
       **Caribe Resort Properties I, L.L.C.** and the following companies:
       1) Zydeco Holdings, L.L.C., or any employee thereof;
       2) Dangle & Associates, LLC, or any employee thereof;
       3) Water Front Properties, LLC, or any employee thereof;
       4) B & C Contractors, LLC, or any employee thereof;

5) Anne's Properties, LLC, or any employee thereof;
6) Willow, Inc., or any employee thereof;
7) Ring Associates, LLC, or any employee thereof;
8) Big Bang Properties, LLC, or any employee thereof;
9) Heebe & Heebe, P.L.C., or any employee thereof;
10) Trout Point Lodge, or any employee thereof;
11) Live Oak Homes, Co., or any employee thereof;
12) B.L.U. 2, LLC, or any employee thereof;
13) Shadow Lake Management Co., Inc., or any employee thereof;
14) Fred Heebe Investments, or any employee thereof;
15) River Birch, Inc., or any employee thereof;
16) Hwy 90, LLC, or any employee thereof;
17) B.L.U., LLC, or any employee thereof;
18) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

4)     Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Caribe Resort Properties I, L.L.C.**, and/or any predecessor or successor entity from the date of incorporation to present.

5)     Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

6)     Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

7)     Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

8)     Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC

regarding the waste removal/landfill contract arising out of RFP No. 176.

9)      Please produce any and all contracts you had where you either hired consultants or were retained as a consultant from 2004 through present.

10)      Please produce any and all contracts you had where you were either hired subcontractors or were retained as a subcontractor from 2004 through present.

11)      Please provide a list of **Caribe Resort Properties I, L.L.C.'s** employees for the period of 2007-present.

12)      Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

11-2129                    DIVISION "D "              2011 AUG -2  P 3 SUBPOENA

                                                      Docket No.

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF
PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED
AND HWY 90, LLC

TO:  Caribe Resort Properties, L.L.C., Registered Agent: Timothy Coulon, 2116 Hyde Park
Ave., Harvey, LA 70058

        CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed
below.

---

### SUBPOENA REQUEST

[    ]  YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in
Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _20_ at _o'clock
_.m., to testify the truth according to your knowledge, in a controversy pending herein between the
parties above named; and hereof you are not to fail under the penalty of the law.  By order of the Court.

---

### DEPOSITION SUBPOENA REQUEST

[    ]  YOU ARE COMMANDED to appear at the place, date and time specified below to testify
at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

---

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ]  YOU ARE COMMANDED to produce and permit inspection and copying of the following
documents or objects for the ___ trial, __X___ deposition, or _ hearing (state type) _____
_____ at the place, date and time specified below (list documents or objects) pursuant to the provisions
of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY                    _____

ATTORNEY'S
NAME & BAR NUMBER          Stephen Gele    LA #22385

ADDRESS
&                          201 St. Charles Ave., Ste. 3702
TELEPHONE NUMBER
                           New Orleans, LA 70170

                           (504) 525-2200

              File original and two copies with Clerk
                 fourth copy for Attorney's File

                 ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

1)     Any and all correspondence and/or e-mails to the following:
>    1) Henry M. Mouton;
>    2) Frederick Heebe;
>    3) Albert "Jim" Ward;
>    4) Any employee of River Birch, Inc.;
>    6) Any employee of Hwy 90, LLC;
>    7) Any employee of Water Front Properties, LLC;
>    8) Any employee of Ring Associates, LLC;
>    9) Any employee of B&C Contractors, LLC;
>    10) Any employee of Dangle & Associates, LLC;
>    11) Any employee of Willow, Inc.
>    12) Any employee of Big Bang Properties, L.L.C.;
>    13) Any employee of Live Oak Homes, Co.;
>    14) Any employee of Heebe & Heebe, P.L.C.;
>    15) Any employee of Shadow Lake Management Company, Inc.;
>    16) Any employee of B.L.U., LLC;
>    17) Any employee of B.L.U. 2, LLC;
>    18) Any employee of Fred Heebe Investments;
>    19) Any employee of Anne's Properties, LLC;
>    20) Dominick Fazzio;
>    21) Dutchie Connick;

2)     Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Caribe Resort Properties, L.L.C.** and the following individuals:
>    1) Frederick Heebe;
>    2) Albert "Jim" Ward;
>    3) Dominick Fazzio;
>    4) Henry Mouton.

3)     Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Caribe Resort Properties, L.L.C.** and the following companies:
>    1) Zydeco Holdings, L.L.C., or any employee thereof;
>    2) Dangle & Associates, LLC, or any employee thereof;
>    3) Water Front Properties, LLC, or any employee thereof;
>    4) B & C Contractors, LLC, or any employee thereof;

5) Anne's Properties, LLC, or any employee thereof;
6) Willow, Inc., or any employee thereof;
7) Ring Associates, LLC, or any employee thereof;
8) Big Bang Properties, LLC, or any employee thereof;
9) Heebe & Heebe, P.L.C., or any employee thereof;
10) Trout Point Lodge, or any employee thereof;
11) Live Oak Homes, Co., or any employee thereof;
12) B.L.U. 2, LLC, or any employee thereof;
13) Shadow Lake Management Co., Inc., or any employee thereof;
14) Fred Heebe Investments, or any employee thereof;
15) River Birch, Inc., or any employee thereof;
16) Hwy 90, LLC, or any employee thereof;
17) B.L.U., LLC, or any employee thereof;
18) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

4)   Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Caribe Resort Properties, L.L.C.**, and/or any predecessor or successor entity from the date of incorporation to present.

5)   Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

6)   Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals No. 158 and/or 176.

7)   Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

8)   Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90,

LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

9) Please produce any and all contracts you had where you either hired consultants or were retained as a consultant from 2004 through present.

10) Please produce any and all contracts you had where you were either hired subcontractors or were retained as a subcontractor from 2004 through present.

11) Please provide a list of **Caribe Resort Properties, L.L.C.'s** employees for the period of 2007-present.

12) Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

**SUBPOENA**

11-2129                    DIVISION "D "              Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF
PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED
AND HWY 90, LLC

TO:    Coulon Consultants, L.L.C., Registered Agent: Timothy Coulon, 2116 Hyde Park
Ave., Harvey, LA 70058

      CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed
below.

---

### SUBPOENA REQUEST

[     ]  **YOU ARE COMMANDED** to appear in the Civil District Court, Parish of Orleans in
Division "__", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _20_ at _ o'clock
_.m., to testify the truth according to your knowledge, in a controversy pending herein between the
parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

---

### DEPOSITION SUBPOENA REQUEST

[     ]   **YOU ARE COMMANDED** to appear at the place, date and time specified below to testify
at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

---

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ]   **YOU ARE COMMANDED** to produce and permit inspection and copying of the following
documents or objects for the ___ trial, __X___ deposition, or _ hearing (state type) _____
_____ at the place, date and time specified below (list documents or objects) pursuant to the provisions
of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY                          _____
                                       Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER        Stephen Gele    LA #22385  _____

ADDRESS                          201 St. Charles Ave., Ste. 3702 _____
&
TELEPHONE NUMBER         New Orleans, LA 70170 _____

                                     (504) 525-2200 _____

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

1)   Any and all correspondence and/or e-mails to the following:
  1) Henry M. Mouton;
  2) Frederick Heebe;
  3) Albert "Jim" Ward;
  4) Any employee of River Birch, Inc.;
  6) Any employee of Hwy 90, LLC;
  7) Any employee of Water Front Properties, LLC;
  8) Any employee of Ring Associates, LLC;
  9) Any employee of B&C Contractors, LLC;
  10) Any employee of Dangle & Associates, LLC;
  11) Any employee of Willow, Inc.
  12) Any employee of Big Bang Properties, L.L.C.;
  13) Any employee of Live Oak Homes, Co.;
  14) Any employee of Heebe & Heebe, P.L.C.;
  15) Any employee of Shadow Lake Management Company, Inc.;
  16) Any employee of B.L.U., LLC;
  17) Any employee of B.L.U. 2, LLC;
  18) Any employee of Fred Heebe Investments;
  19) Any employee of Anne's Properties, LLC;
  20) Dominick Fazzio;
  21) Dutchie Connick;

2)   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Coulon Consultants, L.L.C.** and the following individuals:
  1) Frederick Heebe;
  2) Albert "Jim" Ward;
  3) Dominick Fazzio;
  4) Henry Mouton.

3)   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Coulon Consultants, L.L.C.** and the following companies:
  1) Zydeco Holdings, L.L.C., or any employee thereof;
  2) Dangle & Associates, LLC, or any employee thereof;
  3) Water Front Properties, LLC, or any employee thereof;
  4) B & C Contractors, LLC, or any employee thereof;

      5) Anne's Properties, LLC, or any employee thereof;
      6) Willow, Inc., or any employee thereof;
      7) Ring Associates, LLC, or any employee thereof;
      8) Big Bang Properties, LLC, or any employee thereof;
      9) Heebe & Heebe, P.L.C., or any employee thereof;
      10) Trout Point Lodge, or any employee thereof;
      11) Live Oak Homes, Co., or any employee thereof;
      12) B.L.U. 2, LLC, or any employee thereof;
      13) Shadow Lake Management Co., Inc., or any employee thereof;
      14) Fred Heebe Investments, or any employee thereof;
      15) River Birch, Inc., or any employee thereof;
      16) Hwy 90, LLC, or any employee thereof;
      17) B.L.U., LLC, or any employee thereof;
      18) Any company, including but not limited to corporations, limited liability
companies, or any other legal entity, of which any of the above listed persons and/or entities
owns fifteen (15) percent or more.

4)     Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Coulon Consultants, L.L.C.**, and/or any predecessor or successor entity from the date of incorporation to present.

5)     Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

6)     Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

7)     Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

8)     Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC

regarding the waste removal/landfill contract arising out of RFP No. 176.

9)   Please produce any and all contracts you had where you either hired consultants or were retained as a consultant from 2004 through present.

10)  Please produce any and all contracts you had where you were either hired subcontractors or were retained as a subcontractor from 2004 through present.

11)  Please provide a list of **Coulon Consultants, L.L.C.'s** employees for the period of 2007-present.

12)  Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                    DIVISION "D "                    Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED AND HWY 90, LLC

TO:    Learlines, L.L.C., Registered Agent: Mary C. Coulon, 2116 Hyde Park Ave., Harvey, LA 70058

        CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed below.

────────────────────────────────────────────────────────────

SUBPOENA REQUEST

[      ]   YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _ 20_ at _ o'clock _.m., to testify the truth according to your knowledge, in a controversy pending herein between the parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

DEPOSITION SUBPOENA REQUEST

[      ]   YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ]   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects for the ___ trial, __X_____ deposition, or _ hearing (state type) _____ _____ at the place, date and time specified below (list documents or objects) pursuant to the provisions of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY          _____
                        Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER      Stephen Gele    LA #22385

ADDRESS              201 St. Charles Ave., Ste. 3702
&
TELEPHONE NUMBER      New Orleans, LA 70170

                    (504) 525-2200

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

FILED

1)      Any and all correspondence and/or e-mails to the following:

2011 AUG -2   P 3: 24

1) Henry M. Mouton;
2) Frederick Heebe;
3) Albert "Jim" Ward;

CIVIL
DISTRICT COURT

4) Any employee of River Birch, Inc.;
6) Any employee of Hwy 90 LLC;
7) Any employee of Water Front Properties, LLC;
8) Any employee of Ring Associates, LLC;
9) Any employee of B&C Contractors, LLC;
10) Any employee of Dangle & Associates, LLC;
11) Any employee of Willow, Inc.
12) Any employee of Big Bang Properties, L.L.C.;
13) Any employee of Live Oak Homes, Co.;
14) Any employee of Heebe & Heebe, P.L.C.;
15) Any employee of Shadow Lake Management Company, Inc.;
16) Any employee of B.L.U., LLC;
17) Any employee of B.L.U. 2, LLC;
18) Any employee of Fred Heebe Investments;
19) Any employee of Anne's Properties, LLC;
20) Dominick Fazzio;
21) Dutchie Connick;

2)      Please produce copies of any and all documents, including electronic documents,
        evidencing or memorializing any and all moneys exchanged or contemplated to be
        exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
        registers, bank statements, wire transfers, settlement agreements, releases, promissory
        notes, financial instruments, financial statements, tax filings, accounting records, between
        **Learlines, L.L.C.** and the following individuals:

1) Frederick Heebe;
2) Albert "Jim" Ward;
3) Dominick Fazzio;
4) Henry Mouton.

3)      Please produce copies of any and all documents, including electronic documents,
        evidencing or memorializing any and all moneys exchanged or contemplated to be
        exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
        registers, bank statements, wire transfers, settlement agreements, releases, promissory
        notes, financial instruments, financial statements, tax filings, accounting records, between
        **Learlines, L.L.C.** and the following companies:

1) Zydeco Holdings, L.L.C., or any employee thereof;
2) Dangle & Associates, LLC, or any employee thereof;
3) Water Front Properties, LLC, or any employee thereof;
4) B & C Contractors, LLC, or any employee thereof;

     5) Anne's Properties, LLC, or any employee thereof;

     6) Willow, Inc., or any employee thereof;

     7) Ring Associates, LLC, or any employee thereof;

     8) Big Bang Properties, LLC, or any employee thereof;

     9) Heebe & Heebe, P.L.C., or any employee thereof;

     10) Trout Point Lodge, or any employee thereof;

     11) Live Oak Homes, Co., or any employee thereof;

     12) B.L.U. 2, LLC, or any employee thereof;

     13) Shadow Lake Management Co., Inc., or any employee thereof;

     14) Fred Heebe Investments, or any employee thereof;

     15) River Birch, Inc., or any employee thereof;

     16) Hwy 90, LLC, or any employee thereof;

     17) B.L.U., LLC, or any employee thereof;

     18) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

4)    Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Learlines, L.L.C.**, and/or any predecessor or successor entity from the date of incorporation to present.

5)    Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

6)    Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal Nos. 158 and/or 176 (RFP), including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

7)    Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

8)    Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and/or Hwy 90, LLC

regarding the waste removal/landfill contract arising out of RFP No. 176.

9)   Please produce any and all contracts you had where you either hired consultants or were retained as a consultant from 2004 through present.

10)  Please produce any and all contracts you had where you were either hired subcontractors or were retained as a subcontractor from 2004 through present.

11)  Please provide a list of **Learlines, L.L.C.'s** employees for the period of 2007-present.

12)  Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                     DIVISION "D "              Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED AND HWY 90, LLC

TO:   Zydeco Holdings, L.L.C., Registered Agent: Henry M. Mouton, 203 Asbury Rd., Lafayette, LA 70503

CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed below.

---

### SUBPOENA REQUEST

[    ]   YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _20_ at   o'clock _.m., to testify the truth according to your knowledge, in a controversy pending herein between the parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

---

### DEPOSITION SUBPOENA REQUEST

[    ]   YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
|  |  |

---

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX  ]   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects for the ___ trial, _X_ deposition, or _ hearing (state type) _____ _____ at the place, date and time specified below (list documents or objects) pursuant to the provisions of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
| --- | --- |
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY

ATTORNEY'S                    Attorney's Signature
NAME & BAR NUMBER      Stephen Gele    LA #22385

ADDRESS                     201 St. Charles Ave., Ste. 3702
&
TELEPHONE NUMBER      New Orleans, LA 70170

                                (504) 525-2200

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

1)    Any and all correspondence and/or e-mails to the following:
        1) Frederick R. Heebe;
        2) Albert J. Ward;
        3) Timothy Coulon;
        4) Mary Coulon;
        5) Timothy Whitmer;
        6) Dawn Whitmer;
        7) Tom Wilkinson;
        8) Aaron Broussard;
        9) Any employee of CWC Gaming, LLC;
        10) Any employee of Lagniappe Industries, LLC;
        11) Any employee of CT Investments, L.L.C.;
        12) Any employee of DHP, LLC;
        13) Any employee of Caribe Resort Properties, L.L.C.;
        14) Any employee of Caribe Resort Properties I, L.L.C.;
        15) Any employee of Coulon Consultants, L.L.C.;
        16) Any employee of Learlines, L.L.C.;
        17) Any employee of The Sierra Club;
        18) Any employee of River Birch, Inc.;
        19) Any employee of Water Front Properties, LLC;
        20) Any employee of Ring Associates, LLC;
        21) Any employee of B&C Contractors, LLC;
        22) Any employee of Dangle & Associates, LLC;
        23) Any employee of Willow, Inc.;
        24) Any emloyee of Big Bang Properties, LLC;
        25) Any employee of Live Oak Homes Co.;
        26) Any employee of Heebe & Heebe, P.L.C.;
        27) Any employee of Shadow Lake Management Company, Inc.
        28) Any employee of B.L.U., LLC;
        29) Any employee of B.L.U., 2, LLC;
        30) Any employee of Fred Heebe Investments;
        31) Darryl Malek-Wiley;
        32) David Fos;
        33) Al Gandolfi;
        34) Dutchie Connick;
        35) Nancy Cassagne;
        36) Dominick Fazzio
        37) Any member of the Jefferson Parish Council from January 1, 2007-present;

2)    Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check

registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Zydeco Holdings** following individuals:

    1) Timothy ("Tim") Coulon;
    2) Mary Coulon;
    3) Timothy ("Tim") Whitmer;
    4) Dawn Whitmer;
    5) Tom Wilkinson;
    6) Aaron Broussard;
    7) Darryl Malek-Wiley;
    8) David Fos;
    9) Nancy Cassagne;
    10) Dominick Fazzio.

4)    Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Zydeco Holdings, L.L.C.** and the following companies:

    1) CWC Gaming, LLC, or any employee thereof;
    2) Lagniappe Industries, LLC, or any employee thereof;
    3) CT Investments, L.L.C., or any employee thereof;
    4) DHP, LLC, or any employee thereof;
    5) Caribe Resort Properties, L.L.C., or any employee thereof;
    6) Caribe Resort Properties I, L.L.C., or any employee thereof;
    7) Coulon Consultants, L.L.C., or any employee thereof;
    8) Learlines, L.L.C., or any employee thereor;
    9) Sierra Club;
    10) Hwy 90, LLC;
    11) River Birch, Inc;
    12) Water Front Properties, LLC;
    13) B & C Contractors, LLC;
    14) Anne's Properties, LLC;
    15) Willow, Inc.;
    16) Big Bang Properties, LLC;
    17) Live Oak Homes Co.;
    18) Heebe & Heebe, P.L.C.;
    19) Trout Point Lodge;
    20) West Jefferson Hospital;
    21) Shadow Lake Management Company, Inc.;
    22) B.L.U., LLC;
    23) B.L.U., 2, LLC;
    24) Fred Heebe Investments;

25) Dangle & Associates, LLC;

26) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

5)   Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Zydeco Holdings, L.L.C.** , and/or any predecessor or successor entity from the date of incorporation to present.

6)   Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

7)   Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

8)   Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:
   1) Tim Coulon;
   2) Aaron Broussard;
   3) Tom Wilkenson;
   4) Tim Whitmer;
   5) Frederick R. Heebe;
   6) Albert J. Ward;
   7) Any employee of River Birch, Inc.;
   8) Any employee of Hwy 90, LLC.

9)   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Zydeco Holdings, L.L.C.** and Lagniappe Industries, LLC.

10)   Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and 176 , including any drafts of said RFPs, any Jefferson Parish Department of

Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and 176.

11) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated that arose out of RFP 176.

12) Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated regarding the waste removal/landfill contract that arose out of RFP 176.

13) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

14) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

15) Please produce any and all contracts you had where retained consultants or were hired as a consultant from 2004 through present.

16) Please produce any and all contracts you have or had where you retained subcontractors or were retained as a subcontractor from 2004 through present.

17) Please provide a list of **Zydeco Holdings, L.L.C.** employees for the period of 2007-present.

18) Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                    DIVISION "D "                    Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED AND HWY 90, LLC

TO:  CWC Gaming, LLC, last known Registered Agent: Tom Wilkenson, 303 Huey P. Long Ave., Gretna, LA 70053

CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed below.

---

### SUBPOENA REQUEST

[    ] **YOU ARE COMMANDED** to appear in the Civil District Court, Parish of Orleans in Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _20_ at _o'clock _.m., to testify the truth according to your knowledge, in a controversy pending herein between the parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

---

### DEPOSITION SUBPOENA REQUEST

[    ] **YOU ARE COMMANDED** to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

---

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ] **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects for the ___ trial, __X__ deposition, or _ hearing (state type) _____ _____ at the place, date and time specified below (list documents or objects) pursuant to the provisions of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY                    _____
                                    Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER    Stephen Gele   LA #22385

ADDRESS                     201 St. Charles Ave., Ste. 3702
&
TELEPHONE NUMBER    New Orleans, LA 70170

                                    (504) 525-2200

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"   FILED

1)     Any and all correspondence and/or e-mails to the following:           2012 DEC -2  P 3: 28
              1) Henry M. Mouton;
              2) Frederick Heebe;
              3) Albert "Jim" Ward;                              CIVIL
              4) Aaron Broussard;                           DISTRICT COURT
              5) Any employee of River Birch, Inc.;
              9) Any employee of Hwy 90, LLC;
              10) Any employee of Water Front Properties, LLC;
              11) Any employee of Ring Associates, LLC;
              12) Any employee of B&C Contractors, LLC;
              13) Any employee of Dangle & Associates, LLC;
              14) Any employee of Willow, Inc.
              15) Any employee of Big Bang Properties, L.L.C.;
              16) Any employee of Live Oak Homes, Co.;
              17) Any employee of Heebe & Heebe, P.L.C.;
              17) Any employee of Shadow Lake Management Company, Inc.;
              18) Any employee of B.L.U., LLC;
              19) Any employee of B.L.U. 2, LLC;
              20) Any employee of Fred Heebe Investments;
              21) Any employee of Anne's Properties, LLC;
              22) Dominick Fazzio;
              23) Dutchie Connick;

2)     Please produce copies of any and all documents, including electronic documents,
       evidencing or memorializing any and all moneys exchanged or contemplated to be
       exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
       registers, bank statements, wire transfers, settlement agreements, releases, promissory
       notes, financial instruments, financial statements, tax filings, accounting records, between
       CWC Gaming, LLC and the following individuals:
              1) Frederick Heebe;
              2) Albert "Jim" Ward;
              3) Dominick Fazzio;
              4) Henry Mouton.

3)     Please produce copies of any and all documents, including electronic documents,
       evidencing or memorializing any and all moneys exchanged or contemplated to be
       exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
       registers, bank statements, wire transfers, settlement agreements, releases, promissory
       notes, financial instruments, financial statements, tax filings, accounting records, between
       CWC Gaming, LLC and the following companies:
              1) Zydeco Holdings, L.L.C., or any employee thereof;
              2) Dangle & Associates, LLC, or any employee thereof;
              3) Water Front Properties, LLC, or any employee thereof;

4) B & C Contractors, LLC, or any employee thereof;
5) Anne's Properties, LLC, or any employee thereof;
6) Willow, Inc., or any employee thereof;
7) Ring Associates, LLC, or any employee thereof;
8) Big Bang Properties, LLC, or any employee thereof;
9) Heebe & Heebe, P.L.C., or any employee thereof;
10) Trout Point Lodge, or any employee thereof;
11) Live Oak Homes, Co., or any employee thereof;
12) B.L.U. 2, LLC, or any employee thereof;
13) Shadow Lake Management Co., Inc., or any employee thereof;
14) Fred Heebe Investments, or any employee thereof;
15) River Birch, Inc., or any employee thereof;
16) Hwy 90, LLC, or any employee thereof;
17) B.L.U., LLC, or any employee thereof;
18) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

4)    Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding CWC Gaming, LLC, and/or any predecessor or successor entity from the date of incorporation to present.

5)    Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

6)    Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

7)    Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

8)    Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish

Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

9) Please produce any and all contracts you had where you either hired consultants or were retained as a consultant from 2004 through present.

10) Please produce any and all contracts you had where you were either hired subcontractors or were retained as a subcontractor from 2004 through present.

11) Please provide a list of **CWC Gaming, LLC's** employees for the period of 2007-present.

12) Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                    DIVISION "D "          Docket No.

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF
PLAQUEMINES, LLC

VS.                                              CIVIL
                                         DISTRICT COURT

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED
AND HWY 90, LLC

TO:  Lagniappe Industries, LLC, Registered Agent: Timothy Whitmer, 3809 Lake
Winnepeg Dr., Harvey, LA 70058

       CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed
below.

---

SUBPOENA REQUEST

[    ]  YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in
Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _20_ at _o'clock
_.m., to testify the truth according to your knowledge, in a controversy pending herein between the
parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

---

DEPOSITION SUBPOENA REQUEST

[    ]  YOU ARE COMMANDED to appear at the place, date and time specified below to testify
at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
|  |  |

---

REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ]  YOU ARE COMMANDED to produce and permit inspection and copying of the following
documents or objects for the ___ trial, __X__ deposition, or _ hearing (state type) _____
_____ at the place, date and time specified below (list documents or objects) pursuant to the provisions
of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
| --- | --- |
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY                        _____
                                  Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER               Stephen Gele   LA #22385

ADDRESS                         201 St. Charles Ave., Ste. 3702
&
TELEPHONE NUMBER                New Orleans, LA 70170

                                (504) 525-2200

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

## ATTACHED EXHIBIT "A"

1)   Any and all correspondence and/or e-mails to the following:
      1) Henry M. Mouton;
      2) Frederick Heebe;
      3) Albert "Jim" Ward;
      4) Any employee of River Birch, Inc.;
      6) Any employee of Hwy 90, LLC;
      7) Any employee of Water Front Properties, LLC;
      8) Any employee of Ring Associates, LLC;
      9) Any employee of B&C Contractors, LLC;
      10) Any employee of Dangle & Associates, LLC;
      11) Any employee of Willow, Inc.
      12) Any employee of Big Bang Properties, L.L.C.;
      13) Any employee of Live Oak Homes, Co.;
      14) Any employee of Heebe & Heebe, P.L.C.;
      15) Any employee of Shadow Lake Management Company, Inc.;
      16) Any employee of B.L.U., LLC;
      17) Any employee of B.L.U. 2, LLC;
      18) Any employee of Fred Heebe Investments;
      19) Any employee of Anne's Properties, LLC;
      20) Dominick Fazzio;
      21) Dutchie Connick;

2)   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Lagniappe Industries, LLC** and the following individuals:
      1) Frederick Heebe;
      2) Albert "Jim" Ward;
      3) Dominick Fazzio;
      4) Henry Mouton.

3)   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Lagniappe Industries, LLC** and the following companies:
      1) Zydeco Holdings, L.L.C., or any employee thereof;
      2) Dangle & Associates, LLC, or any employee thereof;
      3) Water Front Properties, LLC, or any employee thereof;
      4) B & C Contractors, LLC, or any employee thereof;

5) Anne's Properties, LLC, or any employee thereof;
6) Willow, Inc., or any employee thereof;
7) Ring Associates, LLC, or any employee thereof;
8) Big Bang Properties, LLC, or any employee thereof;
9) Heebe & Heebe, P.L.C., or any employee thereof;
10) Trout Point Lodge, or any employee thereof;
11) Live Oak Homes, Co., or any employee thereof;
12) B.L.U. 2, LLC, or any employee thereof;
13) Shadow Lake Management Co., Inc., or any employee thereof;
14) Fred Heebe Investments, or any employee thereof;
15) River Birch, Inc., or any employee thereof;
16) Hwy 90, LLC, or any employee thereof;
17) B.L.U., LLC, or any employee thereof;
18) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

4)   Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Lagniappe Industries, LLC**, and/or any predecessor or successor entity from the date of incorporation to present.

5)   Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

6)   Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

7)   Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

8)   Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC

regarding the waste removal/landfill contract arising out of RFP No. 176.

9)      Please produce any and all contracts you had where you either hired consultants or were retained as a consultant from 2004 through present.

10)     Please produce any and all contracts you had where you were either hired subcontractors or were retained as a subcontractor from 2004 through present.

11)     Please provide a list of **Lagniappe Industries, LLC's** employees for the period of 2007-present.

12)     Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                    DIVISION "D "              Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF
PLAQUEMINES, LLC

VS.                                           CIVIL
                                         DISTRICT COURT

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED
AND HWY 90, LLC

TO:   CT Investments, LLC, Registered Agent: Timothy Whitmer, 3809 Lake Winnepeg Dr.,
Harvey, LA 70058

     CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed
below.

_____

SUBPOENA REQUEST

[     ]  YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in
Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _ 20_ at , o'clock
_.m., to testify the truth according to your knowledge, in a controversy pending herein between the
parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

_____

DEPOSITION SUBPOENA REQUEST

[     ]  YOU ARE COMMANDED to appear at the place, date and time specified below to testify
at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ]  YOU ARE COMMANDED to produce and permit inspection and copying of the following
documents or objects for the ___ trial, _X_____ deposition, or _ hearing (state type) _____
_____ at the place, date and time specified below (list documents or objects) pursuant to the provisions
of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY                    _____
                                Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER          Stephen Gele   LA #22385

ADDRESS                     201 St. Charles Ave., Ste. 3702
&
TELEPHONE NUMBER           New Orleans, LA 70170

                            (504) 525-2200

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

## ATTACHED EXHIBIT "A"

1)   Any and all correspondence and/or e-mails to the following:
    1) Henry M. Mouton;
    2) Frederick Heebe;
    3) Albert "Jim" Ward;
    4) Any employee of River Birch, Inc.;
    6) Any employee of Hwy 90, LLC;
    7) Any employee of Water Front Properties, LLC;
    8) Any employee of Ring Associates, LLC;
    9) Any employee of B&C Contractors, LLC;
    10) Any employee of Dangle & Associates, LLC;
    11) Any employee of Willow, Inc.
    12) Any employee of Big Bang Properties, L.L.C.;
    13) Any employee of Live Oak Homes, Co.;
    14) Any employee of Heebe & Heebe, P.L.C.;
    15) Any employee of Shadow Lake Management Company, Inc.;
    16) Any employee of B.L.U., LLC;
    17) Any employee of B.L.U. 2, LLC;
    18) Any employee of Fred Heebe Investments;
    19) Any employee of Anne's Properties, LLC;
    20) Dominick Fazzio;
    21) Dutchie Connick;

2)   Please produce copies of any and all documents, including electronic documents,
    evidencing or memorializing any and all moneys exchanged or contemplated to be
    exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
    registers, bank statements, wire transfers, settlement agreements, releases, promissory
    notes, financial instruments, financial statements, tax filings, accounting records, between
    **CT Investments, LLC** and the following individuals:
    1) Frederick Heebe;
    2) Albert "Jim" Ward;
    3) Dominick Fazzio;
    4) Henry Mouton.

3)   Please produce copies of any and all documents, including electronic documents,
    evidencing or memorializing any and all moneys exchanged or contemplated to be
    exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
    registers, bank statements, wire transfers, settlement agreements, releases, promissory
    notes, financial instruments, financial statements, tax filings, accounting records, between
    **CT Investments, LLC** and the following companies:
    1) Zydeco Holdings, L.L.C., or any employee thereof;
    2) Dangle & Associates, LLC, or any employee thereof;
    3) Water Front Properties, LLC, or any employee thereof;
    4) B & C Contractors, LLC, or any employee thereof;

      5) Anne's Properties, LLC, or any employee thereof;
      6) Willow, Inc., or any employee thereof;
      7) Ring Associates, LLC, or any employee thereof;
      8) Big Bang Properties, LLC, or any employee thereof;
      9) Heebe & Heebe, P.L.C., or any employee thereof;
      10) Trout Point Lodge, or any employee thereof;
      11) Live Oak Homes, Co., or any employee thereof;
      12) B.L.U. 2, LLC, or any employee thereof;
      13) Shadow Lake Management Co., Inc., or any employee thereof;
      14) Fred Heebe Investments, or any employee thereof;
      15) River Birch, Inc., or any employee thereof;
      16) Hwy 90, LLC, or any employee thereof;
      17) B.L.U., LLC, or any employee thereof;
      18) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

4)     Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **CT Investments, LLC**, and/or any predecessor or successor entity from the date of incorporation to present.

5)     Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

6)     Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

7)     Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

8)     Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC

regarding the waste removal/landfill contract arising out of RFP No. 176.

9)    Please produce any and all contracts you had where you either hired consultants or were retained as a consultant from 2004 through present.

10)   Please produce any and all contracts you had where you were either hired subcontractors or were retained as a subcontractor from 2004 through present.

11)   Please provide a list of CT Investments, LLC's employees for the period of 2007-present.

12)   Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                    DIVISION "D "              Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF
PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED
AND HWY 90, LLC

TO:    Anne's Properties, LLC, Registered Agent: Richard P. Richter, 909 Poydras St., Suite
2800 New Orleans, LA 70056

      CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed
below.

---

### SUBPOENA REQUEST

[    ]   YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in
Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _ 20_ at .o'clock
_.m., to testify the truth according to your knowledge, in a controversy pending herein between the
parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

---

### DEPOSITION SUBPOENA REQUEST

[    ]   YOU ARE COMMANDED to appear at the place, date and time specified below to testify
at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

---

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX  ]   YOU ARE COMMANDED to produce and permit inspection and copying of the following
documents or objects for the ___ trial, __X_____ deposition, or _ hearing (state type) _____
_____ at the place, date and time specified below (list documents or objects) pursuant to the provisions
of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702<br>New Orleans, LA 70170 | August 15, 2011 at 11:00<br>a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY                            _____
                                            Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER        Stephen Gele   LA #22385_____

ADDRESS                           201 St. Charles Ave., Ste. 3702_____
&
TELEPHONE NUMBER       New Orleans, LA 70170_____

                                          (504) 525-2200_____

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

FILED

2011 AUG -2  P 3:37

CIVIL
DISTRICT COURT

1)   Any and all correspondence and/or e-mails to the following:
   1) Henry M. Mouton;
   2) Timothy Coulon;
   3) Mary Coulon;
   4) Timothy Whitmer;
   5) Dawn Whitmer;
   6) Tom Wilkinson;
   7) Aaron Broussard;
   8) Any employee of CWC Gaming, LLC;
   9) Any employee of Lagniappe Industries, LLC;
   10) Any employee of CT Investments, L.L.C.;
   11) Any employee of DHP, LLC;
   12) Any employee of Caribe Resort Properties, L.L.C.;
   13) Any employee of Caribe Resort Properties I, L.L.C.;
   14) Any employee of Coulon Consultants, L.L.C.;
   15) Any employee of Learlines, L.L.C.;
   16) Any employee of The Sierra Club;
   17) Darryl Malek-Wiley;
   18) David Fos;
   19) Al Gandolfi;
   20) Dutchie Connick;
   21) Nancy Cassagne;
   22) Dominick Fazzio;
   22) Any member of the Jefferson Parish Council from January 1, 2007-present.

2)   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Anne's Properties, LLC** and Henry M. Mouton, including copies of the following checks:

   1) Check No. 1050, dated September 22, 2008 in the amount of $860.88 made out to Henry M. Mouton.

3)   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Anne's Properties, LLC** and the following individuals:
   1) Timothy ("Tim") Coulon;

    2) Mary Coulon;
    3) Timothy ("Tim") Whitmer;
    4) Dawn Whitmer;
    5) Tom Wilkinson;
    6) Aaron Broussard;
    7) Darryl Malek-Wiley;
    8) David Fos;
    9) Nancy Cassagne;
    10) Dominick Fazzio.

4)    Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Anne's Properties, LLC** and the following companies:

    1) CWC Gaming, LLC, or any employee thereof;
    2) Lagniappe Industries, LLC, or any employee thereof;
    3) CT Investments, L.L.C., or any employee thereof;
    4) DHP, LLC, or any employee thereof;
    5) Caribe Resort Properties, L.L.C., or any employee thereof;
    6) Caribe Resort Properties I, L.L.C., or any employee thereof;
    7) Coulon Consultants, L.L.C., or any employee thereof;
    8) Learlines, L.L.C., or any employee thereof;
    9) Sierra Club, or any employee thereof;
    10) Zydeco Holdings, L.L.C.;
    11) Water Front Properties, LLC;
    12) Ring Associates, LLC;
    13) B.& C Contractors, LLC;
    14) Dangle & Associates, LLC;
    15) Willow, Inc.;
    16) Big Bang Properties, LLC;
    17) Live Oak Homes Co.;
    18) Heebe & Heebe, P.L.C.;
    19) Trout Point Lodge;
    20) West Jefferson Hospital;
    21) Shadow Lake Management Company, Inc.;
    22) River Birch, Inc.;
    23) Hwy 90, LLC;
    24) B.L.U., LLC;
    25) B.L.U., 2, LLC;
    26) Fred Heebe Investments;
    27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

5)   Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Anne's Properties, LLC**, and/or any predecessor or successor entity from the date of incorporation to present.

6)   Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

7)   Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present..

8)   Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:
      1) Tim Coulon;
      2) Aaron Broussard;
      3) Tom Wilkenson;
      4) Tim Whitmer;
      5) Henry Mouton.

9)   Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to **Anne's Properties, LLC's** dealings with either Group Insurance Associates Inc. or Lagniappe Industries, LLC.

10)  Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

11)  Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory

notes, financial instruments, financial statements, tax filings, accounting records, between **Anne's Properties, LLC** and Lagniappe Industries, LLC.

12) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

13) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

14) Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

15) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

16) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

17) Please produce any and all contracts you had with consultants from 2004 through present.

18) Please produce any and all contracts you have with subcontractors from 2004 through present.

19) Please provide a list of **Anne's Properties, LLC's** employees for the period of 2007-present.

20) Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA: 37

11-2129                DIVISION "D "          Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED AND HWY 90, LLC

TO:  Dangle & Associates, LLC, Registered Agent: Richard P. Richter, 909 Poydras St., Suite 2800 New Orleans, LA 70056

CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed below.

_____
SUBPOENA REQUEST

[    ]  YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _20_ at . o'clock _.m., to testify the truth according to your knowledge, in a controversy pending herein between the parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

_____
DEPOSITION SUBPOENA REQUEST

[    ]  YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ]  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects for the ___ trial, __X___ deposition, or _ hearing (state type) _____ _____ at the place, date and time specified below (list documents or objects) pursuant to the provisions of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY

ATTORNEY'S
NAME & BAR NUMBER    Stephen Gele    LA #22385

ADDRESS
&
TELEPHONE NUMBER    201 St. Charles Ave., Ste. 3702

New Orleans, LA 70170

(504) 525-2200

                    Attorney's Signature

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

## ATTACHED EXHIBIT "A"

FILED

1)   Any and all correspondence and/or e-mails to the following:

201 AUG -2  P 3: 37

CIVIL
DISTRICT COURT

    1) Henry M. Mouton;
    2) Timothy Coulon;
    3) Mary Coulon;
    4) Timothy Whitmer;
    5) Dawn Whitmer;
    6) Tom Wilkinson;
    7) Aaron Broussard;
    8) Any employee of CWC Gaming, LLC;
    9) Any employee of Lagniappe Industries, LLC;
    10) Any employee of CT Investments, L.L.C.;
    11) Any employee of DHP, LLC;
    12) Any employee of Caribe Resort Properties, L.L.C.;
    13) Any employee of Caribe Resort Properties I, L.L.C.;
    14) Any employee of Coulon Consultants, L.L.C.;
    15) Any employee of Learlines, L.L.C.;
    16) Any employee of The Sierra Club;
    17) Darryl Malek-Wiley;
    18) David Fos;
    19) Al Gandolfi;
    20) Dutchie Connick;
    21) Nancy Cassagne;
    22) Dominick Fazzio
    23) Any member of the Jefferson Parish Council from January 1, 2007-present;

2)   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Dangle & Associates** and Henry M. Mouton, including copies of the following checks:

    1) Check No. 1042, dated December 24, 2007 in the amount of $4,000.00 made out to Henry M. Mouton.

    2) Check No. 1043, dated December 26, 2003 in the amount of $2,500.00 made out to Henry M. Mouton.

    3) Check No. 1044, dated December 26, 2003 in the amount of $2,500.00 made out to Henry M. Mouton.

    4) Check No. 1045, dated December 26, 2003 in the amount of $500.00 made out

to Henry M. Mouton.

3)   Please produce copies of any and all documents, including electronic documents,
     evidencing or memorializing any and all moneys exchanged or contemplated to be
     exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
     registers, bank statements, wire transfers, settlement agreements, releases, promissory
     notes, financial instruments, financial statements, tax filings, accounting records, between
     **Dangle & Associates** and the following individuals:
          1) Timothy ("Tim") Coulon;
          2) Mary Coulon;
          3) Timothy ("Tim") Whitmer;
          4) Dawn Whitmer;
          5) Tom Wilkinson;
          6) Aaron Broussard;
          7) Darryl Malek-Wiley;
          8) David Fos;
          9) Nancy Cassagne;
          10) Dominick Fazzio.

4)   Please produce copies of any and all documents, including electronic documents,
     evidencing or memorializing any and all moneys exchanged or contemplated to be
     exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
     registers, bank statements, wire transfers, settlement agreements, releases, promissory
     notes, financial instruments, financial statements, tax filings, accounting records, between
     **Dangle & Associates** and the following companies:
          1) CWC Gaming, LLC, or any employee thereof;
          2) Lagniappe Industries, LLC, or any employee thereof;
          3) CT Investments, L.L.C., or any employee thereof;
          4) DHP, LLC, or any employee thereof;
          5) Caribe Resort Properties, L.L.C., or any employee thereof;
          6) Caribe Resort Properties I, L.L.C., or any employee thereof;
          7) Coulon Consultants, L.L.C., or any employee thereof;
          8) Learlines, L.L.C., or any employee thereor;
          9) Sierra Club;
          10) Zydeco Holdings, L.L.C.;
          11) Water Front Properties, LLC;
          12) Ring Associates, LLC;
          13) B & C Contractors, LLC;
          14) Anne's Properties, LLC;
          15) Willow, Inc.;
          16) Big Bang Properties, LLC;
          17) Live Oak Homes Co.;
          18) Heebe & Heebe, P.L.C.;
          19) Trout Point Lodge;
          20) West Jefferson Hospital;

21) Shadow Lake Management Company, Inc.;
22) B.L.U., LLC;
23) B.L.U., 2, LLC;
24) Fred Heebe Investments;
25) River Birch, Inc;
26) Hwy 90, LLC;
27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

5)  Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Dangle & Associates**, and/or any predecessor or successor entity from the date of incorporation to present.

6)  Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

7)  Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

8)  Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:
    1) Tim Coulon;
    2) Aaron Broussard;
    3) Tom Wilkenson;
    4) Tim Whitmer;
    5) Henry Mouton.

9)  Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to **Dangle & Associates'** dealings with either Group Insurance Associates Inc. or Lagniappe Industries, LLC.

10) Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims

history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

11) Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Dangle & Associates** and Lagniappe Industries, LLC.

12) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

13) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

14) Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

15) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

16) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

17) Please produce any and all contracts you had with consultants from 2004 through present.

18) Please produce any and all contracts you have with subcontractors from 2004 through present.

19) Please provide a list of **Dangle & Associates'** employees for the period of 2007-present.

20) Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                    DIVISION "D "           Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF
PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED
AND HWY 90, LLC

TO:  Willow, Inc., Registered Agent: Heebe & Heebe, P.L.C., 2000 Belle Chasse Hwy.,
Gretna, LA 70056

        CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed
below.

_____
SUBPOENA REQUEST

[    ]  YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in
Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _ 20_ at _ o'clock
_.m., to testify the truth according to your knowledge, in a controversy pending herein between the
parties above named; and hereof you are not to fail under the penalty of the law.  By order of the Court.

_____
DEPOSITION SUBPOENA REQUEST

[    ]  YOU ARE COMMANDED to appear at the place, date and time specified below to testify
at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ]  YOU ARE COMMANDED to produce and permit inspection and copying of the following
documents or objects for the ___ trial, __X__ deposition, or _ hearing (state type) _____
_____ at the place, date and time specified below (list documents or objects) pursuant to the provisions
of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY                    _____
                                    Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER           Stephen Gele   LA #22385
                           _____

ADDRESS                    201 St. Charles Ave., Ste. 3702
&                          _____
TELEPHONE NUMBER           New Orleans, LA 70170
                           _____

                           (504) 525-2200
                           _____

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

1)      Any and all correspondence and/or e-mails to the following:
            1) Henry M. Mouton;
            2) Timothy Coulon;
            3) Mary Coulon;
            4) Timothy Whitmer;
            5) Dawn Whitmer;
            6) Tom Wilkinson;
            7) Aaron Broussard;
            8) Any employee of CWC Gaming, LLC;
            9) Any employee of Lagniappe Industries, LLC;
            10) Any employee of CT Investments, L.L.C.;
            11) Any employee of DHP, LLC;
            12) Any employee of Caribe Resort Properties, L.L.C.;
            13) Any employee of Caribe Resort Properties I, L.L.C.;
            14) Any employee of Coulon Consultants, L.L.C.;
            15) Any employee of Learlines, L.L.C.;
            16) Any employee of The Sierra Club;
            17) Darryl Malek-Wiley;
            18) David Fos;
            19) Al Gandolfi;
            20) Dutchie Connick;
            21) Nancy Cassagne;
            22) Dominick Fazzio;
            23) Any member of the Jefferson Parish Council from January 1, 2007-present.

2)      Please produce copies of any and all documents, including electronic documents,
        evidencing or memorializing any and all moneys exchanged or contemplated to be
        exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
        registers, bank statements, wire transfers, settlement agreements, releases, promissory
        notes, financial instruments, financial statements, tax filings, accounting records, between
        **Willow, Inc.** and Henry M. Mouton, including copies of the following checks:

            1) Check No. 140263, dated May 7, 2003 in the amount of $2,000.00 made out to
            Henry M. Mouton.

            2) Check No. 140803, dated June 10, 2003 in the amount of $2,000.00 made out
            to Henry M. Mouton.

            3) Check No. 141313, dated June 30, 2003 in the amount of $2,000.00 made out
            to Henry M. Mouton.

            4) Check No. 141930, dated August 18, 2003 in the amount of $2,000.00 made
            out to Henry M. Mouton.

5) Check No. 142519, dated September 2, 2003 in the amount of $2,000.00 made out to Henry M. Mouton.

6) Check No. 143184, dated September 29, 2003 in the amount of $3,500.00 made out to Henry M. Mouton.

7) Check No. 143104, dated September 30, 2003 in the amount of $2,000.00 made out to Henry M. Mouton.

8) Check No. 143791, dated November 7, 2003 in the amount of $2,000.00 made out to Henry M. Mouton.

9) Check No. 144345, dated December 8, 2003 in the amount of $2,000.00 made out to Henry M. Mouton.

10) Check No. 144928, dated December 24, 2003 in the amount of $12,000.00 made out to Henry M. Mouton.

11) Check No. 144968, dated January 9, 2004 in the amount of $2,000.00 made out to Henry M. Mouton.

12) Check No. 145492, dated February 3, 2004 in the amount of $2,000.00 made out to Henry M. Mouton.

13) Check No. 146289, dated April 1, 2004 in the amount of $2,000.00 made out to Henry M. Mouton.

14) Check No. 146615, dated April 14, 2004 in the amount of $2,000.00 made out to Henry M. Mouton.

15) Check No. 147427, dated May 10, 2004 in the amount of $2,000.00 made out to Henry M. Mouton.

16) Check No. 147987, dated June 1, 2004 in the amount of $2,000.00 made out to Henry M. Mouton.

17) Check No. 148690, dated July 8, 2004 in the amount of $2,000.00 made out to Henry M. Mouton.

18) Check No. 149346, dated July 30, 2004 in the amount of $18,000.00 made out to Henry M. Mouton.

19) Check No. 149263, dated August 5, 2004 in the amount of $2,000.00 made out to Henry M. Mouton.

20) Check No. 149801, dated September 1, 2004 in the amount of $2,000.00 made out to Henry M. Mouton.

21) Check No. 150460, dated October 5, 2004 in the amount of $2,000.00 made out to Henry M. Mouton.

22) Check No. 150985, dated November 10, 2004 in the amount of $2,000.00 made out to Henry M. Mouton.

23) Check No. 151462, dated December 3, 2004 in the amount of $2,000.00 made out to Henry M. Mouton.

24) Check No. 152090, dated January 4, 2005 in the amount of $2,000.00 made out to Henry M. Mouton.

25) Check No. 152571, dated February 4, 2005 in the amount of $2,000.00 made out to Henry M. Mouton.

26) Check No. 153075, dated March 2, 2005 in the amount of $2,000.00 made out to Henry M. Mouton.

27) Check No. 153694, dated April 6, 2005 in the amount of $2,000.00 made out to Henry M. Mouton.

28) Check No. 154252, dated May 4, 2005 in the amount of $2,000.00 made out to Henry M. Mouton.

29) Check No. 154763, dated June 1, 2005 in the amount of $2,000.00 made out to Henry M. Mouton.

30) Check No. 155389, dated July 14, 2005 in the amount of $2,000.00 made out to Henry M. Mouton.

31) Check No. 155838, dated July 29, 2005 in the amount of $2,000.00 made out to Henry M. Mouton.

32) Check No. 156337, dated September 9, 2005 in the amount of $2,000.00 made out to Henry M. Mouton.

33) Check No. 156626, dated October 17, 2005 in the amount of $2,000.00 made out to Henry M. Mouton.

34) Check No. 156876, dated November 4, 2005 in the amount of $2,000.00 made out to Henry M. Mouton.

35) Check No. 157361, dated December 7, 2005 in the amount of $513.00 made out to Henry M. Mouton.

36) Check No. 157362, dated December 8, 2005 in the amount of $1,487.00 made out to Henry M. Mouton.

37) Check No. 157491, dated December 16, 2005 in the amount of $18,000.00 made out to Henry M. Mouton.

38) Check No. 157741, dated January 6, 2006 in the amount of $17,000.00 made out to Henry M. Mouton.

39) Check No. 157704, dated January 9, 2006 in the amount of $513.00 made out to Henry M. Mouton.

40) Check No. 157703, dated January 9, 2006 in the amount of $1,487.00 made out to Henry M. Mouton.

41) Check No. 158129, dated January 31, 2006 in the amount of $2,958.00 made out to Henry M. Mouton.

42) Check No. 158087, dated February 8, 2006 in the amount of $513.00 made out to Henry M. Mouton.

43) Check No. 158086, dated February 8, 2006 in the amount of $1,487.00 made out to Henry M. Mouton.

44) Check No. 158362, dated February 17, 2006 in the amount of $1,400.00 made out to Henry M. Mouton.

45) Check No. 158467, dated March 6, 2006 in the amount of $1,487.00 made out to Henry M. Mouton.

46) Check No. 158694, dated March 14, 2006 in the amount of $3,329.00 made out to Henry M. Mouton.

47) Check No. 159159, dated April 6, 2006 in the amount of $5,000.00 made out to Henry M. Mouton.

48) Check No. 159103, dated April 6, 2006 in the amount of $513.00 made out to Henry M. Mouton.

49) Check No. 159102, dated April 6, 2006 in the amount of $1,487.00 made out to Henry M. Mouton.

50) Check No. 159158, dated April 7, 2006 in the amount of $7,500.00 made out to Henry M. Mouton.

51) Check No. 159429, dated April 24, 2006 in the amount of $2,200.00 made out to Henry M. Mouton.

52) Check No. 159430, dated April 25, 2006 in the amount of $4,400.00 made out to Henry M. Mouton.

53) Check No. 159487, dated April 27, 2006 in the amount of $4,400.00 made out to Henry M. Mouton.

54) Check No. 159488, dated May 4, 2006 in the amount of $513.00 made out to Henry M. Mouton.

55) Check No. 159720, dated May18, 2006 in the amount of $3,882.14 made out to Henry M. Mouton.

56) Check No. 159975, dated June 6, 2006 in the amount of $513.00 made out to Henry M. Mouton.

57) Check No. 160291, dated June 30, 2006 in the amount of $5, 148.78 made out to Henry M. Mouton.

58) Check No. 160366, dated July 5, 2006 in the amount of $1,487.00 made out to Henry M. Mouton.

59) Check No. 160692, dated August 2, 2006 in the amount of $1,487.00 made out to Henry M. Mouton.

60) Check No. 160693, dated August 3, 2006 in the amount of $513.00 made out to Henry M. Mouton.

61) Check No. 161180, dated September 7, 2006 in the amount of $513.00 made out to Henry M. Mouton.

62) Check No. 161535, dated October 4, 2006 in the amount of $1,487.00 made out to Henry M. Mouton.

63) Check No. 161536, dated October 4, 2006 in the amount of $513.00 made out to Henry M. Mouton.

64) Check No. 161904, dated November 6, 2006 in the amount of $1,487.00 made out to Henry M. Mouton.

65) Check No. 161905, dated November 6, 2006 in the amount of $513.00 made out to Henry M. Mouton.

66) Check No. 162385, dated December 13, 2006 in the amount of $1,487.00 made out to Henry M. Mouton.

67) Check No. 162386, dated December 13, 2006 in the amount of $513.00 made out to Henry M. Mouton.

68) Check No. 162784, dated January 5, 2007 in the amount of $1,487.00 made out to Henry M. Mouton.

69) Check No. 162785, dated January 5, 2007 in the amount of $513.00 made out to Henry M. Mouton.

70) Check No. 163144, dated February 2, 2007 in the amount of $1,487.00 made out to Henry M. Mouton.

71) Check No. 163145, dated February 2, 2007 in the amount of $513.00 made out to Henry M. Mouton.

72) Check No. 163601, dated March 12, 2007 in the amount of $1,487.00 made out to Henry M. Mouton.

73) Check No. 163602, dated March 12, 2007 in the amount of $513.00 made out to Henry M. Mouton.

74) Check No. 164000, dated April 5, 2007 in the amount of $1,487.00 made out to Henry M. Mouton.

75) Check No. 164001, dated April 5, 2007 in the amount of $513.00 made out to Henry M. Mouton.

76) Check No. 164526, dated May 10, 2007 in the amount of $1,487.00 made out to Henry M. Mouton.

77) Check No. 164527, dated May 10, 2007 in the amount of $513.00 made out to Henry M. Mouton.

78) Check No. 164861, dated June 7, 2007 in the amount of $1,487.00 made out to Henry M. Mouton.

79) Check No. 164862, dated June 7, 2007 in the amount of $513.00 made out to Henry M. Mouton.

80) Check No. 165229, dated July 12, 2007 in the amount of $1,487.00 made out to Henry M. Mouton.

81) Check No. 165230, dated July 12, 2007 in the amount of $513.00 made out to Henry M. Mouton.

82) Check No. 165602, dated August 2, 2007 in the amount of $1,487.00 made out to Henry M. Mouton.

83) Check No. 165603, dated August 2, 2007 in the amount of $513.00 made out to Henry M. Mouton.

84) Check No. 166061, dated September 12, 2007 in the amount of $1,487.00 made out to Henry M. Mouton.

85) Check No. 166062, dated September 12, 2007 in the amount of $513.00 made out to Henry M. Mouton.

86) Check No. 166185, dated September 14, 2007 in the amount of $21,000.00 made out to Henry M. Mouton.

87) Check No. 166186, dated September 14, 2007 in the amount of $4,000.00 made out to Henry M. Mouton.

88) Check No. 166421, dated October 4, 2007 in the amount of $1,487.00 made out to Henry M. Mouton.

89) Check No. 166422, dated October 4, 2007 in the amount of $513.00 made out to Henry M. Mouton.

90) Check No. 166837, dated November 9, 2007 in the amount of $1,487.00 made out to Henry M. Mouton.

91) Check No. 166838, dated November 9, 2007 in the amount of $513.00 made out to Henry M. Mouton.

92) Check No. 167133, dated December 7, 2007 in the amount of $1,487.00 made out to Henry M. Mouton.

93) Check No. 167134, dated December 7, 2007 in the amount of $513.00 made out to Henry M. Mouton.

94) Check No. 167449, dated January 10, 2008 in the amount of $1,487.00 made out to Henry M. Mouton.

95) Check No. 167450, dated January 10, 2008 in the amount of $513.00 made out to Henry M. Mouton.

96) Check No. 167691, dated February 11, 2008 in the amount of $1,487.00 made out to Henry M. Mouton.

97) Check No. 167692, dated February 11, 2008 in the amount of $513.00 made out to Henry M. Mouton.

98) Check No. 167919, dated March 6, 2008 in the amount of $1,487.00 made out to Henry M. Mouton.

99) Check No. 167920, dated March 6, 2008 in the amount of $513.00 made out to Henry M. Mouton.

100) Check No. 168395, dated April 28, 2008 in the amount of $2,000.00 made out to Henry M. Mouton.

101) Check No. 169398, dated April 28, 2008 in the amount of $2,000.00 made out to Henry M. Mouton.

102) Check No. 167399, dated April 28, 2008 in the amount of $2,000.00 made out to Henry M. Mouton.

103) Check No. 168400, dated April 28, 2008 in the amount of $2,000.00 made out to Henry M. Mouton.

104) Check No. 168401, dated April 28, 2008 in the amount of $2,000.00 made out to Henry M. Mouton.

105) Check No. 168396, dated May 1, 2008 in the amount of $2,000.00 made out to Henry M. Mouton.

106) Check No. 168397, dated May 1, 2008 in the amount of $2,000.00 made out to Henry M. Mouton.

107) Check No. 168372, dated May 15, 2008 in the amount of $1,487.00 made out to Henry M. Mouton.

108) Check No. 168373, dated May 15, 2008 in the amount of $513.00 made out to Henry M. Mouton.

109) Check No. 168663, dated June 11, 2008 in the amount of $1,487.00 made out to Henry M. Mouton.

110) Check No. 168664, dated June 11, 2008 in the amount of $513.00 made out to Henry M. Mouton.

111) Check No. 168920, dated July 3, 2008 in the amount of $1,487.00 made out to Henry M. Mouton.

112) Check No. 168921, dated July 3, 2008 in the amount of $513.00 made out to Henry M. Mouton.

113) Check No. 169200, dated August 6, 2008 in the amount of $1,487.00 made out to Henry M. Mouton.

114) Check No. 169201, dated August 6, 2008 in the amount of $513.00 made out to Henry M. Mouton.

115) Check No. 169408, dated September 10, 2008 in the amount of $1,487.00 made out to Henry M. Mouton.

116) Check No. 169409, dated September 10, 2008 in the amount of $513.00 made out to Henry M. Mouton.

117) Check No. 169561, dated October 6, 2008 in the amount of $1,487.00 made out to Henry M. Mouton.

118) Check No. 169577, dated October 8, 2008 in the amount of $513.00 made out to Henry M. Mouton.

119) Check No. 169775, dated November 5, 2008 in the amount of $1,487.00 made out to Henry M. Mouton.

120) Check No. 169776, dated November 5, 2008 in the amount of $513.00 made out to Henry M. Mouton.

121) Check No. 169932, dated December 2, 2008 in the amount of $1,487.00 made out to Henry M. Mouton.

122) Check No. 169933, dated December 2, 2008 in the amount of $513.00 made out to Henry M. Mouton.

123) Check No. 170061, dated December 31, 2008 in the amount of $1,487.00 made out to Henry M. Mouton.

124) Check No. 170062, dated December 31, 2008 in the amount of $513.00 made out to Henry M. Mouton.

125) Check No. 170206, dated February 3, 2009 in the amount of $1,487.00 made out to Henry M. Mouton.

126) Check No. 170207, dated February 4, 2009 in the amount of $513.00 made out to Henry M. Mouton.

127) Check No. 170327, dated March 10, 2009 in the amount of $1,487.00 made out to Henry M. Mouton.

130) Check No. 170328, dated March 11, 2009 in the amount of $513.00 made out to Henry M. Mouton.

131) Check No. 170433, dated April 7, 2009 in the amount of $1,487.00 made out to Henry M. Mouton.

132) Check No. 170434, dated April 8, 2009 in the amount of $513.00 made out to Henry M. Mouton.

133) Check No. 170550, dated May 8, 2009 in the amount of $1,487.00 made out to Henry M. Mouton.

134) Check No. 170551, dated May 11, 2009 in the amount of $513.00 made out to Henry M. Mouton.

135) Check No. 170752, dated June 10, 2009 in the amount of $1,487.00 made out to Henry M. Mouton.

136) Check No. 170753, dated June 11, 2009 in the amount of $513.00 made out to Henry M. Mouton.

137) Check No. 170876, dated July 8, 2009 in the amount of $513.00 made out to Henry M. Mouton.

138) Check No. 170875, dated July 15, 2009 in the amount of $1,487.00 made out to Henry M. Mouton.

139) Check No. 171078, dated August 10, 2009 in the amount of $513.00 made out to Henry M. Mouton.

140) Check No. 171077, dated August 13, 2009 in the amount of $1,487.00 made out to Henry M. Mouton.

141) Check No. 171196, dated September 3, 2009 in the amount of $1,487.00 made out to Henry M. Mouton.

142) Check No. 171197, dated September 11, 2009 in the amount of $513.00 made out to Henry M. Mouton.

143) Check No. 171393, dated October 13, 2009 in the amount of $513.00 made out to Henry M. Mouton.

144) Check No. 171392, dated October 15, 2009 in the amount of $1,487.00 made out to Henry M. Mouton.

145) Check No. 171547, dated November 9, 2009 in the amount of $1,487.00 made out to Henry M. Mouton.

146) Check No. 171548, dated November 9, 2009 in the amount of $513.00 made out to Henry M. Mouton.

147) Check No. 171642, dated December 14, 2009 in the amount of $1,487.00 made out to Henry M. Mouton.

148) Check No. 171643, dated December 14, 2009 in the amount of $513.00 made out to Henry M. Mouton.

149) Check No. 171783, dated January 8, 2010 in the amount of $513.00 made out to Henry M. Mouton.

150) Check No. 171782, dated January 13, 2010 in the amount of $1,487.00 made out to Henry M. Mouton.

151) Check No. 171899, dated February 8, 2010 in the amount of $1,487.00 made out to Henry M. Mouton.

152) Check No. 171900, dated February 8, 2010 in the amount of $513.00 made out to Henry M. Mouton.

153) Check No. 172012, dated March 18, 2010 in the amount of $1,487.00 made out to Henry M. Mouton.

154) Check No. 172013, dated March 18, 2010 in the amount of $513.00 made out to Henry M. Mouton.

155) Check No. 172141, dated April 12, 2010 in the amount of $1,487.00 made out to Henry M. Mouton.

156) Check No. 172142, dated April 16, 2010 in the amount of $513.00 made out to Henry M. Mouton.

157) Check No. 139790, dated April 14, 2003 in the amount of $513 made out to Henry M. Mouton.

3)   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Willow, Inc. and the following individuals:

    1) Timothy ("Tim") Coulon;
    2) Mary Coulon;
    3) Timothy ("Tim") Whitmer;
    4) Dawn Whitmer;
    5) Tom Wilkinson;
    6) Aaron Broussard;
    7) Darryl Malek-Wiley;
    8) David Fos;
    9) Nancy Cassagne;
    10) Dominick Fazzio.

4)   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Willow, Inc. and the following companies:

    1) CWC Gaming, LLC, or any employee thereof;
    2) Lagniappe Industries, LLC, or any employee thereof;
    3) CT Investments, L.L.C., or any employee thereof;
    4) DHP, LLC, or any employee thereof;
    5) Caribe Resort Properties, L.L.C., or any employee thereof;
    6) Caribe Resort Properties I, L.L.C., or any employee thereof;
    7) Coulon Consultants, L.L.C., or any employee thereof;
    8) Learlines, L.L.C., or any employee thereof;
    9) Sierra Club;
    10) Zydeco Holdings, L.L.C.;
    11) Water Front Properties, LLC;
    12) Ring Associates, LLC;
    13) B & C Contractors, LLC;
    14) Dangle & Associates, LLC;
    15) Anne's Properties, LLC;
    16) Big Bang Properties, LLC;
    17) Live Oak Homes Co.;
    18) Heebe & Heebe, P.L.C.;
    19) Trout Point Lodge;

      20) West Jefferson Hospital;
      21) Shadow Lake Management Company, Inc.;
      22) River Birch, Inc.;
      23) Hwy 90, LLC;
      24) B.L.U., LLC;
      25) B.L.U. 2, LLC;
      26) Fred Heebe Investments;
      27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

5)     Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Willow, Inc.**, and/or any predecessor or successor entity from the date of incorporation to present.

6)     Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

7)     Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

8)     Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:
      1) Tim Coulon;
      2) Aaron Broussard;
      3) Tom Wilkenson;
      4) Tim Whitmer;
      5) Henry Mouton.

9)     Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to Willow, Inc.'s dealings with either Group Insurance Associates Inc. or Lagniappe Industries, LLC.

10)     Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy,

declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

11) Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Willow, Inc. and Lagniappe Industries, LLC.

12) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

13) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

14) Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

15) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

16) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

17) Please produce any and all contracts you had with consultants from 2004 through present.

18) Please produce any and all contracts you have with subcontractors from 2004 through present.

19) Please provide a list of **Dangle & Associates'** employees for the period of 2007-present.

20) Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129          DIVISION "D "          Docket No.              -2  P  3: 34

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF
PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED
AND HWY 90, LLC

TO:   Water Front Properties, LLC, Registered Agent: Richard P. Richter, 909 Poydras St.,
Suite 2800 New Orleans, LA 70056

        CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed
below.

_____
                        SUBPOENA REQUEST

[     ]   YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in
Division " ", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _ 20_ at _o'clock
_.m., to testify the truth according to your knowledge, in a controversy pending herein between the
parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

_____
                    DEPOSITION SUBPOENA REQUEST

[     ]   YOU ARE COMMANDED to appear at the place, date and time specified below to testify
at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

                REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX  ]   YOU ARE COMMANDED to produce and permit inspection and copying of the following
documents or objects for the ___ trial, _X_____ deposition, or _ hearing (state type) _____
_____ at the place, date and time specified below (list documents or objects) pursuant to the provisions
of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned


ATTORNEY                    _____
                                Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER           Stephen Gele    LA #22385

ADDRESS                     201 St. Charles Ave., Ste. 3702
&
TELEPHONE NUMBER            New Orleans, LA 70170

                            (504) 525-2200


                    File original and two copies with Clerk
                    fourth copy for Attorney's File

                    ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

1)    Any and all correspondence and/or e-mails to the following:

    1) Henry M. Mouton;
    2) Timothy Coulon;
    3) Mary Coulon;
    4) Timothy Whitmer;
    5) Dawn Whitmer;
    6) Tom Wilkinson;
    7) Aaron Broussard;
    8) Any employee of CWC Gaming, LLC;
    9) Any employee of Lagniappe Industries, LLC;
    10) Any employee of CT Investments, L.L.C.;
    11) Any employee of DHP, LLC;
    12) Any employee of Caribe Resort Properties, L.L.C.;
    13) Any employee of Caribe Resort Properties I, L.L.C.;
    14) Any employee of Coulon Consultants, L.L.C.;
    15) Any employee of Learlines, L.L.C.;
    16) Any employee of The Sierra Club;
    17) Any employee of Zydeco Holdings, LLC
    17) Darryl Malek-Wiley;
    18) David Fos;
    19) Al Gandolfi;
    20) Dutchie Connick;
    21) Nancy Cassagne;
    22) Dominick Fazzio
    23) Any member of the Jefferson Parish Council from January 1, 2007-present;

2)    Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Water Front Properties, LLC** and the following individuals:

    1) Timothy ("Tim") Coulon;
    2) Mary Coulon;
    3) Timothy ("Tim") Whitmer;
    4) Dawn Whitmer;
    5) Tom Wilkinson;
    6) Aaron Broussard;
    7) Darryl Malek-Wiley;
    8) David Fos;
    9) Nancy Cassagne;
    10) Dominick Fazzio;

11) Henry M. Mouton.

4) Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Water Front Properties, LLC** and the following companies:

1) CWC Gaming, LLC, or any employee thereof;
2) Lagniappe Industries, LLC, or any employee thereof;
3) CT Investments, L.L.C., or any employee thereof;
4) DHP, LLC, or any employee thereof;
5) Caribe Resort Properties, L.L.C., or any employee thereof;
6) Caribe Resort Properties I, L.L.C., or any employee thereof;
7) Coulon Consultants, L.L.C., or any employee thereof;
8) Learlines, L.L.C., or any employee thereor;
9) Sierra Club;
10) Zydeco Holdings, L.L.C.;
11) Dangle & Associates, LLC;
12) Ring Associates, LLC;
13) B & C Contractors, LLC;
14) Anne's Properties, LLC;
15) Willow, Inc.;
16) Big Bang Properties, LLC;
17) Live Oak Homes Co.;
18) Heebe & Heebe, P.L.C.;
19) Trout Point Lodge;
20) West Jefferson Hospital;
21) Shadow Lake Management Company, Inc.;
22) B.L.U., LLC;
23) B.L.U., 2, LLC;
24) Fred Heebe Investments;
25) River Birch, Inc;
26) Hwy 90, LLC;
27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

5) Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name,

Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Water Front Properties, LLC**, and/or any predecessor or successor entity from the date of incorporation to present.

6)   Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

7)   Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

8)   Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:
   1) Tim Coulon;
   2) Aaron Broussard;
   3) Tom Wilkenson;
   4) Tim Whitmer;
   5) Henry Mouton.

9)   Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to **Water Front Properties, LLC's** dealings with either Group Insurance Associates Inc. or Lagniappe Industries, LLC.

10)   Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

11)   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Water Front Properties, LLC** and Lagniappe Industries, LLC.

12)   Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

13) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

14) Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

15) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

16) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

17) Please produce any and all contracts you had with consultants from 2004 through present.

18) Please produce any and all contracts you have with subcontractors from 2004 through present.

19) Please provide a list of **Water Front Properties, LLC** employees for the period of 2007-present.

20) Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129          DIVISION "D "          Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED AND HWY 90, LLC

TO:   Ring Associates, L.L.C., Registered Agent: Richard P. Richter, 909 Poydras St., Suite 2800 New Orleans, LA 70056

CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed below.

### SUBPOENA REQUEST

[    ]  **YOU ARE COMMANDED** to appear in the Civil District Court, Parish of Orleans in Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _20__ at .o'clock _.m., to testify the truth according to your knowledge, in a controversy pending herein between the parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

### DEPOSITION SUBPOENA REQUEST

[    ]  **YOU ARE COMMANDED** to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ]  **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects for the ___ trial, __X__ deposition, or _ hearing (state type) _____ _____ at the place, date and time specified below (list documents or objects) pursuant to the provisions of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY          _____
                              Attorney's Signature

ATTORNEY'S
NAME & BAR NUMBER      Stephen Gele   LA #22385_____

ADDRESS               201 St. Charles Ave., Ste. 3702_____
&
TELEPHONE NUMBER      New Orleans, LA 70170_____

                     (504) 525-2200_____

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

1)     Any and all correspondence and/or e-mails to the following:
        1) Henry M. Mouton;
        2) Timothy Coulon;
        3) Mary Coulon;
        4) Timothy Whitmer;
        5) Dawn Whitmer;
        6) Tom Wilkinson;
        7) Aaron Broussard;
        8) Any employee of CWC Gaming, LLC;
        9) Any employee of Lagniappe Industries, LLC;
        10) Any employee of CT Investments, L.L.C.;
        11) Any employee of DHP, LLC;
        12) Any employee of Caribe Resort Properties, L.L.C.;
        13) Any employee of Caribe Resort Properties I, L.L.C.;
        14) Any employee of Coulon Consultants, L.L.C.;
        15) Any employee of Learlines, L.L.C.;
        16) Any employee of The Sierra Club;
        17) Any employee of Zydeco Holdings, LLC
        17) Darryl Malek-Wiley;
        18) David Fos;
        19) Al Gandolfi;
        20) Dutchie Connick;
        21) Nancy Cassagne;
        22) Dominick Fazzio
        23) Any member of the Jefferson Parish Council from January 1, 2007-present;


2)     Please produce copies of any and all documents, including electronic documents,
        evidencing or memorializing any and all moneys exchanged or contemplated to be
        exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
        registers, bank statements, wire transfers, settlement agreements, releases, promissory
        notes, financial instruments, financial statements, tax filings, accounting records, between
        **Ring Associates, L.L.C.** and the following individuals:
        1) Timothy ("Tim") Coulon;
        2) Mary Coulon;
        3) Timothy ("Tim") Whitmer;
        4) Dawn Whitmer;
        5) Tom Wilkinson;
        6) Aaron Broussard;
        7) Darryl Malek-Wiley;
        8) David Fos;
        9) Nancy Cassagne;
        10) Dominick Fazzio;

11) Henry M. Mouton.

4)      Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Ring Associates, L.L.C.** and the following companies:

1) CWC Gaming, LLC, or any employee thereof;
2) Lagniappe Industries, LLC, or any employee thereof;
3) CT Investments, L.L.C., or any employee thereof;
4) DHP, LLC, or any employee thereof;
5) Caribe Resort Properties, L.L.C., or any employee thereof;
6) Caribe Resort Properties I, L.L.C., or any employee thereof;
7) Coulon Consultants, L.L.C., or any employee thereof;
8) Learlines, L.L.C., or any employee thereof;
9) Sierra Club;
10) Zydeco Holdings, L.L.C.;
11) Dangle & Associates, LLC;
12) Water Front Properties, LLC;
13) B & C Contractors, LLC;
14) Anne's Properties, LLC;
15) Willow, Inc.;
16) Big Bang Properties, LLC;
17) Live Oak Homes Co.;
18) Heebe & Heebe, P.L.C.;
19) Trout Point Lodge;
20) West Jefferson Hospital;
21) Shadow Lake Management Company, Inc.;
22) B.L.U., LLC;
23) B.L.U., 2, LLC;
24) Fred Heebe Investments;
25) River Birch, Inc;
26) Hwy 90, LLC;
27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

5)      Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name,

Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Ring Associates, L.L.C.** , and/or any predecessor or successor entity from the date of incorporation to present.

6) Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

7) Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present..

8) Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:
   1) Tim Coulon;
   2) Aaron Broussard;
   3) Tom Wilkenson;
   4) Tim Whitmer;
   5) Henry Mouton.

9) Please produce any documents, internal memoranda,  correspondence, including e-mails, or recordings relating to **Ring Associates, L.L.C.'s** dealings with either Group Insurance Associates Inc. or Lagniappe Industries, LLC.

10) Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.,** with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

11) Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Ring Associates, L.L.C.** and Lagniappe Industries, LLC.

12) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 1589 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

13) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

14) Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

15) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

16) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

17) Please produce any and all contracts you had with consultants from 2004 through present.

18) Please produce any and all contracts you have with subcontractors from 2004 through present.

19) Please provide a list of **Ring Associates, L.L.C.** employees for the period of 2007-present.

20) Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                    DIVISION "D "              Docket No._____

                                                        CIVIL

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTES REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED AND HWY 90, LLC

TO:   Big Bang Properties, L.L.C.,Registered Agent: Richard P. Richter, 909 Poydras St., Suite 2800 New Orleans, LA 70056

        CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed below.

---

### SUBPOENA REQUEST

[      ]   YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _20_ at _o'clock _.m., to testify the truth according to your knowledge, in a controversy pending herein between the parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

---

### DEPOSITION SUBPOENA REQUEST

[      ]   YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX  ]   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects for the ___ trial, _X_ deposition, or _ hearing (state type) _____ _____ at the place, date and time specified below (list documents or objects) pursuant to the provisions of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY                    _____
                                    Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER          Stephen Gele    LA #22385_____

ADDRESS                    201 St. Charles Ave., Ste 3702_____
&
TELEPHONE NUMBER           New Orleans, LA 70170_____

                           (504) 525-2200_____

                    File original and two copies with Clerk
                    fourth copy for Attorney's File

                    ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

1)   Any and all correspondence and/or e-mails to the following:
      1) Henry M. Mouton;
      2) Timothy Coulon;
      3) Mary Coulon;
      4) Timothy Whitmer;
      5) Dawn Whitmer;
      6) Tom Wilkinson;
      7) Aaron Broussard;
      8) Any employee of CWC Gaming, LLC;
      9) Any employee of Lagniappe Industries, LLC;
      10) Any employee of CT Investments, L.L.C.;
      11) Any employee of DHP, LLC;
      12) Any employee of Caribe Resort Properties, L.L.C.;
      13) Any employee of Caribe Resort Properties I, L.L.C.;
      14) Any employee of Coulon Consultants, L.L.C.;
      15) Any employee of Learlines, L.L.C.;
      16) Any employee of The Sierra Club;
      17) Any employee of Zydeco Holdings, LLC
      17) Darryl Malek-Wiley;
      18) David Fos;
      19) Al Gandolfi;
      20) Dutchie Connick;
      21) Nancy Cassagne;
      22) Dominick Fazzio;
      23) Any member of the Jefferson Parish Council from January 1, 2007-present;


2)   Please produce copies of any and all documents, including electronic documents,
    evidencing or memorializing any and all moneys exchanged or contemplated to be
    exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
    registers, bank statements, wire transfers, settlement agreements, releases, promissory
    notes, financial instruments, financial statements, tax filings, accounting records, between
    **Big Bang Properties, LLC** and the following individuals:
      1) Timothy ("Tim") Coulon;
      2) Mary Coulon;
      3) Timothy ("Tim") Whitmer;
      4) Dawn Whitmer;
      5) Tom Wilkinson;
      6) Aaron Broussard;
      7) Darryl Malek-Wiley;
      8) David Fos;
      9) Nancy Cassagne;
      10) Dominick Fazzio;

11) Henry M. Mouton.

4) Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Big Bang Properties, LLC** and the following companies:
  1) CWC Gaming, LLC, or any employee thereof;
  2) Lagniappe Industries, LLC, or any employee thereof;
  3) CT Investments, L.L.C., or any employee thereof;
  4) DHP, LLC, or any employee thereof;
  5) Caribe Resort Properties, L.L.C., or any employee thereof;
  6) Caribe Resort Properties I, L.L.C., or any employee thereof;
  7) Coulon Consultants, L.L.C., or any employee thereof;
  8) Learlines, L.L.C., or any employee thereor;
  9) Sierra Club;
  10) Zydeco Holdings, L.L.C.;
  11) Dangle & Associates, LLC;
  12) Water Front Properties, LLC;
  13) B & C Contractors, LLC;
  14) Anne's Properties, LLC;
  15) Willow, Inc.;
  16) Ring Associates, LLC;
  17) Live Oak Homes Co.;
  18) Heebe & Heebe, P.L.C.;
  19) Trout Point Lodge;
  20) West Jefferson Hospital;
  21) Shadow Lake Management Company, Inc.;
  22) B.L.U., LLC;
  23) B.L.U., 2, LLC;
  24) Fred Heebe Investments;
  25) River Birch, Inc;
  26) Hwy 90, LLC;
  27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

5) Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name,

Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Big Bang Properties, LLC**, and/or any predecessor or successor entity from the date of incorporation to present.

6) Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

7) Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

8) Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:
   1) Tim Coulon;
   2) Aaron Broussard;
   3) Tom Wilkenson;
   4) Tim Whitmer;
   5) Henry Mouton.

9) Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to **Big Bang Properties, LLC** 's dealings with either Group Insurance Associates Inc. or Lagniappe Industries, LLC.

10) Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

11) Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Big Bang Properties, LLC and Lagniappe Industries, LLC.

12) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

13) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out RFP No. 176.

14) Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

15) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

16) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

17) Please produce any and all contracts you had with consultants from 2004 through present.

18) Please produce any and all contracts you have with subcontractors from 2004 through present.

19) Please provide a list of **Big Bang Properties, LLC** employees for the period of 2007-present.

20) Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                DIVISION "D "            Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF
PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED
AND HWY 90, LLC

TO:   B&C Contractors. L.L.C.,Registered Agent: Richard P. Richter. 909 Poydras St., Suite
2800 New Orleans. LA 70056

CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed
below.

---

### SUBPOENA REQUEST

[    ]   YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in
Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _ 20_ at , o'clock
_.m., to testify the truth according to your knowledge, in a controversy pending herein between the
parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

---

### DEPOSITION SUBPOENA REQUEST

[    ]   YOU ARE COMMANDED to appear at the place, date and time specified below to testify
at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ]   YOU ARE COMMANDED to produce and permit inspection and copying of the following
documents or objects for the ___ trial, __X____ deposition, or _ hearing (state type) _____
_____ at the place, date and time specified below (list documents or objects) pursuant to the provisions
of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY                    _____
                           Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER          Stephen Gele   LA #22385

ADDRESS
&                          201 St. Charles Ave., Ste. 3702
TELEPHONE NUMBER           New Orleans, LA 70170

                           (504) 525-2200

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

FILED

2011 MAY -2  P 3 33

CIVIL
DISTRICT COURT

1)  Any and all correspondence and/or e-mails to the following:
    1) Henry M. Mouton;
    2) Timothy Coulon;
    3) Mary Coulon;
    4) Timothy Whitmer;
    5) Dawn Whitmer;
    6) Tom Wilkinson;
    7) Aaron Broussard;
    8) Any employee of CWC Gaming, LLC;
    9) Any employee of Lagniappe Industries, LLC;
    10) Any employee of CT Investments, L.L.C.;
    11) Any employee of DHP, LLC;
    12) Any employee of Caribe Resort Properties, L.L.C.;
    13) Any employee of Caribe Resort Properties I, L.L.C.;
    14) Any employee of Coulon Consultants, L.L.C.;
    15) Any employee of Learlines, L.L.C.;
    16) Any employee of The Sierra Club;
    17) Any employee of Zydeco Holdings, LLC
    17) Darryl Malek-Wiley;
    18) David Fos;
    19) Al Gandolfi;
    20) Dutchie Connick;
    21) Nancy Cassagne;
    22) Dominick Fazzio
    23) Any member of the Jefferson Parish Council from January 1, 2007-present;

2)  Please produce copies of any and all documents, including electronic documents,
    evidencing or memorializing any and all moneys exchanged or contemplated to be
    exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
    registers, bank statements, wire transfers, settlement agreements, releases, promissory
    notes, financial instruments, financial statements, tax filings, accounting records, between
    **B&C Contractors, LLC** and the following individuals:
    1) Timothy ("Tim") Coulon;
    2) Mary Coulon;
    3) Timothy ("Tim") Whitmer;
    4) Dawn Whitmer;
    5) Tom Wilkinson;
    6) Aaron Broussard;
    7) Darryl Malek-Wiley;
    8) David Fos;
    9) Nancy Cassagne;
    10) Dominick Fazzio;

       11) Henry M. Mouton.

4)      Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **B&C Contractors, LLC** and the following companies:

      1) CWC Gaming, LLC, or any employee thereof;
      2) Lagniappe Industries, LLC, or any employee thereof;
      3) CT Investments, L.L.C., or any employee thereof;
      4) DHP, LLC, or any employee thereof;
      5) Caribe Resort Properties, L.L.C., or any employee thereof;
      6) Caribe Resort Properties I, L.L.C., or any employee thereof;
      7) Coulon Consultants, L.L.C., or any employee thereof;
      8) Learlines, L.L.C., or any employee thereor;
      9) Sierra Club;
      10) Zydeco Holdings, L.L.C.;
      11) Dangle & Associates, LLC;
      12) Water Front Properties, LLC;
      13) Big Bang Properties, LLC;
      14) Anne's Properties, LLC;
      15) Willow, Inc.;
      16) Ring Associates, LLC;
      17) Live Oak Homes Co.;
      18) Heebe & Heebe, P.L.C.;
      19) Trout Point Lodge;
      20) West Jefferson Hospital;
      21) Shadow Lake Management Company, Inc.;
      22) B.L.U., LLC;
      23) B.L.U., 2, LLC;
      24) Fred Heebe Investments;
      25) River Birch, Inc;
      26) Hwy 90, LLC;
      27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

5)      Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name,

Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **B&C Contractors, LLC**, and/or any predecessor or successor entity from the date of incorporation to present.

6) Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

7) Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

8) Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:
    1) Tim Coulon;
    2) Aaron Broussard;
    3) Tom Wilkenson;
    4) Tim Whitmer;
    5) Henry Mouton

9) Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to **B&C Contractors, L.L.C.**'s dealings with either Group Insurance Associates Inc. or Lagniappe Industries, LLC.

10) Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

11) Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **B&C Contractors, L.L.C.** and Lagniappe Industries, LLC.

12) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

13) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

14) Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

15) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

16) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

17) Please produce any and all contracts you had with consultants from 2004 through present.

18) Please produce any and all contracts you have with subcontractors from 2004 through present.

19) Please provide a list of **B&C Contractors, L.L.C.** employees for the period of 2007-present.

20) Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                    DIVISION "D "              Docket No. 16 - 2  P 3: 32

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF
PLAQUEMINES, LLC

DISTRICT COURT

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED
AND HWY 90, LLC

TO:    Live Oak Homes Corporation, Registered Agent: Frederic R. Heebe, 2000 Belle Chasse
Hwy., 3rd Floor, Gretna, LA 70056

       CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed
below.

---

### SUBPOENA REQUEST

[     ]   YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in
Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _ 20_ at ,o'clock
_.m., to testify the truth according to your knowledge, in a controversy pending herein between the
parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

---

### DEPOSITION SUBPOENA REQUEST

[     ]   YOU ARE COMMANDED to appear at the place, date and time specified below to testify
at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ]   YOU ARE COMMANDED to produce and permit inspection and copying of the following
documents or objects for the ___ trial, __X_____ deposition, or _ hearing (state type) _____
_____ at the place, date and time specified below (list documents or objects) pursuant to the provisions
of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY

                              _____
                              Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER      Stephen Gele   LA #22385

ADDRESS
&                      201 St. Charles Ave., Ste. 3702
TELEPHONE NUMBER
                       New Orleans, LA 70170

                       (504) 525-2200

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

1)      Any and all correspondence and/or e-mails to the following:
        1) Henry M. Mouton;
        2) Timothy Coulon;
        3) Mary Coulon;
        4) Timothy Whitmer;
        5) Dawn Whitmer;
        6) Tom Wilkinson;
        7) Aaron Broussard;
        8) Any employee of CWC Gaming, LLC;
        9) Any employee of Lagniappe Industries, LLC;
        10) Any employee of CT Investments, L.L.C.;
        11) Any employee of DHP, LLC;
        12) Any employee of Caribe Resort Properties, L.L.C.;
        13) Any employee of Caribe Resort Properties I, L.L.C.;
        14) Any employee of Coulon Consultants, L.L.C.;
        15) Any employee of Learlines, L.L.C.;
        16) Any employee of The Sierra Club;
        17) Any employee of Zydeco Holdings, LLC
        17) Darryl Malek-Wiley;
        18) David Fos;
        19) Al Gandolfi;
        20) Dutchie Connick;
        21) Nancy Cassagne;
        22) Dominick Fazzio
        23) Any member of the Jefferson Parish Council from January 1, 2007-present;

2)      Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Live Oak Homes Co.** and the following individuals:
        1) Timothy ("Tim") Coulon;
        2) Mary Coulon;
        3) Timothy ("Tim") Whitmer;
        4) Dawn Whitmer;
        5) Tom Wilkinson;
        6) Aaron Broussard;
        7) Darryl Malek-Wiley;
        8) David Fos;
        9) Nancy Cassagne;
        10) Dominick Fazzio;

11) Henry M. Mouton.

4)   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Live Oak Homes Co.** and the following companies:

1) CWC Gaming, LLC, or any employee thereof;
2) Lagniappe Industries, LLC, or any employee thereof;
3) CT Investments, L.L.C., or any employee thereof;
4) DHP, LLC, or any employee thereof;
5) Caribe Resort Properties, L.L.C., or any employee thereof;
6) Caribe Resort Properties I, L.L.C., or any employee thereof;
7) Coulon Consultants, L.L.C., or any employee thereof;
8) Learlines, L.L.C., or any employee thereor;
9) Sierra Club;
10) Zydeco Holdings, L.L.C.;
11) Dangle & Associates, LLC;
12) Water Front Properties, LLC;
13) B & C Contractors, LLC;
14) Anne's Properties, LLC;
15) Willow, Inc.;
16) Ring Associates, LLC;
17) Big Bang Properties, LLC;
18) Heebe & Heebe, P.L.C.;
19) Trout Point Lodge;
20) West Jefferson Hospital;
21) Shadow Lake Management Company, Inc.;
22) B.L.U., LLC;
23) B.L.U., 2, LLC;
24) Fred Heebe Investments;
25) River Birch, Inc;
26) Hwy 90, LLC;
27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

5)   Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name,

Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Live Oak Homes Co.**, and/or any predecessor or successor entity from the date of incorporation to present.

6) Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

7) Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

8) Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:
   1) Tim Coulon;
   2) Aaron Broussard;
   3) Tom Wilkenson;
   4) Tim Whitmer;
   5) Henry Mouton.

9) Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to **Live Oak Homes Co.**'s dealings with either Group Insurance Associates Inc. or Lagniappe Industries, LLC.

10) Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

11) Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Live Oak Homes Co.** and Lagniappe Industries, LLC.

12) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

13) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

14) Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

15) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

16) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

17) Please produce any and all contracts you had with consultants from 2004 through present.

18) Please produce any and all contracts you have with subcontractors from 2004 through present.

19) Please provide a list of **Live Oak Homes Co.** employees for the period of 2007-present.

20) Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

**SUBPOENA**

11-2129                    DIVISION "D "                    Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED AND HWY 90, LLC

TO:   Shadow Lake Management Company, Inc., Registered Agent: Jacquelyn Bruchi, 2000 Belle Chasse Hwy., 3rd Floor, Gretna, LA 70056

   CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed below.

---

<div align="center">SUBPOENA REQUEST</div>

[    ]   **YOU ARE COMMANDED** to appear in the Civil District Court, Parish of Orleans in Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _20_ at _o'clock _.m., to testify the truth according to your knowledge, in a controversy pending herein between the parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

---

<div align="center">DEPOSITION SUBPOENA REQUEST</div>

[    ]   **YOU ARE COMMANDED** to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

<div align="center">REQUEST FOR WRIT OF SUBPOENA DUCES TECUM</div>

[XXX ]   **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects for the ___ trial, __X__ deposition, or _ hearing (state type) _____ _____ at the place, date and time specified below (list documents or objects) pursuant to the provisions of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY       _____
           Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER  Stephen Gele   LA #22385

ADDRESS
&
TELEPHONE NUMBER   201 St. Charles Ave., Ste. 3702

          New Orleans, LA 70170

          (504) 525-2200

<div align="center">File original and two copies with Clerk
fourth copy for Attorney's File</div>

<div align="center">ATTORNEY'S FILE COPY</div>

ATTACHED EXHIBIT "A"

1)    Any and all correspondence and/or e-mails to the following:

    1) Henry M. Mouton;
    2) Timothy Coulon;
    3) Mary Coulon;
    4) Timothy Whitmer;
    5) Dawn Whitmer;
    6) Tom Wilkinson;
    7) Aaron Broussard;
    8) Any employee of CWC Gaming, LLC;
    9) Any employee of Lagniappe Industries, LLC;
    10) Any employee of CT Investments, L.L.C.;
    11) Any employee of DHP, LLC;
    12) Any employee of Caribe Resort Properties, L.L.C.;
    13) Any employee of Caribe Resort Properties I, L.L.C.;
    14) Any employee of Coulon Consultants, L.L.C.;
    15) Any employee of Learlines, L.L.C.;
    16) Any employee of The Sierra Club;
    17) Any employee of Zydeco Holdings, LLC
    17) Darryl Malek-Wiley;
    18) David Fos;
    19) Al Gandolfi;
    20) Dutchie Connick;
    21) Nancy Cassagne;
    22) Dominick Fazzio
    23) Any member of the Jefferson Parish Council from January 1, 2007-present;

2)    Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Shadow Lake Management Company, Inc.** and the following individuals:

    1) Timothy ("Tim") Coulon;
    2) Mary Coulon;
    3) Timothy ("Tim") Whitmer;
    4) Dawn Whitmer;
    5) Tom Wilkinson;
    6) Aaron Broussard;
    7) Darryl Malek-Wiley;
    8) David Fos;
    9) Nancy Cassagne;
    10) Dominick Fazzio;

11) Henry M. Mouton.

4)   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Shadow Lake Management Company, Inc.** and the following companies:

1) CWC Gaming, LLC, or any employee thereof;
2) Lagniappe Industries, LLC, or any employee thereof;
3) CT Investments, L.L.C., or any employee thereof;
4) DHP, LLC, or any employee thereof;
5) Caribe Resort Properties, L.L.C., or any employee thereof;
6) Caribe Resort Properties I, L.L.C., or any employee thereof;
7) Coulon Consultants, L.L.C., or any employee thereof;
8) Learlines, L.L.C., or any employee thereor;
9) Sierra Club;
10) Zydeco Holdings, L.L.C.;
11) Dangle & Associates, LLC;
12) Water Front Properties, LLC;
13) B & C Contractors, LLC;
14) Anne's Properties, LLC;
15) Willow, Inc.;
16) Ring Associates, LLC;
17) Big Bang Properties, LLC;
18) Heebe & Heebe, P.L.C.;
19) Trout Point Lodge;
20) West Jefferson Hospital;
21) Live Oak Homes, Co.;
22) B.L.U., LLC;
23) B.L.U., 2, LLC;
24) Fred Heebe Investments;
25) River Birch, Inc;
26) Hwy 90, LLC;
27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

5)   Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name,

Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **Shadow Lake Management Company, Inc.,** and/or any predecessor or successor entity from the date of incorporation to present.

6) Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

7) Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present..

8) Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:
   1) Tim Coulon;
   2) Aaron Broussard;
   3) Tom Wilkenson;
   4) Tim Whitmer;
   5) Henry Mouton.

9) Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to **Shadow Lake Management Company, Inc.'s** dealings with either Group Insurance Associates Inc. or Lagniappe Industries, LLC.

10) Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.,** with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

11) Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **Shadow Lake Management Company, Inc.** and Lagniappe Industries, LLC.

12) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

13) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

14) Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

15) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

16) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

17) Please produce any and all contracts you had with consultants from 2004 through present.

18) Please produce any and all contracts you have with subcontractors from 2004 through present.

19) Please provide a list of **Shadow Lake Management Company, Inc.'s** employees for the period of 2007-present.

20) Please provide a copy of all leases for office space for the period of 2007-present.

1967

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                    DIVISION "D "          Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED AND HWY 90, LLC

TO:    B.L.U. 2, LLC, Registered Agent: Richard P. Richter, 909 Poydras St., Suite 2800 New Orleans, LA 70056

        CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed below.

---

### SUBPOENA REQUEST

[     ]   YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of_ 20_ at _,o'clock _.m., to testify the truth according to your knowledge, in a controversy pending herein between the parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

---

### DEPOSITION SUBPOENA REQUEST

[     ]   YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX ]   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects for the ___ trial, __X_____ deposition, or _ hearing (state type) _____ _____ at the place, date and time specified below (list documents or objects) pursuant to the provisions of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and, Fees and cost guaranteed by undersigned

ATTORNEY                       _____
                                       Attorney's Signature

ATTORNEY'S
NAME & BAR NUMBER      Stephen Gele    LA #22385

ADDRESS
&
TELEPHONE NUMBER      201 St. Charles Ave., Ste. 3702

                                       New Orleans, LA 70170

                                       (504) 525-2200

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

1)     Any and all correspondence and/or e-mails to the following:

    1) Henry M. Mouton;
    2) Timothy Coulon;
    3) Mary Coulon;
    4) Timothy Whitmer;
    5) Dawn Whitmer;
    6) Tom Wilkinson;
    7) Aaron Broussard;
    8) Any employee of CWC Gaming, LLC;
    9) Any employee of Lagniappe Industries, LLC;
    10) Any employee of CT Investments, L.L.C.;
    11) Any employee of DHP, LLC;
    12) Any employee of Caribe Resort Properties, L.L.C.;
    13) Any employee of Caribe Resort Properties I, L.L.C.;
    14) Any employee of Coulon Consultants, L.L.C.;
    15) Any employee of Learlines, L.L.C.;
    16) Any employee of The Sierra Club;
    17) Any employee of Zydeco Holdings, LLC
    17) Darryl Malek-Wiley;
    18) David Fos;
    19) Al Gandolfi;
    20) Dutchie Connick;
    21) Nancy Cassagne;
    22) Dominick Fazzio
    23) Any member of the Jefferson Parish Council from January 1, 2007-present;

2)     Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between B.L.U. 2, LLC and the following individuals:

    1) Timothy ("Tim") Coulon;
    2) Mary Coulon;
    3) Timothy ("Tim") Whitmer;
    4) Dawn Whitmer;
    5) Tom Wilkinson;
    6) Aaron Broussard;
    7) Darryl Malek-Wiley;
    8) David Fos;
    9) Nancy Cassagne;
    10) Dominick Fazzio;

11) Henry M. Mouton.

4) Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between B.L.U. 2, LLC and the following companies:

1) CWC Gaming, LLC, or any employee thereof;
2) Lagniappe Industries, LLC, or any employee thereof;
3) CT Investments, L.L.C., or any employee thereof;
4) DHP, LLC, or any employee thereof;
5) Caribe Resort Properties, L.L.C., or any employee thereof;
6) Caribe Resort Properties I, L.L.C., or any employee thereof;
7) Coulon Consultants, L.L.C., or any employee thereof;
8) Learlines, L.L.C., or any employee thereor;
9) Sierra Club;
10) Zydeco Holdings, L.L.C.;
11) Dangle & Associates, LLC;
12) Water Front Properties, LLC;
13) B & C Contractors, LLC;
14) Anne's Properties, LLC;
15) Willow, Inc.;
16) Ring Associates, LLC;
17) Big Bang Properties, LLC;
18) Heebe & Heebe, P.L.C.;
19) Trout Point Lodge;
20) West Jefferson Hospital;
21) Live Oak Homes, Co.;
22) B.L.U., LLC;
23) Shadow Lake Management Co., Inc.;
24) Fred Heebe Investments;
25) River Birch, Inc;
26) Hwy 90, LLC;
27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

5) Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name,

Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding B.L.U. 2, LLC, and/or any predecessor or successor entity from the date of incorporation to present.

6) Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

7) Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present..

8) Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:
      1) Tim Coulon;
      2) Aaron Broussard;
      3) Tom Wilkenson;
      4) Tim Whitmer;
      5) Henry Mouton.

9) Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to B.L.U. 2, LLC's dealings with either Group Insurance Associates Inc. or Lagniappe Industries, LLC.

10) Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.,** with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

11) Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between B.L.U. 2, LLC and Lagniappe Industries, LLC.

12) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

13) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

14) Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

15) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

16) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

17) Please produce any and all contracts you had with consultants from 2004 through present.

18) Please produce any and all contracts you have with subcontractors from 2004 through present.

19) Please provide a list of B.L.U. 2, LLC's employees for the period of 2007-present.

20) Please provide a copy of all leases for office space for the period of 2007-present.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

SUBPOENA

11-2129                          DIVISION "D "                          Docket No.

CONCRETE BUSTERS OF LOUISIANA, INC. AND WASTE REMEDIATION OF
PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE,  ALBERT J. WARD, JR., RIVER BIRCH INCORPORATED
AND HWY 90, LLC

TO:   B.L.U., LLC, Registered Agent: Richard P. Richter, 909 Poydras St., Suite 2800 New
Orleans, LA 70056

      CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed
below.

---

### SUBPOENA REQUEST

[     ]   YOU ARE COMMANDED to appear in the Civil District Court, Parish of Orleans in
Division "_", 421 Loyola Ave., New Orleans, LA 70112, on the _____ day of _ 20_ at , o'clock
_.m., to testify the truth according to your knowledge, in a controversy pending herein between the
parties above named; and hereof you are not to fail under the penalty of the law.  By order of the Court.

---

### DEPOSITION SUBPOENA REQUEST

[     ]   YOU ARE COMMANDED to appear at the place, date and time specified below to testify
at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
|  |  |

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[XXX  ]   YOU ARE COMMANDED to produce and permit inspection and copying of the following
documents or objects for the ___ trial, _X_ deposition, or _ hearing (state type) _____
_____ at the place, date and time specified below (list documents or objects) pursuant to the provisions
of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A" for a description of the documents sought under this subpoena.

| PLACE | DATE AND TIME |
| --- | --- |
| Smith & Fawer, 201 St. Charles Ave., Ste 3702 New Orleans, LA 70170 | August 15, 2011 at 11:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

ATTORNEY                          _____
                                  Attorney's Signature
ATTORNEY'S
NAME & BAR NUMBER       Stephen Gele    LA #22385

ADDRESS                   201 St. Charles Ave., Ste. 3702
&
TELEPHONE NUMBER          New Orleans, LA 70170

                          (504) 525-2200

File original and two copies with Clerk
fourth copy for Attorney's File

ATTORNEY'S FILE COPY

ATTACHED EXHIBIT "A"

1)    Any and all correspondence and/or e-mails to the following:
        1) Henry M. Mouton;
        2) Timothy Coulon;
        3) Mary Coulon;
        4) Timothy Whitmer;
        5) Dawn Whitmer;
        6) Tom Wilkinson;
        7) Aaron Broussard;
        8) Any employee of CWC Gaming, LLC;
        9) Any employee of Lagniappe Industries, LLC;
        10) Any employee of CT Investments, L.L.C.;
        11) Any employee of DHP, LLC;
        12) Any employee of Caribe Resort Properties, L.L.C.;
        13) Any employee of Caribe Resort Properties I, L.L.C.;
        14) Any employee of Coulon Consultants, L.L.C.;
        15) Any employee of Learlines, L.L.C.;
        16) Any employee of The Sierra Club;
        17) Any employee of Zydeco Holdings, LLC
        17) Darryl Malek-Wiley;
        18) David Fos;
        19) Al Gandolfi;
        20) Dutchie Connick;
        21) Nancy Cassagne;
        22) Dominick Fazzio
        23) Any member of the Jefferson Parish Council from January 1, 2007-present;


2)    Please produce copies of any and all documents, including electronic documents,
      evidencing or memorializing any and all moneys exchanged or contemplated to be
      exchanged, including any invoices, statements, bills, receipts, cancelled checks, check
      registers, bank statements, wire transfers, settlement agreements, releases, promissory
      notes, financial instruments, financial statements, tax filings, accounting records, between
      B.L.U., LLC and the following individuals:
        1) Timothy ("Tim") Coulon;
        2) Mary Coulon;
        3) Timothy ("Tim") Whitmer;
        4) Dawn Whitmer;
        5) Tom Wilkinson;
        6) Aaron Broussard;
        7) Darryl Malek-Wiley;
        8) David Fos;
        9) Nancy Cassagne;
        10) Dominick Fazzio;

11) Henry M. Mouton.

4)  Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **B.L.U., LLC** and the following companies:

    1) CWC Gaming, LLC, or any employee thereof;
    2) Lagniappe Industries, LLC, or any employee thereof;
    3) CT Investments, L.L.C., or any employee thereof;
    4) DHP, LLC, or any employee thereof;
    5) Caribe Resort Properties, L.L.C., or any employee thereof;
    6) Caribe Resort Properties I, L.L.C., or any employee thereof;
    7) Coulon Consultants, L.L.C., or any employee thereof;
    8) Learlines, L.L.C., or any employee thereor;
    9) Sierra Club;
    10) Zydeco Holdings, L.L.C.;
    11) Dangle & Associates, LLC;
    12) Water Front Properties, LLC;
    13) B & C Contractors, LLC;
    14) Anne's Properties, LLC;
    15) Willow, Inc.;
    16) Ring Associates, LLC;
    17) Big Bang Properties, LLC;
    18) Heebe & Heebe, P.L.C.;
    19) Trout Point Lodge;
    20) West Jefferson Hospital;
    21) Live Oak Homes, Co.;
    22) B.L.U. 2, LLC;
    23) Shadow Lake Management Co., Inc.;
    24) Fred Heebe Investments;
    25) River Birch, Inc;
    26) Hwy 90, LLC;
    27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen (15) percent or more.

5)  Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Managers or Members, and any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name,

Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding **B.L.U., LLC**, and/or any predecessor or successor entity from the date of incorporation to present.

6) Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

7) Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

8) Please produce any correspondence, including e-mails, or recordings relating to the re-zoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:
    1) Tim Coulon;
    2) Aaron Broussard;
    3) Tom Wilkenson;
    4) Tim Whitmer;
    5) Henry Mouton.

9) Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to B.L.U., LLC's dealings with either Group Insurance Associates Inc. or Lagniappe Industries, LLC.

10) Please produce a copy of any and all documents related to any insurance policies serviced by **Group Insurance Associates, Inc.**, with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

11) Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between **B.L.U., LLC** and Lagniappe Industries, LLC.

12) Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

13)    Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

14)    Please produce any and all contracts, drafts of contracts, forms, memoranda of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

15)    Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

16)    Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

17)    Please produce any and all contracts you had with consultants from 2004 through present.

18)    Please produce any and all contracts you have with subcontractors from 2004 through present.

19)    Please provide a list of **B.L.U., LLC's** employees for the period of 2007-present.

20)    Please provide a copy of all leases for office space for the period of 2007-present.