```
FILED
SEP - 6 2011
DEPUTY CLERK
CIVIL DISTRICT COURT
```

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                    DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____        _____
                                            DEPUTY CLERK

MOTION TO STAY LITIGATION,
OR, IN THE ALTERNATIVE,
CONTINUE HEARING ON EXCEPTIONS OF PRESCRIPTION AND PEREMPTION,
AND MOTION FOR EXPEDITED HEARING

NOW INTO COURT, through undersigned counsel, come Plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC (hereafter collectively "Plaintiffs").

For the reasons expressed in the attached *Memorandum*, Movants suggest that this litigation should

be stayed pending an ongoing federal criminal investigation.  In the alternative, Plaintiffs suggest

that the hearings on the exceptions of prescription and peremption should be continued pending

discovery as to factual issues relevant to the hearing and/or the ongoing federal criminal

investigation.

Movants note that this Honorable Court has set Defendants' *Peremptory Exceptions of

Peremption, Prescription, and No Cause of Action* and *Frederick R. Heebe's Motion for Contempt,

Sanctions, and to Compel Discovery*, and Plaintiffs' *Motion to Quash Subpoenas, Motion for

Scheduling Order, Motion to Compel Answers to Interrogatories and Responses to Requests for

Production of Documents* against Frederick R. Heebe, *Motion to Compel Answers to Interrogatories

and Responses to Requests for Production of Documents* against  Albert J. Ward, Jr., *Motion to

Compel Answers to Interrogatories and Responses to Requests for Production of Documents* against

River Birch Incorporated and Hwy. 90, LLC and *Motion to Compel Responses to Plaintiffs' Second

Set of Requests for Production of Documents,* for special setting on September 21, 2011 at 10:00

-1-

a.m., and, in the interest of judicial economy, request that this Court also set this *Motion to Stay Litigation, or, in the Alternative, Continue Hearings on Exceptions of Prescription and Peremption* for hearing on September 21, 2011 at 10:00 a.m.

**WHEREFORE,** Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC move this Honorable Court stay this litigation pending an ongoing federal criminal investigation, or, in the alternative, continue the hearing on the exceptions of prescription and peremption pending discovery as to factual issues relevant to the hearings and/or the ongoing federal criminal investigation.

Respectfully submitted,

RANDALL A. SMITH, T.A. (No. 2117)
STEPHEN M. GELÉ (#22385)
MELISSA M. DESORMEAUX (#33093)
-OF-
SMITH & FAWER, L.L.C.
201 St. Charles Ave., Suite 3702
New Orleans, LA 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via email, on this the 6th day of September 2011.

STEPHEN M. GELÉ

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

**FILED**
SEP - 6 2011
**DEPUTY CLERK**
DIVISION DISTRICT COURT

NO: 11-2129

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____          _____
                                          DEPUTY CLERK

## RULE TO SHOW CAUSE

CONSIDERING THE FOREGOING;

IT IS HEREBY ORDERED that Defendants River Birch Incorporated and Hwy. 90, LLC

show cause on the 21st of September, 2011, at 10:00 o'clock a.m. why Plaintiffs' *Motion to Stay*

*Litigation, or, in the Alternative, Continue Hearings on Exceptions of Prescription and Peremption*

should not be granted.

New Orleans, Louisiana this ____7____ day of September 2011.

                                          _____
                                          J U D G E

SERVICE WILL BE EFFECTUATED
PURSUANT TO LA. C.C.P. ART 1313

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 11-2129                                         DIVISION: "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED: _____          _____
                                                  DEPUTY CLERK

MEMORANDUM IN SUPPORT OF
MOTION TO STAY LITIGATION,
OR, IN THE ALTERNATIVE,
CONTINUE HEARING ON EXCEPTIONS OF PRESCRIPTION AND PEREMPTION,

MAY IT PLEASE THE COURT:

This *Memorandum* is respectfully submitted on behalf of Plaintiffs Concrete Busters of

Louisiana, Inc. and Waste Remediation of Plaquemines, LLC (collectively "Movants") in support

of their *Motion to Stay Litigation, or, in the Alternative, Continue Hearings on Exceptions of

Prescription and Peremption.*

I.      **Factual Background and Procedural Disposition**

This lawsuit arises from a conspiracy enacted by River Birch, Incorporated and Hwy 90,

LLC, and their principals, Frederick R. Heebe and Albert J. Ward, Jr. (hereinafter collectively

referred to as "River Birch"). Plaintiffs allege that River Birch conspired to eliminate competition

by bribing public officials to close landfills with which it competed. As part of the conspiracy, River

Birch, by diverting monies to Jefferson Parish officials, hijacked a Request For Proposal, specifically

RFP 176, by Jefferson Parish specifically designed to reduce yard and woody waste, thereby

decreasing the flow of waste into Louisiana landfills, and contorted RFP 176 into an RFP specifically

calculated to allow River Birch Incorporated to not reduce any waste, but to instead divert all waste

to a different landfill owned by River Birch Incorporated, and close the competing Jefferson Parish

-1-

landfill. These actions prevented Plaintiffs from being awarded the contract in response to RFP 176, and thereby caused Plaintiffs to incur losses and suffer damages.

After the filing of the lawsuit, Defendants requested a extension to file responsive pleadings, filed peremptory exceptions without setting the exceptions for hearing, never filed an answer, and then demanded that certain principals of Plaintiffs quickly submit to depositions. Seeking a more orderly and usual progression of discovery, Plaintiffs filed a *Motion for Scheduling Order.* Defendants filed a *Frederick R. Heebe's Motion for Contempt, Sanctions, and to Compel Discovery* to compel the depositions of Plaintiffs' principals. Plaintiffs also propounded written discovery upon Defendants, and thereafter, as explained below, filed Motions to Compel in response to the pittance of a response Plaintiffs received. This Honorable Court set the discovery motions for hearing on June 24, 2011, and then continued the motions, recently resetting the discovery motions, along with the exceptions, for September 21, 2011.

Nearly all meaningful discovery has been thwarted by defendants and their co-conspirators. Plaintiffs propounded written discovery upon Defendants. Defendants have failed to provide any meaningful responses. Defendants Frederick R. Heebe and Albert J. Ward, Jr. asserted a Fifth Amendment privilege and/or objected to every interrogatory and request for production of documents. *See* Plaintiffs' *Motion to Compel Answers to Interrogatories and Responses to Requests for Production of Documents* against Frederick R. Heebe, and Plaintiffs' *Motion to Compel Answers to Interrogatories and Responses to Requests for Production of Documents* against Albert J. Ward, Jr. filed on June 2, 2011, and exhibits attached thereto. Defendants River Birch Incorporated and Hwy 90, LLC, objected to every interrogatory, and provided virtually no documents not in the public domain in response to requests for production of documents. *See Motion to Compel Answers to Interrogatories and Responses to Requests for Production of Documents* against River Birch Incorporated and Hwy. 90, LLC and *Motion to Compel Responses to Plaintiffs' Second Set of Requests for Production of Documents* filed on June 8, 2011, and exhibits attached thereto.

Further, companies associated with Defendants failed to produce any documents in response to subpoenas duces tecum. See Exhibit "1," in globo, Objections to Plaintiffs' Subpoena Duces

Tecum.

## II.   The Litigation Should Be Stayed Pending A Federal Criminal Investigation

The U.S. Government has been investigating the activities of Defendants for months. The federal investigation has included seizure of copious documents from Defendants. *See* select pleadings in *Heebe et al. versus United States of America*, and other captions, case No: 10-3452, filed in the United States District Court for the Eastern District of Louisiana, including the *Search and Seizure Warrant* issued in the Matter of the Search of 2000 Belle Chasse Highway, Gretna, Louisiana 70056 and Attachment B thereto, attached hereto as Exhibit "2." Further, the U.S. Government has indicted Henry M. Mouton for, and Henry M. Mouton has pled guilty to, receiving bribes from 2003 to 2011 in exchange for efforts to eliminate business competitors. *See United States of America v. Henry M. Mouton*, case no. 11-048, filed in the in the United States District Court for the Eastern District of Louisiana, including the *Indictment* and *Factual Basis*, attached hereto as Exhibit "3" in globo. Additionally, the U.S. Government has indicted the former CFO of River Birch Incorporated Dominick Fazzio. *See United States of America v. Dominick Fazzio*, case no. 11-157, filed in the United States District Court for the Eastern District of Louisiana, including the *Indictment*, attached hereto as Exhibit "4." The Times-Picayune has reported that several of the co-conspirators of Defendants have received target letters and/or testified before a grand jury. *See* various Times-Picayune articles, attached hereto in globo as Exhibit "5." Also, the Federal Bureau of Investigation has recently interviewed several of the principals of Plaintiffs regarding the *Time Contract For Disposal Services Between the Parish of Jefferson and River Birch, Inc. and its Wholly Owned Subsidiary Hwy 90, LLC* at issue.

Louisiana courts have on occasion addressed whether a civil proceeding should be stayed while a criminal proceeding pends. *See Green v. Champion Ins. Co.*, 577 So. 2d 249 (La. Ct. App. 1st Cir. 1991); *Martinez Management, Inc. v. Caston*, 900 So. 2d 301 (La. Ct. App. 2d Cir. 2005); *Bank of Commerce & Trust Co. v. Prejean*, 262 So. 2d 798 (La. Ct. App. 3d Cir. 1972); *Barbee v. Pigott*, 398 So. 2d 137 (La. Ct. App. 3d Cir. 1981); *Brasseaux, State ex rel. v. Spell*, 238 So. 2d 254 (La. Ct. App. 3d Cir. 1970). In all these cases, it was the defendants, not the plaintiffs, who moved

-3-

for the stay. In all of these cases, except *Barbee*, the courts denied the defendants' requests for stays because the cases had previously had trials continued at the requests of defendants, and/or the defendants had already produced testimony through depositions or at trial, and "a denial of the plaintiff's right to a trial without undue delay amounts to a denial of due process of law [, and] a plaintiff's right to a civil remedy should prevail." *Id.* The Court in *Martinez* further stated that "a balancing of interests in allowing the civil litigant a timely remedy and minimizing any potential prejudice to a civil and criminal defendant arising from litigating the civil matter prior to the criminal trial weighs in favor of allowing the civil matter to proceed." Although the Courts in the these cases denied the requests for a stay, the denial was premised on the mitigated prejudice to the defendant and on the right of a plaintiff to proceed. The cases did not establish a right of a defendant to proceed while hindering discovery. Further, the cases stressed the right of the plaintiff to seek justice, even when a defendant has a right to assert a Fifth Amendment privilege.

Employing a similar balancing approach, federal courts have found it appropriate to stay civil matters while parallel criminal matters proceed:

> A district court's inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants includes the power to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, which includes authority to control the scope and pace of discovery. *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir.1990). A district court's power to stay proceedings also encompasses the authority to stay a civil proceeding pending the resolution of a criminal proceeding when the interests of justice so require. *United States v. Little Al*, 712 F.2d 133, 135 (5th Cir.1983) (explaining that "special circumstances" must exist for a court to stay proceedings); *State Farm Lloyds v. Wood*, Civ. A. No. H-06-503, 2006 WL 3691115, *1 (S.D.Tex. Dec. 12, 2006) (citing *United States v. Kordel*, 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970) (same)).
>
> ***
>
> Courts consider the following factors in determining whether "special circumstances" warrant a stay: (1) the extent to which the issues in the criminal case overlap with the issues presented in the civil case; (2) the status of the case, including whether the criminal defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to plaintiff caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest. *Holden Roofing, Inc. v. All States Roofing, Inc.*, Civ. A. No. H-06-3406, 2007 WL 1173634, *1 (S.D.Tex. Apr. 18, 2007); *Wood*, 2006

WL 3691115, at *1; *Librado v. M.S. Carriers, Inc.*, No. Civ. A. 3:02-CV-2095D, 2002 WL 31495988, *1 (N.D.Tex. Nov. 5, 2002). A stay order will be reversed when found to be immoderate or of an indefinite duration. *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir.1982).

*Dominguez v. Hartford Fin. Services Group, Inc.*, 530 F. Supp. 2d 902, 905 (S.D. Tex. 2008).

The persuasive federal jurisprudence argues for a stay of the above-captioned litigation. The issues in the federal investigation, including the improper influence of Jefferson Parish officials in the redrafting of RFP 176, and the awarding of the contract in response to RFP 176 to River Birch, as well as the bribing of Henry Mouton to eliminate business competitors, all mirror the allegations of the *Petition For Damages*. In fact, the Petition for Damages adopts the allegations of the Mouton Indictment. *See* Paragraph 87 of the *Petition for Damages*.

Although the Defendants herein have not been indicted, one alleged co-conspirator of Defendants, Henry W. Mouton, has been indicted, and pled guilty. Further, the CFO of Defendant River Birch has been indicted. In fact, the usual prerequisites for indictment of alleged co-conspirators have begun, including target letters and grand jury appearances.

Herein Plaintiffs are willing to allow the federal criminal investigation to proceed while the matter is stayed. Plaintiffs would rather be able to conduct full discovery to achieve the truth, than race to judgment. Plaintiffs would be prejudiced by proceeding while the criminal matters pend because the pending criminal matters may allow Defendants to assert their Fifth Amendment right against self-incrimination, and thereby withhold usually discoverable information from Plaintiffs. In fact, the two individual Defendants have already asserted their Fifth Amendment right against self-incrimination in response to every interrogatory and request for production of documents. Further, it appears as though all of the alleged co-conspirators will also assert their Fifth Amendment rights. Henry Mouton, for example, has been subpoenaed to testify at the hearing on the exceptions of prescription and peremption, but his counsel has written undersigned counsel stating that she has instructed Henry Mouton to assert his Fifth Amendment rights in response to any questioning, because, although he has already pled guilty, he is still awaiting sentencing. *See* September 2, 2011, correspondence of Mary Olive Pierson, attached hereto as Exhibit "6." In addition to the Defendants, Plaintiffs have also subpoenaed Timothy Whitmer, Dawn Whitmer, Timothy Coulon, Aaron

Broussard, and Dominick Fazzio to testify at the hearing, but none have yet agreed to testify.  They

will all likely assert their Fifth Amendment rights denying this Court vital information.

The only witnesses that might be willing to testify may be Jefferson Parish bureaucrats,

Margaret Mary ("Marnie") Winters, Gwen L. Bolotte, and Joseph R. Butler, Jr.,  who have testified

in the related civil litigation *Consolidated Garbage District No.1 of the Parish of Jefferson and the*

*Parish of Jefferson through the Jefferson Parish Council v. Waste Management of Louisiana, L.L.C.*,

case no: 09-06270, filed in the in the United States District Court for the Eastern District of

Louisiana.  Jefferson Parish bureaucrats Alan Gandolfi and David Fos might also be willing to

testify.  However, their testimony would be limited to the issuance of RFP 176 and the awarding of

the ultimate contract.  Deprived of the vast majority of witnesses, Plaintiffs will have difficulty

garnering evidence for the hearing on the exceptions of peremption and prescription, and ultimately

for trial on the merits.

Further, the U.S. Government appears to have possession of much of the physical and

documentary evidence.  *See Heebe et al. versus United States of America*, and other captions, case

No: 10-3452, filed in the United States District Court for the Eastern District of Louisiana, including

the *Search and Seizure Warrant* issued in the Matter of the Search of 2000 Belle Chasse Highway,

Gretna, Louisiana 70056 and Attachment B thereto. Former Jefferson Parish Assistant Parish

Attorney Anne Marie Vandenweghe has alleged in a separate civil suit in which she claims that she

was terminated for, *inter alia*, cooperating with the Federal Bureau of Investigation and the United

States Attorney's Office regarding, *inter alia*, the irregular and improper handling of a public records

request seeking production of any contracts between Jefferson Parish and River Birch, and that the

whereabouts of the computers of Aaron Broussard and Tim Whitmer, requested by the FBI, are at

issue. *See* the *Complaint* in *Anne Marie Vandenweghe v. The Parish of Jefferson & Steve J. Theriot*,

case No. 11-2128, filed in the United States District Court for the Eastern District of Louisiana,

attached hereto as Exhibit "7."

Staying this matter will not prejudice Defendants.  Because of the nature of the allegations

Defendants already have, or know of, any evidence that would likely be offered by Plaintiffs.

Further, Defendants do not appear to be in any hurry to proclaim their innocence and clear their names as they have asserted the Fifth Amendment in response to all inquiries to date.

It is in the interest of the Court that this matter to be stayed. Litigating numerous discovery disputes, including the scope of discovery and Fifth Amendment privilege, will be a waste of judical resources if the federal investigation reveals the remaining underlying facts. Additionally, it is in the interest of the public for this matter to be stayed as multiple, parallel series of civil and criminal litigation does not promote judicial economy. Staying this civil litigation while the criminal investigation and prosecutions proceed will more likely lead to the truth because claims of Fifth Amendment privilege and federal seizures will not inhibit the truth seeking function of this Court after resolution of the criminal matters.

Therefore, in the interests of truth, justice, fairness and judical economy, the above-captioned litigation should be stayed pending federal criminal investigations and prosecutions.

## III.   Discovery Is Appropriate Before Trial of Exceptions of Prescription and Peremption

"On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." La. Code Civ. Proc. Ann. art. 931. To facilitate the introduction of this evidence, the Court may allow discovery before ruling on the merits of the Exceptor's exceptions of peremption. *Bridges v. Hertz Equipment Rental Corp.*, 2008-0400 (La. 6/20/08), 983 So.2d 1256. In this case, Plaintiffs have attempted to conduct discovery regarding the peremptory exceptions of prescription and peremption, but Defendants have thwarted the attempts of Plaintiffs by blanket assertions of Fifth Amendment privilege, and objecting to nearly all discovery. Further, Plaintiffs have filed a *Motion for Scheduling Order* to allow for the orderly disposition of discovery, including depositions, which has yet to be heard. Thus Plaintiffs have not been allowed ample opportunity to conduct discovery which would be reasonably calculated to lead to evidence admissible at the hearing on the exceptions of prescription and peremption.

Defendants argue in their *Memorandum in Support of Frederick E. Heebe's Peremptory Exceptions of Peremption, Prescription and No Cause of Action* that Plaintiffs' claims under the

Louisiana Unfair Trade Practices Act are perempted, and Plaintiffs' antitrust and monopoly claims are prescribed.[1]  Defendants further claim that the "LUTPA claim is perempted on the face of the Petition as the allegedly injurious conduct occurred well over one year prior to filing."  However, Defendants admit that Plaintiffs have, in Paragraph 90 of their *Petition for Damages*, alleged that the Defendants' "acts and omissions have been continuing and constitute a continuing tort." Louisiana appellate courts have applied the continuing tort doctrine to maintain LUTPA claims against exceptions of peremption. *Fox v. Dupree*, 93-120 (La.App. 1 Cir. 12/29/93), 633 So.2d 612, 614, writ denied, 94-296 (La.3/25/94), 635 So.2d 233; *Benton, Benton & Benton v. Louisiana Public Facilities Authority*, 95-1367 (La.App. 1 Cir. 4/4/96), 672 So.2d 720, writ denied, 96-1445 (La.9/13/96), 679 So.2d 110.  Therefore, Plaintiffs should be allowed to further develop through discovery, and present at hearing, evidence of a continuing tort.

Further, Defendants also argue that the "anti-trust and monopoly claims are also prescribed on the face of the petition … ."  Plaintiffs should be allowed to present evidence—gathered via discovery— supporting the various defenses to prescription, such as continuing tort, discovery and *contra non valentum*.

Accordingly, if this Court does not stay this litigation, this Court should continue the hearings on the exceptions of prescription and peremption to allow for relevant discovery.

## CONCLUSION

For the foregoing reasons, this Honorable Court should GRANT the *Motion to Stay Litigation, or, in the Alternative, Continue Hearings on Exceptions of Prescription and Peremption* filed by Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.

---

[1]Defendants also argue that Plaintiffs fail to state a cause of action in antitrust, monopoly or for unjust enrichment. Plaintiffs have no objection to a hearing on the Exception of No Cause of Action proceeding before a stay would be in effect, or without any further discovery, as the Exception of No Cause of Action addresses only the legal sufficiency of the pleadings and would not require the presentation of evidence.

Respectfully submitted,

RANDALL A. SMITH, T.A.  (No. 2117)
STEPHEN M. GELÉ (#22385)
MELISSA M. DESORMEAUX (#33093)
-OF-
SMITH & FAWER, L.L.C.
201 St. Charles Ave., Suite 3702
New Orleans, LA 70170
Telephone: (504) 525-2200
Facsimile:  (504) 525-2205

*Counsel for Plaintiffs Concrete Busters of
Louisiana, Inc. and Waste Remediation of
Plaquemines, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to counsel of record for all other parties, via email, on this the 6th day of September 2011.

STEPHEN M. GELÉ

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                                        DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____          _____
                                                                    DEPUTY CLERK

### WILLOW, INC.'S
### OBJECTIONS TO PLAINTIFFS' SUBPOENA DUCES TECUM

Willow, Inc. ("Willow"), pursuant to Louisiana Code of Civil Procedure article

1354(B), respectfully submits the following objections in response to the Subpoena Duces

Tecum, including the Requests made in Exhibit "A" thereto (collectively "Subpoena"), issued by

plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.

These Objections are made solely for the purpose of the above-captioned lawsuit.

### GENERAL OBJECTIONS

1.        Willow objects to the Subpoena in its entirety because Willow has nothing to do

with the subject matter of this litigation, and there is no suggestion that Willow has any

connection to the allegations raised in the suit.  Even if Willow had any connection to this

litigation, the Subpoena calls for the disclosure of documents and information that are not

relevant to the subject matter of this action, including requests which seek information from

undefined or remote time periods or from unrelated transactions that have no connection to the

claims raised by the pleadings in this case.  A subpoena duces tecum request must be limited to

information that is relevant or necessary to the case before the Court. *See Bank of New Orleans*

*& Trust Co. v. Reed Printing & Custom Graphics, Ltd.*, 399 So. 2d 1260, 1261 (La. App. 4th Cir.



6/2/81) (finding that plaintiff need not comply with portions of defendant's subpoena duces tecum which sought irrelevant information). Any information from Willow is completely irrelevant to this case, and the subpoena to Willow is wholly improper.

    2.    Willow objects to the Subpoena because it did not provide a reasonable time for response. Willow did not receive the Subpoena until August 8, 2011, seven days before the deposition date of August 15, 2011.

    3.    Willow objects to the Subpoena to the extent that it requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, common interest privilege, or the work product or anticipation of litigation doctrines. Moreover, the production of any protected information pursuant to the Subpoena is inadvertent and without prejudice to Willow's right later to object that such information is protected and that production of such information was inadvertent.

    5.    Willow objects to the Subpoena to the extent that it purports to impose any requirement or discovery obligation on Willow other than those set forth in the Louisiana Code of Civil Procedure.

    6.    Willow objects to the subpoena to the extent that compliance would be burdensome, impose an extreme hardship on Willow, or would result in the expenditure of unnecessary time and resources.

    7.    Willow objects to the Subpoena to the extent that it seeks confidential and proprietary documents or information belonging to third parties.

    8.    In responding to this Subpoena, Willow does not waive and specifically reserves all general and specific objections. Additionally, Willow does not concede by responding that the information sought or provided is relevant to the subject matter of this action. Nor shall the production of any information be construed as an admission by Willow that said information is relevant, material, authentic, or otherwise admissible as evidence. Willow expressly reserves the right to object to further discovery and to the subject matter of this Subpoena, as well as to the introduction into evidence of any responses to this Subpoena.

    10.    These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

## SPECIFIC OBJECTIONS AND RESPONSES:

## REQUEST NO. 1:

Any and all correspondence and/or emails to the following:

1) Henry Mouton;

2) Timothy Coulon;

3) Mary Coulon;

4) Timothy Whitmer;

5) Dawn Whitmer;

6) Tom Wilkinson;

7) Aaron Broussard;

8) Any employee of CWC Gaming, LLC;

9) Any employee of Lagniappe Industries, LLC;

10) Any employee of CT Investments, L.L.C.;

11) Any employee of DHP, L.L.C.;

12) Any employee of Caribe Resort Properties, L.L.C.;

13) Any employee of Caribe Resort Properties, I, L.L.C.;

14) Any employee of Coulon Consultants, L.L.C.;

15) Any employee of Learlines, L.L.C.;

16) Any employee of The Sierra Club;

17) Darryl Malek-Wiley;

18) David Fos;

19) Al Gandolfi;

20) Dutchie Connick;

21) Nancy Cassagne;

22) Dominick Fazzio;

23) Any member of the Jefferson Parish Council from January 1, 2007-present.

3

**RESPONSE TO REQUEST NO. 1:**

  Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit.  Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 2:**

  Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between Willow, Inc. and Henry M. Mouton, including copies of 157 specific checks.

**RESPONSE TO REQUEST NO. 2:**

  Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there there is no suggestion that Willow has any connection to the allegations raised in the suit.  Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome.

**REQUEST NO. 3:**

  Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between Willow, Inc. and the following individuals:

  1) Timothy ("Tim") Coulon;

  2) Mary Coulon;

  3) Timothy ("Tim") Whitmer;

4

4) Dawn Whitmer;

5) Tom Wilkinson;

6) Aaron Broussard;

7) Darryl Malek-Wiley;

8) David Fos;

9) Nancy Cassagne;

10) Dominick Fazzio.

## RESPONSE TO REQUEST NO. 3:

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit.   Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.   Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

## REQUEST NO. 4:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Willow, Inc. and the following companies:

1) CWC Gaming, LLC, or any employee thereof;

2) Lagniappe Industries, LLC, or any employee thereof;

3) CT Investments, LLC, or any employee thereof;

4) DHP, LLC, or any employee thereof;

5) Caribe Resort Properties, LLC, or any employee thereof;

6) Caribe Resort Properties I, LLC, or any employee thereof;

7) Coulon Consultants, LLC, or any employee thereof;

8) Learlines, LLC, or any employee thereof;

9) Sierra Club;

10) Zydeco Holdings, LLC;

11) Water Front Properties, LLC;

12) Ring Associates, LLC;

13) B & C Contractors, LLC;

14) Dangle & Associates, LLC;

15) Anne's Properties, LLC;

16) Big Bang Properties, LLC;

17) Live Oak Homes, Co.;

18) Heebe & Heebe, PLC;

19) Trout Point Lodge;

20) West Jefferson Hospital;

21) Shadow Lake Management Company, Inc.;

22) River Birch, Inc.;

23) Hwy 90, LLC;

24) B.L.U., LLC;

25) B.L.U. 2, LLC;

26) Hwy 90, LLC;

27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen percent or more.

## RESPONSE TO REQUEST NO. 4:

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit. Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 5:**

Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Manager or Members, any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding Willow, Inc., and/or any predecessor or successor entity from the date of incorporation to present.

**RESPONSE TO REQUEST NO. 5:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit. Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information from the inception of the company to the present, which is an unreasonable period of time.

**REQUEST NO. 6:**

Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**RESPONSE TO REQUEST NO. 6:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit. Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter

of this action. Further, the request is overly broad and unduly burdensome because it seeks sensitive financial information for a period of 10 years.

**REQUEST NO. 7:**

Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

**RESPONSE TO REQUEST NO. 7:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit. Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years.

**REQUEST NO. 8:**

Please produce any correspondence, including e-mails, or recordings related to the rezoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:

     1) Tim Coulon;

     2) Aaron Broussard;

     3) Tom Wilkinson;

     4) Tim Whitmer;

     5) Henry Mouton.

**RESPONSE TO REQUEST NO. 8:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit. Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but

rather concerns the award of a waste disposal contract in 2009.  Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years.

**REQUEST NO. 9:**

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to Willow, Inc.'s dealings with either Group Insurance Associates, Inc. or Lagniappe Industries, LLC.

**RESPONSE TO REQUEST NO. 9:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit.  Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 10:**

Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc., with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**RESPONSE TO REQUEST NO. 10:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit.  Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, including sensitive health care and employment information.  Further, the request

is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 11:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Willow, Inc. and Lagniappe Industries, LLC.

**RESPONSE TO REQUEST NO. 11:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit. Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period.

**REQUEST NO. 12:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

**RESPONSE TO REQUEST NO. 12:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit. Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter

of this action.   Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period.

**REQUEST NO. 13:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising our of RFP No. 176.

**RESPONSE TO REQUEST NO. 13:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs.   Even if Willow had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period.

**REQUEST NO. 14:**

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 14:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs.   Even if Willow had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period.   Subject to these objections, no responsive documents.

## REQUEST NO. 15:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

## RESPONSE TO REQUEST NO. 15:

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit. Even if Willow had any connection to this litigation, the request is vague, overly broad and unduly burdensome because it seeks information for an undefined time period.

## REQUEST NO. 16:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

## RESPONSE TO REQUEST NO. 16:

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit. Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

## REQUEST NO. 17:

Please produce any and all contracts you had with consultants from 2004 through present.

**RESPONSE TO REQUEST NO. 17:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit. Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome.

**REQUEST NO. 18:**

Please produce any and all contracts you have with subcontractors from 2004 through present.

**RESPONSE TO REQUEST NO. 18:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit. Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome.

**REQUEST NO. 19:**

Please provide a list of Dangle & Associates' employees for the period of 2007-present.

**RESPONSE TO REQUEST NO. 19:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the allegations raised in the suit. Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is vague, overly broad and unduly burdensome.

**REQUEST NO. 20:**

Please provide a copy of all leases for office space for the period of 2007-present.

**RESPONSE TO REQUEST NO. 20:**

Willow objects to this request because Willow has nothing to do with the subject matter of this litigation, and there is no suggestion that Willow has any connection to the

13

allegations raised in the suit.  Even if Willow had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome.


Michael S. Walsh, LSBA # 8500
Lee & Walsh, APLC
257 Maximilian Street
Baton Rouge, LA  70802
Telephone 225-344-0474
Michael@leeandwalsh.com


## CERTIFICATE OF SERVICE

I HEARBY CERTIFY that a copy of the above and foregoing Answer was faxed and mailed this date by placing same in the United Sates Mail, first class postage prepaid, to all counsel of record.


Michael S. Walsh

14

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                              DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____          _____

                                                      DEPUTY CLERK

### SHADOW LAKE MANAGEMENT COMPANY, INC.'S
### OBJECTIONS TO PLAINTIFFS' SUBPOENA DUCES TECUM

Shadow Lake Management Company, Inc. ("Shadow Lake"), pursuant to Louisiana Code of Civil Procedure article 1354(B), respectfully submits the following objections in response to the Subpoena Duces Tecum, including the Requests mad in Exhibit "A" thereto (collectively "Subpoena"), issued by plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.   These Objections are made solely for the purpose of the above-captioned lawsuit.

### GENERAL OBJECTIONS

1.      Shadow Lake objects to the Subpoena in its entirety because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit.   Even if Shadow Lake had any connection to this litigation, the Subpoena calls for the disclosure of documents and information that are not relevant to the subject matter of this action, including requests which seek information from undefined or remote time periods or from unrelated transactions that have no connection to the claims raised by the pleadings in this case.   A subpoena duces tecum request must be limited to information that is relevant or necessary to the case before the Court. *See Bank of New Orleans & Trust Co. v. Reed Printing & Custom Graphics, Ltd.*, 399 So. 2d 1260, 1261 (La. App. 4th Cir. 6/2/81) (finding that plaintiff need not comply with portions of defendant's subpoena duces tecum which sought irrelevant information).   Any information from

Shadow Lake is completely irrelevant to this case, and the subpoena to Shadow Lake is wholly improper.

2.      Shadow Lake objects to the Subpoena because it did not provide a reasonable time for response.  Shadow Lake was served with the Subpoena on August 8, 2011, seven days before the deposition date of August 15, 2011.  The Subpoena requests information and documents dating to the inception of the company, which was formed more than 25 years ago.

3.      Shadow Lake objects to the Subpoena to the extent that it requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, common interest privilege, or the work product or anticipation of litigation doctrines.  Moreover, the production of any protected information pursuant to the Subpoena is inadvertent and without prejudice to Shadow Lake's right later to object that such information is protected and that production of such information was inadvertent.

5.      Shadow Lake objects to the Subpoena to the extent that it purports to impose any requirement or discovery obligation on Shadow Lake other than those set forth in the Louisiana Code of Civil Procedure.

6.      Shadow Lake objects to the subpoena to the extent that compliance would be burdensome, impose an extreme hardship on Shadow Lake, or would result in the expenditure of unnecessary time and resources.

7.      Shadow Lake objects to the Subpoena to the extent that it seeks confidential and proprietary documents or information belonging to third parties.

8.      In responding to this Subpoena, Shadow Lake does not waive and specifically reserves all general and specific objections.  Additionally, Shadow Lake does not concede by responding that the information sought or provided is relevant to the subject matter of this action.  Nor shall the production of any information be construed as an admission by Shadow Lake that said information is relevant, material, authentic, or otherwise admissible as evidence.  Shadow Lake expressly reserves the right to object to further discovery and to the subject matter of this Subpoena, as well as to the introduction into evidence of any responses to this Subpoena.

10.     These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

<u>SPECIFIC OBJECTIONS AND RESPONSES:</u>

<u>REQUEST NO. 1:</u>

Any and all correspondence and/or emails to the following:

1) Henry Mouton;

2) Timothy Coulon;

3) Mary Coulon;

4) Timothy Whitmer;

5) Dawn Whitmer;

6) Tom Wilkinson;

7) Aaron Broussard;

8) Any employee of CWC Gaming, LLC;

9) Any employee of Lagniappe Industries, LLC;

10) Any employee of CT Investments, L.L.C.;

11) Any employee of DHP, L.L.C.;

12) Any employee of Caribe Resort Properties, L.L.C.;

13) Any employee of Caribe Resort Properties, I, L.L.C.;

14) Any employee of Coulon Consultants, L.L.C.;

15) Any employee of Learlines, L.L.C.;

16) Any employee of The Sierra Club;

17) Any employee of Zydeco Holdings, LLC

18) Darryl Malek-Wiley;

19) David Fos;

20) Al Gandolfi;

21) Dutchie Connick;

22) Nancy Cassagne;

23) Dominick Fazzio;

24) Any member of the Jefferson Parish Council from January 1, 2007-present.

**RESPONSE TO REQUEST NO. 1:**

       Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 2:**

       Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between Shadow Lake Management Company, Inc. and the following individuals:

       1) Timothy ("Tim") Coulon;

       2) Mary Coulon;

       3) Timothy ("Tim") Whitmer;

       4) Dawn Whitmer;

       5) Tom Wilkinson;

       6) Aaron Broussard;

       7) Darryl Malek-Wiley;

       8) David Fos;

       9) Nancy Cassagne;

       10) Dominick Fazzio;

       11) Henry Mouton.

**RESPONSE TO REQUEST NO. 2:**

       Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any

connection to the allegations raised in the suit.  Even if Shadow Lake had any connection to this

litigation, this Request calls for the disclosure of documents and information that are not relevant

to the subject matter of this action.  Further, the request is overly broad and unduly burdensome

because it seeks information for an undefined time period and without limitation on the subject

matter.

**REQUEST NO. 3:**

        The Subpoena contains no Request numbered 3.

**REQUEST NO. 4:**

        Please produce copies of any and all documents, including electronic documents,

evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged,

including any invoices, statements, bills, receipts, cancelled checks, check registers, bank

statements, wire transfers, settlement agreements, releases, promissory notes, financial

instruments, financial statements, tax filings, accounting records, between Shadow Lake

Management Company, Inc. and the following companies:

        1) CWC Gaming, LLC, or any employee thereof;

        2) Lagniappe Industries, LLC, or any employee thereof;

        3) CT Investments, LLC, or any employee thereof;

        4) DHP, LLC, or any employee thereof;

        5) Caribe Resort Properties, LLC, or any employee thereof;

        6) Caribe Resort Properties I, LLC, or any employee thereof;

        7) Coulon Consultants, LLC, or any employee thereof;

        8) Learlines, LLC, or any employee thereof;

        9) Sierra Club;

        10) Zydeco Holdings, LLC;

        11) Dangle & Associates, LLC;

        12) Water Front Properties, LLC;

        13) B & C Contractors, LLC;

        14) Anne's Properties, LLC;

        15) Willow, Inc.;

16) Ring Associates, LLC;

17) Big Bang Properties, LLC;

18) Heebe & Heebe, PLC;

19) Trout Point Lodge;

20) West Jefferson Hospital;

21) Live Oak Homes, Co.;

22) B.L.U., LLC;

23) B.L.U. 2, LLC;

24) Fred Heebe Investments;

25) River Birch, Inc.;

26) Hwy 90, LLC;

27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen percent or more.

**RESPONSE TO REQUEST NO. 4:**

Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 5:**

Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Manager or Members, any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of

Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding Shadow Lake Management Company, Inc., and/or any predecessor or successor entity from the date of incorporation to present.

**RESPONSE TO REQUEST NO. 5:**

Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information from the inception of the company to the present, which is an unreasonable period of time.

**REQUEST NO. 6:**

Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**RESPONSE TO REQUEST NO. 6:**

Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks sensitive financial information for a period of 10 years.

**REQUEST NO. 7:**

Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

**RESPONSE TO REQUEST NO. 7:**

Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any

connection to the allegations raised in the suit.  Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009.  Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years.  Subject to these objections, no responsive documents.

**REQUEST NO. 8:**

Please produce any correspondence, including e-mails, or recordings related to the rezoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and: ·

1) Tim Coulon;

2) Aaron Broussard;

3) Tom Wilkinson;

4) Tim Whitmer;

5) Henry Mouton.

**RESPONSE TO REQUEST NO. 8:**

Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit.  Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009.  Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years.  Subject to these objections, no responsive documents.

**REQUEST NO. 9:**

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to Shadow Lake Management Company, Inc.'s dealings with either Group Insurance Associates, Inc. or Lagniappe Industries, LLC.

RESPONSE TO REQUEST NO. 9:

      Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

REQUEST NO. 10:

      Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc., with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

RESPONSE TO REQUEST NO. 10:

      Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, including sensitive health care and employment information. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

REQUEST NO. 11:

      Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank

statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Shadow Lake Management Company, Inc. and Lagniappe Industries, LLC.

**RESPONSE TO REQUEST NO. 11:**

Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period.

**REQUEST NO. 12:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

**RESPONSE TO REQUEST NO. 12:**

Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 13:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 13:**

Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if Shadow Lake had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 14:**

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 14:**

Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if Shadow Lake had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 15:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

**RESPONSE TO REQUEST NO. 15:**

Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this

litigation, the request is vague, overly broad and unduly burdensome because it seeks information for an undefined time period.

**REQUEST NO. 16:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

**RESPONSE TO REQUEST NO. 16:**

Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

**REQUEST NO. 17:**

Please produce any and all contracts you had with consultants from 2004 through present.

**RESPONSE TO REQUEST NO. 17:**

Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is vague, overly broad and unduly burdensome.

**REQUEST NO. 18:**

Please produce any and all contracts you have with subcontractors from 2004 through present.

**RESPONSE TO REQUEST NO. 18:**

        Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is vague, overly broad and unduly burdensome.

**REQUEST NO. 19:**

        Please provide a list of Shadow Lake Management Company, Inc.'s employees for the period of 2007-present.

**RESPONSE TO REQUEST NO. 19:**

        Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome.

**REQUEST NO. 20:**

        Please provide a copy of all leases for office space for the period of 2007-present.

**RESPONSE TO REQUEST NO. 20:**

Shadow Lake objects to this request because Shadow Lake has nothing to do with the subject matter of this litigation, and there is no suggestion that Shadow Lake has any connection to the allegations raised in the suit. Even if Shadow Lake had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome.

Respectfully submitted:

Kyle Schonekas, 11817
Joelle Evans, 23730
William P. Gibbens, 27225
SCHONEKAS, EVANS, MCGOEY
    & McEACHIN, L.L.C.
Poydras Center
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
Telephone: (504) 680-6050
Fax: (504) 680-6051

Attorneys for Shadow Lake Management
Company, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been duly served upon counsel for Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC by email and facsimile, this 15th day of August, 2011

WILLIAM P. GIBBENS

14

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                                DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____          _____
                                                    DEPUTY CLERK

### LIVE OAK HOMES CORPORATION'S
### OBJECTIONS TO PLAINTIFFS' SUBPOENA DUCES TECUM

Live Oak Homes Corporation ("Live Oak"), pursuant to Louisiana Code of Civil

Procedure article 1354(B), respectfully submits the following objections in response to the

Subpoena Duces Tecum, including the Requests made in Exhibit "A" thereto (collectively

"Subpoena"), issued by plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of

Plaquemines, LLC.  These Objections are made solely for the purpose of the above-captioned

lawsuit.

### GENERAL OBJECTIONS

1.          Live Oak objects to the Subpoena in its entirety because Live Oak has nothing to

do with the subject matter of this litigation.  Live Oak is not mentioned in the plaintiffs' Petition

for Damages, and there is no suggestion that Live Oak has any connection to the allegations

raised in the suit.  Even if Live Oak had any connection to this litigation, the Subpoena calls for

the disclosure of documents and information that are not relevant to the subject matter of this

action, including requests which seek information from undefined or remote time periods or from

unrelated transactions that have no connection to the claims raised by the pleadings in this case.

A subpoena duces tecum request must be limited to information that is relevant or necessary to

the case before the Court.  *See Bank of New Orleans & Trust Co. v. Reed Printing & Custom*

*Graphics, Ltd.*, 399 So. 2d 1260, 1261 (La. App. 4th Cir. 6/2/81) (finding that plaintiff need not

comply with portions of defendant's subpoena duces tecum which sought irrelevant

information).  Any information from Live Oak is completely irrelevant to this case, and the subpoena to Live Oak is wholly improper.

2.      Live Oak objects to the Subpoena because it did not provide a reasonable time for response.  Live Oak did not receive the Subpoena until August 8, 2011, seven days before the deposition date of August 15, 2011.  In light of the Subpoena's request for documents and materials dating back to Live Oak's inception in 1984, this late notice is unreasonable.

3.      Live Oak objects to the Subpoena to the extent that it requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, common interest privilege, or the work product or anticipation of litigation doctrines.  Moreover, the production of any protected information pursuant to the Subpoena is inadvertent and without prejudice to Live Oak's right later to object that such information is protected and that production of such information was inadvertent.

5.      Live Oak objects to the Subpoena to the extent that it purports to impose any requirement or discovery obligation on Live Oak other than those set forth in the Louisiana Code of Civil Procedure.

6.      Live Oak objects to the subpoena to the extent that compliance would be burdensome, impose an extreme hardship on Live Oak, or would result in the expenditure of unnecessary time and resources.

7.      Live Oak objects to the Subpoena to the extent that it seeks confidential and proprietary documents or information belonging to third parties.

8.      In responding to this Subpoena, Live Oak does not waive and specifically reserves all general and specific objections.  Additionally, Live Oak does not concede by responding that the information sought or provided is relevant to the subject matter of this action.  Nor shall the production of any information be construed as an admission by Live Oak that said information is relevant, material, authentic, or otherwise admissible as evidence.  Live Oak expressly reserves the right to object to further discovery and to the subject matter of this Subpoena, as well as to the introduction into evidence of any responses to this Subpoena.

10.     These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

## SPECIFIC OBJECTIONS AND RESPONSES:

### REQUEST NO. 1:

Any and all correspondence and/or emails to the following:

1) Henry Mouton;

2) Timothy Coulon;

3) Mary Coulon;

4) Timothy Whitmer;

5) Dawn Whitmer;

6) Tom Wilkinson;

7) Aaron Broussard;

8) Any employee of CWC Gaming, LLC;

9) Any employee of Lagniappe Industries, LLC;

10) Any employee of CT Investments, L.L.C.;

11) Any employee of DHP, L.L.C.;

12) Any employee of Caribe Resort Properties, L.L.C.;

13) Any employee of Caribe Resort Properties, I, L.L.C.;

14) Any employee of Coulon Consultants, L.L.C.;

15) Any employee of Learlines, L.L.C.;

16) Any employee of The Sierra Club;

17) Any employee of Zydeco Holdings, LLC;

18) Darryl Malek-Wiley;

19) David Fos;

20) Al Gandolfi;

21) Dutchie Connick;

22) Nancy Cassagne;

23) Dominick Fazzio;

24) Any member of the Jefferson Parish Council from January 1, 2007-present.

**RESPONSE TO REQUEST NO. 1:**

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 2:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between Live Oak Homes Co. and the following individuals:

1) Timothy ("Tim") Coulon;

2) Mary Coulon;

3) Timothy ("Tim") Whitmer;

4) Dawn Whitmer;

5) Tom Wilkinson;

6) Aaron Broussard;

7) Darryl Malek-Wiley;

8) David Fos;

9) Nancy Cassagne;

10) Dominick Fazzio;

11) Henry Mouton.

**RESPONSE TO REQUEST NO. 2:**

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for

Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 3:**

The Subpoena did not contain a Request numbered 3.

**REQUEST NO. 4:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Live Oak Homes Co. and the following companies:

1) CWC Gaming, LLC, or any employee thereof;

2) Lagniappe Industries, LLC, or any employee thereof;

3) CT Investments, LLC, or any employee thereof;

4) DHP, LLC, or any employee thereof;

5) Caribe Resort Properties, LLC, or any employee thereof;

6) Caribe Resort Properties I, LLC, or any employee thereof;

7) Coulon Consultants, LLC, or any employee thereof;

8) Learlines, LLC, or any employee thereof;

9) Sierra Club;

10) Zydeco Holdings, LLC;

11) Dangle & Associates, LLC;

12) Water Front Properties, LLC;

13) B & C Contractors, LLC;

14) Anne's Properties, LLC;

15) Willow, Inc.;

16) Ring Associates, LLC;

17) Big Bang Properties, LLC;

18) Heebe & Heebe, PLC;

19) Trout Point Lodge;

20) West Jefferson Hospital;

21) Shadow Lake Management Company, Inc.;

22) B.L.U., LLC;

23) B.L.U. 2, LLC;

24) Fred Heebe Investments;

25) River Birch, Inc.;

26) Hwy 90, LLC;

27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen percent or more.

RESPONSE TO REQUEST NO. 4:

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

REQUEST NO. 5:

Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Manager or Members, any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of

Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding Live Oak Homes Co., and/or any predecessor or successor entity from the date of incorporation to present.

**RESPONSE TO REQUEST NO. 5:**

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information from the inception of the company to the present, which is an unreasonable period of time.

**REQUEST NO. 6:**

Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**RESPONSE TO REQUEST NO. 6:**

. Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks sensitive financial information for a period of 10 years.

**REQUEST NO. 7:**

Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

**RESPONSE TO REQUEST NO. 7:**

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for

Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years. Subject to these objections, no responsive documents.

<u>REQUEST NO. 8:</u>

Please produce any correspondence, including e-mails, or recordings related to the rezoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:

     1) Tim Coulon;

     2) Aaron Broussard;

     3) Tom Wilkinson;

     4) Tim Whitmer;

     5) Henry Mouton.

<u>RESPONSE TO REQUEST NO. 8:</u>

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years. Subject to these objections, no responsive documents.

**REQUEST NO. 9:**

      Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to Live Oak Homes Co.'s dealings with either Group Insurance Associates, Inc. or Lagniappe Industries, LLC.

**RESPONSE TO REQUEST NO. 9:**

      Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation.  Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit.  Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 10:**

      Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc., with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**RESPONSE TO REQUEST NO. 10:**

      Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation.  Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit.  Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, including sensitive health care and employment information.  Further, the request is overly broad

and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

REQUEST NO. 11:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Live Oak Homes Co. and Lagniappe Industries.

RESPONSE TO REQUEST NO. 11:

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period.

REQUEST NO. 12:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

RESPONSE TO REQUEST NO. 12:

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.

Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 13:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 13:**

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if Live Oak had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 14:**

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 14:**

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if Live Oak had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 15:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

**RESPONSE TO REQUEST NO. 15:**

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, the request is vague, overly broad and unduly burdensome because it seeks information for an undefined time period.

**REQUEST NO. 16:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

**RESPONSE TO REQUEST NO. 16:**

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

**REQUEST NO. 17:**

Please produce any and all contracts you had with consultants from 2004 through present.

**RESPONSE TO REQUEST NO. 17:**

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is vague, overly broad, and unduly burdensome.

**REQUEST NO. 18:**

Please produce any and all contracts you have with subcontractors from 2004 through present.

**RESPONSE TO REQUEST NO. 18:**

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome.

**REQUEST NO. 19:**

Please provide a list of Live Oak Homes Co. employees for the period of 2007-present.

**RESPONSE TO REQUEST NO. 19:**

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome.

**REQUEST NO. 20:**

Please provide a copy of all leases for office space for the period of 2007-present.

**RESPONSE TO REQUEST NO. 20:**

Live Oak objects to this request because Live Oak has nothing to do with the subject matter of this litigation. Live Oak is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that Live Oak has any connection to the allegations raised in the suit. Even if Live Oak had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome.

Respectfully submitted:

Kyle Schonekas, 11817
Joelle Evans, 23730
William P. Gibbens, 27225
SCHONEKAS, EVANS, MCGOEY
   & McEACHIN, L.L.C.
Poydras Center
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
Telephone: (504) 680-6050
Fax: (504) 680-6051

Attorneys for Live Oak Homes Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been duly served upon counsel for Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC by email and facsimile, this 15th day of August, 2011

WILLIAM P. GIBBENS

14

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                          DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____        _____
                                                     DEPUTY CLERK

ANNE'S PROPERTIES, LLC'S
OBJECTIONS TO PLAINTIFFS' SUBPOENA DUCES TECUM

Anne's Properties, LLC ("AP"), pursuant to Louisiana Code of Civil Procedure

article 1354(B), respectfully submits the following objections in response to the Subpoena Duces

Tecum, including the Requests made in Exhibit "A" thereto (collectively "Subpoena"), issued by

plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.

These Objections are made solely for the purpose of the above-captioned lawsuit.

GENERAL OBJECTIONS

1.      AP objects to the Subpoena in its entirety because AP has nothing to do with the

subject matter of this litigation.  AP is not mentioned in the plaintiffs' Petition for Damages, and

there is no suggestion that AP has any connection to the allegations raised in the suit.  Even if AP

had any connection to this litigation, the Subpoena calls for the disclosure of documents and

information that is not relevant to the subject matter of this action, including requests which seek

information from undefined or remote time periods or from unrelated transactions that have no

connection to the claims raised by the pleadings in this case.  A subpoena duces tecum request

must be limited to information that is relevant or necessary to the case before the Court.  *See*

*Bank of New Orleans & Trust Co. v. Reed Printing & Custom Graphics, Ltd.*, 399 So. 2d 1260,

1261 (La. App. 4th Cir. 6/2/81) (finding that plaintiff need not comply with portions of

defendant's subpoena duces tecum which sought irrelevant information).  Any information from

AP is completely irrelevant to this case, and the subpoena to AP is wholly improper.

2.      AP objects to the Subpoena because it did not provide a reasonable time for response.  AP did not receive the Subpoena until August 4, 2011, eleven days before the deposition date of August 15, 2011.

3.      AP objects to the Subpoena to the extent that it requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, common interest privilege, or the work product or anticipation of litigation doctrines.  Moreover, the production of any protected information pursuant to the Subpoena is inadvertent and without prejudice to AP's right later to object that such information is protected and that production of such information was inadvertent.

5.      AP objects to the Subpoena to the extent that it purports to impose any requirement or discovery obligation on AP other than those set forth in the Louisiana Code of Civil Procedure.

6.      AP objects to the subpoena to the extent that compliance would be burdensome, impose an extreme hardship on AP, or would result in the expenditure of unnecessary time and resources.

7.      AP objects to the Subpoena to the extent that it seeks confidential and proprietary documents or information belonging to third parties.

8.      In responding to this Subpoena, AP does not waive and specifically reserves all general and specific objections.  Additionally, AP does not concede by responding that the information sought or provided is relevant to the subject matter of this action.  Nor shall the production of any information be construed as an admission by AP that said information is relevant, material, authentic, or otherwise admissible as evidence.  AP expressly reserves the right to object to further discovery and to the subject matter of this Subpoena, as well as to the introduction into evidence of any responses to this Subpoena.

10.     These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

## SPECIFIC OBJECTIONS AND RESPONSES:

**REQUEST NO. 1:**

Any and all correspondence and/or emails to the following:

1) Henry Mouton;

2) Timothy Coulon;

3) Mary Coulon;

4) Timothy Whitmer;

5) Dawn Whitmer;

6) Tom Wilkinson;

7) Aaron Broussard;

8) Any employee of CWC Gaming, LLC;

9) Any employee of Lagniappe Industries, LLC;

10) Any employee of CT Investments, L.L.C.;

11) Any employee of DHP, L.L.C.;

12) Any employee of Caribe Resort Properties, L.L.C.;

13) Any employee of Caribe Resort Properties, I, L.L.C.;

14) Any employee of Coulon Consultants, L.L.C.;

15) Any employee of Learlines, L.L.C.;

16) Any employee of The Sierra Club;

17) Any employee of Zydeco Holdings, LLC;

18) Darryl Malek-Wiley;

19) David Fos;

20) Al Gandolfi;

21) Dutchie Connick;

22) Nancy Cassagne;

23) Dominick Fazzio;

24) Any member of the Jefferson Parish Council from January 1, 2007-present.

**RESPONSE TO REQUEST NO. 1:**

AP objects to this request because AP has nothing to do with the subject matter of this litigation.  AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit.  Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 2:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between Anne's Properties, LLC and Henry M. Mouton, including copies of the following checks:

1) Check No. 1050, dates September 22, 2008 in the amount of $860.00 made out to Henry M. Mouton.

**RESPONSE TO REQUEST NO. 2:**

AP objects to this request because AP has nothing to do with the subject matter of this litigation.  AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit.  Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 3:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged,

including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between Anne's Properties, LLC and the following individuals:

    1) Timothy ("Tim") Coulon;

    2) Mary Coulon;

    3) Timothy ("Tim") Whitmer;

    4) Dawn Whitmer;

    5) Tom Wilkinson;

    6) Aaron Broussard;

    7) Darryl Malek-Wiley;

    8) David Fos;

    9) Nancy Cassagne;

    10) Dominick Fazzio;

    11) Henry Mouton.

**RESPONSE TO REQUEST NO. 3:**

AP objects to this request because AP has nothing to do with the subject matter of this litigation. AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit. Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 4:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial

instruments, financial statements, tax filings, accounting records, between Anne's Properties, LLC and the following companies:

     1) CWC Gaming, LLC, or any employee thereof;

     2) Lagniappe Industries, LLC, or any employee thereof;

     3) CT Investments, LLC, or any employee thereof;

     4) DHP, LLC, or any employee thereof;

     5) Caribe Resort Properties, LLC, or any employee thereof;

     6) Caribe Resort Properties I, LLC, or any employee thereof;

     7) Coulon Consultants, LLC, or any employee thereof;

     8) Learlines, LLC, or any employee thereof;

     9) Sierra Club;

     10) Zydeco Holdings, LLC;

     11) Water Front Properties, LLC;

     12) Ring Associates, LLC;

     13) B & C Contractors, LLC;

     14) Dangle & Associates, LLC;

     15) Willow, Inc.;

     16) Big Bang Properties, LLC;

     17) Live Oak Homes, Co.;

     18) Heebe & Heebe, PLC;

     19) Trout Point Lodge;

     20) West Jefferson Hospital;

     21) Shadow Lake Management Company, Inc.;

     22) River Birch, Inc.;

     23) Hwy 90, LLC;

     24) B.L.U., LLC;

     25) B.L.U. 2, LLC;

     26) Fred Heebe Investments;

27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen percent or more.

## RESPONSE TO REQUEST NO. 4:

AP objects to this request because AP has nothing to do with the subject matter of this litigation. AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit. Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

## REQUEST NO. 5:

Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Manager or Members, any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding Anne's Properties, LLC, and/or any predecessor or successor entity from the date of incorporation to present.

## RESPONSE TO REQUEST NO. 5:

AP objects to this request because AP has nothing to do with the subject matter of this litigation. AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit. Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and

unduly burdensome because it seeks information from the inception of the company to the present, which is an unreasonable period of time.

## REQUEST NO. 6:

Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

## RESPONSE TO REQUEST NO. 6:

AP objects to this request because AP has nothing to do with the subject matter of this litigation. AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit. Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks sensitive financial information for a period of 10 years.

## REQUEST NO. 7:

Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

## RESPONSE TO REQUEST NO. 7:

AP objects to this request because AP has nothing to do with the subject matter of this litigation. AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit. Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years. Subject to these objections, no responsive documents.

## REQUEST NO. 8:

Please produce any correspondence, including e-mails, or recordings related to the rezoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:

1) Tim Coulon;

2) Aaron Broussard;

3) Tom Wilkinson;

4) Tim Whitmer;

5) Henry Mouton.

**RESPONSE TO REQUEST NO. 8:**

      AP objects to this request because AP has nothing to do with the subject matter of this litigation.  AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit.  Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009.  Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years.  Subject to these objections, no responsive documents.

**REQUEST NO. 9:**

      Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to Anne's Properties, LLC's dealings with either Group Insurance Associates, Inc. or Lagniappe Industries, LLC.

**RESPONSE TO REQUEST NO. 9:**

      AP objects to this request because AP has nothing to do with the subject matter of this litigation.  AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit.  Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.  Subject to these objections, no responsive documents.

**REQUEST NO. 10:**

      Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc., with either United Healthcare of Louisiana or

Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

RESPONSE TO REQUEST NO. 10:

AP objects to this request because AP has nothing to do with the subject matter of this litigation. AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit. Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, including sensitive health care and employment information. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

REQUEST NO. 11:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Anne's Properties, LLC and Lagniappe Industries, LLC.

RESPONSE TO REQUEST NO. 11:

AP objects to this request because AP has nothing to do with the subject matter of this litigation. AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit. Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and

unduly burdensome because it seeks information for an undefined time period.  Subject to these objections, no responsive documents.

**REQUEST NO. 12:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

**RESPONSE TO REQUEST NO. 12:**

AP objects to this request because AP has nothing to do with the subject matter of this litigation.  AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit.  Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period.  Subject to these objections, no responsive documents.

**REQUEST NO. 13:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 13:**

AP objects to this request because AP has nothing to do with the subject matter of this litigation.  AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs.  Even if AP had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period.  Subject to these objections, no responsive documents.

**REQUEST NO. 14:**

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 14:**

AP objects to this request because AP has nothing to do with the subject matter of this litigation. AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if AP had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 15:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

**RESPONSE TO REQUEST NO. 15:**

AP objects to this request because AP has nothing to do with the subject matter of this litigation. AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit. Even if AP had any connection to this litigation, the request is vague, overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 16:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

**RESPONSE TO REQUEST NO. 16:**

AP objects to this request because AP has nothing to do with the subject matter of this litigation.  AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit.  Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.  Subject to these objections, no responsive documents.

**REQUEST NO. 17:**

Please produce any and all contracts you had with consultants from 2004 through present.

**RESPONSE TO REQUEST NO. 17:**

AP objects to this request because AP has nothing to do with the subject matter of this litigation.  AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit.  Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome.  Subject to these objections, no responsive documents.

**REQUEST NO. 18:**

Please produce any and all contracts you have with subcontractors from 2004 through present.

**RESPONSE TO REQUEST NO. 18:**

AP objects to this request because AP has nothing to do with the subject matter of this litigation.  AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit.  Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome.  Subject to these objections, no responsive documents.

**REQUEST NO. 19:**

Please provide a list of Anne's Properties, LLC's employees for the period of 2007-present.

**RESPONSE TO REQUEST NO. 19:**

AP objects to this request because AP has nothing to do with the subject matter of this litigation. AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit. Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 20:**

Please provide a copy of all leases for office space for the period of 2007-present.

**RESPONSE TO REQUEST NO. 20:**

AP objects to this request because AP has nothing to do with the subject matter of this litigation. AP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that AP has any connection to the allegations raised in the suit. Even if AP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

Respectfully submitted:

Charles Marshall, Bar #27564
Chaffe McCall, LLP
2300 Energy Centre
1100 Poydas Street
New Orleans, LA 70163
Telephone: (504) 585-7242
marshall@chaffe.com

and

Stephen D. London, Bar #19954
1100 Poydras Street, Suite 2950
New Orleans, Louisiana 70163
Telephone No. 504-582-2427

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been duly served upon counsel for Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC by email, this 15th day of August, 2011

CHARLES MARSHALL

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                         DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____        _____
                                                    DEPUTY CLERK

## B & C CONTRACTORS LLC'S
## OBJECTIONS TO PLAINTIFFS' SUBPOENA DUCES TECUM

  B & C Contractors, LLC ("B & C"), pursuant to Louisiana Code of Civil Procedure article 1354(B), respectfully submits the following objections in response to the Subpoena Duces Tecum, including the Requests made in Exhibit "A" thereto (collectively "Subpoena"), issued by plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC. These Objections are made solely for the purpose of the above-captioned lawsuit.

### GENERAL OBJECTIONS

  1. B & C objects to the Subpoena in its entirety because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, the Subpoena calls for the disclosure of documents and information that is not relevant to the subject matter of this action, including requests which seek information from undefined or remote time periods or from unrelated transactions that have no connection to the claims raised by the pleadings in this case. A subpoena duces tecum request must be limited to information that is relevant or necessary to the case before the Court. *See Bank of New Orleans & Trust Co. v. Reed Printing & Custom Graphics, Ltd.*, 399 So. 2d 1260, 1261 (La. App. 4th Cir. 6/2/81) (finding that plaintiff need not comply with portions of defendant's subpoena duces tecum which sought irrelevant

information).   Any information from B & C is completely irrelevant to this case, and the subpoena to B & C is wholly improper.

2.   B & C objects to the Subpoena because it did not provide a reasonable time for response.  B & C did not receive the Subpoena until August 4, 2011, eleven days before the deposition date of August 15, 2011.

3.   B & C objects to the Subpoena to the extent that it requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, common interest privilege, or the work product or anticipation of litigation doctrines. Moreover, the production of any protected information pursuant to the Subpoena is inadvertent and without prejudice to B & C's right later to object that such information is protected and that production of such information was inadvertent.

5.   B & C objects to the Subpoena to the extent that it purports to impose any requirement or discovery obligation on B & C other than those set forth in the Louisiana Code of Civil Procedure.

6.   B & C objects to the subpoena to the extent that compliance would be burdensome, impose an extreme hardship on B & C, or would result in the expenditure of unnecessary time and resources.

7.   B & C objects to the Subpoena to the extent that it seeks confidential and proprietary documents or information belonging to third parties.

8.   In responding to this Subpoena, B & C does not waive and specifically reserves all general and specific objections.  Additionally, B & C does not concede by responding that the information sought or provided is relevant to the subject matter of this action.  Nor shall the production of any information be construed as an admission by B & C that said information is relevant, material, authentic, or otherwise admissible as evidence.  B & C expressly reserves the right to object to further discovery and to the subject matter of this Subpoena, as well as to the introduction into evidence of any responses to this Subpoena.

10.   These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

## SPECIFIC OBJECTIONS AND RESPONSES:

### REQUEST NO. 1:

Any and all correspondence and/or emails to the following:

1) Henry Mouton;

2) Timothy Coulon;

3) Mary Coulon;

4) Timothy Whitmer;

5) Dawn Whitmer;

6) Tom Wilkinson;

7) Aaron Broussard;

8) Any employee of CWC Gaming, LLC;

9) Any employee of Lagniappe Industries, LLC;

10) Any employee of CT Investments, L.L.C.;

11) Any employee of DHP, L.L.C.;

12) Any employee of Caribe Resort Properties, L.L.C.;

13) Any employee of Caribe Resort Properties, I, L.L.C.;

14) Any employee of Coulon Consultants, L.L.C.;

15) Any employee of Learlines, L.L.C.;

16) Any employee of The Sierra Club;

17) Any employee of Zydeco Holdings, LLC;

18) Darryl Malek-Wiley;

19) David Fos;

20) Al Gandolfi;

21) Dutchie Connick;

22) Nancy Cassagne;

23) Dominick Fazzio;

24) Any member of the Jefferson Parish Council from January 1, 2007-present.

## RESPONSE TO REQUEST NO. 1:

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

## REQUEST NO. 2:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between B & C Contractors, LLC and the following individuals:

1) Timothy ("Tim") Coulon;

2) Mary Coulon;

3) Timothy ("Tim") Whitmer;

4) Dawn Whitmer;

5) Tom Wilkinson;

6) Aaron Broussard;

7) Darryl Malek-Wiley;

8) David Fos;

9) Nancy Cassagne;

10) Dominick Fazzio;

11) Henry Mouton.

## RESPONSE TO REQUEST NO. 2:

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and

there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 3:**

The Subpoena did not contain a Request numbered 3.

**REQUEST NO. 4:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between B & C Contractors, LLC and the following companies:

1) CWC Gaming, LLC, or any employee thereof;

2) Lagniappe Industries, LLC, or any employee thereof;

3) CT Investments, LLC, or any employee thereof;

4) DHP, LLC, or any employee thereof;

5) Caribe Resort Properties, LLC, or any employee thereof;

6) Caribe Resort Properties I, LLC, or any employee thereof;

7) Coulon Consultants, LLC, or any employee thereof;

8) Learlines, LLC, or any employee thereof;

9) Sierra Club;

10) Zydeco Holdings, LLC;

11) Dangle & Associates, LLC;

12) Water Front Properties, LLC;

13) Big Bang Properties, LLC;

14) Anne's Properties, LLC;

15) Willow, Inc.;

16) Ring Associates, LLC;

17) Live Oak Homes, Co.;

18) Heebe & Heebe, PLC;

19) Trout Point Lodge;

20) West Jefferson Hospital;

21) Shadow Lake Management Company, Inc.;

22) B.L.U., LLC;

23) B.L.U. 2, LLC;

24) Fred Heebe Investments;

25) River Birch, Inc.;

26) Hwy 90, LLC;

27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen percent or more.

**RESPONSE TO REQUEST NO. 4:**

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 5:**

Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Manager or Members, any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of

Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding B & C Contractors, LLC, and/or any predecessor or successor entity from the date of incorporation to present.

**RESPONSE TO REQUEST NO. 5:**

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information from the inception of the company to the present, which is an unreasonable period of time.

**REQUEST NO. 6:**

Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**RESPONSE TO REQUEST NO. 6:**

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks sensitive financial information for a period of 10 years.

**REQUEST NO. 7:**

Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

**RESPONSE TO REQUEST NO. 7:**

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years. Subject to these objections, no responsive documents.

**REQUEST NO. 8:**

Please produce any correspondence, including e-mails, or recordings related to the rezoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:

    1) Tim Coulon;

    2) Aaron Broussard;

    3) Tom Wilkinson;

    4) Tim Whitmer;

    5) Henry Mouton.

**RESPONSE TO REQUEST NO. 8:**

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years. Subject to these objections, no responsive documents.

**REQUEST NO. 9:**

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to B & C Contractors, LLC's dealings with either Group Insurance Associates, Inc. or Lagniappe Industries, LLC.

**RESPONSE TO REQUEST NO. 9:**

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation.  B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit.  Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.   Subject to these objections, no responsive documents.

**REQUEST NO. 10:**

Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc., with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**RESPONSE TO REQUEST NO. 10:**

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation.  B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit.  Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, including sensitive health care and employment information.  Further, the request is overly broad and unduly

burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

## REQUEST NO. 11:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between B & C Contractors, LLC and Lagniappe Industries, LLC.

## RESPONSE TO REQUEST NO. 11:

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

## REQUEST NO. 12:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

## RESPONSE TO REQUEST NO. 12:

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is

overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 13:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 13:**

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if B & C had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 14:**

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 14:**

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if B & C had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 15:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

**RESPONSE TO REQUEST NO. 15:**

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, the request is vague, overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 16:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

**RESPONSE TO REQUEST NO. 16:**

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

**REQUEST NO. 17:**

Please produce any and all contracts you had with consultants from 2004 through present.

RESPONSE TO REQUEST NO. 17:

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

REQUEST NO. 18:

Please produce any and all contracts you have with subcontractors from 2004 through present.

RESPONSE TO REQUEST NO. 18:

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

REQUEST NO. 19:

Please provide a list of B & C Contractors, LLC's employees for the period of 2007-present.

RESPONSE TO REQUEST NO. 19:

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

REQUEST NO. 20:

Please provide a copy of all leases for office space for the period of 2007-present.

13

## RESPONSE TO REQUEST NO. 20:

B & C objects to this request because B & C has nothing to do with the subject matter of this litigation. B & C is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that B & C has any connection to the allegations raised in the suit. Even if B & C had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

Respectfully submitted:

Charles Marshall, Bar #27564
Chaffe McCall, LLP
2300 Energy Centre
1100 Poydas Street
New Orleans, LA 70163
Telephone: (504) 585-7242
marshall@chaffe.com

and

Stephen D. London, Bar #19954
1100 Poydras Street, Suite 2950
New Orleans, Louisiana 70163
Telephone No. 504-582-2427

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been duly served upon counsel for Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC by email, this 15th day of August, 2011

CHARLES MARSHALL

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.  11-2129

DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____          _____

DEPUTY CLERK

### BIG BANG PROPERTIES LLC'S
### OBJECTIONS TO PLAINTIFFS' SUBPOENA DUCES TECUM

Big Bang Properties, LLC ("BBP"), pursuant to Louisiana Code of Civil Procedure article 1354(B), respectfully submits the following objections in response to the Subpoena Duces Tecum, including the Requests made in Exhibit "A" thereto (collectively "Subpoena"), issued by plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.  These Objections are made solely for the purpose of the above-captioned lawsuit.

### GENERAL OBJECTIONS

1.    BBP objects to the Subpoena in its entirety because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit.  Even if BBP had any connection to this litigation, the Subpoena calls for the disclosure of documents and information that is not relevant to the subject matter of this action, including requests which seek information from undefined or remote time periods or from unrelated transactions that have no connection to the claims raised by the pleadings in this case.   A subpoena duces tecum request must be limited to information that is relevant or necessary to the case before the Court. *See Bank of New Orleans & Trust Co. v. Reed Printing & Custom Graphics, Ltd.*, 399 So. 2d 1260, 1261 (La. App. 4th Cir. 6/2/81) (finding that plaintiff need not comply with portions of

defendant's subpoena duces tecum which sought irrelevant information). Any information from BBP is completely irrelevant to this case, and the subpoena to BBP is wholly improper.

2.     BBP objects to the Subpoena because it did not provide a reasonable time for response. BBP did not receive the Subpoena until August 4, 2011, eleven days before the deposition date of August 15, 2011.

3.     BBP objects to the Subpoena to the extent that it requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, common interest privilege, or the work product or anticipation of litigation doctrines. Moreover, the production of any protected information pursuant to the Subpoena is inadvertent and without prejudice to BBP's right later to object that such information is protected and that production of such information was inadvertent.

5.     BBP objects to the Subpoena to the extent that it purports to impose any requirement or discovery obligation on BBP other than those set forth in the Louisiana Code of Civil Procedure.

6.     BBP objects to the subpoena to the extent that compliance would be burdensome, impose an extreme hardship on BBP, or would result in the expenditure of unnecessary time and resources.

7.     BBP objects to the Subpoena to the extent that it seeks confidential and proprietary documents or information belonging to third parties.

8.     In responding to this Subpoena, BBP does not waive and specifically reserves all general and specific objections. Additionally, BBP does not concede by responding that the information sought or provided is relevant to the subject matter of this action. Nor shall the production of any information be construed as an admission by BBP that said information is relevant, material, authentic, or otherwise admissible as evidence. BBP expressly reserves the right to object to further discovery and to the subject matter of this Subpoena, as well as to the introduction into evidence of any responses to this Subpoena.

10.     These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

2

## SPECIFIC OBJECTIONS AND RESPONSES:

### REQUEST NO. 1:

Any and all correspondence and/or emails to the following:

1) Henry Mouton;

2) Timothy Coulon;

3) Mary Coulon;

4) Timothy Whitmer;

5) Dawn Whitmer;

6) Tom Wilkinson;

7) Aaron Broussard;

8) Any employee of CWC Gaming, LLC;

9) Any employee of Lagniappe Industries, LLC;

10) Any employee of CT Investments, L.L.C.;

11) Any employee of DHP, L.L.C.;

12) Any employee of Caribe Resort Properties, L.L.C.;

13) Any employee of Caribe Resort Properties, I, L.L.C.;

14) Any employee of Coulon Consultants, L.L.C.;

15) Any employee of Learlines, L.L.C.;

16) Any employee of The Sierra Club;

17) Any employee of Zydeco Holdings, LLC;

18) Darryl Malek-Wiley;

19) David Fos;

20) Al Gandolfi;

21) Dutchie Connick;

22) Nancy Cassagne;

23) Dominick Fazzio;

24) Any member of the Jefferson Parish Council from January 1, 2007-present.

RESPONSE TO REQUEST NO. 1:

        BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

REQUEST NO. 2:

        Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between Big Bang Properties, LLC and the following individuals:

1) Timothy ("Tim") Coulon;

2) Mary Coulon;

3) Timothy ("Tim") Whitmer;

4) Dawn Whitmer;

5) Tom Wilkinson;

6) Aaron Broussard;

7) Darryl Malek-Wiley;

8) David Fos;

9) Nancy Cassagne;

10) Dominick Fazzio;

11) Henry Mouton.

RESPONSE TO REQUEST NO. 2:

        BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no

suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 3:**

The Subpoena did not contain a Request numbered 3.

**REQUEST NO. 4:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Big Bang Properties, LLC and the following companies:

1) CWC Gaming, LLC, or any employee thereof;

2) Lagniappe Industries, LLC, or any employee thereof;

3) CT Investments, LLC, or any employee thereof;

4) DHP, LLC, or any employee thereof;

5) Caribe Resort Properties, LLC, or any employee thereof;

6) Caribe Resort Properties I, LLC, or any employee thereof;

7) Coulon Consultants, LLC, or any employee thereof;

8) Learlines, LLC, or any employee thereof;

9) Sierra Club;

10) Zydeco Holdings, LLC;

11) Dangle & Associates, LLC;

12) Water Front Properties, LLC;

13) B & C Contractors, LLC;

14) Anne's Properties, LLC;

15) Willow, Inc.;

16) Ring Associates, LLC;

17) Live Oak Homes, Co.;

18) Heebe & Heebe, PLC;

19) Trout Point Lodge;

20) West Jefferson Hospital;

21) Shadow Lake Management Company, Inc.;

22) B.L.U., LLC;

23) B.L.U. 2, LLC;

24) Fred Heebe Investments;

25) River Birch, Inc.;

26) Hwy 90, LLC;

27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen percent or more.

## RESPONSE TO REQUEST NO. 4:

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

## REQUEST NO. 5:

Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Manager or Members, any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of

6

Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding Big Bang Properties, LLC, and/or any predecessor or successor entity from the date of incorporation to present.

**RESPONSE TO REQUEST NO. 5:**

   BBP objects to this request because BBP has nothing to do with the subject matter of this litigation.  BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit.  Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information from the inception of the company to the present, which is an unreasonable period of time.

**REQUEST NO. 6:**

   Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**RESPONSE TO REQUEST NO. 6:**

   BBP objects to this request because BBP has nothing to do with the subject matter of this litigation.  BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit.  Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks sensitive financial information for a period of 10 years.

**REQUEST NO. 7:**

   Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

**RESPONSE TO REQUEST NO. 7:**

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years. Subject to these objections, no responsive documents.

**REQUEST NO. 8:**

Please produce any correspondence, including e-mails, or recordings related to the rezoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:

      1) Tim Coulon;

      2) Aaron Broussard;

      3) Tom Wilkinson;

      4) Tim Whitmer;

      5) Henry Mouton.

**RESPONSE TO REQUEST NO. 8:**

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years. Subject to these objections, no responsive documents.

**REQUEST NO. 9:**

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to Big Bang Properties, LLC's dealings with either Group Insurance Associates, Inc. or Lagniappe Industries, LLC.

**RESPONSE TO REQUEST NO. 9:**

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

**REQUEST NO. 10:**

Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc., with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**RESPONSE TO REQUEST NO. 10:**

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and

information that are not relevant to the subject matter of this action, including sensitive health care and employment information. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

## REQUEST NO. 11:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Big Bang Properties, LLC and Lagniappe Industries, LLC.

## RESPONSE TO REQUEST NO. 11:

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

## REQUEST NO. 12:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

## RESPONSE TO REQUEST NO. 12:

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had

any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

REQUEST NO. 13:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

RESPONSE TO REQUEST NO. 13:

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if BBP had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

REQUEST NO. 14:

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

RESPONSE TO REQUEST NO. 14:

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if BBP had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 15:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

**RESPONSE TO REQUEST NO. 15:**

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, the request is vague, overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 16:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

**RESPONSE TO REQUEST NO. 16:**

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

**REQUEST NO. 17:**

Please produce any and all contracts you had with consultants from 2004 through present.

**RESPONSE TO REQUEST NO. 17:**

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 18:**

Please produce any and all contracts you have with subcontractors from 2004 through present.

**RESPONSE TO REQUEST NO. 18:**

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 19:**

Please provide a list of Big Bang Properties, LLC's employees for the period of 2007-present.

**RESPONSE TO REQUEST NO. 19:**

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 20:**

Please provide a copy of all leases for office space for the period of 2007-present.

**RESPONSE TO REQUEST NO. 20:**

BBP objects to this request because BBP has nothing to do with the subject matter of this litigation. BBP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BBP has any connection to the allegations raised in the suit. Even if BBP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

Respectfully submitted:

Charles Marshall, Bar #27564
Chaffe McCall, LLP
2300 Energy Centre
1100 Poydas Street
New Orleans, LA 70163
Telephone: (504) 585-7242
marshall@chaffe.com

and

Stephen D. London, Bar #19954
1100 Poydras Street, Suite 2950
New Orleans, Louisiana 70163
Telephone No. 504-582-2427

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been duly served upon counsel for Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC by email, this 15th day of August, 2011

CHARLES MARSHALL

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129

DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____

DEPUTY CLERK

B.L.U. 2, LLC'S
OBJECTIONS TO PLAINTIFFS' SUBPOENA DUCES TECUM

B.L.U. 2, LLC ("BLU 2"), pursuant to Louisiana Code of Civil Procedure article

1354(B), respectfully submits the following objections in response to the Subpoena Duces

Tecum, including the Requests made in Exhibit "A" thereto (collectively "Subpoena"), issued by

plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.

These Objections are made solely for the purpose of the above-captioned lawsuit.

GENERAL OBJECTIONS

1.      BLU 2 objects to the Subpoena in its entirety because BLU 2 has nothing to do

with the subject matter of this litigation.  BLU 2 is not mentioned in the plaintiffs' Petition for

Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in

the suit.  Even if BLU 2 had any connection to this litigation, the Subpoena calls for the

disclosure of documents and information that is not relevant to the subject matter of this action,

including requests which seek information from undefined or remote time periods or from

unrelated transactions that have no connection to the claims raised by the pleadings in this case.

A subpoena duces tecum request must be limited to information that is relevant or necessary to

the case before the Court.  *See Bank of New Orleans & Trust Co. v. Reed Printing & Custom

Graphics, Ltd.*, 399 So. 2d 1260, 1261 (La. App. 4th Cir. 6/2/81) (finding that plaintiff need not

comply  with  portions  of  defendant's  subpoena  duces  tecum  which  sought  irrelevant

information).   Any information from BLU 2 is completely irrelevant to this case, and the subpoena to BLU 2 is wholly improper.

2.     BLU 2 objects to the Subpoena because it did not provide a reasonable time for response.  BLU 2 did not receive the Subpoena until August 4, 2011, eleven days before the deposition date of August 15, 2011.

3.     BLU 2 objects to the Subpoena to the extent that it requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, common interest privilege, or the work product or anticipation of litigation doctrines. Moreover, the production of any protected information pursuant to the Subpoena is inadvertent and without prejudice to BLU 2's right later to object that such information is protected and that production of such information was inadvertent.

5.     BLU 2 objects to the Subpoena to the extent that it purports to impose any requirement or discovery obligation on BLU 2 other than those set forth in the Louisiana Code of Civil Procedure.

6.     BLU 2 objects to the subpoena to the extent that compliance would be burdensome, impose an extreme hardship on BLU 2, or would result in the expenditure of unnecessary time and resources.

7.     BLU 2 objects to the Subpoena to the extent that it seeks confidential and proprietary documents or information belonging to third parties.

8.     In responding to this Subpoena, BLU 2 does not waive and specifically reserves all general and specific objections.  Additionally, BLU 2 does not concede by responding that the information sought or provided is relevant to the subject matter of this action.  Nor shall the production of any information be construed as an admission by BLU 2 that said information is relevant, material, authentic, or otherwise admissible as evidence.  BLU 2 expressly reserves the right to object to further discovery and to the subject matter of this Subpoena, as well as to the introduction into evidence of any responses to this Subpoena.

10.    These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

## SPECIFIC OBJECTIONS AND RESPONSES:

REQUEST NO. 1:

Any and all correspondence and/or emails to the following:

1) Henry Mouton;

2) Timothy Coulon;

3) Mary Coulon;

4) Timothy Whitmer;

5) Dawn Whitmer;

6) Tom Wilkinson;

7) Aaron Broussard;

8) Any employee of CWC Gaming, LLC;

9) Any employee of Lagniappe Industries, LLC;

10) Any employee of CT Investments, L.L.C.;

11) Any employee of DHP, L.L.C.;

12) Any employee of Caribe Resort Properties, L.L.C.;

13) Any employee of Caribe Resort Properties, I, L.L.C.;

14) Any employee of Coulon Consultants, L.L.C.;

15) Any employee of Learlines, L.L.C.;

16) Any employee of The Sierra Club;

17) Any employee of Zydeco Holdings, LLC;

18) Darryl Malek-Wiley;

19) David Fos;

20) Al Gandolfi;

21) Dutchie Connick;

22) Nancy Cassagne;

23) Dominick Fazzio;

24) Any member of the Jefferson Parish Council from January 1, 2007-present.

**RESPONSE TO REQUEST NO. 1:**

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 2:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between B.L.U. 2, LLC and the following individuals:

1) Timothy ("Tim") Coulon;

2) Mary Coulon;

3) Timothy ("Tim") Whitmer;

4) Dawn Whitmer;

5) Tom Wilkinson;

6) Aaron Broussard;

7) Darryl Malek-Wiley;

8) David Fos;

9) Nancy Cassagne;

10) Dominick Fazzio;

11) Henry Mouton.

**RESPONSE TO REQUEST NO. 2:**

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and

there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

## REQUEST NO. 3:

The Subpoena did not contain a Request numbered 3.

## REQUEST NO. 4:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between B.L.U. 2, LLC and the following companies:

1) CWC Gaming, LLC, or any employee thereof;

2) Lagniappe Industries, LLC, or any employee thereof;

3) CT Investments, LLC, or any employee thereof;

4) DHP, LLC, or any employee thereof;

5) Caribe Resort Properties, LLC, or any employee thereof;

6) Caribe Resort Properties I, LLC, or any employee thereof;

7) Coulon Consultants, LLC, or any employee thereof;

8) Learlines, LLC, or any employee thereof;

9) Sierra Club;

10) Zydeco Holdings, LLC;

11) Dangle & Associates, LLC;

12) Water Front Properties, LLC;

13) B & C Contractors, LLC;

14) Anne's Properties, LLC;

15) Willow, Inc.;

16) Ring Associates, LLC;

17) Big Bang Properties, LLC;

18) Heebe & Heebe, PLC;

19) Trout Point Lodge;

20) West Jefferson Hospital;

21) Live Oak Homes, Co.;

22) B.L.U., LLC;

23) Shadow Lake Management Co., Inc.;

24) Fred Heebe Investments;

25) River Birch, Inc.;

26) Hwy 90, LLC;

27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen percent or more.

**RESPONSE TO REQUEST NO. 4:**

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 5:**

Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Manager or Members, any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of

Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding B.L.U. 2, LLC, and/or any predecessor or successor entity from the date of incorporation to present.

RESPONSE TO REQUEST NO. 5:

      BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information from the inception of the company to the present, which is an unreasonable period of time.

REQUEST NO. 6:

      Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

RESPONSE TO REQUEST NO. 6:

      BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks sensitive financial information for a period of 10 years.

REQUEST NO. 7:

      Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

RESPONSE TO REQUEST NO. 7:

      BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and

there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years. Subject to these objections, no responsive documents.

**REQUEST NO. 8:**

Please produce any correspondence, including e-mails, or recordings related to the rezoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:

    1) Tim Coulon;

    2) Aaron Broussard;

    3) Tom Wilkinson;

    4) Tim Whitmer;

    5) Henry Mouton.

**RESPONSE TO REQUEST NO. 8:**

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years. Subject to these objections, no responsive documents.

**REQUEST NO. 9:**

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to B.L.U. 2, LLC's dealings with either Group Insurance Associates, Inc. or Lagniappe Industries, LLC.

**RESPONSE TO REQUEST NO. 9:**

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

**REQUEST NO. 10:**

Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc., with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**RESPONSE TO REQUEST NO. 10:**

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, including sensitive health care and employment information. Further, the request is overly broad and unduly

burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

**REQUEST NO. 11:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between B.L.U. 2, LLC and Lagniappe Industries, LLC.

**RESPONSE TO REQUEST NO. 11:**

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 12:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

**RESPONSE TO REQUEST NO. 12:**

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is

overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

## REQUEST NO. 13:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

## RESPONSE TO REQUEST NO. 13:

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs'. Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if BLU 2 had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

## REQUEST NO. 14:

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

## RESPONSE TO REQUEST NO. 14:

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if BLU 2 had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

## REQUEST NO. 15:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

## RESPONSE TO REQUEST NO. 15:

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation.  BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit.  Even if BLU 2 had any connection to this litigation, the request is vague, overly broad and unduly burdensome because it seeks information for an undefined time period.  Subject to these objections, no responsive documents.

## REQUEST NO. 16:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

## RESPONSE TO REQUEST NO. 16:

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation.  BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit.  Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.  Subject to these objections, no responsive documents.

## REQUEST NO. 17:

Please produce any and all contracts you had with consultants from 2004 through present.

**RESPONSE TO REQUEST NO. 17:**

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 18:**

Please produce any and all contracts you have with subcontractors from 2004 through present.

**RESPONSE TO REQUEST NO. 18:**

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 19:**

Please provide a list of B.L.U. 2, LLC's employees for the period of 2007-present.

**RESPONSE TO REQUEST NO. 19:**

BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation. BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit. Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 20:**

Please provide a copy of all leases for office space for the period of 2007-present.

**RESPONSE TO REQUEST NO. 20:**

   BLU 2 objects to this request because BLU 2 has nothing to do with the subject matter of this litigation.  BLU 2 is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU 2 has any connection to the allegations raised in the suit.  Even if BLU 2 had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome.  Subject to these objections, no responsive documents.

         Respectfully submitted:

         _____
         Charles Marshall, Bar # 27564
         Chaffe McCall, LLP
         2300 Energy Centre
         1100 Poydas Street
         New Orleans, LA  70163
         Telephone: (504) 585-7242
         marshall@chaffe.com

         and

         Stephen D. London, Bar #19954
         1100 Poydras Street, Suite 2950
         New Orleans, Louisiana 70163
         Telephone No. 504-582-2427

**CERTIFICATE OF SERVICE**

   I hereby certify that a copy of the above and foregoing pleading has been duly served upon counsel for Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC by email, this 15th day of August, 2011

         _____
         CHARLES MARSHALL

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                            DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____            _____
                                                DEPUTY CLERK

B.L.U., LLC'S
OBJECTIONS TO PLAINTIFFS' SUBPOENA DUCES TECUM

B.L.U., LLC ("BLU"), pursuant to Louisiana Code of Civil Procedure article

1354(B), respectfully submits the following objections in response to the Subpoena Duces

Tecum, including the Requests made in Exhibit "A" thereto (collectively "Subpoena"), issued by

plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.

These Objections are made solely for the purpose of the above-captioned lawsuit.

GENERAL OBJECTIONS

1.      BLU objects to the Subpoena in its entirety because BLU has nothing to do with

the subject matter of this litigation.  BLU is not mentioned in the plaintiffs' Petition for

Damages, and there is no suggestion that BLU has any connection to the allegations raised in the

suit.  Even if BLU had any connection to this litigation, the Subpoena calls for the disclosure of

documents and information that is not relevant to the subject matter of this action, including

requests which seek information from undefined or remote time periods or from unrelated

transactions that have no connection to the claims raised by the pleadings in this case.    A

subpoena duces tecum request must be limited to information that is relevant or necessary to the

case before the Court.  *See Bank of New Orleans & Trust Co. v. Reed Printing & Custom

Graphics, Ltd.*, 399 So. 2d 1260, 1261 (La. App. 4th Cir. 6/2/81) (finding that plaintiff need not

comply with portions of defendant's subpoena duces tecum which sought irrelevant

information). Any information from BLU is completely irrelevant to this case, and the subpoena to BLU is wholly improper.

2.    BLU objects to the Subpoena because it did not provide a reasonable time for response. BLU did not receive the Subpoena until August 4, 2011, eleven days before the deposition date of August 15, 2011.

3.    BLU objects to the Subpoena to the extent that it requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, common interest privilege, or the work product or anticipation of litigation doctrines. Moreover, the production of any protected information pursuant to the Subpoena is inadvertent and without prejudice to BLU's right later to object that such information is protected and that production of such information was inadvertent.

5.    BLU objects to the Subpoena to the extent that it purports to impose any requirement or discovery obligation on BLU other than those set forth in the Louisiana Code of Civil Procedure.

6.    BLU objects to the subpoena to the extent that compliance would be burdensome, impose an extreme hardship on BLU, or would result in the expenditure of unnecessary time and resources.

7.    BLU objects to the Subpoena to the extent that it seeks confidential and proprietary documents or information belonging to third parties.

8.    In responding to this Subpoena, BLU does not waive and specifically reserves all general and specific objections. Additionally, BLU does not concede by responding that the information sought or provided is relevant to the subject matter of this action. Nor shall the production of any information be construed as an admission by BLU that said information is relevant, material, authentic, or otherwise admissible as evidence. BLU expressly reserves the right to object to further discovery and to the subject matter of this Subpoena, as well as to the introduction into evidence of any responses to this Subpoena.

10.    These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

## SPECIFIC OBJECTIONS AND RESPONSES:

### REQUEST NO. 1:

Any and all correspondence and/or emails to the following:

1) Henry Mouton;

2) Timothy Coulon;

3) Mary Coulon;

4) Timothy Whitmer;

5) Dawn Whitmer;

6) Tom Wilkinson;

7) Aaron Broussard;

8) Any employee of CWC Gaming, LLC;

9) Any employee of Lagniappe Industries, LLC;

10) Any employee of CT Investments, L.L.C.;

11) Any employee of DHP, L.L.C.;

12) Any employee of Caribe Resort Properties, L.L.C.;

13) Any employee of Caribe Resort Properties, I, L.L.C.;

14) Any employee of Coulon Consultants, L.L.C.;

15) Any employee of Learlines, L.L.C.;

16) Any employee of The Sierra Club;

17) Any employee of Zydeco Holdings, LLC;

18) Darryl Malek-Wiley;

19) David Fos;

20) Al Gandolfi;

21) Dutchie Connick;

22) Nancy Cassagne;

23) Dominick Fazzio;

24) Any member of the Jefferson Parish Council from January 1, 2007-present.

**RESPONSE TO REQUEST NO. 1:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 2:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between B.L.U., LLC and the following individuals:

1) Timothy ("Tim") Coulon;

2) Mary Coulon;

3) Timothy ("Tim") Whitmer;

4) Dawn Whitmer;

5) Tom Wilkinson;

6) Aaron Broussard;

7) Darryl Malek-Wiley;

8) David Fos;

9) Nancy Cassagne;

10) Dominick Fazzio;

11) Henry Mouton.

**RESPONSE TO REQUEST NO. 2:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU

had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 3:**

   The Subpoena did not contain a Request numbered 3.

**REQUEST NO. 4:**

   Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between B.L.U., LLC and the following companies:

   1) CWC Gaming, LLC, or any employee thereof;

   2) Lagniappe Industries, LLC, or any employee thereof;

   3) CT Investments, LLC, or any employee thereof;

   4) DHP, LLC, or any employee thereof;

   5) Caribe Resort Properties, LLC, or any employee thereof;

   6) Caribe Resort Properties I, LLC, or any employee thereof;

   7) Coulon Consultants, LLC, or any employee thereof;

   8) Learlines, LLC, or any employee thereof;

   9) Sierra Club;

   10) Zydeco Holdings, LLC;

   11) Dangle & Associates, LLC;

   12) Water Front Properties, LLC;

   13) B & C Contractors, LLC;

   14) Anne's Properties, LLC;

   15) Willow, Inc.;

   16) Ring Associates, LLC;

17) Big Bang Properties, LLC;

18) Heebe & Heebe, PLC;

19) Trout Point Lodge;

20) West Jefferson Hospital;

21) Live Oak Homes, Co.;

22) B.L.U. 2, LLC;

23) Shadow Lake Management Co., Inc.;

24) Fred Heebe Investments;

25) River Birch, Inc.;

26) Hwy 90, LLC;

27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen percent or more.

## RESPONSE TO REQUEST NO. 4:

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

## REQUEST NO. 5:

Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Manager or Members, any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or

Application for Registration of Name, Change of Members and/or Managers, regarding B.L.U., LLC, and/or any predecessor or successor entity from the date of incorporation to present.

**RESPONSE TO REQUEST NO. 5:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information from the inception of the company to the present, which is an unreasonable period of time.

**REQUEST NO. 6:**

Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

**RESPONSE TO REQUEST NO. 6:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks sensitive financial information for a period of 10 years.

**REQUEST NO. 7:**

Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

**RESPONSE TO REQUEST NO. 7:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU

had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years. Subject to these objections, no responsive documents.

**REQUEST NO. 8:**

Please produce any correspondence, including e-mails, or recordings related to the rezoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:

        1) Tim Coulon;

        2) Aaron Broussard;

        3) Tom Wilkinson;

        4) Tim Whitmer;

        5) Henry Mouton.

**RESPONSE TO REQUEST NO. 8:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years. Subject to these objections, no responsive documents.

**REQUEST NO. 9:**

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to B.L.U., LLC's dealings with either Group Insurance Associates, Inc. or Lagniappe Industries, LLC.

**RESPONSE TO REQUEST NO. 9:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

**REQUEST NO. 10:**

Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc., with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**RESPONSE TO REQUEST NO. 10:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, including sensitive health care and employment information. Further, the request is overly broad and unduly burdensome

because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

REQUEST NO. 11:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between B.L.U., LLC and Lagniappe Industries, LLC.

RESPONSE TO REQUEST NO. 11:

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

REQUEST NO. 12:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

RESPONSE TO REQUEST NO. 12:

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is

overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 13:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 13:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if BLU had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 14:**

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 14:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if BLU had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

REQUEST NO. 15:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

RESPONSE TO REQUEST NO. 15:

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, the request is vague, overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

REQUEST NO. 16:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

RESPONSE TO REQUEST NO. 16:

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

REQUEST NO. 17:

Please produce any and all contracts you had with consultants from 2004 through present.

**RESPONSE TO REQUEST NO. 17:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 18:**

Please produce any and all contracts you have with subcontractors from 2004 through present.

**RESPONSE TO REQUEST NO. 18:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 19:**

Please provide a list of B.L.U., LLC's employees for the period of 2007-present.

**RESPONSE TO REQUEST NO. 19:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 20:**

Please provide a copy of all leases for office space for the period of 2007-present.

**RESPONSE TO REQUEST NO. 20:**

BLU objects to this request because BLU has nothing to do with the subject matter of this litigation. BLU is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that BLU has any connection to the allegations raised in the suit. Even if BLU had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

Respectfully submitted:

Charles Marshall, Bar #27564
Chaffe McCall, LLP
2300 Energy Centre
1100 Poydas Street
New Orleans, LA 70163
Telephone: (504) 585-7242
marshall@chaffe.com

and

Stephen D. London, Bar #19954
1100 Poydras Street, Suite 2950
New Orleans, Louisiana 70163
Telephone No. 504-582-2427

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been duly served upon counsel for Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC by email, this 15th day of August, 2011

CHARLES MARSHALL

14

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                                    DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____        _____
                                                              DEPUTY CLERK

DANGLE & ASSOCIATES, LLC'S
OBJECTIONS TO PLAINTIFFS' SUBPOENA DUCES TECUM

Dangle & Associates, LLC ("D & A"), pursuant to Louisiana Code of Civil Procedure article 1354(B), respectfully submits the following objections in response to the Subpoena Duces Tecum, including the Requests made in Exhibit "A" thereto (collectively "Subpoena"), issued by plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC. These Objections are made solely for the purpose of the above-captioned lawsuit.

GENERAL OBJECTIONS

1.     D & A objects to the Subpoena in its entirety because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, the Subpoena calls for the disclosure of documents and information that is not relevant to the subject matter of this action, including requests which seek information from undefined or remote time periods or from unrelated transactions that have no connection to the claims raised by the pleadings in this case. A subpoena duces tecum request must be limited to information that is relevant or necessary to the case before the Court. *See Bank of New Orleans & Trust Co. v. Reed Printing & Custom Graphics, Ltd.*, 399 So. 2d 1260, 1261 (La. App. 4th Cir. 6/2/81) (finding that plaintiff need not comply with portions of defendant's subpoena duces tecum which sought irrelevant

information).   Any information from D & A is completely irrelevant to this case, and the subpoena to D & A is wholly improper.

2.      D & A objects to the Subpoena because it did not provide a reasonable time for response.  D & A did not receive the Subpoena until August 4, 2011, eleven days before the deposition date of August 15, 2011.

3.      D & A objects to the Subpoena to the extent that it requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, common interest privilege, or the work product or anticipation of litigation doctrines. Moreover, the production of any protected information pursuant to the Subpoena is inadvertent and without prejudice to D & A's right later to object that such information is protected and that production of such information was inadvertent.

5.      D & A objects to the Subpoena to the extent that it purports to impose any requirement or discovery obligation on D & A other than those set forth in the Louisiana Code of Civil Procedure.

6.      D & A objects to the subpoena to the extent that compliance would be burdensome, impose an extreme hardship on D & A, or would result in the expenditure of unnecessary time and resources.

7.      D & A objects to the Subpoena to the extent that it seeks confidential and proprietary documents or information belonging to third parties.

8.      In responding to this Subpoena, D & A does not waive and specifically reserves all general and specific objections.  Additionally, D & A does not concede by responding that the information sought or provided is relevant to the subject matter of this action.  Nor shall the production of any information be construed as an admission by D & A that said information is relevant, material, authentic, or otherwise admissible as evidence.  D & A expressly reserves the right to object to further discovery and to the subject matter of this Subpoena, as well as to the introduction into evidence of any responses to this Subpoena.

10.     These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

## SPECIFIC OBJECTIONS AND RESPONSES:

**REQUEST NO. 1:**

Any and all correspondence and/or emails to the following:

1) Henry Mouton;

2) Timothy Coulon;

3) Mary Coulon;

4) Timothy Whitmer;

5) Dawn Whitmer;

6) Tom Wilkinson;

7) Aaron Broussard;

8) Any employee of CWC Gaming, LLC;

9) Any employee of Lagniappe Industries, LLC;

10) Any employee of CT Investments, L.L.C.;

11) Any employee of DHP, L.L.C.;

12) Any employee of Caribe Resort Properties, L.L.C.;

13) Any employee of Caribe Resort Properties, I, L.L.C.;

14) Any employee of Coulon Consultants, L.L.C.;

15) Any employee of Learlines, L.L.C.;

16) Any employee of The Sierra Club;

17) Any employee of Zydeco Holdings, LLC;

18) Darryl Malek-Wiley;

19) David Fos;

20) Al Gandolfi;

21) Dutchie Connick;

22) Nancy Cassagne;

23) Dominick Fazzio;

24) Any member of the Jefferson Parish Council from January 1, 2007-present.

3

## RESPONSE TO REQUEST NO. 1:

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation.  D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit.  Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

## REQUEST NO. 2:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between Dangle & Associates and Henry M. Mouton, including copies of the following checks:

1) Check No. 1042, dated December 24, 2007 in the amount of $4,000.00 made out to Henry M. Mouton.

2) Check No. 1043, dated December 26, 2003 in the amount of $2,500.00 made out to Henry M. Mouton.

3) Check No. 1044, dated December 26, 2003 in the amount of $2,500.00 made out to Henry M. Mouton.

4) Check No. 1045, dated December 26, 2003 in the amount of $500.00 made out to Henry M. Mouton.

## RESPONSE TO REQUEST NO. 2:

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation.  D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit.  Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is

overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

## REQUEST NO. 3:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between Dangle & Associates and the following individuals:

1) Timothy ("Tim") Coulon;

2) Mary Coulon;

3) Timothy ("Tim") Whitmer;

4) Dawn Whitmer;

5) Tom Wilkinson;

6) Aaron Broussard;

7) Darryl Malek-Wiley;

8) David Fos;

9) Nancy Cassagne;

10) Dominick Fazzio;

11) Henry Mouton.

## RESPONSE TO REQUEST NO. 3:

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

## REQUEST NO. 4:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Dangle & Associates, LLC and the following companies:

1) CWC Gaming, LLC, or any employee thereof;

2) Lagniappe Industries, LLC, or any employee thereof;

3) CT Investments, LLC, or any employee thereof;

4) DHP, LLC, or any employee thereof;

5) Caribe Resort Properties, LLC, or any employee thereof;

6) Caribe Resort Properties I, LLC, or any employee thereof;

7) Coulon Consultants, LLC, or any employee thereof;

8) Learlines, LLC, or any employee thereof;

9) Sierra Club;

10) Zydeco Holdings, LLC;

11) Water Front Properties, LLC

12) Ring Associates, LLC;

13) B & C Contractors, LLC;

14) Anne's Properties, LLC;

15) Willow, Inc.;

16) Big Bang Properties, LLC;

17) Live Oak Homes Co.;

18) Heebe & Heebe, PLC;

19) Trout Point Lodge;

20) West Jefferson Hospital;

21) Shadowlake Management Company, Inc.;

22) B.L.U., LLC;

23) B.L.U. 2., LLC;

24) Fred Heebe Investments;

25) River Birch, Inc.;

26) Hwy 90, LLC;

27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen percent or more.

**RESPONSE TO REQUEST NO. 4:**

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 5:**

Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Manager or Members, any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding Dangle & Associates, and/or any predecessor or successor entity from the date of incorporation to present.

**RESPONSE TO REQUEST NO. 5:**

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and

there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information from the inception of the company to the present, which is an unreasonable period of time.

## REQUEST NO. 6:

Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

## RESPONSE TO REQUEST NO. 6:

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks sensitive financial information for a period of 10 years.

## REQUEST NO. 7:

Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

## RESPONSE TO REQUEST NO. 7:

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it

seeks information for a period of 15 years.   Subject to these objections, no responsive documents.

## REQUEST NO. 8:

Please produce any correspondence, including e-mails, or recordings related to the rezoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:

      1) Tim Coulon;

      2) Aaron Broussard;

      3) Tom Wilkinson;

      4) Tim Whitmer;

      5) Henry Mouton.

## RESPONSE TO REQUEST NO. 8:

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation.  D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit.  Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years.   Subject to these objections, no responsive documents.

**REQUEST NO. 9:**

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to Dangle & Associates' dealings with either Group Insurance Associates, Inc. or Lagniappe Industries, LLC.

**RESPONSE TO REQUEST NO. 9:**

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

**REQUEST NO. 10:**

Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc., with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**RESPONSE TO REQUEST NO. 10:**

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, including sensitive health care and employment information. Further, the request is overly broad and unduly

burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

## REQUEST NO. 11:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Dangle & Associates and Lagniappe Industries, LLC.

## RESPONSE TO REQUEST NO. 11:

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

## REQUEST NO. 12:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

## RESPONSE TO REQUEST NO. 12:

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is

overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

REQUEST NO. 13:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

RESPONSE TO REQUEST NO. 13:

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if D & A had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

REQUEST NO. 14:

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

RESPONSE TO REQUEST NO. 14:

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if D & A had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 15:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

**RESPONSE TO REQUEST NO. 15:**

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, the request is vague, overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 16:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

**RESPONSE TO REQUEST NO. 16:**

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

**REQUEST NO. 17:**

Please produce any and all contracts you had with consultants from 2004 through present.

**RESPONSE TO REQUEST NO. 17:**

      D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 18:**

      Please produce any and all contracts you have with subcontractors from 2004 through present.

**RESPONSE TO REQUEST NO. 18:**

      D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 19:**

      Please provide a list of Dangle & Associates' employees for the period of 2007-present.

**RESPONSE TO REQUEST NO. 19:**

      D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 20:**

      Please provide a copy of all leases for office space for the period of 2007-present.

**RESPONSE TO REQUEST NO. 20:**

D & A objects to this request because D & A has nothing to do with the subject matter of this litigation. D & A is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that D & A has any connection to the allegations raised in the suit. Even if D & A had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

Respectfully submitted:

Charles Marshall, Bar #27564
Chaffe McCall, LLP
2300 Energy Centre
1100 Poydas Street
New Orleans, LA 70163
Telephone: (504) 585-7242
marshall@chaffe.com

and

Stephen D. London, Bar #19954
1100 Poydras Street, Suite 2950
New Orleans, Louisiana 70163
Telephone No. 504-582-2427

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been duly served upon counsel for Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC by email, this 15th day of August, 2011

CHARLES MARSHALL

15

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                        DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____        _____
                                                  DEPUTY CLERK

### WATER FRONT PROPERTIES LLC'S
### OBJECTIONS TO PLAINTIFFS' SUBPOENA DUCES TECUM

Water Front Properties, LLC ("WFP"), pursuant to Louisiana Code of Civil

Procedure article 1354(B), respectfully submits the following objections in response to the

Subpoena Duces Tecum, including the Requests made in Exhibit "A" thereto (collectively

"Subpoena"), issued by plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of

Plaquemines, LLC.  These Objections are made solely for the purpose of the above-captioned

lawsuit.

### GENERAL OBJECTIONS

1.      WFP objects to the Subpoena in its entirety because WFP has nothing to do with

the subject matter of this litigation.  WFP is not mentioned in the plaintiffs' Petition for

Damages, and there is no suggestion that WFP has any connection to the allegations raised in the

suit.  Even if WFP had any connection to this litigation, the Subpoena calls for the disclosure of

documents and information that is not relevant to the subject matter of this action, including

requests which seek information from undefined or remote time periods or from unrelated

transactions that have no connection to the claims raised by the pleadings in this case.    A

subpoena duces tecum request must be limited to information that is relevant or necessary to the

case before the Court.  *See Bank of New Orleans & Trust Co. v. Reed Printing & Custom

Graphics, Ltd.*, 399 So. 2d 1260, 1261 (La. App. 4th Cir. 6/2/81) (finding that plaintiff need not

comply with portions of defendant's subpoena duces tecum which sought irrelevant

information).  Any information from WFP is completely irrelevant to this case, and the subpoena to WFP is wholly improper.

2.      WFP objects to the Subpoena because it did not provide a reasonable time for response.  WFP did not receive the Subpoena until August 4, 2011, eleven days before the deposition date of August 15, 2011.

3.      WFP objects to the Subpoena to the extent that it requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, common interest privilege, or the work product or anticipation of litigation doctrines.  Moreover, the production of any protected information pursuant to the Subpoena is inadvertent and without prejudice to WFP's right later to object that such information is protected and that production of such information was inadvertent.

5.      WFP objects to the Subpoena to the extent that it purports to impose any requirement or discovery obligation on WFP other than those set forth in the Louisiana Code of Civil Procedure.

6.      WFP objects to the subpoena to the extent that compliance would be burdensome, impose an extreme hardship on WFP, or would result in the expenditure of unnecessary time and resources.

7.      WFP objects to the Subpoena to the extent that it seeks confidential and proprietary documents or information belonging to third parties.

8.      In responding to this Subpoena, WFP does not waive and specifically reserves all general and specific objections.  Additionally, WFP does not concede by responding that the information sought or provided is relevant to the subject matter of this action.  Nor shall the production of any information be construed as an admission by WFP that said information is relevant, material, authentic, or otherwise admissible as evidence.  WFP expressly reserves the right to object to further discovery and to the subject matter of this Subpoena, as well as to the introduction into evidence of any responses to this Subpoena.

10.     These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

<u>SPECIFIC OBJECTIONS AND RESPONSES:</u>

<u>REQUEST NO. 1:</u>

Any and all correspondence and/or emails to the following:

1) Henry Mouton;

2) Timothy Coulon;

3) Mary Coulon;

4) Timothy Whitmer;

5) Dawn Whitmer;

6) Tom Wilkinson;

7) Aaron Broussard;

8) Any employee of CWC Gaming, LLC;

9) Any employee of Lagniappe Industries, LLC;

10) Any employee of CT Investments, L.L.C.;

11) Any employee of DHP, L.L.C.;

12) Any employee of Caribe Resort Properties, L.L.C.;

13) Any employee of Caribe Resort Properties, I, L.L.C.;

14) Any employee of Coulon Consultants, L.L.C.;

15) Any employee of Learlines, L.L.C.;

16) Any employee of The Sierra Club;

17) Any employee of Zydeco Holdings, LLC;

18) Darryl Malek-Wiley;

19) David Fos;

20) Al Gandolfi;

21) Dutchie Connick;

22) Nancy Cassagne;

23) Dominick Fazzio;

24) Any member of the Jefferson Parish Council from January 1, 2007-present.

RESPONSE TO REQUEST NO. 1:

WFP objects to this request because WFP has nothing to do with the subject matter of this litigation.  WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit.  Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

REQUEST NO. 2:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between Water Front Properties, LLC and the following individuals:

1) Timothy ("Tim") Coulon;

2) Mary Coulon;

3) Timothy ("Tim") Whitmer;

4) Dawn Whitmer;

5) Tom Wilkinson;

6) Aaron Broussard;

7) Darryl Malek-Wiley;

8) David Fos;

9) Nancy Cassagne;

10) Dominick Fazzio;

11) Henry Mouton.

RESPONSE TO REQUEST NO. 2:

WFP objects to this request because WFP has nothing to do with the subject matter of this litigation.  WFP is not mentioned in the plaintiffs' Petition for Damages, and there

is no suggestion that WFP has any connection to the allegations raised in the suit.  Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 3:**

The Subpoena does not contain a Request numbered 3.

**REQUEST NO. 4:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Water Front Properties, LLC and the following companies:

1) CWC Gaming, LLC, or any employee thereof;

2) Lagniappe Industries, LLC, or any employee thereof;

3) CT Investments, LLC, or any employee thereof;

4) DHP, LLC, or any employee thereof;

5) Caribe Resort Properties, LLC, or any employee thereof;

6) Caribe Resort Properties I, LLC, or any employee thereof;

7) Coulon Consultants, LLC, or any employee thereof;

8) Learlines, LLC, or any employee thereof;

9) Sierra Club;

10) Zydeco Holdings, LLC;

11) Dangle & Associates, LLC;

12) Ring Associates, LLC;

13) B & C Contractors, LLC;

14) Anne's Properties, LLC;

15) Willow, Inc.;

16) Big Bang Properties, LLC;

17) Live Oak Homes, Co.;

18) Heebe & Heebe, PLC;

19) Trout Point Lodge;

20) West Jefferson Hospital;

21) Shadow Lake Management Company, Inc.;

22) B.L.U., LLC;

23) B.L.U. 2, LLC;

24) Fred Heebe Investments;

25) River Birch, Inc.;

26) Hwy 90, LLC;

27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen percent or more.

## RESPONSE TO REQUEST NO. 4:

WFP objects to this request because WFP has nothing to do with the subject matter of this litigation. WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit. Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

## REQUEST NO. 5:

Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Manager or Members, any and all documents submitted to the Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of

Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding Water Front Properties, LLC, and/or any predecessor or successor entity from the date of incorporation to present.

RESPONSE TO REQUEST NO. 5:

      WFP objects to this request because WFP has nothing to do with the subject matter of this litigation. WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit. Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information from the inception of the company to the present, which is an unreasonable period of time.

REQUEST NO. 6:

      Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

RESPONSE TO REQUEST NO. 6:

      WFP objects to this request because WFP has nothing to do with the subject matter of this litigation. WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit. Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks sensitive financial information for a period of 10 years.

REQUEST NO. 7:

      Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

**RESPONSE TO REQUEST NO. 7:**

       WFP objects to this request because WFP has nothing to do with the subject matter of this litigation. WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit. Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years. Subject to these objections, no responsive documents.

**REQUEST NO. 8:**

       Please produce any correspondence, including e-mails, or recordings related to the rezoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:

           1) Tim Coulon;

           2) Aaron Broussard;

           3) Tom Wilkinson;

           4) Tim Whitmer;

           5) Henry Mouton.

**RESPONSE TO REQUEST NO. 8:**

       WFP objects to this request because WFP has nothing to do with the subject matter of this litigation. WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit. Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009. Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years. Subject to these objections, no responsive documents.

**REQUEST NO. 9:**

       Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to Water Front Properties, LLC's dealings with either Group Insurance Associates, Inc. or Lagniappe Industries, LLC.

**RESPONSE TO REQUEST NO. 9:**

       WFP objects to this request because WFP has nothing to do with the subject matter of this litigation.  WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit.  Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.  Subject to these objections, no responsive documents.

**REQUEST NO. 10:**

       Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc., with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

**RESPONSE TO REQUEST NO. 10:**

       WFP objects to this request because WFP has nothing to do with the subject matter of this litigation.  WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit.  Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and

information that are not relevant to the subject matter of this action, including sensitive health care and employment information. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

**REQUEST NO. 11:**

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Water Front Properties, LLC and Lagniappe Industries, LLC.

**RESPONSE TO REQUEST NO. 11:**

WFP objects to this request because WFP has nothing to do with the subject matter of this litigation. WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit. Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 12:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

**RESPONSE TO REQUEST NO. 12:**

WFP objects to this request because WFP has nothing to do with the subject matter of this litigation. WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit. Even if WFP

had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 13:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 13:**

WFP objects to this request because WFP has nothing to do with the subject matter of this litigation.  WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs.  Even if WFP had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period.  Subject to these objections, no responsive documents.

**REQUEST NO. 14:**

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 14:**

WFP objects to this request because WFP has nothing to do with the subject matter of this litigation.  WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs.  Even if WFP had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period.  Subject to these objections, no responsive documents.

**REQUEST NO. 15:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

**RESPONSE TO REQUEST NO. 15:**

WFP objects to this request because WFP has nothing to do with the subject matter of this litigation. WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit. Even if WFP had any connection to this litigation, the request is vague, overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 16:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

**RESPONSE TO REQUEST NO. 16:**

WFP objects to this request because WFP has nothing to do with the subject matter of this litigation. WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit. Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

**REQUEST NO. 17:**

Please produce any and all contracts you had with consultants from 2004 through present.

**RESPONSE TO REQUEST NO. 17:**

WFP objects to this request because WFP has nothing to do with the subject matter of this litigation. WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit. Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 18:**

Please produce any and all contracts you have with subcontractors from 2004 through present.

**RESPONSE TO REQUEST NO. 18:**

WFP objects to this request because WFP has nothing to do with the subject matter of this litigation. WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit. Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 19:**

Please provide a list of Water Front Properties, LLC's employees for the period of 2007-present.

**RESPONSE TO REQUEST NO. 19:**

WFP objects to this request because WFP has nothing to do with the subject matter of this litigation. WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit. Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

**REQUEST NO. 20:**

Please provide a copy of all leases for office space for the period of 2007-present.

**RESPONSE TO REQUEST NO. 20:**

WFP objects to this request because WFP has nothing to do with the subject matter of this litigation.  WFP is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that WFP has any connection to the allegations raised in the suit.  Even if WFP had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome.  Subject to these objections, no responsive documents.

Respectfully submitted:

Charles Marshall, Bar #27564
Chaffe McCall, LLP
2300 Energy Centre
1100 Poydas Street
New Orleans, LA 70163
Telephone: (504) 585-7242
marshall@chaffe.com

and

Stephen D. London, Bar #19954
1100 Poydras Street, Suite 2950
New Orleans, Louisiana 70163
Telephone No. 504-582-2427

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been duly served upon counsel for Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC. by email, this 15th day of August, 2011

CHARLES MARSHALL

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.  11-2129                                    DIVISION "D-16"

CONCRETE BUSTERS OF LOUISIANA, INC. and
WASTE REMEDIATION OF PLAQUEMINES, LLC

VS.

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED and HWY 90, LLC

FILED: _____          _____
                                                 DEPUTY CLERK

RING ASSOCIATES, LLC'S
OBJECTIONS TO PLAINTIFFS' SUBPOENA DUCES TECUM

Ring Associates, LLC ("RA"), pursuant to Louisiana Code of Civil Procedure

article 1354(B), respectfully submits the following objections in response to the Subpoena Duces

Tecum, including the Requests made in Exhibit "A" thereto (collectively "Subpoena"), issued by

plaintiffs, Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.

These Objections are made solely for the purpose of the above-captioned lawsuit.

GENERAL OBJECTIONS

1.      RA objects to the Subpoena in its entirety because RA has nothing to do with the

subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and

there is no suggestion that RA has any connection to the allegations raised in the suit.  Even if

RA had any connection to this litigation, the Subpoena calls for the disclosure of documents and

information that is not relevant to the subject matter of this action, including requests which seek

information from undefined or remote time periods or from unrelated transactions that have no

connection to the claims raised by the pleadings in this case.   A subpoena duces tecum request

must be limited to information that is relevant or necessary to the case before the Court.  *See*

*Bank of New Orleans & Trust Co. v. Reed Printing & Custom Graphics, Ltd.*, 399 So. 2d 1260,

1261 (La. App. 4th Cir. 6/2/81) (finding that plaintiff need not comply with portions of

defendant's subpoena duces tecum which sought irrelevant information).  Any information from

RA is completely irrelevant to this case, and the subpoena to RA is wholly improper.

2.     RA objects to the Subpoena because it did not provide a reasonable time for response. RA did not receive the Subpoena until August 4, 2011, eleven days before the deposition date of August 15, 2011.

3.     RA objects to the Subpoena to the extent that it requests information subject to a claim of privilege or other protection, including, without limitation, the attorney-client privilege, common interest privilege, or the work product or anticipation of litigation doctrines. Moreover, the production of any protected information pursuant to the Subpoena is inadvertent and without prejudice to RA's right later to object that such information is protected and that production of such information was inadvertent.

5.     RA objects to the Subpoena to the extent that it purports to impose any requirement or discovery obligation on RA other than those set forth in the Louisiana Code of Civil Procedure.

6.     RA objects to the subpoena to the extent that compliance would be burdensome, impose an extreme hardship on RA, or would result in the expenditure of unnecessary time and resources.

7.     RA objects to the Subpoena to the extent that it seeks confidential and proprietary documents or information belonging to third parties.

8.     In responding to this Subpoena, RA does not waive and specifically reserves all general and specific objections. Additionally, RA does not concede by responding that the information sought or provided is relevant to the subject matter of this action. Nor shall the production of any information be construed as an admission by RA that said information is relevant, material, authentic, or otherwise admissible as evidence. RA expressly reserves the right to object to further discovery and to the subject matter of this Subpoena, as well as to the introduction into evidence of any responses to this Subpoena.

10.     These General Objections apply to every response provided hereafter, as if set forth fully in each specific response.

2

SPECIFIC OBJECTIONS AND RESPONSES:

REQUEST NO. 1:

Any and all correspondence and/or emails to the following:

1) Henry Mouton;

2) Timothy Coulon;

3) Mary Coulon;

4) Timothy Whitmer;

5) Dawn Whitmer;

6) Tom Wilkinson;

7) Aaron Broussard;

8) Any employee of CWC Gaming, LLC;

9) Any employee of Lagniappe Industries, LLC;

10) Any employee of CT Investments, L.L.C.;

11) Any employee of DHP, L.L.C.;

12) Any employee of Caribe Resort Properties, L.L.C.;

13) Any employee of Caribe Resort Properties, I, L.L.C.;

14) Any employee of Coulon Consultants, L.L.C.;

15) Any employee of Learlines, L.L.C.;

16) Any employee of The Sierra Club;

17) Any employee of Zydeco Holdings, LLC;

18) Darryl Malek-Wiley;

19) David Fos;

20) Al Gandolfi;

21) Dutchie Connick;

22) Nancy Cassagne;

23) Dominick Fazzio;

24) Any member of the Jefferson Parish Council from January 1, 2007-present.

**RESPONSE TO REQUEST NO. 1:**

      RA objects to this request because RA has nothing to do with the subject matter of this litigation.  RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit.  Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

**REQUEST NO. 2:**

      Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial statements, tax filings, accounting records, between Ring Associates, LLC and the following individuals:

      1) Timothy ("Tim") Coulon;

      2) Mary Coulon;

      3) Timothy ("Tim") Whitmer;

      4) Dawn Whitmer;

      5) Tom Wilkinson;

      6) Aaron Broussard;

      7) Darryl Malek-Wiley;

      8) David Fos;

      9) Nancy Cassagne;

      10) Dominick Fazzio;

      11) Henry Mouton.

## RESPONSE TO REQUEST NO. 2:

RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit. Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

## REQUEST NO. 3:

The Subpoena did not contain a Request numbered 3.

## REQUEST NO. 4:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Ring Associates, LLC and the following companies:

1) CWC Gaming, LLC, or any employee thereof;

2) Lagniappe Industries, LLC, or any employee thereof;

3) CT Investments, LLC, or any employee thereof;

4) DHP, LLC, or any employee thereof;

5) Caribe Resort Properties, LLC, or any employee thereof;

6) Caribe Resort Properties I, LLC, or any employee thereof;

7) Coulon Consultants, LLC, or any employee thereof;

8) Learlines, LLC, or any employee thereof;

9) Sierra Club;

10) Zydeco Holdings, LLC;

11) Dangle & Associates, LLC;

12) Water Front Properties, LLC;

13) B & C Contractors, LLC;

14) Anne's Properties, LLC;

15) Willow, Inc.;

16) Big Bang Properties, LLC;

17) Live Oak Homes Co.;

18) Heebe & Heebe, PLC;

19) Trout Point Lodge;

20) West Jefferson Hospital;

21) Shadowlake Management Company, Inc;

22) B.L.U., LLC;

23) B.L.U. 2, LLC;

24) Fred Heebe Investments;

25) River Birch, Inc.;

26) Hwy 90, LLC;

27) Any company, including but not limited to corporations, limited liability companies, or any other legal entity, of which any of the above listed persons and/or entities owns fifteen percent or more.

## RESPONSE TO REQUEST NO. 4:

RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit. Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter.

## REQUEST NO. 5:

Please produce a copy of the Articles of Incorporation, Articles of Organization, operating agreements, shareholders agreements, stock certificates, minutes of stockholder meetings, minutes of meetings of Manager or Members, any and all documents submitted to the

Louisiana Secretary of State, including, but not limited to, annual reports, Application for Certificate of Authority, Application for Appointment of Registered Agent, Registered Agent/Office Statement of Change, Articles of Correction, Articles of Amendment, Articles of Merger or Share Exchange, Reservation of Name, Letter of Intent to Dissolve, and/or Application for Registration of Name, Change of Members and/or Managers, regarding Ring Associates, LLC, and/or any predecessor or successor entity from the date of incorporation to present.

RESPONSE TO REQUEST NO. 5:

RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit. Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information from the inception of the company to the present, which is an unreasonable period of time.

REQUEST NO. 6:

Please produce evidence of any distributions to owners or investors, including but not limited to, any K-1s for the years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

RESPONSE TO REQUEST NO. 6:

RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit. Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks sensitive financial information for a period of 10 years.

REQUEST NO. 7:

Please produce any documents, including internal memoranda, relating to the re-zoning of the River Birch Landfill in 1997 from 1996 through present.

**RESPONSE TO REQUEST NO. 7:**

      RA objects to this request because RA has nothing to do with the subject matter of this litigation.  RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit.  Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009.  Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years.  Subject to these objections, no responsive documents.

**REQUEST NO. 8:**

      Please produce any correspondence, including e-mails, or recordings related to the rezoning of the River Birch Landfill, from 1996 through present, whether written or received, between you and:

        1) Tim Coulon;

        2) Aaron Broussard;

        3) Tom Wilkinson;

        4) Tim Whitmer;

        5) Henry Mouton.

**RESPONSE TO REQUEST NO. 8:**

      RA objects to this request because RA has nothing to do with the subject matter of this litigation.  RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit.  Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, which has nothing to do with the rezoning of the River Birch Landfill in 1997 but rather concerns the award of a waste disposal contract in 2009.  Further, the request is overly broad and unduly burdensome because it seeks information for a period of 15 years.  Subject to these objections, no responsive documents.

REQUEST NO. 9:

Please produce any documents, internal memoranda, correspondence, including e-mails, or recordings relating to Ring Associates, LLC's dealings with either Group Insurance Associates, Inc. or Lagniappe Industries, LLC.

RESPONSE TO REQUEST NO. 9:

RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit. Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

REQUEST NO. 10:

Please produce a copy of any and all documents related to any insurance policies serviced by Group Insurance Associates, Inc., with either United Healthcare of Louisiana or Humana Health Benefit Plan of Louisiana, including but not limited to the actual policy, declaration pages, binders, certificates of insurance, schedules, applications, claims history, submissions to brokers and/or underwriters, background checks, criminal history checks, worksheets, quotes, checks, drafts, reservation of rights letters, ACCORD certificates, reports of all claims, proofs of loss, communications with insurance agents/producers/brokers, and communications with the insurer.

RESPONSE TO REQUEST NO. 10:

RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit. Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action, including sensitive health care and employment information. Further, the request is overly broad and unduly burdensome because it

seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

REQUEST NO. 11:

Please produce copies of any and all documents, including electronic documents, evidencing or memorializing any and all moneys exchanged or contemplated to be exchanged, including any invoices, statements, bills, receipts, cancelled checks, check registers, bank statements, wire transfers, settlement agreements, releases, promissory notes, financial instruments, financial statements, tax filings, accounting records, between Ring Associates, LLC and Lagniappe Industries, LLC.

RESPONSE TO REQUEST NO. 11:

RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit. Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

REQUEST NO. 12:

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish Request for Proposal (RFP) Nos. 158 and/or 176, including any drafts of said RFPs, any Jefferson Parish Department of Environmental Affairs inter-office memoranda regarding Request for Proposals Nos. 158 and/or 176.

RESPONSE TO REQUEST NO. 12:

RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit. Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and

unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 13:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to, or utilized in, the negotiations with Jefferson Parish Administration and/or Tom Wilkinson, regarding the landfill contract with River Birch Incorporated and Hwy 90, LLC arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 13:**

RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if RA had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 14:**

Please produce any and all contracts, drafts of contracts, forms, memorandums of understanding, agreements, or marked up copies of a contract between Jefferson Parish Administration and/or Tom Wilkinson and River Birch Incorporated and Hwy 90, LLC regarding the waste removal/landfill contract arising out of RFP No. 176.

**RESPONSE TO REQUEST NO. 14:**

RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit or any involvement in any Jefferson Parish RFPs. Even if RA had any connection to this litigation, the request is overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 15:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings related to Jefferson Parish zoning, Jefferson Parish planning, or Jefferson Parish's master plan.

**RESPONSE TO REQUEST NO. 15:**

RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit. Even if RA had any connection to this litigation, the request is vague, overly broad and unduly burdensome because it seeks information for an undefined time period. Subject to these objections, no responsive documents.

**REQUEST NO. 16:**

Please produce any and all documents, internal memoranda or e-mails, correspondence, and/or recordings regarding the Jefferson Parish Landfill, Old Gentilly Landfill, and/or St. Bernard Parish Landfill (operated by Gioe's Truck Service, Inc. d/b/a Gioe's Truck Service and Demolition).

**RESPONSE TO REQUEST NO. 16:**

RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit. Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome because it seeks information for an undefined time period and without limitation on the subject matter. Subject to these objections, no responsive documents.

**REQUEST NO. 17:**

Please produce any and all contracts you had with consultants from 2004 through present.

RESPONSE TO REQUEST NO. 17:

  RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit. Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

REQUEST NO. 18:

  Please produce any and all contracts you have with subcontractors from 2004 through present.

RESPONSE TO REQUEST NO. 18:

  RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit. Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

REQUEST NO. 19:

  Please provide a list of Ring Associates, LLC's employees for the period of 2007-present.

RESPONSE TO REQUEST NO. 19:

  RA objects to this request because RA has nothing to do with the subject matter of this litigation. RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit. Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action. Further, the request is overly broad and unduly burdensome. Subject to these objections, no responsive documents.

REQUEST NO. 20:

  Please provide a copy of all leases for office space for the period of 2007-present.

**RESPONSE TO REQUEST NO. 20:**

RA objects to this request because RA has nothing to do with the subject matter of this litigation.  RA is not mentioned in the plaintiffs' Petition for Damages, and there is no suggestion that RA has any connection to the allegations raised in the suit.  Even if RA had any connection to this litigation, this Request calls for the disclosure of documents and information that are not relevant to the subject matter of this action.  Further, the request is overly broad and unduly burdensome.  Subject to these objections, no responsive documents.

Respectfully submitted:

Charles Marshall, Bar #27564
Chaffe McCall, LLP
2300 Energy Centre
1100 Poydas Street
New Orleans, LA  70163
Telephone: (504) 585-7242
marshall@chaffe.com

and

Stephen D. London, Bar #19954
1100 Poydras Street, Suite 2950
New Orleans, Louisiana 70163
Telephone No. 504-582-2427

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been duly served upon counsel for Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC by email, this 15th day of August, 2011

CHARLES MARSHALL

Case 2:10-cv-03452-HGB-ALC   Document 3-3   Filed 10/13/10   Page 1 of 21

AO 93 (Rev. 12/09) Search and Seizure Warrant

SEALED

# UNITED STATES DISTRICT COURT

### for the

Eastern District of Louisiana

COPY

In the Matter of the Search of
*(Briefly describe the property to be searched.*
*or identify the person by name and address)*

2000 Belle Chasse Highway
Gretna, Louisiana  70056
Further described in Attachment A

)
)
)
)
)
)

Case No.   10 MAG 9/22-2

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____Louisiana_____
*(identify the person or describe the property to be searched and give its location):*
2000 Belle Chasse Highway, Gretna, Louisiana  70056 (further described in Attachment A)

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*

see Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before _October 4, 2010_
*(not to exceed 14 days)*

☐ in the daytime  6:00 a.m. to 10 p.m.   ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge

LOUIS MOORE, JR.
UNITED STATES MAGISTRATE JUDGE

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30).*
☐ until, the facts justifying, the later specific date of _____

Date and time issued:   09/22/2010
5:15 pm

City and state:   New Orleans, Louisiana

_____
*Judge's signature*

Honorable Louis Moore, Jr., U.S. Magistrate Judge
*Printed name and title*

EXHIBIT
2

## ATTACHMENT A

The offices of River Birch Landfill are located at 2000 Belle Chasse Highway, Gretna, Louisiana, 70056. It is a three-story beige brick building with a sign in front that states River Birch Inc. and Willow Homes.



## ATTACHMENT B

### ITEMS TO BE SEARCHED AND SEIZED

1.  Any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (such as, JPG, GIF, TIF, AVI, and MPG and other image files), and any electronic data storage devices including, but not limited to hard ware, software, diskettes, back up tapes, CD-ROMS, DVD, flash memory devices and other storage media; any input/output peripheral devices, such as passwords, data security devices, and related documentation, and any hardware/software manuals.

2.  Any and all documents, correspondence, letters, notes, memorandums, printouts, records, contracts, communications, writings, billing records, payments, expenditures, agreements, calendars, message books, emails, facsimiles, and electronic communications as they relate to Henry Mouton, Derrick Shepherd, Jody Amedee, Timothy Whitmer, Aaron Broussard, Gentilly landfill, John Ward Vandervort, Christopher W. Vandervort, Julie A. Vandervort, Dominic A. Fazzio, Rebecca T. Fazzio, Tom Wilkinson, Water Front Properties, LLC, Ring Associates, LLC, B & C Contractors, LLC, Dangle & Associates, LLC, Anne's Properties, LLC, and Big Bang Properties, LLC.

3.  Any and all documents, correspondence, letters, notes, memorandums, printouts, records, contracts, communications, writings, billing records, payments, expenditures, agreements, calendars, message books, emails, facsimiles, and electronic communications as they relate to the Request for Proposals issued by Jefferson Parish, Louisiana, #RFP-0176, Responses to the Request for Proposals, bids, and contracts, and any other business dealings between RBL and Jefferson Parish.

4.  Any and all documents, correspondence, letters, notes, memorandums, printouts, records, contracts, communications, writings, billing records, payments, expenditures, agreements, calendars, message books, emails, facsimiles, and electronic communications as they relate to any legislation, or proposed legislation concerning the Gentilly Landfill.

5.    Any and all documents, correspondence, letters, notes, memorandums, printouts, records, contracts, communications, writings, billing records, agreements, calendars, message books, emails, facsimiles, and electronic communications as they relate to donations, contributions, campaign contributions, payments, expenditures, loans, gifts to, for, or on behalf of public officials, either directly, indirectly, or through third party conduits.

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2011 FEB 25   PH 12: 43

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

# FELONY

### INDICTMENT FOR CONSPIRACY TO RECEIVE ILLEGAL PAYOFFS BY AN AGENT OF A PROGRAM RECEIVING FEDERAL FUNDS, RECEIPT OF ILLEGAL PAYOFFS BY AN AGENT OF A PROGRAM RECEIVING FEDERAL FUNDS, MAKING FALSE STATEMENTS TO FEDERAL AGENTS, AND NOTICE OF FORFEITURE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. **11-048** |
| v. | * | SECTION: **SECT. F  MAG. 5** |
| HENRY M. MOUTON | * | VIOLATION: 18 U.S.C. § 371 |
| | | 18 U.S.C. § 666(a)(1)(B) |
| | * | 18 U.S.C. § 1001 |

\*     \*     \*

The Grand Jury charges that:

### COUNT 1

A.   <u>AT ALL TIMES MATERIAL HEREIN</u>:

1.     The Louisiana Department of Wildlife and Fisheries (LDWF) is a state agency responsible for the management of Louisiana's renewable natural resources including wildlife and aquatic life.

```
___Fee _____
___Process_____
_X_Dktd _____
___CtRmDep_____
___Doc. No._____
```



EXHIBIT
3
in globo

2.    According to the Louisiana Constitution, the Louisiana Wildlife and Fisheries Commission is part of the executive branch and consists of seven members appointed by the governor.

3.    In about January 2003, defendant, HENRY M. MOUTON, was appointed to serve as a Commissioner on the Louisiana Wildlife and Fisheries Commission and held the position until December 2008.

4.    The LDWF is an agency of the State of Louisiana that received federal assistance in excess of the $10,000.00 during each of the one year periods beginning on January 1st and ending on December 31st for the years 2003, 2004, 2005, 2006, 2007, 2008, and 2009.

5.    The Federal Bureau of Investigation (FBI), New Orleans Division, located in the Eastern District of Louisiana, was the lead federal investigative agency responsible for the investigation into the defendant, HENRY M. MOUTON, co-conspirator "A", and other co-conspirators known and unknown to the grand jury.

6.    Co-conspirator "A" and other co-conspirators known and unknown to the grand jury operate businesses W.C.S., Inc.; W. Inc.; D & A; A. P., LLC; and landfill companies located in the Eastern District of Louisiana.

7.    Co-conspirator "A" and other co-conspirators known to the grand jury paid defendant HENRY M. MOUTON approximately $463,000.00 in the form of checks that were written in the Eastern District of Louisiana and drawn on bank accounts also located in the Eastern District of Louisiana.

8.    The Old Gentilly Landfill is located in the Eastern District of Louisiana.

- 2 -

B.    THE CONSPIRACY

Beginning at a time unknown, but prior to on or about April 14, 2003, and continuing until on or about April 16, 2010, in the Eastern District of Louisiana and elsewhere, the defendant, HENRY M. MOUTON, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire and agree with each other to knowingly and corruptly solicit, demand, accept and agree to accept something of value from companies owned by and/or operated by co-conspirator "A" and other co-conspirators known and unknown to the grand jury, including, but not limited to W.C.S., Inc.; W. Inc.; D&A; and A.P., LLC., with the intent to be influenced and rewarded in connection with any business, transaction, or series of transactions of the Louisiana Department of Wildlife and Fisheries, a government agency of the State of Louisiana, involving something of value of $5,000 or more; all in violation of Title 18, United States Code, Section 666(a)(1)(B).

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its purposes, the defendant, HENRY M. MOUTON, and others known and unknown to the Grand Jury committed the following overt acts, among others, in the Eastern District of Louisiana and elsewhere:

1.    On or about April 14, 2003, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 139790, from W. Inc. to influence and reward him for his official action.

- 3 -

2.      On or about May 7, 2003, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 140263, from W. Inc. to influence and reward him for his official action.

3.      On or about June 10, 2003, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 140803, from W. Inc. to influence and reward him for his official action.

4.      On or about June 30, 2003, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 141313, from W. Inc. to influence and reward him for his official action.

5.      On or about August 18, 2003, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 141930, from W. Inc. to influence and reward him for his official action.

6.      On or about September 2, 2003, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 142519, from W. Inc. to influence and reward him for his official action.

7.      On or about September 29, 2003, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $3,500.00, check number 143184, from W. Inc. to influence and reward him for his official action.

8.      On or about September 30, 2003, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 143104, from W. Inc. to influence and reward him for his official action.

- 4 -

9.      On or about October 27, 2003, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $12,000.00, check number 3509, from co-conspirator "A" to influence and reward him for his official action.

10.      On or about November 7, 2003, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 143791, from W. Inc. to influence and reward him for his official action.

11.      On or about December 8, 2003, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 144345, from W. Inc. to influence and reward him for his official action.

12.      On or about December 24, 2003, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $12,000.00, check number 144928, from W. Inc. to influence and reward him for his official action.

13.      On or about January 9, 2004, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 144968, from W. Inc. to influence and reward him for his official action.

14.      On or about February 3, 2004, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 145492, from W. Inc. to influence and reward him for his official action.

15.      On or about April 1, 2004, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 146289, from W. Inc. to influence and reward him for his official action.

- 5 -

16.    On or about April 14, 2004, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 146615, from W. Inc. to influence and reward him for his official action.

17.    On or about May 10, 2004, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 147427, from W. Inc. to influence and reward him for his official action.

18.    On or about June 1, 2004, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 147987, from W. Inc. to influence and reward him for his official action.

19.    On or about July 8, 2004, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 148690, from W. Inc. to influence and reward him for his official action.

20.    On or about July 30, 2004, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $18,000.00, check number 149346, from W. Inc. to influence and reward him for his official action.

21.    On or about August 5, 2004, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 149263, from W. Inc. to influence and reward him for his official action.

22.    On or about September 1, 2004, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 149801, from W. Inc. to influence and reward him for his official action.

- 6 -

23.     On or about October 5, 2004, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 150460, from W. Inc. to influence and reward him for his official action.

24.     On or about November 10, 2004, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 150985, from W. Inc. to influence and reward him for his official action.

25.     On or about December 3, 2004, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 151462, from W. Inc. to influence and reward him for his official action.

26.     On or about January 4, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 152090, from W. Inc. to influence and reward him for his official action.

27.     On or about February 4, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 152571, from W. Inc. to influence and reward him for his official action.

28.     On or about February 10, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $18,000.00, check number 3876, from co-conspirator "A" to influence and reward him for his official action.

29.     On or about March 2, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 153075, from W. Inc. to influence and reward him for his official action.

30.    On or about April 6, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 153694, from W. Inc. to influence and reward him for his official action.

31.    On or about May 4, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 154252, from W. Inc. to influence and reward him for his official action.

32.    On or about June 1, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 154763, from W. Inc. to influence and reward him for his official action.

33.    On or about July 14, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 155389, from W. Inc. to influence and reward him for his official action.

34.    On or about July 29, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 155838, from W. Inc. to influence and reward him for his official action.

35.    On or about September 9, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 156337, from W. Inc. to influence and reward him for his official action.

36.    On or about October 17, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 156626, from W. Inc. to influence and reward him for his official action.

- 8 -

37.    On or about November 1, 2005, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans. MOUTON wrote that the "Gentilly Landfill is charging $3.50 per CY Ton while River Birch is charging $2.50, which was the Pre Katrina price so this is costing the Taxpayers MORE money."

38.    On or about November 4, 2005, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote letters to approximately 17 United States Senators and represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission and attempted to gain the assistance of these U.S. Senators in an effort to keep closed the Old Gentilly Landfill located in New Orleans.

39.    On or about November 4, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 156876, from W. Inc. to influence and reward him for his official action.

40.    On or about November 10, 2005, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to an official with the Environmental Protection Agency in Dallas and represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission and attempted to affect the EPA official's actions in an effort to keep closed the Old Gentilly Landfill located in New Orleans.

-9-

41.    On or about November 14, 2005, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, went to the offices of the FBI, represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission, and reported to the FBI that he had rented a helicopter on November 7, 2005, and flew over the Old Gentilly Landfill and filmed what he had observed to demonstrate the "illegal nature of the landfill."

42.    On or about November 14, 2005, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to a FBI Special Agent and attempted to direct FBI resources to investigate the Old Gentilly Landfill located in New Orleans with the goal of keeping that landfill closed and while concealing his and others' financial motives and making it appear he was merely concerned because of his role in preserving Louisiana's natural resources.

43.    On or about November 17, 2005, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to a FBI Special Agent and attempted to direct FBI resources to investigate the Old Gentilly Landfill located in New Orleans with the goal of keeping that landfill closed and while concealing his and others' financial motives and making it appear he was merely concerned because of his role in preserving Louisiana's natural resources.

44.    On or about November 28, 2005, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to a FBI Special Agent and attempted to direct FBI resources to investigate the Old Gentilly Landfill located in New Orleans with the goal of keeping that landfill closed and while

concealing his and others' financial motives and making it appear he was merely concerned because of his role in preserving Louisiana's natural resources..

45.    On or about November 30, 2005, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to a FBI Special Agent and attempted to direct FBI resources to investigate the Old Gentilly Landfill located in New Orleans with the goal of keeping that landfill closed and while concealing his and others' financial motives and making it appear he was merely concerned because of his role in preserving Louisiana's natural resources.

46.    On or about November 30, 2005, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

47.    On or about December 7, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 157361, from W. Inc. to influence and reward him for his official action.

48.    On or about December 8, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 157362, from W. Inc. to influence and reward him for his official action.

49.    On or about December 16, 2005, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $18,000.00, check number 157491, from W. Inc. to influence and reward him for his official action.

- 11 -

50.     On or about January 3, 2006, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

51.     On or about January 3, 2006, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to an official with the Environmental Protection Agency (EPA) in Washington, D.C. while concealing the financial motives of himself and others and represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission and attempted to gain the assistance of the EPA official in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

52.     On or about January 3, 2006, defendant, **HENRY M. MOUTON**, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to a Colonel with the U.S. Army Corp of Engineers while concealing the financial motives of himself and others and represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission and attempted to gain the assistance of the official in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

53.     On or about January 3, 2006, defendant, **HENRY M. MOUTON**, received an illegal payoff in the amount of $17,000.00, check number 157741, from W. Inc. to influence and reward him for his official action.

- 12 -

54.     On or about January 9, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 157704, from W. Inc. to influence and reward him for his official action.

55.     On or about January 9, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 157703, from W. Inc. to influence and reward him for his official action.

56.     On or about January 10, 2006, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

57.     On or about January 27, 2006, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

58.     On or about January 31, 2006, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

- 13 -

59.    On or about January 31, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,958.00, check number 158129, from W. Inc. to influence and reward him for his official action.

60.    On or about February 3, 2006, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to the United States Attorney for the Western District of Louisiana while concealing the financial motives of himself and others and attempted to gain the assistance of the U.S. Attorney in his effort to keep closed the Old Gentilly Landfill located in New Orleans.

61.    On or about February 8, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 158087, from W. Inc. to influence and reward him for his official action.

62.    On or about February 8, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 158086, from W. Inc. to influence and reward him for his official action.

63.    On or about February 17, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,400.00, check number 158362, from W. Inc. to influence and reward him for his official action.

64.    On or about March 1, 2006, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to a FBI Special Agent and attempted to direct FBI resources to investigate the Old Gentilly Landfill located in New Orleans with the goal of keeping that landfill closed and while concealing his and others' financial motives and making it appear he was merely concerned

- 14 -

because of his role preserving Louisiana's natural resources. In his letter MOUTON wrote that "other landfills, Hiway 90 (sic) C and D, Inc, River Birch, Inc, KV Landfill have enough Capacity to take at least 10 times the amount of Waste/Debris that DEQ is estimating and maybe 20 times, all three of these landfill (sic) are properly permitted and properly constructed and are NOT a threat to the environment."

65.   On or about March 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 158467, from W. Inc. to influence and reward him for his official action.

66.   On or about March 14, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $3,329.00, check number 158694, from W. Inc. to influence and reward him for his official action.

67.   On or about April 6, 2006, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to an official with the Environmental Protection Agency in Washington D.C. and other officials while concealing the financial motives of himself and others and represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission and provided the EPA official with "Notice of Intention to File Citizen's Suit, Violations at 16600 Chef Menteur Highway, New Orleans, Louisiana."

68.   On or about April 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $5,000.00, check number 159159, from W. Inc. to influence and reward him for his official action.

69.    On or about April 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 159103, from W. Inc. to influence and reward him for his official action.

70.    On or about April 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 159102, from W. Inc. to influence and reward him for his official action. ,

71.    On or about April 7, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $7,500.00, check number 159158, from W. Inc. to influence and reward him for his official action.

72.    On or about April 15, 2006, defendant, HENRY M. MOUTON, concealed his involvement in this payoff conspiracy by failing to report approximately $35,000.00 in illegal payoffs received from co-conspirator "A" and other co-conspirators known and unknown to the grand jury on his 2005 federal income tax return.

73.    On or about April 24, 2006, defendant, HENRY M. MOUTON, to further his and others' goal of influencing decision makers for financial reasons, approached an individual known to the grand jury and asked him to make straw campaign contributions to a federal congressional campaign on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury.

74.    On or about April 24, 2006, defendant, HENRY M. MOUTON, faxed to a co-conspirator, known to the grand jury, and wrote that he had spoken to co-conspirator "A" and that defendant HENRY M. MOUTON was to obtain checks from the co-conspirator "so we can disguise a contribution."

- 16 -

75.     On or about April 24, 2006, defendant, HENRY M. MOUTON, to further his and others' goal of influencing decisions makers for financial reasons, delivered check number 159429, in the amount of $2,200.00, from W. Inc., to a straw campaign contributor.

76.     On or about April 25, 2006, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, to further his and others' goal of influencing decisions makers for financial reasons, collected check number 1966, in the amount of $2,200.00 made payable to a federal congressional candidate from a straw campaign contributor.

77.     On or about April 25, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $4,400.00, check number 159430, from W. Inc. to influence and reward him for his official action.

78.     On or about April 27, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $4,400.00, check number 159431, from W. Inc. to influence and reward him for his official action.

79.     On or about May 4, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 159487, from W. Inc. to influence and reward him for his official action.

80.     On or about May 4, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 159488, from W. Inc. to influence and reward him for his official action.

81.     On or about May 12, 2006, defendant, HENRY M. MOUTON, acting on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury, wrote to

a FBI Special Agent while concealing the financial motives of himself and others and attempted to gain the assistance of the FBI in an effort to keep closed the Old Gentilly Landfill located in New Orleans.

82.  On or about May 18, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $3,882.14, check number 159720, from W. Inc. to influence and reward him for his official action.

83.  On or about June 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 159975, from W. Inc. to influence and reward him for his official action.

84.  On or about June 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 159974, from W. Inc. to influence and reward him for his official action.

85.  On or about June 28, 2006, defendant, HENRY M. MOUTON, faxed an invoice to co-conspirator "A." The invoice requested $5,148.78 in reimbursements for "Expenses Related to Waste Issues."

86.  On or about June 30, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $5,148.78, check number 160291, from W. Inc. to influence and reward him for his official action.

87.  On or about July 5, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 160366, from W. Inc. to influence and reward him for his official action.

- 18 -

88.    On or about July 5, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 160367, from W. Inc. to influence and reward him for his official action.

89.    On or about July 19, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,500.93, check number 126, from W.C.S., Inc. to influence and reward him for his official action.

90.    On or about August 2, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $18,250.00, check number 130, from W.C.S., Inc. to influence and reward him for his official action.

91.    On or about August 3, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 160692, from W. Inc. to influence and reward him for his official action.

92.    On or about August 3, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 160693, from W. Inc. to influence and reward him for his official action.

93.    On or about August 16, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $30,000.00, check number 195, from W.C.S., Inc. to influence and reward him for his official action.

94.    On or about August 29, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 201, from W.C.S., Inc. to influence and reward him for his official action.

- 19 -

95.     On or about September 1, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $4,994.12, check number 207, from W.C.S., Inc. to influence and reward him for his official action.

96.     On or about September 7, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 161179, from W. Inc. to influence and reward him for his official action.

97.     On or about September 7, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 161180, from W. Inc. to influence and reward him for his official action.

98.     On or about September 13, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $17,040.10, check number 211, from W.C.S., Inc. to influence and reward him for his official action.

99.     On or about September 13, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $12,320.00, check number 212, from W.C.S., Inc. to influence and reward him for his official action.

100.    On or about October 4, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 161535, from W. Inc. to influence and reward him for his official action.

101.    On or about October 4, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 161536, from W. Inc. to influence and reward him for his official action.

- 20 -

102.    On or about October 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $16,500.00, check number 218, from W.C.S., Inc. to influence and reward him for his official action.

103.    On or about October 12, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $4,000.00, check number 135, from W.C.S., Inc. to influence and reward him for his official action.

104.    On or about November 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 161904, from W. Inc. to influence and reward him for his official action.

105.    On or about November 6, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 161905, from W. Inc. to influence and reward him for his official action.

106.    On or about December 13, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 162385, from W. Inc. to influence and reward him for his official action.

107.    On or about December 13, 2006, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 162386, from W. Inc. to influence and reward him for his official action.

108.    On or about January 5, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 162784, from W. Inc. to influence and reward him for his official action.

109.   On or about January 5, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 162785, from W. Inc. to influence and reward him for his official action.

110.   On or about February 2, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 163144, from W. Inc. to influence and reward him for his official action.

111.   On or about February 2, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 163145, from W. Inc. to influence and reward him for his official action.

112.   On or about March 12, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 163601, from W. Inc. to influence and reward him for his official action.

113.   On or about March 12, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 163602, from W. Inc. to influence and reward him for his official action.

114.   On or about April 5, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 164000, from W. Inc. to influence and reward him for his official action.

115.   On or about April 5, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 164001, from W. Inc. to influence and reward him for his official action.

116.   On or about April 15, 2007, defendant, HENRY M. MOUTON, concealing his involvement in this payoff conspiracy by failing to report approximately $161,093.92 in illegal payoffs received from co-conspirator "A" and other co-conspirators known and unknown to the grand jury on his 2006 federal income tax return.

117.   On or about May 10, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 164526, from W. Inc. to influence and reward him for his official action.

118.   On or about May 10, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 164527, from W. Inc. to influence and reward him for his official action.

119.   On or about June 7, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 164861, from W. Inc. to influence and reward him for his official action.

120.   On or about June 7, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 164862, from W. Inc. to influence and reward him for his official action.

121.   On or about July 12, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 165229, from W. Inc. to influence and reward him for his official action.

122.   On or about July 12, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 165230, from W. Inc. to influence and reward him for his official action.

- 23 -

123.    On or about August 2, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 165602, from W. Inc. to influence and reward him for his official action.

124.    On or about August 2, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 165603, from W. Inc. to influence and reward him for his official action.

125.    On or about September 12, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 166061, from W. Inc. to influence and reward him for his official action.

126.    On or about September 12, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 166062, from W. Inc. to influence and reward him for his official action.

127.    On or about September 14, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $21,000.00, check number 166185, from W. Inc. to influence and reward him for his official action.

128.    On or about September 14, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $4,000.00, check number 166186, from W. Inc. to influence and reward him for his official action.

129.    On or about October 4, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 166421, from W. Inc. to influence and reward him for his official action.

130.    On or about October 4, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 166422, from W. Inc. to influence and reward him for his official action.

131.    On or about November 9, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 166837, from W. Inc. to influence and reward him for his official action.

132.    On or about November 9, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 166838, from W. Inc. to influence and reward him for his official action.

133.    On or about December 7, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 167133, from W. Inc. to influence and reward him for his official action.

134.    On or about December 7, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 167134, from W. Inc. to influence and reward him for his official action.

135.    On or about December 24, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $4,000.00, check number 1042, from D & A to influence and reward him for his official action.

136.    On or about December 26, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,500.00, check number 1043, from D & A to influence and reward him for his official action.

137.   On or about December 26, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,500.00, check number 1044, from D & A to influence and reward him for his official action.

138.   On or about December 26, 2007, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $500.00, check number 1045, from D & A to influence and reward him for his official action.

139.   On or about January 10, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 167449, from W. Inc. to influence and reward him for his official action.

140.   On or about January 10, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 167450, from W. Inc. to influence and reward him for his official action.

141.   On or about February 11, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 167691, from W. Inc. to influence and reward him for his official action.

142.   On or about February 11, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 167692, from W. Inc. to influence and reward him for his official action.

143.   On or about March 6, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 167919, from W. Inc. to influence and reward him for his official action.

144.    On or about March 6, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 167920, from W. Inc. to influence and reward him for his official action.

145.    On or about April 7, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 168151, from W. Inc. to influence and reward him for his official action.

146.    On or about April 7, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 168152, from W. Inc. to influence and reward him for his official action.

147.    On or about April 15, 2008, defendant, HENRY M. MOUTON, concealing his involvement in this payoff conspiracy by failing to report approximately $25,383.00 in illegal payoffs received from co-conspirator "A" and other co-conspirators known and unknown to the grand jury on his 2007 federal income tax return.

148.    On or about April 28, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 168395, from W. Inc. to influence and reward him for his official action.

149.    On or about April 28, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 168398, from W. Inc. to influence and reward him for his official action.

150.    On or about April 28, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 168399, from W. Inc. to influence and reward him for his official action.

- 27 -

151.   On or about April 28, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 168400, from W. Inc. to influence and reward him for his official action.

152.   On or about April 28, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 168401, from W. Inc. to influence and reward him for his official action.

153.   On or about April 28, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,000.00, check number 168402, from W. Inc. to influence and reward him for his official action.

154.   On or about May 1, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 168396, from W. Inc. to influence and reward him for his official action.

155.   On or about May 1, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $2,000.00, check number 168397, from W. Inc. to influence and reward him for his official action.

156.   On or about May 15, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 168372, from W. Inc. to influence and reward him for his official action.

157.   On or about May 15, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 168373, from W. Inc. to influence and reward him for his official action.

158. On or about June 11, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 168663, from W. Inc. to influence and reward him for his official action.

159. On or about June 11, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 168664, from W. Inc. to influence and reward him for his official action.

160. On or about July 3, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 168920, from W. Inc. to influence and reward him for his official action.

161. On or about July 3, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 168921, from W. Inc. to influence and reward him for his official action.

162. On or about August 6, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 169200, from W. Inc. to influence and reward him for his official action.

163. On or about August 6, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 169201, from W. Inc. to influence and reward him for his official action.

164. On or about September 10, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 169408, from W. Inc. to influence and reward him for his official action.

- 29 -

165. On or about September 10, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 169409, from W. Inc. to influence and reward him for his official action.

166. On or about September 22, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $860.88, check number 1050, from A. P., LLC to influence and reward him for his official action.

167. On or about October 6, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 169561, from W. Inc. to influence and reward him for his official action.

168. On or about October 8, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 169577, from W. Inc. to influence and reward him for his official action.

169. On or about November 5, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 169775, from W. Inc. to influence and reward him for his official action.

170. On or about November 5, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 169776, from W. Inc. to influence and reward him for his official action.

171. On or about December 2, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 169932, from W. Inc. to influence and reward him for his official action.

172.   On or about December 2, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 169933, from W. Inc. to influence and reward him for his official action.

173.   On or about December 31, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 170061, from W. Inc. to influence and reward him for his official action.

174.   On or about December 31, 2008, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 170062, from W. Inc. to influence and reward him for his official action.

175.   On or about February 3, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 170205, from W. Inc. to influence and reward him for his official action.

176.   On or about February 4, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 170206, from W. Inc. to influence and reward him for his official action.

177.   On or about March 10, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 170327, from W. Inc. to influence and reward him for his official action.

178.   On or about March 11, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 170328, from W. Inc. to influence and reward him for his official action.

- 31 -

179.   On or about April 7, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 170433, from W. Inc. to influence and reward him for his official action.

180.   On or about April 8, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 170434, from W. Inc. to influence and reward him for his official action.

181.   On or about April 15, 2009, defendant, HENRY M. MOUTON, concealing his involvement in this payoff conspiracy by failing to report approximately $65,837.00 in illegal payoffs received from co-conspirator "A" and other co-conspirators known and unknown to the grand jury on his 2008 federal income tax return.

182.   On or about May 8, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 170550, from W. Inc. to influence and reward him for his official action.

183.   On or about May 11, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 170551, from W. Inc. to influence and reward him for his official action.

184.   On or about June 10, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 170752, from W. Inc. to influence and reward him for his official action.

185.   On or about June 11, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 170753, from W. Inc. to influence and reward him for his official action.

- 32 -

186.    On or about July 8, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 170876, from W. Inc. to influence and reward him for his official action.

187.    On or about July 15, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 170875, from W. Inc. to influence and reward him for his official action.

188.    On or about August 10, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 171078, from W. Inc. to influence and reward him for his official action.

189.    On or about August 13, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 171077, from W. Inc. to influence and reward him for his official action.

190.    On or about September 3, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 171196, from W. Inc. to influence and reward him for his official action.

191.    On or about September 11, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 171197, from W. Inc. to influence and reward him for his official action.

192.    On or about October 13, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 171393, from W. Inc. to influence and reward him for his official action.

- 33 -

193.   On or about October 15, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 171392, from W. Inc. to influence and reward him for his official action.

194.   On or about November 9, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 171547, from W. Inc. to influence and reward him for his official action.

195.   On or about November 9, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 171548, from W. Inc. to influence and reward him for his official action.

196.   On or about December 15, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 171642, from W. Inc. to influence and reward him for his official action.

197.   On or about December 15, 2009, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 171643, from W. Inc. to influence and reward him for his official action.

198.   On or about January 8, 2010, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 171783, from W. Inc. to influence and reward him for his official action.

199.   On or about January 13, 2010, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 171782, from W. Inc. to influence and reward him for his official action.

- 34 -

200.   On or about February 8, 2010, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 171899, from W. Inc. to influence and reward him for his official action.

201.   On or about February 8, 2010, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 171900, from W. Inc. to influence and reward him for his official action.

202.   On or about February 12, 2010, defendant, HENRY M. MOUTON, to conceal his relationship with co-conspirator "A" lied to FBI Special Agents when he said a wealthy friend from Mobile, Alabama provided a helicopter and a pilot for MOUTON to fly over the Old Gentilly Landfill and obtain aerial video and photographs, when in truth and fact, co-conspirator "A" or other co-conspirators known and unknown to the grand jury actually paid for the helicopter rental.

203.   On or about February 12, 2010, defendant, HENRY M. MOUTON, lied to FBI Special Agents when he claimed not to have any business relationship with any landfill and claimed that he had not received any compensation from any landfill, when in truth and fact, HENRY M. MOUTON actually had a relationship with a landfill company owned by co-conspirator "A" and other co-conspirators known and unknown to the grand jury and he received approximately $463,970.00 from companies closely related to a landfill company owned by co-conspirator "A" and co-conspirators known and unknown to the grand jury.

204.   On or about February 12, 2010, defendant, HENRY M. MOUTON, lied to FBI Special Agents when he said he was not reimbursed by anyone for his involvement with his attempts to close the Old Gentilly Landfill in New Orleans, when in truth and fact, HENRY M.

- 35 -

MOUTON actually received approximately $463,970.00 for his efforts to close the Old Gentilly Landfill on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury.

205.    On or about February 18, 2010, defendant, HENRY M. MOUTON, lied to FBI Special Agents when he said he received $2,000.00 a month from co-conspirator "A" for building and air conditioning consulting work, when in truth and fact, he was paid $2,000.00 a month by co-conspirator "A" and other co-conspirators known and unknown to the grand jury to influence and reward him for his efforts as a Commissioner with the Louisiana Department of Wildlife and Fisheries to close the Old Gentilly Landfill in New Orleans on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury.

206.    On or about March 18, 2010, defendant, HENRY M. MOUTON, received an illegal payment in the amount of $1,487.00, check number 172012, from W. Inc. to influence and reward him for his official action.

207.    On or about March 18, 2010, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 172013, from W. Inc. to influence and reward him for his official action.

208.    On or about April 12, 2010, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $1,487.00, check number 172141, from W. Inc. to influence and reward him for his official action.

209.    On or about April 16, 2010, defendant, HENRY M. MOUTON, received an illegal payoff in the amount of $513.00, check number 172142, from W. Inc. to influence and reward him for his official action.

All in violation of Title 18, United States Code, Section 371.

- 36 -

## COUNT 2

### RECEIPT OF ILLEGAL PAYOFFS BY AN
### AGENT OF A PROGRAM RECEIVING FEDERAL FUNDS

A.     The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated

herein by reference.

B.     Beginning on or about January 1, 2006, through December 31, 2006, in the Eastern

District of Louisiana and elsewhere, defendant HENRY M. MOUTON did corruptly accept a

thing of value, to wit: approximately $186,110.00 from co-conspirator "A" and other co-

conspirators known and unknown to the grand jury, intending to be influenced and rewarded in

connection with a transaction and series of transactions of the Louisiana Department of Wildlife

and Fisheries, a government agency of the State of Louisiana, involving something of value of

$5,000.00 or more.

        All in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT 3

### RECEIPT OF ILLEGAL PAYOFFS BY AN
### AGENT OF A PROGRAM RECEIVING FEDERAL FUNDS

A.     The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated

herein by reference.

B.     Beginning on or about January 1, 2007, through December 31, 2007, in the Eastern

District of Louisiana and elsewhere, defendant HENRY M. MOUTON did corruptly accept a

thing of value, to wit: approximately $58,500.00 from co-conspirator "A" and other co-

conspirators known and unknown to the grand jury, intending to be influenced and rewarded in

connection with a transaction and series of transactions of the Louisiana Department of Wildlife

and Fisheries, a government agency of the State of Louisiana, involving something of value of $5,000.00 or more.

All in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT 4

### RECEIPT OF ILLEGAL PAYOFFS BY AN AGENT OF A PROGRAM RECEIVING FEDERAL FUNDS

A.     The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated herein by reference.

B.     Beginning on or about January 1, 2008, through December 31, 2008, in the Eastern District of Louisiana and elsewhere, defendant HENRY M. MOUTON did corruptly accept a thing of value, to wit: approximately $41,860.00 from co-conspirator "A" and other co-conspirators known and unknown to the grand jury, intending to be influenced and rewarded in connection with a transaction and series of transactions of the Louisiana Department of Wildlife and Fisheries, a government agency of the State of Louisiana, involving something of value of $5,000.00 or more.

All in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT 5

### MAKING FALSE STATEMENTS TO FEDERAL AGENTS

A.     The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated herein by reference.

B.     On or about February 12, 2010, in the Eastern District of Louisiana and elsewhere, in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the

- 38 -

United States, the defendant, HENRY M. MOUTON, did knowingly and willfully make a false, fraudulent, and fictitious material statement and representation; that is the defendant, lied to Special Agents with the FBI, New Orleans Division, when MOUTON said a wealthy friend from Mobile, Alabama provided a helicopter and a pilot for MOUTON to fly over the Old Gentilly Landfill in New Orleans and obtain aerial video and photographs, when in truth and fact, co-conspirator "A" and other co-conspirators known and unknown to the grand jury actually paid for the helicopter rental;

All in violation of Title 18, United States Code, Section 1001.

<u>COUNT 6</u>

<u>MAKING FALSE STATEMENTS TO FEDERAL AGENTS</u>

A.    The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated herein by reference.

B.    On or about February 12, 2010, in the Eastern District of Louisiana and elsewhere, in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the United States, the defendant, HENRY M. MOUTON, did knowingly and willfully make a false, fraudulent, and fictitious material statement and representation; that is the defendant, lied to Special Agents with the FBI, New Orleans Division, when he claimed not to have any business relationship with any landfill and claimed that he had not received any compensation from any landfill, when in truth and fact, HENRY M. MOUTON actually had a relationship with a landfill company located in the Eastern District of Louisiana and received approximately

- 39 -

$463,970.00 from companies closely related to a landfill company owned by co-conspirator "A" and other co-conspirators known and unknown to the grand jury;

All in violation of Title 18, United States Code, Section 1001.

## COUNT 7

### MAKING FALSE STATEMENTS TO FEDERAL AGENTS

A.      The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated herein by reference.

B.      On or about February 12, 2010, in the Eastern District of Louisiana and elsewhere, in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the United States, the defendant, **HENRY M. MOUTON**, did knowingly and willfully make a false, fraudulent, and fictitious material statement and representation; that is the defendant, lied to Special Agents with the FBI, New Orleans Division, when the defendant said he was not reimbursed by anyone for his involvement with his attempts to close the Old Gentilly Landfill in New Orleans, when in truth and fact, **HENRY M. MOUTON** actually received approximately $463,970.00 for his efforts to close the Old Gentilly Landfill on behalf of co-conspirator "A" and other co-conspirators known and unknown to the grand jury;

All in violation of Title 18, United States Code, Section 1001.

## COUNT 8

### MAKING FALSE STATEMENTS TO FEDERAL AGENTS

A.      The allegations contained in Part A of Count 1 are hereby re-alleged and incorporated herein by reference.

- 40 -

B.      On or about February 18, 2010, in the Eastern District of Louisiana and elsewhere, in a

matter within the jurisdiction of the Federal Bureau of Investigation (FBI), an agency of the

United States, the defendant, HENRY M. MOUTON, did knowingly and willfully make a false,

fraudulent, and fictitious material statement and representation; that is the defendant, lied to

Special Agents with the FBI, New Orleans Division, when the defendant said he received

$2,000.00 a month from co-conspirator "A" and other co-conspirators known and unknown to

the grand jury for building and air conditioning consulting work, when in truth and fact, he was

paid $2,000.00 a month by co-conspirator "A" and other co-conspirators known and unknown to

the grand jury for his efforts as a Commissioner with the Louisiana Department of Wildlife and

Fisheries to close the Old Gentilly Landfill in New Orleans on behalf of co-conspirator "A" and

other co-conspirators known and unknown to the grand jury;

All in violation of Title 18, United States Code, Section 1001.

## NOTICE OF FORFEITURE

1.      The allegations of Counts 1 through 4 of this Indictment are realleged and

incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to

the United States of America pursuant to the provisions of Title 18, United States Code, Sections

371, 666 and 981(a)(1)(C), made applicable through Title 28, United States Code, Section

2461(c).

2.      As a result of the offenses alleged in Counts 1 through 4, defendant, HENRY M.

MOUTON, shall forfeit to the United States pursuant to Title 18, United States Code, Section

981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c), any and all

- 41 -

property, real or personal, which constitutes or is derived from proceeds traceable to violations of

Title 18, United States Code, Sections 371 and 666, including but not limited to:

> a. $463,970.00 in United States Currency and all interest and proceeds traceable thereto.

> b. The government specifically provides notice of its intent to seek a personal money judgment against the defendant in the amount of the fraudulently-obtained proceeds.

3. If any of the property subject to forfeiture, as a result of any act or omission of the

defendant:

> a. cannot be located upon the exercise of due diligence;

> b. has been transferred or sold to, or deposited with, a third person;

> c. has been placed beyond the jurisdiction of the Court;

> d. has been substantially diminished in value; or

> e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of said defendant up to the value of the above forfeitable

property.

All in violation of Title 18, United States Code, Sections 371, 666 and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
F O R E P E R S O N

_____
JIM LETTEN
UNITED STATES ATTORNEY
Bar Roll No. 8517

_____
JAN MASELLI MANN
First Assistant United States Attorney
Bar Roll No. 9020

_____
SALVADOR PERRICONE
Assistant United States Attorney
Bar Roll No. 10515

_____
JAMES R. MANN
Assistant United States Attorney
Bar Roll No. 20513

_____
BRIAN M. KLEBBA
Assistant United States Attorney
New York Bar Roll No. 2938728

_____
GREGORY KENNEDY
Assistant United States Attorney
Bar Roll No. 20896

_____
WILLIAM J. QUINLAN, JR.
Assistant United States Attorney
Bar Roll No. 22600

New Orleans, Louisiana
February 25, 2011

- 43 -

FORM OBD-34
APR. 91

No. _____

UNITED STATES DISTRICT COURT

_____ Eastern _____ *District of* _____ Louisiana _____

_____ *Criminal* _____ *Division*

## THE UNITED STATES OF AMERICA

vs.

HENRY M. MOUTON

# INDICTMENT

INDICTMENT FOR CONSPIRACY TO RECEIVE
ILLEGAL PAYOFFS BY AN AGENT OF A PROGRAM
RECEIVING FEDERAL FUNDS, RECEIPT OF ILLEGAL
PAYOFFS BY AN AGENT OF A PROGRAM RECEIVING
FEDERAL FUNDS, MAKING FALSE STATEMENTS TO
FEDERAL AGENTS, AND NOTICE OF FORFEITURE.

**VIOLATIONS:**   18 U.S.C. § 371
18 U.S.C. § 666(a)(1)(B)
18 U.S.C. § 1001

A true bill.

_____
                                    *Foreman*

*Filed in open court this* _____

*day, of* _____ *A.D.* 2011.

_____
                                        *Clerk*

Bail, $ _____

BRIAN M. KLEBBA, Ass'''ant U.S. Attorney

*TO: DOCKET CLERK*                    11-048

___*MAGISTRATE CASE NUMBER*_____

*OR*

__*X*___ *NO MAGISTRATE PAPERS WERE*

*FOUND*

*for*

*NAME:* __*HENRY M. MOUTON*__

*Initials:* __*BB*_____

If you receive this note without any initials,

please return the entire packet to criminal desk .

Thank you

Case 2:11-cr-00048-MLCF-ALC   Document 1-2   Filed 02/__/11   Page 1 of 1   *RET* 18 U.S.C. 3170

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ INFORMATION  ☑ INDICTMENT

...atter Sealed: ☐ Juvenile  ☐ Other than Juvenile

☐ Pre-Indictment Plea  ☐ Superseding · ☐ Defendant Added
  ☑ Indictment  ☐ Charges/Counts Added
  ☐ Information

**Name of District Court, and/or Judge/Magistrate Location (City)**

UNITED STATES DISTRICT COURT   EASTERN
DISTRICT OF LOUISIANA        Divisional Office

Name and Office of Person   Patricia G. Ortiz
Furnishing Information on    ☒ U.S. Atty  ☐ Other U.S. Agency
THIS FORM           Phone No. (504) 680-3159
Name of Asst.
U.S. Attorney   Brian M. Klebba
(if assigned)

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
Special Agent Lisa Horner, FBI

☐ person is awaiting trial in another Federal or State Court
  (give name of court)

☐ this person/proceeding transferred from another district
  per (circle one) FRCrP  20,  21  or  40. Show District

☐ this is a reprosecution of charges
  previously dismissed which were
  dismissed on motion of:
  ☐ U.S. Atty  ☐ Defense

☐ this prosecution relates to a
  pending case involving this same
  defendant. (Notice of Related
  Case must still be filed with the
  Clerk.)

☐ prior proceedings or appearance(s)
  before U.S. Magistrate Judge
  regarding this defendant were
  recorded under

SHOW
DOCKET NO.

MAG. JUDGE
CASE  NO.

Place of   Jefferson Parish        County USA
offense

---

CASE NO. _____ **11-048**

USA  vs.

Defendant: HENRY M. MOUTON

Address: _____

☐ Interpreter Required   Dialect: _____

Birth   1956        ☑ Male   ☐ Alien
Date             ☐ Female   (if applicable)

Social Security Number  xxx-xx-7311

| DEFENDANT |
|---|

Issue: ☐ Warrant  ☑ Summons

Location Status:

Arrest Date_____ or Date Transferred to Federal Custody_____

☐ Currently in Federal Custody
☐ Currently in State Custody
  ☐ Writ Required
☐ Currently on bond
☐ Fugitive

Defense Counsel (if any):  Mary Olive Pierson

☐ FPD  ☐ CJA  ☑ RET'D

☐ Appointed on Target Letter

☐ This report amends AO 257 previously submitted

---

| OFFENSE CHARGED - U.S.C. CITATION - STATUTORY MAXIMUM PENALTIES - ADDITIONAL INFORMATION OR COMMENTS |
|---|

Total # of Counts___8___

| Set | Title & Section/Offense Level (Petty = 1 / Misdemeanor = 3 / Felony = 4) | Description of Offense Charged | Count(s) |
|---|---|---|---|
| 1 | 18 U.S.C. 371        4-Felony | Conspiracy to receive Illegal Payoffs | 1 |
| 2 | 18 U.S.C. 666(a)(1)(B)   4-Felony | Receipt of Illegal Payoffs | 2, 3, 4 |
| 3 | 18 U.S.C. 1001       4-Felony | Making False Statements to Federal Agents | 5, 6, 7, 8 |
| | | | |
| | | | |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO: 11-048 |
| v. | * | SECTION:   "F" |
| HENRY M. MOUTON | * | VIOLATION: 18 U.S.C. § 371 |
| | | 18 U.S.C. § 666(a)(1)(B) |
| | * | |

\*     \*     \*

## FACTUAL BASIS

Should this matter proceed to trial, both the government and the defendant, HENRY M. MOUTON, do hereby stipulate and agree that the following facts set forth a sufficient factual basis for the crime to which the defendant is pleading guilty and that the government would prove the following beyond a reasonable doubt at trial:

In about 1996, HENRY M. MOUTON, organized an overnight duck hunting fundraiser for a former Louisiana governor. At this fundraiser, MOUTON met Co-conspirator "A" who was an attendee. Shortly thereafter, Co-conspirator "A" contacted MOUTON and offered to pay MOUTON $2,000.00 a month and, in exchange, MOUTON agreed to provide Co-conspirator "A" with insider political information and access to the Governor. MOUTON did not register as a

lobbyist for Co-conspirator "A" or for any of his entities with the State of Louisiana. Co-conspirator "A" did not request MOUTON to register as a lobbyist with the State of Louisiana.

In January 2003, MOUTON was appointed by the Governor to serve as a Commissioner on the Louisiana Department of Wildlife and Fisheries Commission. The Louisiana Department of Wildlife and Fisheries (LDWF) is a state agency responsible for the management of Louisiana's renewable resources including wildlife and aquatic life. The LDWF is an agency of the State of Louisiana that received federal assistance in excess of $10,000.00 during each of the one year periods beginning on January 1st and ending on December 31st for the years 2003 - 2009. MOUTON became a public official upon his appointment as a Commissioner to the LDWF. In 2003, and during all times material herein, Co-conspirator "A" owned and operated landfill companies located in Southeast Louisiana. After MOUTON's appointment as Commissioner to the LDWF, MOUTON became a more valuable asset to Co-conspirator "A" now that he was a state public official. Accordingly, on or about April 14, 2003, MOUTON received the first of approximately 180 illegal payoffs/bribes from Co-conspirator "A."

MOUTON received hundreds of thousands of dollars in illegal bribes from Co-conspirator "A" during his appointment as Commissioner on the LDWF. Many of these bribes came from various companies owned and/or operated by Co-conspirator "A." In return for these bribes, Co-conspirator "A" sought MOUTON's participation in various illegal schemes. These illegal schemes included efforts to eliminate business competitors of Co-conspirator "A" as well as the funneling of illegal campaign contributions to state and federal election campaigns. As a public official, it was illegal for MOUTON to receive payments from Co-conspirator "A."

- 2 -

## Old Gentilly Landfill Scheme

Shortly after Hurricane Katrina made landfall in August of 2005, Co-conspirator "A" and other Co-conspirators recognized the potential to obtain millions of dollars in revenue for the collection and disposal of storm debris from storm ravaged areas. The Federal Emergency Management Agency (FEMA) agreed to award and/or reimburse parishes in storm impacted areas for the costs associated with the collection and disposal of storm debris. A portion of these federal funds were eventually paid to Co-conspirator "A."

Co-conspirator "A" conspired with MOUTON to shutter the competition. The plan was to eliminate the competition and increase the revenue of Co-conspirator "A" by increasing the amount of storm debris deposited in the landfills owned by Co-conspirator "A." One such competitor was the Old Gentilly Landfill in New Orleans. Co-conspirator "A" devised a scheme that would exploit and utilize MOUTON's appointed position as a public official and specifically his position and title as a Commissioner on the LDWF. It was agreed that MOUTON would assist Co-conspirator "A" in his secret efforts to close the Old Gentilly Landfill. Because MOUTON's office could not directly close or deny an operational permit for the Old Gentilly Landfill, MOUTON and Co-conspirator "A" used the status and legitimacy of the office of the Commission of the LDWF to influence decision makers in an effort to close the Old Gentilly Landfill as well as other landfills. MOUTON received hundreds of thousands of dollars in illegal bribes from Co-conspirator "A" in return for these official acts as a Commissioner on the LDWF.

For example, acting on behalf of and at the direction of Co-conspirator "A", MOUTON contacted numerous federal officials, on multiple occasions, and sought to convince these officials that the Old Gentilly Landfill and other landfills should remain closed and/or not be allowed to open.

These officials included 17 United States Senators, officials with the Environmental Protection Agency, United States Attorneys, Special Agents with the Federal Bureau of Investigation, officials with the U. S. Army Corps of Engineers, as well as members of the news media. Co-conspirator "A" wanted MOUTON to represent himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries Commission when contacting these officials. Co-conspirator "A" and/or his employees acting under his direction, helped create a letterhead for MOUTON to use when contacting these officials. This letterhead highlighted MOUTON's position as a Commissioner with the LDWF. In addition, Co-conspirator "A" helped author letters for MOUTON that discussed reasons, in detail, to support the closure of the Old Gentilly Landfill. Many of these letters written by Co-conspirator "A", and mailed by MOUTON, discussed how the re-opening of the Old Gentilly Landfill would adversely impact wildlife and the environment. For example, in a five page letter addressed and mailed to United States Senator John W. Warner, Co-conspirator "A" had MOUTON write in part:

HENRY M. MOUTON
COMMISSIONER
LOUISIANA DEPARTMENT OF WILDLIFE AND FISHERIES
P. O. BOX 53097
LAFAYETTE, LA 70505-3097

November 4, 2005

Senator John W. Warner
United States Senate Committee on Environment & Public Works
225 Russell Senate Office Building
Washington, DC 20510

Dear Senator Warner:

I am writing this letter to you as a member of the Louisiana Department of Wildlife & Fisheries.    As a member of the

- 4 -

Commission, I believe I have some responsibility as a caretaker of the environment and fish and game in Louisiana. I am extremely concerned over the recent re-opening of an open dump in New Orleans, Louisiana, which was ordered closed approximately fifteen (15) years ago by the Louisiana Department of Environmental Quality ("LDEQ") because it was an imminent danger to the environment. This area is call the "Gentilly Dump."

In another five page letter written and mailed to an official with the Environmental Protection Agency, Enforcement Division, Co-conspirator "A" had MOUTON write in part:

HENRY W.[sic] MOUTON
Commissioner
Louisiana Department of Wildlife and Fisheries
Post Office Box 53097
Lafayette, Louisiana 70505-3097
Telephone: (337) 280-2616
E-Mail: henrymouton@star-service.com

November 10, 2005

Mr. Greg DeAtley
Environmental Protection Agency
Enforcement Division - Region Six 6PD-UC
1445 Ross Avenue
Dallas, Texas 752002[sic]

RE:   Old Gentilly Landfill

Dear Greg:

Many thanks for taking my telephone call on Monday, November 7, 2005 relating to the Old Gentilly Landfill located in the eastern outskirts of the City of New Orleans. As a Commissioner of the Louisiana Department of Wildlife and Fisheries, I am deeply concerned over the disastrous environmental impact which the re-opening of this dump has visited upon this area and, in particular, the immediately adjacent wetlands.

Also, Co-conspirator "A" and/or his employees acting under his direction created labels for

MOUTON to use when mailing letters written by Co-conspirator "A." Co-conspirator "A"

- 5 -

attempted to convince these officials to undertake some official action to close the Old Gentilly Landfill in New Orleans. Co-conspirator "A" highlighted MOUTON's official state position in an effort to increase the likelihood that MOUTON would be successful in his endeavor to eliminate the competition of Co-conspirator "A."

### Two Rivers Recycling Landfill Scheme

On or about May 8, 2006, Co-conspirator "A" had MOUTON write a letter to Members of the Rapides Parish Police Jury in Alexandria, Louisiana in an effort to prevent the permitting of the Two Rivers Recycling Landfill (Two Rivers) in Catahoula Parish. Co-conspirator "A" was concerned that his landfills would loose revenue if Two Rivers were allowed to open because storm debris from the New Orleans area would be diverted to Two Rivers in Catahoula Parish. In the May 8, 2006 letter, MOUTON, acting on behalf of Co-conspirator "A," represented himself as a Commissioner on the State of Louisiana Department of Wildlife and Fisheries. In the letter, MOUTON sought to convince the members of the Rapides Parish Police Jury to oppose the permitting of Two Rivers and, specifically, to vote to oppose the landfill.

On or about August 16, 2006, Co-conspirator "A" paid MOUTON $30,000.00 to hire an advertizing/public relations firm for the purpose of creating negative public opinion about Two Rivers. Acting on behalf of and at the direction of Co-conspirator "A," MOUTON hired an advertizing/public relations firm located in Western Louisiana. Consequently, numerous advertisements, including several full page ads, were placed in newspapers in an effort to convince public officials and residents to oppose Two Rivers. It was further part of the scheme that none of the ads were attributed to Co-conspirator "A" or MOUTON. Ultimately, the permit for Two Rivers was denied.

It was further part of this illegal bribery scheme for MOUTON to conceal his relationship with Co-conspirator "A" and to conceal the fact that MOUTON was receiving illegal bribes from Co-conspirator "A." Accordingly, MOUTON did not disclose to the officials he contacted in the Old Gentilly and Two Rivers schemes that he was receiving bribes from Co-conspirator "A" nor did MOUTON disclose that Co-conspirator "A" was a landfill owner who stood to benefit significantly from the closure of the Old Gentilly Landfill and from the denial of operational permits for other competitor landfills such as Two Rivers.

Illegal Campaign Contribution Scheme

Co-conspirator "A" also enlisted MOUTON in a scheme to commit election fraud in order to further attempt to influence decision makers and to circumvent state and federal election laws. On or about April 24, 2006, MOUTON agreed to help Co-conspirator "A" make approximately $11,000.00 in illegal campaign contributions to a U. S. Congressional candidate's campaign. On or about April 24, 2006, Co-conspirator "A" had another co-conspirator write $11,000.00 in checks to MOUTON and others known and unknown to the grand jury with the intention to make illegal campaign contributions to a federal election campaign. In addition, on or about December 27, 2006, MOUTON helped Co-conspirator "A" make an illegal campaign contribution to a state candidate. In both instances, Co-conspirator "A" used MOUTON and others so that the contributions would not be attributed to Co-conspirator "A."

Summary of Bribes

In addition to the monthly payoffs, Co-conspirator "A" bribed MOUTON with payments that, in some cases, were characterized as no interest loans. In reality, these loans were a sham; no interest or payments were ever collected or paid on these loans nor were any loan documents

- 7 -

executed. In other instances, Co-conspirator "A" reimbursed MOUTON for lavish fishing trips, meals, and gifts for other public officials. Co-conspirator "A" made the following payments to MOUTON among others:

| DATE | AMOUNT |
|------|--------|
| 10/27/2003 | $12,000.00 |
| 12/24/2003 | $12,000.00 |
| 07/30/2004 | $18,000.00 |
| 02/10/2005 | $18,000.00 |
| 12/16/2005 | $18,000.00 |
| 01/03/2006 | $17,000.00 |
| 04/06/2006 | $5,000.00 |
| 04/07/2006 | $7,500.00 |
| 04/25/2006 | $4,400.00 |
| 04/27/2006 | $4,400.00 |
| 05/18/2006 | $3,882.14 |
| 06/30/2006 | $5,148.78 |
| 08/02/2006 | $18,250.00 |
| 08/16/2006 | $30,000.00 |
| 09/13/2006 | $17,040.10 |
| 09/13/2006 | $12,320.00 |
| 10/06/2006 | $16,500.00 |
| 10/12/2006 | $4,000.00 |
| 12/28/2006 | $10,000.00 |
| 09/14/2007 | $21,000.00 |
| 09/14/2007 | $4,000.00 |
| 12/24/2007 | $4,000.00 |

| DATE | AMOUNT |
|------|--------|
| 12/26/2007 | $2,500.00 |
| 12/26/2007 | $2,500.00 |
| 12/26/2007 | $500.00 |

MOUTON resigned from his term as a Commissioner on the LDWF in November 2008 but Co-conspirator "A" continued to pay MOUTON, in an effort to conceal the illegal bribery scheme and election fraud. These illegal payments continued until attorneys working for Co-conspirator "A", aware that Co-conspirator "A" was under federal investigation, decided that Co-conspirator "A" should discontinue the payments to MOUTON. In 2011, an attorney for Co-conspirator "A" contacted MOUTON's attorney and advised that no further payments would be made to MOUTON.

From on or about April 14, 2003, to on or about January 2011, Co-conspirator "A" paid MOUTON hundreds of thousands of dollars in illegal bribes and payoffs.

<u>Limited Nature of Factual Basis</u>

This proffer of evidence is not intended to constitute a complete statement of all facts known by MOUTON and described by MOUTON to the government, but rather is a minimum statement of facts intended to prove the necessary factual predicate for his guilty plea. The limited purpose

- 9 -

of this factual basis is to demonstrate that there exists a sufficient legal basis for **MOUTON**'s plea

of guilty to the charged offense.

HENRY M. MOUTON
Defendant

DATE 5-1-11

MARY OLIVE PIERSON
Counsel for Defendant

DATE 5-6-11

SALVADOR PERRICONE
Assistant United States Attorney

DATE 5-19-11

JAMES R. MANN
Assistant United States Attorney

DATE 5-19-2011

BRIAN M. KLEBBA
Assistant United States Attorney

DATE 5/17/11

GREGORY KENNEDY
Assistant United States Attorney

DATE 5-19-11

WILLIAM J. QUINLAN, JR.
Assistant United States Attorney

DATE 5/17/11

3054
WF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

# FELONY

### INDICTMENT FOR CONSPIRACY TO COMMIT MAIL FRAUD, MAIL FRAUD, CONSPIRACY TO COMMIT MONEY LAUNDERING, AND MONEY LAUNDERING

| UNITED STATES OF AMERICA | * | CRIMINAL NO. | 11-157 |
| v. | * | SECTION: | SECT. C MAG. 5 |
| DOMINICK FAZZIO | * | VIOLATIONS: | 18 USC § 2 |
| | * | | 18 USC § 371 |
| | | | 18 USC § 1341 |
| | * | | 18 USC § 1956(h) |
| | | | 18 USC § 1957 |



*     *     *

The Grand Jury charges that:

### COUNT 1

A.     AT ALL TIMES MATERIAL HEREIN:

1.     DOMINICK FAZZIO (hereafter referred to as "FAZZIO"), was an individual residing and doing business in Louisiana.

2.     Garner Services, L.L.C. (hereafter referred to as "GSL"), was a construction management company and a non-Louisiana corporation doing business in the State of Louisiana and other states in the United States.



EXHIBIT
4

3.     Mark J. Titus (hereafter referred to as Titus), was the Chief Operating Officer and part owner of GSL.

4.     W.C.S., Inc. was a business incorporated in the State of Louisiana. FAZZIO was the Registered Agent, Director, and an officer of W.C.S., Inc.

5.     Crescent City Materials and Hauling, L.L.C. (hereafter referred to as CCMH), was a Limited Liability Company registered in the State of Louisiana. FAZZIO was the Registered Agent and Manager of CCMH.

6.     TLT Properties, L.L.C. (hereafter referred to as TLT), was a Limited Liability Company registered in the State of Louisiana. Titus was the Registered Agent and Member of TLT.

7.     QCI Marine Services, L.L.C. (hereafter referred to as QCI), was a non-Louisiana Limited Liability Company doing business in the State of Louisiana and other states in the United States. QCI owned 24.5 percent of GSL. QCI was responsible for processing the accounts payable for GSL at the behest of Titus.

B.     THE SCHEME:

Beginning at a time unknown but prior to June 2, 2008, through the date of this Indictment, in the Eastern District of Louisiana and elsewhere, the defendant, DOMINICK FAZZIO, and others known and unknown to the Grand Jury did knowingly and willfully devise and intend to devise a scheme and artifice to defraud GSL and to obtain money by means of false pretenses, promises and representations by fraudulently creating invoices for services never rendered to GSL and causing

2

payments to be made by GSL ultimately to FAZZIO and Titus for such fraudulent invoices.

C.    THE CONSPIRACY:

Beginning at time unknown, but before June 2, 2008, and continuing through the date of this Indictment, in the Eastern District of Louisiana and elsewhere, the defendant, DOMINICK FAZZIO and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree with each other to knowingly and willfully cause mail matter to be delivered by interstate commercial carriers for the purpose of executing the scheme set forth above in violation of Title 18, United States Code, Section 1341.

D.    OVERT ACTS:

In furtherance of the conspiracy and to accomplish its purposes, the defendant and others committed the following overt acts, among others, in the Eastern District of Louisiana and elsewhere:

<u>OVERT ACTS 1 - 18</u>

1.    At an exact time unknown but prior to June 2, 2008, FAZZIO and Titus agreed to create fraudulent invoices made payable from GSL to companies controlled by FAZZIO.

2.    At an exact time unknown but prior to June 2, 2008, FAZZIO and Titus agreed that FAZZIO would retain a portion of the amount paid by GSL to the companies controlled by FAZZIO as payment for his role in the fraud scheme.

3

3.    At an exact time unknown but prior to June 2, 2008, **FAZZIO** and Titus
      agreed that **FAZZIO** would then send the remaining money sent from GSL
      back to Titus through Titus' company, TLT and/or make payments to other
      entities on Titus' behalf.

4.    On or about June 2, 2008, **FAZZIO** and Titus caused CCMH to
      fraudulently invoice GSL in the amount of $84,200.

5.    On or about June 11, 2008, **FAZZIO** and Titus caused QCI to issue a
      check on behalf of GSL to CCMH in the amount of $84,200.

6.    On or about November 28, 2008, **FAZZIO** and Titus caused CCMH to
      fraudulently invoice GSL in the amount of $108,400.

7.    On or about December 10, 2008,   **FAZZIO** and Titus caused QCI to issue
      a check on behalf of GSL to CCMH in the amount of $108,400.

8.    On or about November 28, 2010, **FAZZIO** and Titus caused CCMH to
      fraudulently invoice GSL in the amount of $36,400.

9.    On or about January 4, 2011, **FAZZIO** and Titus caused QCI to issue a
      check on behalf of GSL to CCMH in the amount of $36,400.

10.   On or about September 4, 2009, **FAZZIO** and Titus caused W.C.S., Inc.
      to fraudulently invoice GSL in the amount of $209,320.

11.   On or about October 9, 2009, **FAZZIO** and Titus caused QCI to issue a
      check on behalf of GSL to W.C.S., Inc. in the amount of $209,320.

12.   On or about January 4, 2010, **FAZZIO** and Titus caused W.C.S., Inc. to
      fraudulently invoice GSL in the amount of $762,000.

4

13.     On or about April 21, 2010, **FAZZIO** and Titus caused QCI to issue a check on behalf of GSL to W.C.S., Inc. in the amount of $162,000.

14.     On or about April 21, 2010, **FAZZIO** and Titus caused QCI to mail to Mark Titus, via Federal Express, a check in the amount of $162,000.

15.     On or about October 6, 2010, **FAZZIO** and Titus caused QCI to issue a check on behalf of GSL to W.C.S., Inc. in the amount of $175,000.

16.     On or about October 6, 2010, **FAZZIO** and Titus caused QCI to mail to Mark Titus, via Federal Express, a check in the amount of $175,000.

17.     On or about March 24, 2011, **FAZZIO** and Titus caused QCI to issue a check on behalf of GSL to W.C.S., Inc. in the amount of $150,000.

18.     On or about March 24, 2011, **FAZZIO** and Titus caused QCI to mail to Mark Titus, via Federal Express, a check in the amount of $150,000.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 - 4

A.     AT ALL TIMES MATERIAL HEREIN:

The allegations contained in Count 1, Sections A and B are reincorporated herein by reference.

B.     MAILINGS:

On or about the dates listed below, in the Eastern District of Louisiana, the defendant, DOMINICK FAZZIO and others as set forth below, for the purpose of executing the scheme and artifice to defraud set forth in Count 1, knowingly and willfully caused checks for payments to be placed in interstate commercial carriers for delivery to the recipient listed below:

5

| COUNT | DATE | SENDER | RECIPIENT | CONTENTS |
|-------|------|--------|-----------|----------|
| 2 | 04/21/2010 | QCI Marine Services, LLC | Mark J. Titus | Check in the amount of $162,000 |
| 3 | 10/06/2010 | QCI Marine Services, LLC | Mark J. Titus | Check in the amount of $175,000 |
| 4 | 03/24/2011 | QCI Marine Services, LLC | Mark J. Titus | Check in the amount of $150,000 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

<u>COUNT 5</u>

A.    AT ALL TIMES MATERIAL HEREIN:

     1.    The allegations contained in Count 1, Sections A and B are reincorporated herein by reference.

     2.    Capital One Bank is a financial institution with branches located in Louisiana.

     3.    Gulf Coast Bank and Trust is a financial institution with branches located in Louisiana.

     4.    Amegy Bank of Texas is a financial institution with branches located in Texas.

     5.    CCMH maintains a checking account, number xxxxxx7816, with Capital One Bank.

     6.    W.C.S., Inc. maintains a checking account, number xxxxxx2213, with Capital One Bank.

     7.    W.C.S., Inc. maintains a checking account, number xxxxx9984, with Gulf Coast Bank and Trust.

6

8.      GSL maintains a checking account, number xxxxxx4664, with Amegy

Bank.

9.      A specified unlawful activity as defined in Title 18, United States Code,

Sections 1956(c)(7)(A) and 1961(1) includes mail fraud in violation of Title 18, United

States Code, Section 1341.

B.      CONSPIRACY:

Beginning at a time unknown, but before June 2, 2008, and continuing through

the date of this Indictment, in the Eastern District of Louisiana and elsewhere, the

defendant, DOMINICK FAZZIO, and others, did, with the intent to promote the carrying

on of the specified unlawful activity set forth in paragraph 9, above, combine, conspire,

confederate and agree with each other to knowingly and willfully conduct and attempt to

conduct a financial transaction affecting interstate and foreign commerce, as further

described below which involved the proceeds of said specified unlawful activity with the

intent to promote the carrying on of specified unlawful activity and that while conducting

and attempting to conduct such financial transaction knew that the property involved in

the financial transaction, that is funds, represented the proceeds of some form of

unlawful activity in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i);

C.      OVERT ACTS:

On or about the dates below, FAZZIO and others caused the following checks

from GSL, related to payments for fraudulent invoices, made payable to CCMH to be

deposited in CCMH's account, number xxxxx7816, located at Capital One Bank:

7

| OVERT ACT | DATE OF CHECK | CHECK NUMBER | AMOUNT |
|-----------|---------------|--------------|--------|
| 1 | 06/11/2008 | 2181 | $ 84,200 |
| 2 | 12/10/2008 | 2253 | $108,400 |
| 3 | 01/04/2011 | 2814 | $ 36,400 |

On or about the dates below, FAZZIO and others caused the following checks from GSL related to payments for fraudulent invoices made payable to W.C.S., Inc. to be deposited in W.C.S., Inc.'s account, number xxxxx2213, located at Capital One Bank.

| OVERT ACT | DATE OF CHECK | CHECK NUMBER | AMOUNT |
|-----------|---------------|--------------|--------|
| 4 | 10/15/2009 | 2462 | $209,320 |
| 5 | 04/28/2010 | 2623 | $162,000 |

On or about the dates below, FAZZIO and others caused the following checks from GSL, related to payments for fraudulent invoices, made payable to W.C.S., Inc. to be deposited in W.C.S., Inc.'s account, number xxxxx9984, located at Gulf Coast Bank and Trust.

| OVERT ACT | DATE OF CHECK | CHECK NUMBER | AMOUNT |
|-----------|---------------|--------------|--------|
| 6 | 10/16/2010 | 2755 | $175,000 |
| 7 | 03/24/2011 | 2882 | $150,000 |

On or about the dates below, FAZZIO endorsed the following checks from CCMH's account, number xxxxx7816, located at Capital One Bank, made payable to TLT.

8

| OVERT ACT | DATE OF CHECK | CHECK NUMBER | AMOUNT |
|-----------|--------------|--------------|--------|
| 8 | 07/18/2008 | 1000 | $25,000 |
| 9 | 07/18/2008 | 1001 | $25,000 |
| 10 | 07/18/2008 | 1002 | $25,000 |
| 11 | 12/31/2008 | 1007 | $25,000 |
| 12 | 12/31/2008 | 1008 | $20,000 |
| 13 | 12/31/2008 | 1009 | $21,400 |

On or about the dates below, FAZZIO endorsed the following checks from W.C.S., Inc.'s account, number.xxxxx2213, located at Capital One Bank, made payable to TLT.

| OVERT ACT | DATE OF CHECK | CHECK NUMBER | AMOUNT |
|-----------|--------------|--------------|--------|
| 14 | 11/02/2009 | 629 | $66,682.91 |
| 15 | 05/02/2010 | 635 | $30,000 |
| 16 | 05/05/2010 | 636 | $26,000 |
| 17 | 05/06/2010 | 637 | $39,850 |
| 18 | 05/07/2010 | 638 | $32,000 |
| 19 | 05/08/2010 | 640 | $22,000 |

On or about the dates below, FAZZIO endorsed the following checks from W.C.S., Inc.'s account, number xxxxx9984, located at Gulf Coast Bank and Trust. made payable to TLT.

| OVERT ACT | DATE OF CHECK | CHECK NUMBER | AMOUNT |
|-----------|--------------|--------------|--------|
| 20 | 04/24/2011 | 1002 | $50,000 |
| 21 | 04/25/2011 | 1003 | $35,000 |

All in violation of Title 18, United States Code, Section 1956(h).

9

COUNTS 6 - 19

On or about the dates indicated below, in the Eastern District of Louisiana and elsewhere, defendant, DOMINICK FAZZIO, did knowingly engage and attempt to engage in monetary transactions by, through or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is the deposit, withdrawal, and transfer of funds in the amounts indicated below, such property having been derived from a specified unlawful activity, that is mail fraud in violation of Title 18, United States Code, Section 1341 involving mailings in furtherance of the scheme;

| COUNT | DATE OF TRANSACTION | TYPE OF TRANSACTION | PAYEE | AMOUNT |
|-------|---------------------|---------------------|-------|--------|
| 6 | 07/18/2008 | Check | TLT Properties | $25,000 |
| 7 | 07/18/2008 | Check | TLT Properties | $25,000 |
| 8 | 07/18/2008 | Check | TLT Properties | $25,000 |
| 9 | 12/31/2008 | Check | TLT Properties | $25,000 |
| 10 | 12/31/2008 | Check | TLT Properties | $20,000 |
| 11 | 12/31/2008 | Check | TLT Properties | $21,400 |
| 12 | 11/02/2009 | Check | TLT Properties | $66,682.91 |
| 13 | 05/02/2010 | Check | TLT Properties | $30,000 |
| 14 | 05/05/2010 | Check | TLT Properties | $26,000 |
| 15 | 05/06/2010 | Check | TLT Properties | $39,850 |
| 16 | 05/07/2010 | Check | TLT Properties | $32,000 |
| 17 | 05/08/2010 | Check | TLT Properties | $22,000 |
| 18 | 04/24/2011 | Check | TLT Properties | $50,000 |
| 19 | 04/24/2011 | Check | TLT Properties | $35,000 |

all in violation of Title 18, United Sates Code, Sections 1957 and 2.

10

## NOTICE OF MAIL FRAUD FORFEITURE

1.     The allegations of Counts 1 through 4 of this Indictment are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Sections 371, 1341, and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).

2.     As a result of the offenses alleged in Counts 1 through 4 defendant, DOMINICK FAZZIO, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Sections 371 and 1341, including but not limited to:

   a.     $1,200,320 in United States currency and all interest an proceeds traceable thereto.

   b.     The government specifically provides notice of its intent to seek a personal money judgement against the defendant in the amount of the fraudulently obtained proceeds.

3.     If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

   a.     cannot be located upon the exercise of due diligence;
   b.     has been transferred or sold to, or deposited with, a third person;
   c.     has been placed beyond the jurisdiction of the Court;
   d.     has been substantially diminished in value; or
   e.     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section

11

853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Sections 371,1341, and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).

## NOTICE OF MONEY LAUNDERING FORFEITURE

1.     The allegations of Counts 5 through 19 of this Indictment are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982.

2.     As a result of the offenses alleged in Count 5 through 19, defendant, DOMINICK FAZZIO, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982, all property real or personal, involved in the aforesaid offenses and all property traceable to such property in violation of Title 18, United States Code, Sections 1956 and 1957, including but not limited to:

   a.   $1,200,320 in United States currency and all interest an proceeds traceable thereto.

   b.   The government specifically provides notice of its intent to seek a personal money judgement against the defendant in the amount of the fraudulently obtained proceeds.

3.     If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

   a    cannot be located upon the exercise of due diligence;
   b.   has been transferred or sold to, or deposited with, a third person;
   c.   has been placed beyond the jurisdiction of the Court;
   d.   has been substantially diminished in value; or

12

     e.    has been commingled with other property
             which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section

982(b)(1) to seek forfeiture of any other property of said defendant up to the value of

the above forfeitable property.

     All in violation of Title 18, United States Code, Sections 982, 1956, and 1957.

                             A TRUE BILL:

                                _____
                                   FOREPERSON

_____
JIM LETTEN
United States Attorney
Louisiana Bar Roll No. 8517

_____
JAN MASELLI MANN
First Assistant U.S. Attorney
Chief, Criminal Division
Louisiana Bar Roll No. 9020

_____
GREGORY M. KENNEDY
Assistant United States Attorney
Louisiana Bar Roll No. 20896

_____
JAMES R. MANN
Assistant United States Attorney
Louisiana Bar Roll No. 20513

_____
SALVADOR R. PERRICONE
Assistant United States Attorney
Louisiana Bar Roll No. 10515

_____
BRIAN M. KLEBBA
Assistant United States Attorney
New York Bar Roll No. 2938728

_____
WILLIAM J. QUINLAN, JR.
Assistant United States Attorney
Louisiana Bar Roll No. 22600

New Orleans, Louisiana
June 24, 2011

                                CLERK'S OFFICE
                                A TRUE COPY

                                JUN 24 2011

                         Deputy Clerk, U.S. District Court
                         Eastern District of Louisiana
                         New Orleans, LA



Everything New Orleans

# Aaron Broussard, Tim Whitmer face ethics charges in Jefferson Parish scandal

Published: Tuesday, January 11, 2011, 6:21 PM    Updated: Wednesday, January 12, 2011, 11:06 AM

 By Richard Rainey, The Times-Picayune

The Louisiana Board of Ethics has filed a total of three dozen ethics charges against former Jefferson Parish President **Aaron Broussard**, his former top administrator, Tim Whitmer, and Whitmer's wife, Dawn.



Times-Picayune archive

Former Parish President Aaron Broussard

The bulk of the violations are tied to an agreement between the Whitmers' private insurance agency and the board of a public West Jefferson hospital while Broussard and Tim Whitmer were in parish government.

Whitmer's insurance agency, **Lagniappe Industries**, had a deal to sell and manage voluntary insurance policies for employees at West Jefferson Medical Center. Lagniappe itself also faces 26 ethics charges.

Whitmer and Broussard also face alleged violations tied to their annual tradition of **collecting** $4,500 from department directors and executive staff for Broussard's Christmas gift.

**Read the charges**
- **From the Louisiana Board of Ethics**

The Ethics Board filed the charges Dec. 17 to avoid any statutes of limitations, but Whitmer had been in settlement discussions with state attorneys for several months, said Dane Ciolino, the attorney for the Whitmers and Lagniappe.



EXHIBIT
5

Aaron Broussard, Tim Whitmer f      .ics charges in Jefferson Parish sca                Page 2 of 3

"In principle, he has admitted to some of these violations and is going to hopefully resolve them through a consent resolution," Ciolino said. He added that he was uncertain of the total penalties that the Whitmers and Lagniappe are facing.

Julian Murray, an attorney representing Broussard temporarily after his initial attorney, Mike Ellis, retired for medical reasons, said Tuesday that it wouldn't be appropriate for him to comment.

Judges Alvin Landry and John Kopynec of the Administrative Law Division spoke with the defense attorneys Friday for scheduling purposes, according to state documents. The Administrative Law Division adjudicates charges filed by the Ethics Board.

The alleged violations provide a cursory map of the scandal that dismantled Broussard's administration one year ago. After news reports detailed Lagniappe's involvement at West Jefferson Medical Center and its work with several parish contractors, federal authorities launched a wide-ranging criminal investigation. No indictments have been issued in the case.



**View full size**                                    Times-Picayune archive

In January 2010, Jefferson Parish President Aaron Broussard speaks to the media at after his chief administrative officer, Tim Whitmer, announced his resignation.

Broussard and Whitmer resigned in January 2010. Former Parish Attorney Tom Wilkinson resigned in March under pressure from interim Parish President Steve Theriot.

The charges against Tim Whitmer focus not only on his role as the parish's No. 2 executive, but also as a member of the parish's Insurance Advisory Committee while Lagniappe was doing business with contractors and the medical center. The ethics board stated that the hospital was "under his supervision or jurisdiction of his agency" at the time.

The Ethics Board alleged that Whitmer accepted "a thing of economic value" from several insurance providers, including CIGNA, Coventry Health Care, Humana Health Care, Colonial Life and Davis Vision, companies that either had contracts with Jefferson Parish or sought to do business with the government. The companies paid Lagniappe for its work selling and managing policies, records show.

The Whitmers and Lagniappe were also cited for entering into cooperative endeavor agreements with two other insurance agencies managed by politically connected associates. Former Parish President Tim Coulon ran Coulon Consultants and the late Maurice "Hippo" Katz had Katz & Katz, records show. Lagniappe also

shared commissions with B&A Insurance, an agency owned by Gary Burke that does insurance work for several public entities in the New Orleans area.

The charges against Tim Whitmer also cite Lagniappe's work for several parish contractors, including Sizeler Architects, Fleming Construction, Kass Brothers Inc., Veolia Transportation Services, Hubbard Enterprises, River Birch Inc. and Murray White, president of Beta Testing & Inspection. Hubbard Enterprises was owned by former St. John the Baptist Parish President Bill Hubbard, who pleaded guilty in 2009 to federal bribery charges. River Birch Inc. is also under federal investigation for its contract to dispose of all household waste in unincorporated Jefferson Parish.



Times-Picayune archive
Tim Whitmer and his wife, Dawn, leave the federal courthouse in New Orleans on Dec. 4, 2009

Broussard faces fewer charges, but no less serious. The Ethics Board accused him of violating state law when he **accepted** $5,000 for doing "legal work" for Lagniappe Industries in 2009. It also cited him for accepting $4,500 each year from 2007 through 2009 as a holiday gift certificate from his staff.

During those three years, department directors and Broussard's executive staff each gave $100 to be pooled for Broussard's gift. Whitmer, who sent e-mails asking for the donations, faces two additional ethics charges for using his position to "directly, in a manner intended to compel the executive staff of Jefferson Parish to give the parish president a thing of economic value.

The next round of hearings before the Administrative Law Division are scheduled for March 29 and April 1.

© 2011 NOLA.com. All rights reserved.





Everything New Orleans

# Aaron Broussard investigators may be working to build a bigger case

Published: Sunday, February 20, 2011, 6:15 AM

 By **Richard Rainey, The Times-Picayune**

After firing off subpoenas, wading through documents and trudging through one interview after another for 15 months, the actions of federal investigators last week suggest that several people in the administration of former Jefferson Parish President **Aaron Broussard** are considerably closer to entering a courtroom.



**View full size**                          The Times-Picayune archive

Karen Parker, left, looks as her then-husband, Aaron Broussard, is hugged during his inauguration as Jefferson Parish president in 2008.

But legal experts said that the ultimate strategy behind the increased focus of U.S. Attorney **Jim Letten** on certain individuals -- Broussard included -- remains a guessing game.

Target letters, a last line of hope tossed by federal prosecutors to those individuals in their scopes, went out Wednesday to Broussard and his ex-wife, Karen Parker.

A day later, at least four Parish Council members -- Tom Capella, Chris Roberts, Cynthia Lee-Sheng and Elton Lagasse -- and current Parish President John Young were called to testify this Friday before a grand jury.

No indictments have been issued, but attorneys for Broussard and Parker said the target letters listed three charges related to wire fraud, conspiracy and the misappropriation of federal money.

**Targets put on notice**

It appears federal prosecutors could be using evidence of possible payroll fraud against Broussard and Parker to build a bigger case under the Racketeer Influenced and Corrupt Organizations law. In that vein,

Aaron Broussard investigators m       working to build a bigger case                    Page 2 of 4

the target letters could be interpreted as a last-ditch call to those involved to come in and work with prosecutors before being left out in the cold.

"It seems to me this is probably putting them on notice that they better cooperate," said Tulane University Law School professor Ed Sherman.

Originally meant as a weapon against mob activity when it was enacted in 1970, the RICO law has been increasingly expanded over the years to combat corruption in government.

"It could bring in not only the people you're talking about, but people on the fringes (of an investigation) who themselves haven't committed the crimes," Sherman said.

The council members and Young said they consider themselves witnesses, not targets. Such is not the case for Parker and Broussard, along with Broussard's top aide, **Tim Whitmer** and former Parish Attorney Tom Wilkinson.

Each has hired attorneys and each has responded to grand juries. The next step, legal experts say, is now up to them.

Julian Murray, attorney for Broussard, didn't return messages left Thursday and Friday seeking comment. David Courcelle, attorney for Parker, declined to comment. Patrick Fanning, Whitmer's attorney, and Ralph Whalen, who is representing Wilkinson, also didn't return messages.

The four former officials are the hub of federal interest in what has morphed into a sprawling probe of **Jefferson Parish's politics and partnerships.**

### Lagniappe leads to probe

Federal authorities delivered the first round of subpoenas in November 2009, after media reports disclosed the activities of **Lagniappe Industries**, a small insurance brokerage owned by Whitmer and his wife, Dawn.

The Whitmers had registered the company in 2002 with the Secretary of State's office and later partnered with former Parish President Tim Coulon and his wife, Mary, and the late political powerbroker Maurice "Hippo" Katz and his wife, Judy, state documents show.

Lagniappe was doing business with public agencies, including West Jefferson Medical Center and St. John the Baptist Parish government. The firm also was handling insurance matters for Jefferson Parish contractors including subsidiaries of Veolia Environment, Fleming Construction Co., Kass Brothers Construction Co., Hubbard Enterprises, the architecture firm Sizeler Thompson Brown, Shadowlake Management Co. and its sister company, River Birch Inc., owner of a massive landfill in Waggaman that signed a $160 million deal with the parish in July 2009. Federal authorities raided the company's Gretna offices in September .

Additionally, Broussard admitted he had done $5,000 of "legal work" for Lagniappe in the summer of 2009, and Wilkinson, the parish attorney, said Lagniappe did private insurance work for him. Both recused themselves from investigating Whitmer.

All the while, the trio was ostensibly running parish government.

Subpoenas, grand juries and unrelenting public pressure led Broussard and Whitmer to resign in January 2010. Wilkinson, after being suspended in February by interim Parish President Steve Theriot, resigned in March.

The increased scrutiny soon turned to Broussard's relationship with Parker, his ex-wife. Wilkinson had hired her as a paralegal supervisor even though she didn't have the required license and was actually performing another parish job in the security department. Still, she was being paid $22,000 more than her duties working with parish IDs should have earned her, according to a later report by the state Legislative Auditor.

Theriot fired her in February 2010.

**Next move is uncertain**

Whether more target letters, subpoenas or indictments are in the offing is anyone's guess. U.S. Attorney's office spokeswoman Kathy English wouldn't comment Friday.

"It's still hard to know what the government's doing," former U.S. Attorney Harry Rosenberg said. "The target letters suggest that the government is going to move forward with official criminal charges, but it doesn't always."

As a means of strategy, federal prosecutors could be using evidence of payroll fraud as a means to coax Broussard and Parker to provide information on other alleged crimes, Rosenberg said. A plea deal would indicate some level of cooperation between the targets and the government.

"That individual gets a little better deal, because they've made it easier on the government," he said.

But Rosenberg said it's safe to assume that Broussard and Parker haven't reached a plea agreement, considering that prosecutors sent target letters.

Another consideration are statutes of limitations. For most federal crimes, prosecutors have five years to bring charges after a crime has occurred. However, conspiracy cases are more flexible: the clock on prosecution doesn't start until the last act was committed in the allegedly ongoing criminal enterprise. It also can be linked to the revelation of an alleged crime, depending on the circumstance, Rosenberg said.

Neither case fully applies to Broussard or Parker. Broussard didn't resign until January 2010 and Parker was fired a month later.

Still, observers are likely to find the interplay among the targeted individuals most interesting, Rosenberg said, "because the government's approach is, not surprisingly, to divide and conquer."

*Richard Rainey can be reached at **rrainey@timespicayune.com** or 504.883.7052.*

© 2011 NOLA.com. All rights reserved.



Everything New Orleans

# Jefferson Parish's attorney suspended amid outcry, subpoenas, payroll irregularities

Published: Thursday, February 25, 2010, 5:44 PM    Updated: Friday, February 26, 2010, 6:49 AM

**Richard Rainey, The Times-Picayune**
By



Rusty Costanza / The Times-Picayune archiveJefferson Parish's chief attorney, Tom Wilkinson, left, was suspended Thursday by interim Parish President Steve Theriot, who is pictured with Wilkinson at a Parish Council meeting earlier this year.After three months enduring public outcry and federal subpoenas, Tom Wilkinson, Jefferson Parish's embattled chief attorney, was suspended from office Thursday.

Interim Parish President Steve Theriot said he placed Wilkinson on paid administrative leave but wouldn't say why. He said Peggy Barton, an assistant parish attorney, will assume Wilkinson's duties for the foreseeable future.

"It's a personnel issue," Theriot said. "I don't want to put myself or the parish in a (bad) position" by offering details.

Wilkinson will continue to collect his annual $184,000 salary unless Theriot takes further action.

"Mr. Theriot has the right to make this decision, and I respect his right to do so," Wilkinson said in a written statement. "I have no further comments on this matter."

http://blog.nola.com/politics/print.html?entry=/2010/02/jefferson_parish_attorney_susp.html    9/6/2011

Wilkinson's suspension is the latest fallout from a scandal that has pummeled former Parish President **Aaron Broussard**'s administration since November. Broussard resigned Jan. 8, four days after chief administrative officer Tim Whitmer left under the pressure of a federal criminal investigation into his **private insurance business**.

The parish attorney's office has been hit especially hard, with Wilkinson being the fifth employee to leave it in five weeks.

Wilkinson, 52, has spent 14 years as parish attorney in two administrations: Broussard's and that of former Parish President Tim Coulon. Before that, he was a domestic hearing officer for the Mike Yenni administration.

Known around the office as "The Bulldog," he developed a reputation as a curt, even abrasive litigator.

"He had his own unique style that certainly wasn't my style," said Parish Councilman John Young, a lawyer. "It was oftentimes aggressive, but for him it worked more often than not."

Wilkinson has taken heat for **getting outsized pay raises** from Broussard, who used discretionary authority to boost the parish attorney's salary by more than 50 percent, from $122,000 to $183,900, over a 14-month period ending in January 2009. Broussard had **given similar raises to Whitmer**, whose salary shot up 76 percent to $189,000 over a 15-month period.



Tom WilkinsonThe public dunning of the parish attorney began when Wilkinson **recused himself** last year from an internal investigation into Whitmer's insurance work. Wilkinson said it was inappropriate for him to investigate the matter because Whitmer's wife, Dawn, insured two buildings he partly owned and because he handled the estate of Whitmer's parents last year.

Wilkinson also was the registered agent for **CWC Gaming**, a firm that Whitmer and Coulon formed in May to pursue a revenue-sharing deal with Redman Gaming and Tall Timbers Truckstop & Casino. The companies are video poker truck stop operators that were seeking a special parish permit and zoning change to build a truck stop casino near Westwego. The Broussard administration backed the zoning change and the **Parish Council** approved it, but the deal fell apart after Whitmer fell under federal investigation.

Wilkinson has said he notarized CWC's incorporation documents as a favor to Whitmer and Coulon and was not involved in the firm's operations, including the scuttled video poker deals.

His private work for Whitmer prompted the council Feb. 10 to **ban the parish attorney from working for other parish employees.** The council is now considering a ban on all outside work for Jefferson's top lawyer, in light of disclosures that Wilkinson has a **busy private law practice** despite a parish charter requirement that the parish attorney "shall devote his full time to the service of the parish."

Wilkinson also served with Whitmer as an officer for Coulon's campaign committee, raising questions about the melding of his private and public work. Parish law bans employees from engaging in political activity, but there are a few exceptions. One is for the parish president's "administrative assistants," a murky designation that may or may not include the parish attorney.



Tim WhitmerSecretary of state records say Wilkinson served on Coulon's committee from 1995 until 2007. During that time, the committee listed the Joseph S. Yenni Building, the east bank headquarters of parish government, as the campaign's official address.

"It's clear there's some questions right now about what is and what's not permissible as far as political activity on the part of the parish attorney," Councilman Chris Roberts said. "We clearly are looking to get answers on that."

John Combe, who sits on the parish's three-member personnel board, said the board normally deals with classified employees covered by civil service rules but may also investigate unclassified political appointees, such as Wilkinson, under certain circumstances. He said the charter gives the board authority to review allegations of ethics violations for all employees.

Speaking generally, without mentioning Wilkinson's name, Combe said the board is reviewing what level of political activity is permissible for unclassified employees.

"We're not anxious to do this," he said. "We're reluctant to do this, but we're obligated to do it."

Politics, or at least political relationships, seem to be part of the make-up of the parish attorney's office. Wilkinson took public criticism after revelations that Broussard's ex-wife, Karen Parker, **was collecting a**

$65,000 annual salary as a "paralegal supervisor" in the Law Department. But parish records show she actually worked in the security office at a position that should have paid no more than $43,000.

Parker was fired Feb. 5. She was among three paralegals to leave or be ousted from the Law Department, the others being sports radio personality Ken Trahan and Jefferson Parish Constable Tony Thomassie. Both also worked in other departments, records show.

Afterward, some residents roused a hue and cry calling for Wilkinson to be disciplined.

"Citizens for Good Government sincerely hopes that you are intending to take punitive action against parish employees, particularly parish attorney Tom Wilkinson, who were complicit in the paralegal scandal," activist Margaret Baird wrote to Theriot.

On Tuesday, Theriot placed Assistant Parish Attorney Anne Marie Vandenweghe on paid administrative leave, also without explanation.

The federal investigation into Broussard's administration has led to a string of grand jury subpoenas being served on an almost weekly basis. It reached Wilkinson on the day of Broussard's resignation, when the parish attorney personally answered a demand for documents about landfill owner River Birch Inc.

Wilkinson was a key parish negotiator in the landmark deal that, if implemented, would close the Jefferson Parish landfill for 25 years and divert household garbage to River Birch's Waggaman dump. The arrangement is currently hung up by a stalled lawsuit between the parish and Waste Management, the public dump's manager.

Meanwhile, the council has called for a re-examination of the long-term financial benefits of the River Birch deal.

## ATTORNEY'S OFFICE PURGING CONTINUES
Five employees off the job since Jan. 21

| Name | Position | Salary | Job status |
|---|---|---|---|
| Karen Parker | Paralegal supervisor | $65,000 | Fired Feb. 5 |
| Tony Thomassie | Paralegal | $15,000 | Fired Feb. 5 |
| Ken Trahan | Paralegal | $18,000 | Resigned Jan. 21 |
| Anne Marie Vandenweghe | Assistant parish attorney | $64,000 | Suspended with pay Feb. 23 |
| Tom Wilkinson | Parish attorney | $183,000 | Suspended with pay Feb. 25 |

Jefferson Parish's attorney suspen      .mid outcry, subpoenas, payroll irreç      ies                  Page 5 of 5

*Richard Rainey can be reached at **rrainey@timespicayune.com** or 504.883.7052. Paul Rioux, who
also wrote this story, can be reached at **prioux@timespicayune.com** or 504.826.3785.*

© 2011 NOLA.com. All rights reserved.

Federal investigation into Jeffersc   ;h corruption casts wide net                                      Page 1 of 4      



Everything New Orleans

# Federal investigation into Jefferson Parish corruption casts wide net

Published: Sunday, March 27, 2011, 7:30 AM    Updated: Sunday, March 27, 2011, 1:19 PM

By **Richard Rainey, The Times-Picayune**

When federal prosecutors made their first public indications in February that the corruption investigation of Jefferson Parish government was moving closer to a courtroom, their focus appeared firmly fixed on former Parish President **Aaron Broussard** and one of the largest private landfills in Louisiana, **River Birch** in Waggaman.



**View full size**                         Times-Picayune archive

Surrounded by reporters, former Jefferson Parish President Aaron Broussard announced his resignation in January 2010. Broussard is expected to be indicted in connection with the federal probe of parish government.

But **by Friday**, it appeared that the 16-month probe is far broader in scope.

Investigators are also showing interest in the construction, engineering and architecture firms connected to **Lagniappe Industries**, the insurance agency owned by Tim Whitmer, Broussard's former top aide; the parish's contract with a stoplight camera company; and the massive garbage collection deal drafted in 2008 for unincorporated Jefferson and Jean Lafitte, officials and observers said.

Jefferson Parish Councilmen Tom Capella, Louis Congemi, Elton Lagasse and Byron Lee testified Friday, concluding officials' second appearance this month at the Hale Boggs Federal Building in New Orleans. Council members Chris Roberts and Cynthia Lee-Sheng and Parish President John Young, a former council member, delivered reams of documents that prosecutors had requested.

Citing orders from the assistant U.S. attorneys handling the case, the officials would not produce the subpoenas listing investigators' interests. However, they did indicate that some of the documents go back at least as far as the beginning of the Broussard administration.

"Some of the documents do go back pre-Katrina, so there's no telling how far this goes," said Lee-Sheng. Broussard took office as parish president in January 2004.

**'Clearly, the rumor mill is fluctuating'**

That prosecutors asked for more documents suggested that any indictments might still be a while off, said Walter Becker, a former federal prosecutor.

"That's not something they're going to be able to look at and digest overnight," he said. Still, the deliberateness of federal prosecutors' work has done little to quell speculation that indictments, especially of Broussard and his ex-wife, Karen Parker, are imminent.

"Clearly the rumor mill is fluctuating at one of its higher levels concerning the investigation of Jefferson Parish," said Harahan Mayor Vinny Mosca, a federal defense attorney following the case. "The U.S. attorney's office is very tenacious and that, combined with the work ethic of the FBI, is going to produce significant indictments in the future."

U.S. attorney's office spokeswoman Kathy English wouldn't comment last week.

**A raid, an indictment**

In the fall of 2009, the news media steadily disclosed half a dozen parish contractors doing business with Lagniappe while Whitmer was the government's No. 2 executive. Those included Hubbard Enterprises, Fleming Construction Co., Veolia Transportation, Kass Brothers Construction Co., the architecture firm Sizeler Thompson Brown, and Shadowlake Management, a sister company to River Birch Inc., the landfill company at the center of another wing of the federal investigation.

**FBI agents raided River Birch's** Gretna offices in September, kicking off speculation that they were interested in one of the company's owners, Fred Heebe or Jim Ward. On Feb. 25, a grand jury **indicted Henry Mouton**, a former commissioner with the state Department Wildlife and Fisheries, for allegedly taking almost $500,000 in payoffs from an unnamed landfill owner. In exchange, Mouton used his official capacity to lobby Congress, state and local officials to close the Old Gentilly Landfill, which stood to compete directly with River Birch after **Hurricane Katrina**. While the landfill owner remained unnamed in the indictment, other public documents suggest that it is Heebe or Ward. Heebe and Ward have not responded to repeated requests for comment.

Broussard and Whitmer resigned in January 2010. Parish attorney Tom Wilkinson quit two months later.

**Looking at traffic camera, garbage contracts**

Parish Council members said investigators are also interested in the parish's contract with Redflex Traffic Systems, the Phoenix company that put cameras at several intersections around the parish to catch drivers running red lights.

That contract was suspended in January 2010, after the council began to question why Redflex had agreed to pay lobbyist Bryan Wagner 3.2 percent of the company's earnings on the deal after he helped secure its approval.

**Redflex sued the parish** in July for not paying the estimated $5 million allegedly owed to the company from traffic tickets issued since the cameras were turned on in late 2007.

Company spokesman Greg Beuerman said Redflex has not been contacted by federal authorities and their lawsuit against the parish is still ongoing. Wagner declined comment.

Mosca said prosecutors have also inquired about Jefferson Parish's garbage collection deal with IESI, a Texas waste management company. He said he had spoken to an attorney representing one of the lobbyists who helped secure that deal. He didn't publicly disclose the attorney's name.

The council inked that five-year contract in 2008 after a vigorous selection process. Mosca said prosecutors are interested in IESI's hiring of Ramelli Waste, a small Kenner firm, as a subcontractor. Ramelli had competed for the contract, but was disqualified because the company wasn't five years old or older, a stipulation in the proposal guidelines. There was no ban on younger firms contracting with more established ones, however.

Ramelli owner Bob Ramelli and IESI Chief Operating Officer Tom Brown said last week that they had received no indication that their contract was under investigation.

**Broussard indictment expected**

Should indictments come while prosecutors continue digging, the likeliest will be against Broussard and Parker. Their attorneys have said they received target letters indicating that they could be indicted for conspiracy, mail fraud and misuse of federal money.

Interim Parish President Steve Theriot **fired Parker** in February 2010 after a legislative auditor's report accused her of possible payroll fraud. She had been working in the Security Department of her then husband's administration, although she was listed as a paralegal supervisor in the Law Department. She did not have the proper qualifications for that job, which paid $22,000 more a year than the salary her actual duties should have drawn.

Suggesting that something may soon be coming down the pike, Broussard has hired criminal defense attorney Robert Jenkins. Jenkins couldn't be reached and Broussard said Tuesday he wasn't conducting interviews with The Times-Picayune.

Still, the timing of the indictments, whether it be a week, a month or a year, remains a parlor game among the followers of Jefferson Parish politics.

"They're coming and the rumors are out there," Mosca said. "But at the end of the day, about 50 percent of the rumor mills will prove correct."

•••••••

*Paul Rioux contributed to this report. Richard Rainey can be reached at* **rrainey@timespicayune.com** *or 504.883.7052.*

© 2011 NOLA.com. All rights reserved.

MARY OLIVE PIERSON

ATTORNEY AT LAW

POST OFFICE BOX 14647

BATON ROUGE, LOUISIANA 70898-4647

TELEPHONE: 225-927-0765
TELECOPIER: 225-927-6775
E-Mail: mopclaw@aol.com

PHYSICAL ADDRESS:
8702 JEFFERSON HWY
SUITE B
BATON ROUGE, LA 70809

September 2, 2011

Mr. Stephen M. Gele                                    Via Email: sgele@smithfawer.com
Smith Fawer
201 St. Charles Avenue, Suite 3702
New Orleans, LA 70170

      Re:    Concrete Busters of Louisiana, Inc., et al. v. Frederick R. Heebe, et al.
               Docket No. 11-2129; Division D; Civil District Court
               Parish of Orleans, State of Louisiana

Dear Mr. Gele:

      I have received the subpoena issued to Henry Mouton to appear and testify on September 21, 2011 at 10:00 a.m.   Please be advised that I have advised Mr. Mouton to take the Fifth Amendment if he is required to testify.   He has pleaded guilty in fed court and is awaiting sentencing and I cannot permit him to testify.

      Please call if you have any questions.

                     Sincerely,

                     Mary Olive Pierson

MOP/mt

EXHIBIT
6

3094
WF

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANNE MARIE VANDENWEGHE | * | CASE NO.: 2:11-cv-2128 |
| Plaintiff | * | |
| VERSUS | * | SECTION: "    " |
| THE PARISH OF JEFFERSON & | * | JUDGE: |
| STEVE J. THERIOT | | |
| | * | MAGISTRATE: |
| Defendants | | |
| | * | JURY TRIAL REQUESTED |

*    *    *    *    *    *    *        *    *    *    *    *    *

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes plaintiff, Anne Marie

Vandenweghe, a resident of the full age of majority domiciled within the County of Harrison,

State of Mississippi, who respectfully represents that:

### I. PARTIES

1.

Made defendants herein are:

The Parish of Jefferson, a political subdivision organized under the laws of the State of

Louisiana, having its principal place of business in the Parish of Jefferson, State of

Louisiana;

Steven J. Theriot, an individual of the full age of majority residing and domiciled in the

Parish of Jefferson, State of Louisiana.



EXHIBIT
7

## II.  JURISDICTION AND VENUE

2.

Jurisdiction is proper in this Honorable Court under the provisions of 28 U.S.C. § 1331, for claims brought pursuant to 42 U.S.C. § 1983, the First Amendment of the Constitution of the United States of America, the Fourteenth Amendment of the Constitution of the United States of America, and pursuant to 28 U.S.C. § 1367 for all other claims pendent thereto.

3.

Venue is proper in the Eastern District of Louisiana, pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Louisiana and defendants reside in this district.

## III. PRELIMINARY STATEMENT

Plaintiff claims that she was involved in First Amendment protected activity concerning matters of public concern, which included, but were not limited to, illegal activities of duly elected and appointed governmental officials of the Parish of Jefferson.  As a result of exercising her right to freedom of speech, as guaranteed by the First and Fourteenth Amendments, plaintiff has suffered grievous retaliation by defendants, who embarked on a concerted effort to force plaintiff's involuntary resignation and/or prevent plaintiff from performing her duties properly, such that she would be terminated.  Additionally, plaintiff alleges that defendants purposefully and systematically defamed her in statements to the press and at recorded meetings whereby they wrongfully and with malice accused her of "blogging" and inappropriate use of computers at the workplace, and publicly placed her on administrative leave for such alleged behavior. Inevitably, the plaintiff's employer terminated her employment from the Parish of Jefferson in retaliation for plaintiff's whistleblower activities, expressions of free and protected speech

regarding criminal activity on the part of governmental officials, and for her cooperation with the Federal Bureau of Investigation ("FBI") and United States Attorney's Office ("USAO").

## IV. FACTS AND ALLEGATIONS

4.

At all times material hereto, plaintiff, Anne Marie Vandenweghe ("plaintiff") was an employee of the Parish of Jefferson as an Assistant Parish Attorney, who was assigned to the Public Records Section of the Parish Attorney's Office, but whose job did not entail reporting of illegal activities.

5.

At all times material hereto, the Parish of Jefferson ("Parish") was the plaintiff's employer under the provisions of Louisiana Revised Statute 23:967.

6.

At all times material hereto, defendant, Steven J. Theriot ("Theriot"), was an employee of the Parish of Jefferson in the position of Interim Parish President, and who was appointed by and directly answerable to the citizens of the Parish through their duly elected representatives on the Parish Council. As Interim Parish President, Theriot had the power to appoint and remove administrative officers and employees of the parish responsible to him; or, at his discretion, authorize the head of a department or office responsible to him to appoint and remove subordinates in such department or office.

7.

Defendants, the Parish and Theriot, were acting under color of state and municipal law and were cloaked with the authority of the State of Louisiana and the Parish for purposes of 42 U.S.C. § 1983 when taking the actions against the plaintiff complained of herein.

8.

Plaintiff had a constitutionally protected right to enjoy her employment without retaliation or interference except for cause.

9.

Plaintiff had a constitutionally protected right to be free from retaliation for reporting illegal activity under Louisiana Revised Statute 23:967 and for exercising her right to free speech under the United States Constitution, First Amendment, made applicable to the state and its actors through the Fourteenth Amendment and 42 U.S.C. § 1983.

## V. VILLIO'S AND WHITMER'S ILLEGAL ACTIVITIES

10.

In August of 2009, it came to the attention of the plaintiff that Deborah Villio ("Villio"), Director of Code Enforcement for the Parish of Jefferson, had engaged in prohibited political activities in violation of the Jefferson Parish Code of Ordinances (JPCO), Section 23, in that in March of 2007, Villio "resigned" as the then-Director of the Community Justice Agency for the Parish of Jefferson to run for a state judgeship. However, upon being defeated for that judgeship position, Villio's resignation was converted to a "leave without pay" status retroactively by then-Parish Chief Administrative Officer ("CAO"), Timothy Whitmer for the sole purpose of allowing Villio to maintain her accrued service for retirement purposes. This practice was later denounced by newly-elected Parish President, John Young ("Young") as irregular and as an act that was not to repeat itself in the future.

11.

Upon learning of Villio and Whitmer's conduct, which further constituted criminal violations of Louisiana Revised Statutes 14:26 (criminal conspiracy), 14:132 (injuring a public

record), 14:133 (filing or maintaining a false public record), and 14:138 (public payroll fraud),

plaintiff brought this to the attention of Assistant Parish Attorney, Louis Gruntz ("Gruntz"), the

plaintiff's supervisor, who did nothing in response thereto.

12.

Furthermore, Villio, as a public employee, violated JPCO Section 23 in October of 2009,

when she made a prohibited campaign contribution to the political campaign of Elton Lagasse, a

candidate for public office in Jefferson Parish. Plaintiff once again brought the illegal nature of

this conduct on the part of Villio to the attention of Assistant Parish Attorney Gruntz, who did

nothing in response thereto.

13.

In February of 2010, Villio "resigned" from her position as Director of Code

Enforcement to again run for a state judgeship in Jefferson Parish, yet prior to that time, and

while in the employ of the Parish, Villio engaged in prohibited political activities by soliciting

campaign contributions and participating in a fundraiser for this same judgeship position.

Plaintiff brought this to the attention of Assistant Parish Attorney Gruntz, who did nothing in

response thereto.

14.

Upon information and belief, the Parish of Jefferson, through its Interim Parish President,

Theriot, failed to take any action in the form of discipline against Villio and Whitmer in order to

stop improper use of public office, as well as the criminal violations of Louisiana law, including

improper use of public property and abuse of public payroll.

15.

The Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any

steps to protect plaintiff from reprisal and retaliation and to take steps to remove Villio and Whitmer from public office.

## VI. THE RIVER BIRCH CONTRACT

### 16.

In August 2009, plaintiff, the Assistant Parish Attorney in charge of responding to public records requests, received a Public Records Request ("PRR") from legal counsel for Waste Management, the operator of the public landfill for the Parish, seeking the production of any contracts which may exist between River Birch Landfill ("River Birch") and the Parish. As part of her duties, plaintiff obtained a copy of an un-executed contract between River Birch and the Parish from Eula Lopez ("Lopez"), the Clerk and Custodian of Records for the Parish Council. Shortly afterward, plaintiff received yet another contract between River Birch and the Parish, this one signed only by Parish Chairman, Thomas Capella. Upon bringing this apparent discrepancy to the attention of then-Parish Attorney, Thomas Wilkinson ("Wilkinson"), the plaintiff was ordered by Wilkinson, her ultimate supervisor, not to make any further inquiries. Wilkinson directed plaintiff that only he would personally handle this issue. Wilkinson then provided plaintiff with a fully executed copy of a contract between River Birch and the Parish. Plaintiff then brought theses blatant discrepancies in the River Birch contracts to the attention of Assistant Parish Attorney Gruntz and Parish Attorney Wilkinson, who failed to take any appropriate action thereto. Gruntz, against plaintiff's advice, issued a letter of non-production of the documents requested pursuant to the PRR.

### 17.

In preparation for a return for a Federal subpoena request, Lopez certified a return dated December 16, 2009, of a partially executed River Birch contract signed only by Jim Ward of

River Birch, knowing that there were other multiple, signed copies of the same contract in the possession of the Parish. Lopez informed plaintiff via an email that her brother-in-law, Wilkinson, had instructed her not to send it to the Council Chairman for signature. All different versions of said document were made part of plaintiff's return to the Federal Grand Jury subpoena in December of 2009.

18.

Upon information and belief, the Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any action in the form of discipline against Wilkinson in order to stop improper use of public office, as well as other criminal violations of Louisiana law, including forgery, injuring public records, maintaining false public records, and malfeasance.

19.

The Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any steps to protect plaintiff from reprisal and retaliation and to take steps to remove Wilkinson from public office.

## VII. TIM COULON CAMPAIGN COMMITTEE, INC.

20.

In September of 2009, plaintiff was instructed by her supervisor, Assistant Parish Attorney Gruntz, to assist in the investigation of Parish CAO Whitmer's alleged illegal insurance transactions with various Jefferson Parish entities and employees.

21.

In the course of the insurance transaction investigation, it came to plaintiff's and Gruntz's attention that both Whitmer and Wilkinson were identified as officers of the Tim Coulon Campaign Committee, Inc., corporate domicile of which was identified as the Yenni Jefferson

Parish Governmental Building.

22.

Gruntz indicated the severity of the offense to plaintiff, representing that he would refer it to the Jefferson Parish District Attorney for further investigation and prosecution. Upon plaintiff noticing the inaction of Gruntz, plaintiff reported these offenses to the FBI and USAO, and ultimately to the Parish Personnel Board. On information and belief, plaintiff is not aware of the fact that Gruntz ever reported these offenses to the FBI, USAO or even the Jefferson Parish District Attorney.

23.

Upon information and belief, the Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any action in the form of discipline against Wilkinson and Whitmer in order to stop their improper use of public office, as well as other violations of the JPCO, including prohibited political activity by a Jefferson Parish employee.

24.

The Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any steps to protect plaintiff from reprisal and retaliation and to take steps to remove Wilkinson and Whitmer from public office.

VIII. PAYROLL FRAUD

25.

In January of 2010, as a result of a Channel 8 Fox News PRR inquiring about payroll irregularities, plaintiff uncovered that Wilkinson, with full cooperation and assistance of the office of the Parish Attorney, and then supervisor of paralegal personnel, Peggy Barton ("Barton"), committed payroll fraud in regard to three "paralegals" listed in the Parish Attorney's

office payroll. Said paralegals, Karen Parker Broussard, Kenneth Trahan, and Antoine "Tony" Thomassie were designated as such despite the lack of necessary professional credentials or training, all with Wilkinson's full knowledge. Wilkinson carried these individuals on his payroll with the knowledge that they were not working in his office, were being paid for not working at all, and were not in the performance of duties charged to a paralegal. Plaintiff made these transgressions known to her immediate supervisor, Assistant Parish Attorney Gruntz, who did nothing in response thereto.

26.

Wilkinson admitted on a television news interview that the three paralegals had been placed on his payroll while not working in the capacity for which they were being paid. Shortly after the Channel 8 Fox News PRR regarding the three paralegals was received, Wilkinson met with each one, and all three were dismissed.

27.

Barton tampered with the Jefferson Parish Attorney's organizational chart after receiving a PRR from Channel 8 Fox News. Instead of supplying the chart in place at the time of the PRR, Barton revised said chart by removing Karen Parker Broussard from under Barton's administrative control. Barton certified that Charlie Knopp ("Knopp"), Chief of Security, was Broussard's supervisor despite the fact that the organizational chart showed Broussard as under Barton's supervision since approximately 2007. Deano Bonano ("Bonano"), Director of Security for the Parish and Homeland Security Liaison, was Knopp's direct supervisor and interfered by email with Knopp's certified response to the PRR for the administrative organizational chart and information as to who was Karen Parker Broussard's supervisor, instructing Knopp not to respond until cleared with Bonano. Knopp had already submitted a

signed certification which was later followed by another with a different response.  Knopp and

Peggy Barton submitted conflicting certifications as to the responsible party.

28.

At all times that Barton altered public records, she conspired with others, including

Wilkinson, to facilitate the alteration of public records.  As a result of their actions, Barton and

Wilkinson criminally conspired to commit payroll fraud, injury to public records, filing or

maintaining false public records, as well as malfeasance in office.

29.

Upon information and belief, the Parish of Jefferson, through its Interim Parish President,

Theriot, failed to take any action in the form of discipline against Wilkinson and Barton in order

to stop improper use of public office, improper use of public property and abuse of public

payroll, as well as other violations of Louisiana law, including payroll fraud, injury to public

records, filing or maintaining false public records, as well as malfeasance in office.  Plaintiff had

apprised her supervisor, Assistant Parish Attorney Gruntz, of this illegal and criminal activity,

and he did nothing in response thereto.

30.

The Parish of Jefferson, through its Interim Parish President, Theriot, failed to take any

steps to protect plaintiff from reprisal and retaliation and to take steps to remove Wilkinson and

Barton from public office.

### IX. ADMINISTRATIVE LEAVE, HOSTILE WORKPLACE & IMPROPER TERMINATION

31.

On February 22, 2010, the plaintiff discovered that her computer was being "mirrored"

somewhere in the Parish system and reported same.  The following morning, plaintiff found her

office door had been broken down, her computer and a number of files taken by unknown individuals. There was a note tacked to the wall instructing her to report to Theriot's office and within minutes of calling to advise Theriot that she was on her way, she was met by Chief of Security Knopp, who escorted her from the third floor office to the tenth floor, all in plain sight of her co-workers and others in the Yenni Building Government Complex. She was then confronted by Theriot and six other men.

32.

Each and every one of the above referenced individuals had been reported by plaintiff for egregious, illegal actions on a variety of issues against a variety of employees:

Feliciano "Junior "Mendoza ("Mendoza") - cover-up and attempted obstruction of an investigation into allegations of abuse made by an employee during a disciplinary hearing. Plaintiff was sent by Gruntz to investigate an altercation reported by Human Resources Department Director Mendoza and ultimately prepared a written report which contained firsthand observations by plaintiff of Mendoza and his employees, Phil Rupp ("Rupp") and William Fortenberry ("Fortenberry"), attempting to intimidate and obstruct an employee who wanted to file charges against Rupp. Mendoza, Rupp, and Fortenberry attempted to cover-up an altercation between Rupp and an African-American employee during a Disciplinary Hearing. Plaintiff, upon entering Mendoza's office, observed Mendoza on the telephone asking that the Sheriff be immediately contacted to prevent Sheriff Deputies in the Yenni Building from taking a Complaint of Assault from the aggrieved employee who was alleging that Rupp struck and threatened him, blocking his exit from the Disciplinary Hearing Room. Plaintiff immediately advised the three men to stop their obstruction, after which she contacted the Deputy on Duty and confirmed that the aggrieved employee was being allowed to file his complaint. Plaintiff's

report was submitted via email to Assistant Parish Attorney Gruntz, who did nothing in response thereto;

Bert Smith - falsifying public records, conspiracy and malfeasance in office, related to claims that he had participated in illegal activities while Director of the Jefferson Parish Animal Shelter;

Deano Bonano - falsifying public records, conspiracy, payroll fraud and malfeasance in office, related to the Bert Smith matter and to the Paralegal payroll fraud matter;

Jose Gonzalez - cover-up and attempted obstruction of an investigation into allegations of abuse made by an employee during a disciplinary hearing, while Chief Administrative Assistant of the employee being intimidated;

Clem Donelon - intimidation and attempt to obstruct employee reporting of illegal and unethical activities

Gruntz - failing to act and/or report illegal activities of Jefferson Parish employees. Due to supervisor Gruntz's inaction, plaintiff was forced to forward evidence of criminal behavior to the FBI and USAO, in compliance with their request and the Jefferson Parish Council's written instructions to cooperate and assist in the ongoing investigation of widespread political corruption in Jefferson Parish.

33.

Interim Parish President Theriot accused plaintiff of "blogging" and "internet surfing" while on the job. She was further asked to return her laptop computer, as well as former Parish President Broussard's and former CAO Whitmer's laptop computers. Broussard's and Whitmer's computers had been placed in a locked file cabinet in plaintiff's office, at the request of the FBI and the Jefferson Parish IT director. These laptops had been inspected by the State

Legislative Auditor due to the ongoing insurance fraud investigation and were scheduled to be handed over to the FBI. Plaintiff at no time during her employment with the Parish of Jefferson possessed a laptop, having been denied the use of one by Wilkinson despite the request by Gruntz that she be issued one to assist her in her duties.

34.

At this meeting on February 23, 2010, plaintiff was placed on paid administrative leave by Interim Parish President Theriot, while an investigation into her alleged inappropriate actions was conducted. Theriot then instructed Chief of Security Knopp and Director of Human Resources Mendoza to escort plaintiff to her office to collect her personal effects and to then escort her out of the building. While plaintiff was collecting her personal effects, her immediate supervisor Gruntz arrived in her office with a rolling cart on which her belongings were then placed. Plaintiff was escorted out of the building by Gruntz and Knopp (Mendoza having left to prepare paperwork) in plain sight of her co-workers, others in the Yenni Building Government Complex and passers-by in the Elmwood Shopping Center complex and surrounding apartments, offices and businesses. Plaintiff's pastor, Marion Lauricella, and many of her fellow church members contacted plaintiff upon learning in the press and other media of her removal from the Parish Attorney's office. Plaintiff's elderly mother and other family members and friends contacted her with grave concerns upon hearing the news accounts linking her removal with that of Wilkinson and with the ongoing corruption scandals in Jefferson Parish.

35.

On February 25, 2010, plaintiff filed for whistleblower protection with the Jefferson Parish Personnel Board.

36.

On March 31, 2010, Theriot ended plaintiff's paid administrative leave and reassigned her to the Recovery Section of the Parish Attorney's Office.

37.

Upon her return to work, it came to plaintiff's attention that the individual assigned to her previous position in Public Records, a younger, less experienced male, was being paid a higher salary than she had received for performing the same job duties. Moreover, due to the actions of Whitmer and Wilkinson, when plaintiff was reassigned by them in January of 2009, she was informed that she had been "red circled," such that she would not be eligible for a raise in the next seven years.

38.

Upon her return to work, plaintiff was not provided with the necessary materials to perform her tasks, such as not being provided with passwords for research or being connected to the Parish computer system, thus failing to receive information necessary to carry out her duties. Nevertheless, plaintiff was assigned the workload previously handled by five attorneys, including responsibility for a caseload of lawsuits related to recovery of damages. Plaintiff requested a Prescription List or Calendar and was told there was none. Plaintiff further requested a list of all cases in the Recovery Section for which she was responsible and was again told there was no official list. Plaintiff discovered on the day of her return to work that one of the cases in that section was due to prescribe that day and that no lawsuit had been filed. Plaintiff made all requests in emails and reported all discrepancies in emails in an effort to protect herself from what appeared to be a concerted effort on the part of Barton, then Interim Parish Attorney for Jefferson Parish, and others to sabotage her work. Plaintiff was further exposed to

confrontations and a hostile work environment that made it extremely difficult to carry out her duties, all of which were duly reported to her superiors in emails. This hostile work environment was in violation of the Civil Rights Act of 1964, §§ 701 et seq., 703(a)(1), as amended, 42 U.S.C.A. §§ 2000e et seq., 2000e-2(a)(1).

39.

Around the time newly-elected Parish President Young took office in October of 2010, plaintiff was informed by her doctor of anomalies in her heart activity, for which she had to go on sick leave. During that time, Young sent out letters demanding that all Assistant Parish Attorneys sign letters of resignation or be immediately terminated. While on sick leave, on November 2, 2010, plaintiff was presented with a termination notice at her home. Her health insurance was also terminated. Despite being out on documented medical disability, plaintiff was not afforded the opportunity of any pre-termination hearing, due process, or other administrative hearing despite the fact that Whitmer had been accorded same and that the Parish's outside counsel had advised the Parish that such was required prior to the termination of an employee. The improper termination of the plaintiff while on medical disability leave was a direct violation by the Parish of the Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq., as well as La. Rev. Stat. Ann. § 14:122 which identifies the offense of public intimidation and retaliation against a public employee with the specific intent to influence his/her conduct in relation to his/her duties.

40.

Plaintiff applied for unemployment benefits, but was turned down when the Personnel Department challenged her eligibility. The plaintiff also applied to the Parochial Retirement System for the opportunity to "buy back" service time to allow her to retire, but was informed

that it could not be done because she was not currently employed by an entity participating in said system.

41.

Plaintiff has since lost her home and has moved out of State due to her inability to procure a job due to her being labeled as a poor employee and whistleblower, causing her and her family great distress, humiliation, and embarrassment.

42.

The claims of plaintiff's blogging while on the job were not true, which Interim Parish President Theriot, and other members of the governmental authority knew. These defamatory and retaliatory statements were made by officials of the Parish of Jefferson solely to discredit the plaintiff and discourage her ongoing cooperation with the FBI and USAO. Nevertheless, no apology was ever offered to her, she was moved to a different job not involving public records release, and her name and reputation were damaged. To date, plaintiff has not been provided with the outcome of any investigation into the false allegations made by Interim Parish President Theriot, and the Parish, and was subsequently unfairly and improperly terminated. Thus, defendant, The Parish of Jefferson, through its Interim Parish President, Theriot, retaliated against plaintiff for having disclosed publicly the information regarding the illegal activities of a number of Parish officials under La. R.S. 23:967 and exercising her free speech rights under the First Amendment to the United States.

## X. RETALIATORY ACTIONS IN VIOLATION
## OF THE FIRST AMENDMENT

43.

Plaintiff asserts that her First Amendment protected activity as referenced herein was the substantial motivating factor in the actions taken against her as a concerted effort to make her

work environment so untenable as to force her to resign, or, alternatively, to make it such that plaintiff did not have the necessary tools and communications to complete her job duties properly.

44.

Plaintiff asserts that her speech involved and exposed misconduct and malfeasance in office, and involved matters which impacted the use of public funds and the use of taxpayer money. As such, this conduct involved matters of grave public concern.

45.

Plaintiff alleges that she has an established constitutional right to speak out on matters of public concern such as the proper use of funds.

46.

Plaintiff's speech was properly made within the confines of Louisiana law and was not likely to impede the defendants' general performance or operations; in fact, her speech was more likely to cause a more efficient working environment within the Parish and the Parish Attorney's Office, in that it would help expose and eliminate misconduct and malfeasance in public office.

47.

Plaintiff alleges that her interest in commenting on matters of the public concern outweighs the defendants' interests in avoiding controversy or promoting efficiency.

48.

Plaintiff alleges that defendant, The Parish of Jefferson, through its Interim Parish President, Theriot, retaliated against her by reassigning her to a lesser position not related to the disclosure of public documents. Moreover, plaintiff was directly discriminated against because of her age and her conduct as evidenced by the assignment of a younger, less qualified employee

to her former position, yet at a much higher rate of pay.

49.

The plaintiff's reassignment was directly motivated by her cooperation with the FBI and USAO in their requests for documents pertaining to the ongoing investigation into allegations surrounding former Parish President Aaron Broussard and his then-CAO, Tim Whitmer, and a blatant attempt to silence her.

50.

The plaintiff alleges that she was the subject of harassment on the job, confrontations and a hostile work environment, making it difficult to carry out her duties.

51.

Plaintiff alleges that defendant, The Parish of Jefferson, through its Parish President, Young, retaliated against her by wrongfully terminating her employment with the Parish of Jefferson and not affording the opportunity of any type of administrative hearing.

52.

The plaintiff's termination was directly motivated by her cooperation with the FBI and USAO, as well as her public statements and whistleblower activities, and was designed to terminate the plaintiff's cooperation with the government and silence her free speech.

54.

Plaintiff further alleges that defendant, The Parish of Jefferson, through its Interim Parish President, Theriot, retaliated against her by publishing defamatory statements about her, including that she was being placed on administrative leave for using office computers and taxpayer resources by "blogging" and using the internet at work inappropriately, knowing these statements to be false.

55.

Plaintiff contends that the Parish of Jefferson and Interim Parish President Theriot, knew, or should have known, that the placement of plaintiff on administrative leave was unjustified, and statements that she was placed on administrative leave to the press were known to be untrue, yet were stated for the sole purpose of damaging plaintiff's public reputation and discrediting her prior speech regarding the illegal conduct of the Parish officials, which illegal conduct had been brought to the attention of her supervisors.   The defendants further made these false and defamatory statements about the plaintiff in an effort to stifle her cooperation with the FBI and USAO pertaining to the ongoing investigation into allegations surrounding former Parish President Aaron Broussard and his then-CAO, Tim Whitmer, as well as other Parish governmental officials.

56.

Plaintiff specifically alleges that these statements were included in the defamatory words stated against her by defendants as indicated.

57.

Plaintiff alleges that defendants stated these words in public hearings, recorded meetings, and to the press.

58.

Plaintiff alleges that Interim Parish President Theriot, in his individual capacity and as employee of the Parish of Jefferson and the Parish as an entity, knew the statements were false and asserts that defendants acted with actual malice in making said statements.

59.

Plaintiff alleges that such statements under these circumstances are *per se* defamatory.

60.

Accordingly, plaintiff alleges that her business and community reputation has been irreparably harmed as a public and/or private attorney.  As such, defendants are liable for compensatory damages, actual damages, emotional distress damages, punitive damages, attorney's fees, and costs.

61.

Due to the above and foregoing allegations, defendants are liable unto plaintiff for retaliation in violation of the First Amendment for:

A.    Mental anguish;

B.    Humiliation and embarrassment;

C.    Loss of enjoyment of life;

D.    Legal interest;

E.    Punitive damages (against the individual defendants);

F.    Attorney's fees; and

G.    Costs of these proceedings.

62.

Plaintiff requests a trial by jury on all claims.

WHEREFORE, plaintiff, Anne Marie Vandenweghe, prays that defendants, Steve J. Theriot and the Parish of Jefferson, be duly cited to appear and answer this Complaint and Jury Demand and, after due proceedings and legal delays, there be judgment herein in favor of plaintiff and against defendants, jointly and severally, as detailed in the foregoing Complaint and Jury Demand and in an amount reasonable in the premises, together with legal interest from the

date of judicial demand, all costs of these proceedings, reasonable attorney's fees, punitive

damages and any and all equitable relief deemed appropriate by this Honorable Court under the

circumstances.

Respectfully submitted,

**THE TRUITT LAW FIRM**
A Limited Liability Company

*S/Jack E. Truitt*

JACK E. TRUITT, BAR NO. 18476, T.A.
149 North New Hampshire Street
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com
Counsel for plaintiff, Anne Marie Vandenweghe

2718

  **Return** 

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

**SUBPOENA**

No.   11-2129                    DIVISION "D"                    Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC., ET AL.

VERSUS

FREDERICK R. HEEBE, ET AL.

**TO:   Dominick Fazzio, 1192 Marina Road, Slidell, Louisiana 70458**

        **CLERK, CIVIL DISTRICT COURT** - Please issue a subpoena to the above party as directed
below.

---

### SUBPOENA REQUEST

**[XXXX]   YOU ARE COMMANDED** to appear in the Civil District Court, Parish of Orleans in
Division "D," 421 Loyola Ave., New Orleans, LA 70112, on the **21st day of September, 2011 at 10:00
a.m.**, to testify the truth according to your knowledge, in a controversy pending herein between the
parties above named; and hereof you are not to fail under the penalty of the law.  By order of the Court.

---

### DEPOSITION SUBPOENA REQUEST

[     ]   **YOU ARE COMMANDED** to appear at the place, date and time specified below to testify
at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[     ]   **YOU ARE COMMANDED** to produce and permit inspection and copying of the following
documents or objects for the ___ trial, _____ deposition, or _ hearing (state type) _____
_____ at the place, date and time specified below (list documents or objects) pursuant to the provisions
of Article 1354 et. seq. of the LA Code of Civil Procedure.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

**ATTORNEY**                    _____     *Bob M. Ottus*
                                Attorney's Signature

**ATTORNEY'S
NAME & BAR NUMBER**      Stephen M. Gelé, LA Bar #22385

**ADDRESS**              201 St. Charles Ave., Suite 3702, New Orleans, LA 70170

**TELEPHONE NUMBER**          (504) 525-2200

**File original and two copies with Clerk
fourth copy for Attorney's File**

SHERIFF'S RETURN COPY



  

| RETURN FOR PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|

On the ____ day of _____
19____ served a copy of the within_____

On_____

in person_____

Return same day

_____
Deputy Sheriff of Orleans Parish

_____ **ENTERED** _____
PAPER                          RETURN

_____ / _____ / 5]_____
SERIAL NO.   DEPUTY      PARISH

On the ____ day of _____
19____ served a copy of the within_____

On_____

by leaving same at _____
domiciled or usual place of abode_____
_____ in   the
hands of a person of suitable age and
discretion, residing therein as a member of__
_____ domiciliary
establishment, whose name and other facts
connected, with his service I learned by
interrogating the said _____
_____ being absent from _____
_____ domicile at time of said
service.

Return same day

_____
Deputy Sheriff of Orleans Parish

# Return

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

SUBPOENA

No.   11-2129                    DIVISION "D"                    Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC., ET AL.

VERSUS

FREDERICK R. HEEBE, ET AL.

**TO:  Dominick Fazzio, 1192 Marina Road, Slidell, Louisiana 70458**

CLERK, CIVIL DISTRICT COURT - Please issue a subpoena to the above party as directed below.

### SUBPOENA REQUEST

[XXXX]   **YOU ARE COMMANDED** to appear in the Civil District Court, Parish of Orleans in Division "D," 421 Loyola Ave., New Orleans, LA 70112, on the 21st day of September, 2011 at 10:00 a.m., to testify the truth according to your knowledge, in a controversy pending herein between the parties above named; and hereof you are not to fail under the penalty of the law. By order of the Court.

### DEPOSITION SUBPOENA REQUEST

[     ]   **YOU ARE COMMANDED** to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

[     ]   **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects for the ___ trial, _____ deposition, or _ hearing (state type) _____ _____ at the place, date and time specified below (list documents or objects) pursuant to the provisions of Article 1354 et. seq. of the LA Code of Civil Procedure.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

Issued at the request of; and,
Fees and cost guaranteed by undersigned

**ATTORNEY**                    _____
                                Attorney's Signature

**ATTORNEY'S**
**NAME & BAR NUMBER**    Stephen M. Gelé, LA Bar #22385_____

**ADDRESS**              201 St. Charles Ave., Suite 3702, New Orleans, LA 70170

**TELEPHONE NUMBER**    _____(504) 525-2200_____

**File original and two copies with Clerk
fourth copy for Attorney's File**

SHERIFF'S RETURN COPY

VERIFIED

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**
**STATE OF LOUISIANA**

No.   11-2129                DIVISION "D"                Docket No._____

CONCRETE BUSTERS OF LOUISIANA, INC., ET AL.

VERSUS

FREDERICK R. HEEBE, ET AL.

**TO:   Custodian of Records, Parish of Jefferson, East Bank Parish Attorneys Office, 1221 Elmwood Park Blvd., Suite 701, Jefferson, Louisiana 70123**

**CLERK, CIVIL DISTRICT COURT** - Please issue a subpoena to the above party as directed below.

---

### SUBPOENA REQUEST

**[XXXX]   YOU ARE COMMANDED** to appear in the Civil District Court, Parish of Orleans in Division "D," 421 Loyola Ave., New Orleans, LA 70112, on the **21st day of September, 2011 at 10:00 a.m.**, to testify the truth according to your knowledge, in a controversy pending herein between the parties above named; and hereof you are not to fail under the penalty of the law.  By order of the Court.

---

### DEPOSITION SUBPOENA REQUEST

**[    ]   YOU ARE COMMANDED** to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

### REQUEST FOR WRIT OF SUBPOENA DUCES TECUM

**[XXXX]   YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects for the ___ trial, _____ deposition, or __XX__ hearing (state type) <u>on various motions</u> at the place, date and time specified below (list documents or objects) pursuant to the provisions of Article 1354 et. seq. of the LA Code of Civil Procedure.

Please see attached Exhibit "A."

| PLACE | DATE AND TIME |
|---|---|
| Civil District Court, 421 Loyola Ave., New Orleans, LA 70112 Division "D" | 9/21/11 at 10:00 a.m. |

Issued at the request of; and,
Fees and cost guaranteed by undersigned.

**ATTORNEY**                          _____
                                      Attorney's Signature

**ATTORNEY'S**
**NAME & BAR NUMBER**     Melissa M. Desormeaux, LA Bar #33___

**ADDRESS**               201 St. Charles Ave., Suite 3702, New Orleans, LA 70170

**TELEPHONE NUMBER**      _____(504) 525-2200_____

**File original and two copies with Clerk**
**fourth copy for Attorney's File**

SHERIFF'S RETURN COPY

RECEIVED
2011 SEP -6  A 9: 
JEFFERSON PARISH
SHERIFF'S OFFICE

FILED
2011 SEP 19  A 8: 45
CIVIL
DISTRICT COURT
PARISH

ENTERED
PAPER
SH    /    / 26
SERIAL NO.    DEPUTY    PARISH

DATE RECEIVED: SEP 1 3 2011 DATE RETURNED: SEP 1 3 2011
DATE SERVED: SEP 1 2 2011
SERVICE AFFECTED OR REASON UNSERVED:
DOMICILIARY
PERSONAL
NOT AT THIS ADDRESS PER
UNABLE TO SERVE AFTER MAKING ___ ATTEMPTS
OTHER:
1706 52
F. BROWN
Deputy Sheriff of Jefferson Parish

CIVIL DISTRICT COURT

PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 11-2129                                                    DIVISION "D"

CONCRETE BUSTERS OF LOUISIANA, INC.
AND WASTE REMEDIATION OF PLAQUEMINES, LLC

VERSUS

FREDERICK R. HEEBE, ALBERT J. WARD, JR.,
RIVER BIRCH INCORPORATED AND HWY 90, LLC

FILED:_____     _____
                                         DEPUTY CLERK

### CONSENT JUDGMENT

Before the Court is a Motion to Stay Litigation filed by the plaintiffs, Concrete

Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC.  The plaintiffs request

that the litigation be stayed because of an ongoing federal criminal investigation related to the

defendants.  The defendants do not oppose this request.

Accordingly,

**IT IS ORDERED, ADJUDGED AND DECREED** that this case be and it is

hereby **STAYED**, because of an ongoing federal criminal investigation related to the defendants,

through September 21, 2012, reserving the right of the parties to move to extend the stay further

for good cause, and reserving the right of the plaintiffs to dismiss the captioned litigation without

prejudice at any time while the stay is in place.

Judgment read and signed on this 22nd day of September, 2011, at New Orleans,

Louisiana.

_____
JUDGE

ENTERED ON MINUTES

SEP 2 3 2011

READ AND APPROVED:

_____
Stephen M. Gelé
Smith & Fawer, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, LA 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Attorney for Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC*


_____
Kyle D. Schonekas, 1187
William P. Gibbens, 27225
SCHONEKAS, EVANS, MCGOEY
& MCEACHIN, L.L.C.
Poydras Center
650 Poydras Street, Suite 2150
New Orleans, Louisiana  70130
Telephone: (504) 680-6050
kyle@semmlaw.com
billy@semmlaw.com

*Attorneys for Frederick R. Heebe*


_____
Robert N. Habans, Jr., 06395
HABANS & CARRIERE
10843 N. Oak Hills Parkway
Baton Rouge, Louisiana  70810
Telephone:  (225) 757-0225
bobhab@bellsouth.net

*Attorney for A.J. Ward, Jr.*


_____
Edward J. Castaing
CRULL, CASTAING & LILLY
601 Poydras Street, Suite 2320
New Orleans, Louisiana  70130
Telephone: (504) 581-7700
ecastaing@cclhlaw.com

*Attorney for River Birch, Inc.*


2

SWEM                    Fax:504-680-6051          Sep 19 2011 02:58pm  P002/002

READ AND APPROVED:

Stephen M. Gelé
Smith & Fawer, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, LA 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Attorney for Concrete Busters of Louisiana,*
*Inc. and Waste Remediation of Plaquemines,*
*LLC*

Robert N. Habans, Jr., 06395
HABANS & CARRIERE
10843 N. Oak Hills Parkway
Baton Rouge, Louisiana 70810
Telephone: (225) 757-0225
bobhab@bellsouth.net

*Attorney for A.J. Ward, Jr.*

Kyle D. Schonekas, 1187
William P. Gibbens, 27225
SCHONEKAS, EVANS, MCGOEY
& MCEACHIN, L.L.C.
Poydras Center
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Telephone: (504) 680-6050
kyle@semmlaw.com
billy@semmlaw.com

*Attorneys for Frederick R. Heebe*

Edward J. Castaing
CRULL, CASTAING & LILLY
601 Poydras Street, Suite 2320
New Orleans, Louisiana 70130
Telephone: (504) 581-7700
ecastaing@cclhlaw.com

*Attorney for River Birch, Inc.*

2